IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Case No. 06-245T
(Chief Judge Damich)

_____

MURFAM Farms, LLC, By and Through
Wendell H. Murphy, Jr., a Partner Other Than Tax Matters Partner,

Plaintiff,

v.

United States of America,

Defendant.

## ANSWER

　　　Defendant, United States of America, in answer to the Complaint for

Readjustment of Partnership Items, respectfully denies each and every allegation

therein not expressly admitted below, and answers the individually numbered

paragraphs set forth in the Complaint for Readjustment of Partnership Items, which are

restated herein, as follows:

## I.

1.　　Plaintiff Wendell H. Murphy, Jr. is a U.S. citizen and resident of the State of North
Carolina, with social security number ████████ .  Mr. Murphy's mailing
address is 4134 U.S.  Highway # 117, Rose Hill, NC 28458.  At all relevant times
herein, Mr. Murphy was the sole owner of WHMJ, LLC ("WHMJ"), a Delaware
limited liability company and an entity disregarded as separate from Mr. Murphy
for federal income tax purposes.  WHMJ's federal employer identification number
is 56-2198332, and its principal place of business is located at 4134 U.S.
Highway # 117, Rose Hill, NC 28458.  Before distributing its interest in MURFAM

1                                                                1834728.1

Farms, LLC to Mr. Murphy in August of 2000, WHMJ owned a 28.04% membership interest therein.  From and after that time, Mr. Murphy owned the 28.04% membership interest in MURFAM Farms, LLC.

ANSWER:  Defendant admits that Wendell H. Murphy, Jr., is a U.S. citizen and resident of the State of North Carolina, with a social security number of ███████ and a mailing address at 4134 U.S. Highway #117, Rose Hill, NC 28458.  Defendant further admits that Wendell H. Murphy, Jr., purports to be the sole owner of WHMJ, LLC ("WHMJ"), which in turn purports to be a single member limited liability company disregarded as separate from Wendell H. Murphy, Jr., for federal income tax purposes. The United States denies that WHMJ was engaged in a business and therefore had no principal place of business. Defendant admits that WHMJ was assigned the employer identification number 56-1088088.  The remaining allegations contained in paragraph 1 are denied.

2.    Wendell H. Murphy, Jr. is a Notice Partner of MURFAM Farms, LLC within the meaning of Section 6231(a)(8) of the Code.

ANSWER:    Admits.

3.    Wendell H. Murphy is a U.S. citizen and resident of the State of North Carolina, with social security number ███████.  Mr. Murphy's mailing address is 4143 U.S. Highway # 117, Rose Hill, NC 28458.  At all relevant times herein, Mr. Murphy was the sole owner of WHM Ventures, LLC ("Ventures"), a Delaware limited liability company and an entity disregarded as separate from Mr. Murphy for federal income tax purposes.  Ventures' federal employer identification number is 56-2198463, and its principal place of business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458.  Before distributing its interest in MURFAM Farms, LLC to Mr. Murphy in August of 2000, Ventures owned at 42.79% membership interest therein.  From and after that time, Mr. Murphy owned the 42.79% membership interest in MURFAM Farms, LLC.  Mr. Murphy is a proper party to this proceeding pursuant to Section 6226(c) of the Code.

ANSWER:    Defendant admits that Wendell H. Murphy is a U.S. citizen and resident of the State of North Carolina with social security number ███████ and a mailing

1834728.1

address at 4143 U.S. Highway # 117, Rose Hill, NC 28458.  Defendant admits that

Wendell H. Murphy purported to be the sole owner of WHM Ventures, LLC ("Ventures"),

which in turn purported to be a limited liability company and an entity disregarded as

separate from Mr. Murphy for federal income tax purposes.  Defendant admits that

Ventures was, upon application to the Internal Revenue Service, assigned the employer

identification number 56-2198463.  The United States denies that Ventures was

engaged in a business and therefore had no principal place of business.  Defendant

denies knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 3 except notes that whether Mr. Murphy is a proper

party to this proceeding pursuant to 6226(c) of the Code is a question of law to which no

response is required.

4.    Wendell H. Murphy is the Tax Matters Partner of MURFAM Farms, LLC.

ANSWER:    Admits.

5.    Wendy M. Crumpler is a U.S. citizen and resident of the State of North Carolina,
with social security number ▮▮▮▮▮▮▮.  Ms. Crumpler's mailing address is
4134 U.S. Highway # 117, Rose Hill, NC 28458.  At all relevant times herein, Ms.
Crumpler was the sole owner of WMC, LLC ("WMC"), a Delaware limited liability
company and an entity regarded as separate from Ms. Crumpler for federal
income tax purposes.  WMC's federal employer identification number is 56-
2198464, and its principal place of business is located at 4134 U.S. Highway #
117, Rose Hill, NC 28458.  Before distributing its interest in MURFAM Farms,
LLC to Ms. Crumpler in August of 2000, WMC owned an 8.59% membership
interest therein.  From and after that time, Ms. Crumpler owned the 8.59%
membership in MURFAM Farms, LLC.  Ms. Crumpler is a proper party to this
proceeding pursuant to Section 6226(c) of the Code.

ANSWER:    Defendant admits that Wendy M. Crumpler is a U.S. citizen and resident

of the State of North Carolina with social security number ▮▮▮▮▮▮▮ and a mailing

address at 4134 U.S. Highway # 117, Rose Hill, NC 28458.  Defendant admits that Ms.

Crumpler purported to be the sole owner of WMC, LLC ("WMC"), which in turn

purported to be a limited liability company and an entity disregarded as separate from

Ms. Crumpler for federal income tax purposes.  Defendant admits that WMC was, upon

application to the Internal Revenue Service, assigned the employer identification

number 56-2198464.  The United States denies that WMC was engaged in a business

and therefore had no principal place of business.  Defendant denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 5 except notes that whether Ms. Crumpler is a proper party to this

proceeding pursuant to 6226(c) of the Code is a question of law to which no response is

required.

6.      Joyce N. Minchew is a U.S. citizen and resident of the State of North Carolina,
        with social security number ███████████    Ms. Minchew's mailing address is
        4134 U.S. Highway #117, Rose Hill, NC 28458.  At all relevant times herein, Ms.
        Minchew was the sole owner of JMN Ventures, LLC("JMN"), a Delaware limited
        liability company and an entity disregarded as separate from Ms. Minchew for
        federal income tax purposes.  JMN's federal employer identification number is
        56-2198467, and its principal place of business is located at 4134 U.S. Highway
        #117, Rose Hill, NC 28458.  Before distributing its interest in MURFAM Farms,
        LLC to Ms. Minchew in August of 2000, JMN owned at 15.72% membership
        interest therein.  From and after that time, Ms. Minchew owned the 15.72%
        membership interest in MURFAM Farms, LLC.  Ms. Minchew is a proper party to
        this proceeding pursuant to Section 6226(c) of the Code.

ANSWER:  Defendant admits that Joyce N. Minchew is a U.S. citizen and resident of

the State of North Carolina with social security number ███████████ and a mailing

address at 4134 U.S. Highway #117, Rose Hill, NC 28458.  Defendant admits that Ms.

Minchew purported to be the sole owner of JMN Ventures, LLC ("JMN"), which in turn

purported to be a limited liability company and an entity disregarded as separate from

Ms. Minchew for federal income tax purposes.  Defendant admits that JMN was, upon

1834728.1

application to the Internal Revenue Service, assigned the employer identification

number 56-2198467.  The United States denies that JMN was engaged in a business

and therefore had no principal place of business.  Defendant denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 6 except notes that whether Ms. Minchew is a proper party to this proceeding

pursuant to 6226(c) of the Code is a question of law to which no response is required.

7.      Angela N. Brown is a U.S. citizen and resident of the State of North Carolina,
        with social security number ███████.  Ms. Brown's mailing address is 219
        Seacrest Dr., Wrightsville, NC 28460.  At all relevant times herein, Ms. Brown
        was the sole owner of ANB, LLC ("ANB"), a Delaware limited liability company
        and an entity disregarded as separate from Ms. Brown for federal income tax
        purposes.  ANB's federal employer identification number is 56-2198469, and its
        principal place of business is located at 219 Seacrest Dr., Wrightsville, NC
        28460.  Before distributing its interest in MURFAM Farms, LLC to Ms. Brown in
        August of 2000, ANB owned at 4.86% membership interest therein.  From and
        after that time, Ms. Brown owned the 4.86% membership interest in MURFAM
        Farms, LLC.  Ms. Brown is a proper party to this proceeding pursuant to Section
        6226(c) of the Code.

ANSWER:  Defendant admits that Angela N. Brown is a U.S. citizen and resident of the

State of North Carolina with social security number ███████.  Defendant further

admits that Ms. 's mailing address is 219 Seacrest Dr., Wrightsville, NC 28460.

Defendant admits that Ms. Brown purported to be the sole owner of ANB, LLC ("ANB")

which in turn purported to be a limited liability company and an entity disregarded as

separate from Ms. Brown for federal income tax purposes.  Defendant admits that ANB

was, upon application to the Internal Revenue Service, assigned the employer

identification number 56-2198469.  The United States denies that ANB was engaged in

a business and therefore had no principal place of business.  Defendant denies

knowledge or information sufficient to form a belief as to the truth of the remaining

1834728.1

allegations in paragraph 7 except notes that whether Ms. Brown is a proper party to this

proceeding pursuant to 6226(c) of the Code is a question of law to which no response is

required.

8.    Wendell H. Murphy, Jr., Wendell H. Murphy, Wendy M. Crumpler, Joyce N.
      Minchew, and Angela N. Brown are collectively referred to herein sometimes as
      the "Partners."  Relatedly, because each is an entity disregarded as separate
      from their sole owner for federal income tax purposes, WHMJ, Ventures, WMC,
      JMN, and ANB are also collectively referred to herein sometimes as the
      "Partners."

ANSWER: Defendant notes that paragraph 8 does not purport to state any facts

regarding this case and that therefore no response is required.

9.    MURFAM Farms, LLC (the "Partnership") is a Delaware limited liability company,
      with federal employer identification number 56-2198459.  Its principal place of
      business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458.

ANSWER: Defendant admits that MURFAM Farms, LLC (the "purported Partnership")

purports to be a Delaware limited liability company and that it was, upon application to

the Internal Revenue Service, assigned the employer identification number 56-2198459.

The remaining allegations in paragraph 9 are denied, including, but not limited to, the

implicit inference that MURFAM Farms, LLC was a partnership.  The United States

states that the purported Partnership is a factual sham and that, even if it did exist, this

entity is disregarded for federal tax purposes because it had no business purpose, and

also states that the purported Partnership, even if it did exist, was created as a sham

entity as a step in a prearranged plan and is thus also disregarded for federal income

tax purposes under the step transaction doctrine, and also states that this entity, if it did

exist, was created for a purpose which was inconsistent with the intent of Subchapter K

of the Internal Revenue Code.  The United States further states that the purported

6

1834728.1

Partnership was not engaged in a business and, thus, had no principal place of

business.

10.    The Partnership timely filed its partnership return (IRS Form 1065) for tax year
       ended December 27, 2000 with the Internal Revenue Service Center located in
       Cincinnati, Ohio.

ANSWER:    Admits.


11.    On December 16, 2005, the Commissioner of Internal Revenue (the
       "Commissioner") issued a Notice of Final Partnership Administrative Adjustment
       (the "FPAA") against the Partnership for tax year ended December 27, 2000.  A
       copy of the FPAA is attached hereto as Exhibit "A."  The Commissioner issued
       the FPAA to Plaintiff – and other parties hereto – from the following address:
       Internal Revenue Service ("IRS"), JFK P.O. Box 9112, Stop 41100, Boston, MA
       02203.

ANSWER:    Defendant admits that on December 16, 2005, a Notice of Final

Partnership Adjustment ("FPAA") was sent by certified mail to the tax matters partner of

the purported Partnership.  It is further admitted that the FPAA was sent by the Internal

Revenue Service (the "IRS") from its offices with the postal address of P.O. Box 9112,

Stop 41100, Boston, MA 02203, and that a copy of the FPAA is attached to the

Complaint as Exhibit "A".  Defendant objects to the remaining allegations contained on

paragraph 11 upon the ground that they are vague and/or ambiguous.

12.    The proposed adjustments set forth in the FPAA would result in deficiencies for
       the Partners for tax year 2000 because each Partner was a partner in the
       Partnership for the tax year at issue, as described above.

ANSWER:  Defendant objects to the allegations contained in paragraph 12 upon the

ground that they are vague and/or ambiguous.  To the extent that a response is

required, the allegations are denied.

13.    Wendell H. Murphy, as Tax Matters Partner of the Partnership, did not file a

1834728.1

petition with the Tax Court or a complaint with either the applicable federal district court or this Court within ninety days after the day on which the FPAA was mailed to him.

ANSWER: Admits.

14.     Plaintiff Wendell H. Murphy, Jr., as a Notice Partner of the Partnership, is filing this Complaint on behalf of the Partnership within sixty days following the expiration of the ninety-day period set forth in Code Section 6226(a).

ANSWER: Admits.

15.     According to Code Section 6226(b), 6226(c), and 6226(d), Plaintiff has standing to bring this Complaint.

ANSWER: Defendant admits that plaintiff MURFAM Farms, LLC, has standing to bring

this Complaint.  The remaining allegations contained in paragraph 15 are allegations of

law to which no response is required.

## II.

16.     Defendant is the United States of America and may be served – pursuant to Rule 4 of the Rules of the United States Court of Federal Claims – through delivery by the Clerk of the United States Court of Federal Claims to the U.S. Attorney General of five copies of the Complaint.

ANSWER: Defendant admits that it is the United States of America and states that no

response is required to the remaining allegations contained in paragraph 16.

## III.

17.     This is a civil action arising under Section 6226(b) of the Code for the redetermination of final partnership administrative adjustments to the Partnership's Form 1065 return for tax year ended December 27, 2000, as set forth by the Commissioner in the FPAA.

ANSWER: Defendant admits that this is a civil action arising under Section 6226(a) of

the Code for the redetermination of the final partnership administrative adjustments to

1834728.1

the Partnership's Form 1065 income tax return for that tax year ended December 27,

2000, as set forth by the Commissioner in the FPAA.  The remaining allegations are

denied.


18.     The Commissioner erroneously determined that: (a) the form of the transactions
        at the issue should be recharacterized or disregarded under a number of different
        theories; (b) the Partnership should be disregarded as a partnership for federal
        income tax purposes; and (c) several corresponding adjustments should be
        made to the Partners' federal tax liabilities.  Moreover, the Commissioner
        erroneously determined that penalties under Code Section 6662 should be
        imposed.

ANSWER:  Defendant admits that the Commissioner determined, inter alia, that: (a) the

form of the transactions at issue should be recharacterized or disregarded under a

number of different theories; (b) the purported Partnership should be disregarded as a

partnership for federal income tax purposes; and (c) several corresponding adjustments

should be made to the purported Partners' tax liabilities.  It is denied that these

determinations were erroneous.

**IV.**

19.     Section 6226(b) and 6226(c) of the Code and 28 U.S.C. §§ 1346(a)(1) and 1508
        confer jurisdiction on this Court.

ANSWER: Jurisdiction, to the extent that it exists, is founded upon 28 U.S.C. § 1508.

20.     For jurisdiction purposes, the Partners have complied with the requirements of
        Code Section 6226(e) by depositing the amount by which their federal income
        tax liability would be increased if treatment of the Partnership items on their tax
        returns for the tax year at issue were made consistent with the treatment of
        partnership items on the Partnership's tax return as adjusted by the
        Commissioner in the FPAA.

ANSWER: Defendant admits that the purported Partners have deposited the amount

sufficient to satisfy the deposit requirement.  The remaining allegations are issues of law

to which no response is required.

21. The Partners have made the following deposits:

| Partner | Deposit Amount |
|---|---|
| Wendell H. Murphy | $6,043,505.00 |
| Wendell H. Murphy, Jr. | $3,812,326.00 |
| Wendy M. Crumpler | $1,130,000.00 |
| Joyce N. Minchew | $1,984,000.00 |
| Angela N. Brown | $640,000.00 |

ANSWER: Admits.

22. True and correct copies of the deposits sent to the IRS are attached to this Complaint as Exhibit "B."[1]

ANSWER:  Admits.

**V.**

23. After consultation with – and obtaining the advice, guidance, and counsel of – qualified tax professionals, the Partners entered into the following transactions (the "Transactions"), which provide the basis for the issues in this case.

ANSWER:  No response is required with respect to the allegations contained in

paragraph 23.  To the extent a response is required, Defendant is presently without

knowledge or information sufficient to form a belief as to the truth of the allegation

contained in paragraph 23.

24. As of April 14, 2000, the Partners entered into certain over-the-counter, non-publicly traded European-style foreign currency option positions on the EURO and Swiss Franc, as applicable (collectively the "Options"), with Deutsche Bank

---

[1]  In the attached documents, the deposit for each of Wendell H. Murphy and Wendell H. Murphy, Jr. includes an amount in addition to the deposit amount set forth above, which relates to another transaction entered into by the taxpayer during the same tax year and disputed by the Internal Revenue Service.

1834728.1

AG New York Branch (the "Bank"), with each Partner purchasing an Option and selling an Option.

ANSWER: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.

25.    Ventures purchased – for a premium of $26,400,000.00 – an Option on the EURO/U.S. Dollar exchange rate with the strike price of .9207 USD per 1.0 EURO, an expiration date of June 13, 2000, and a final exchange amount of $52,800,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26.    WHMJ purchased – for a premium of $17,300,000.00 – an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5839 CHF per 1.00 USD, an expiration date of June 13,2000, and a final exchange amount of $34,600,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26.

27.    WMC purchased – for a premium of $5,300,000.00 – an Option on the EURO/U.S. Dollar exchange rate with a strike price of .9207 USD per 1.00 EURO, an expiration date of June 13,2000, and a final exchange amount of $10,600,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.

28.    JMN purchased – for a premium of $9,700,000.00 – an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5839 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $19,400,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28.

29.    ANB purchased – for a premium of $3,000,000.00 – an Option on the U.S.

1834728.1

Dollar/Swiss Franc exchange rate with a strike price of 1.58939 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $6,000,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.

30.    The Options described in paragraphs 25 through 29 above are referred to herein as the "Long Options."

ANSWER: Paragraph 30 does not allege any fact regarding this matter and thus no response is required.

31.    Ventures sold – for a premium of $25,608,000.00 – an Option on the EURO/U.S. Dollar exchange rate with a strike price of .9205 USD per 1.00 EURO, an expiration date of June 13, 2000, and a final exchange amount of $51,018,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

32.    WHMJ sold – for a premium of $16,781,000.00 – an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5837 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $33,432,250.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32.

33.    WMC sold – for a premium of $5,141,000.00 – an Option on the EURO/U.S. Dollar exchange rate with a strike price of .9205 USD per 1.00 EURO, an expiration date of June 13, 2000, and a final exchange amount of $10,242,250.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33.

1834728.1

34.     JMN sold – for a premium of $9,409,000.00 – an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5837 CHF per 1.00 USD, an expiration date of June 13,2000, and a final exchange amount of $18,745,250.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 34.

35.     ANB sold – for a premium of $2,910,000.00 – an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5837 CHF per 1.00 USD, an expiration date of June 13,2000, and a final exchange amount of $5,797,500.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 35.

36.     The Options described in paragraphs 31 through 35 above are referred to herein as the "Short Options" (and collectively with the Long Options, the Options).

ANSWER: Paragraph 36 does not allege any fact in this matter and therefore no

response is required.

37.     As of April 17, 2000, each of the Partners contributed their respective Options (including their Long Options and Short Options) to the Partnership as contributions of capital.

ANSWER: Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 37.

38.     On June 13, 2000, the Options held by the Partnership terminated in accordance with their terms.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 38.

39.     In August of 2000, the Partners distributed their ownership interests in the Partnership to their respective sole members.  Because the Partners are entities disregarded as separate from their sole members for federal income tax purposes, these distributions were non- events for federal income tax purposes.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

1834728.1

belief as to the truth of the allegations contained in paragraph 39.

40.    Throughout tax year 2000, the Partnership made numerous investments in various publicly-traded stocks and securities.

ANSWER:  Defendant states that the purported Partnership purported to be a Delaware

Limited Liability Company and is also disregarded for federal income tax purposes and

Defendant is presently without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in paragraph 40.

41.    On December 5, 2000, the Partners each contributed to the Partnership as a contribution of capital certain North Carolina municipal bonds (the "Bonds") held by each Partner for investment purposes.

ANSWER: Defendant admits that on December 5, 2000, the purported Partners each

contributed certain North Carolina municipal bonds (the "Bonds"), to the purported

Partnership which purported to be a Delaware Limited Liability Company, but states that

the purported Partnership is a factual sham and that, even if it did exist, this entity is

disregarded for federal tax purposes because it had no business purpose, and also

states that the purported Partnership, even if it did exist, was created as a sham entity

as a step in a prearranged plan and is thus also disregarded for federal income tax

purposes under the step transaction doctrine, and also states that this entity, if it did

exist, was created for a purpose which was inconsistent with the intent of Subchapter K

of the Internal Revenue Code.

42.    As of December 27, 2000, the Partners contributed their interests in the Partnership – collectively equal to 100% of the outstanding ownership interests therein – to MURFAM, Inc., a Delaware corporation (the "Corporation").

ANSWER: Defendant admits that MURFAM, Inc. (the "Corporation"), purports to be a

Delaware corporation and that the purported Partners purport to have contributed their

1834728.1

interests in the purported Partnership to the Corporation as of December 27, 2000, but states that both the purported Partnership and the Corporation were created as steps in a prearranged plan to engage in transactions that are inconsistent with the intent of Subchapter K of the Internal Revenue Code and also were shams that were availed of solely for the purpose of effecting sham transactions and denies the remaining allegations contained in paragraph 42.

43.    As a result of the foregoing – i.e., all of the interests in the Partnership being transferred to a single person, the Corporation – the Partnership liquidated and dissolved as a matter of law.

ANSWER: The allegations contained in paragraph 43 are allegations of law to which no response is required.  To the extent that a response is required, Defendant states that both the purported Partnership and the Corporation were created as steps in a plan to engage in transactions that are inconsistent with the intent of Subchapter K of the Internal Revenue Code and also were shams that were availed of solely for the purpose of effecting sham transactions and denies the remaining allegations contained in paragraph 43.

44.    On its liquidation and dissolution, all of the Partnership's assets – including but not limited to the Bonds – were distributed to the Corporation as its sole owner.

ANSWER:  The allegations contained in paragraph 44 are allegations of law to which no response is required.  To the extent that a response is required, Defendant states that both the purported Partnership and the Corporation were created as steps in a plan to engage in transactions that are inconsistent with the intent of Subchapter K of the Internal Revenue Code and also were shams that were availed of solely for the purpose of effecting sham transactions and denies the remaining allegations contained in

1834728.1

paragraph 44.

45.     As of December 29, 2000, the Corporation sold the Bonds, triggering a long-term capital loss for federal income tax purposes in the amount of $61,543,012.00, which the Corporation reported on its Form 1120S for tax year 2000.  The Corporation allocated this loss pro rata among its shareholders (also the Partners) according to their respective ownership interests in the Corporation.

ANSWER: Defendant admits that the Bonds were sold, and admits further that the

Corporation filed a Form 1120S for tax year 2000, upon which it reported a long-term

capital loss in the amount of $61,543,012.00.  The remaining allegations contained in

paragraph 45 are allegations of law to which no response is required.  To the extent that

a response is required, the remaining allegations contained in paragraph 45 are denied.

**VI.**

46.     The Partnership timely filed its Form 1065 for short tax year ended December 27, 2000, the date of its termination and dissolution.  Ernst & Young LLP prepared the Partnership's tax return.

ANSWER: Defendant admits that the purported Partnership was dissolved on

December 27, 2000, that the purported Partnership timely filed Form 1065 for the tax

year ending December 27, 2000, which indicates that the Form was prepared by Ernst

& Young LLP, and that the tax year ending December 27, 2000, was a short tax year.

Defendant otherwise states that the purported Partnership is disregarded for federal

income tax purposes and that Defendant is presently without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in

paragraph 46.

**VII.**

47.     The Corporation timely filed a Form 1120S for tax year ended December 31, 2000, which was also prepared by Ernst & Young LLP.

1834728.1

ANSWER: Defendant admits that the Form 1120S tax return filed by the Corporation for the tax year ended December 31, 2000, indicates that it was prepared by Ernst & Young LLP, and that it was timely.  Defendant otherwise states that the Corporation is disregarded for federal income tax purposes and that Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 47.

48.    The Partners and the Partnership sought and reasonably relied in good faith upon the advice, counsel and guidance of competent tax professionals, including but bot limited to the professionals at Proskauer Rose LLP and Ernest [sic] & Young, LLP, in determining the federal income tax consequences and proper reporting obligations relative to the Transactions described above before filing their respective federal income tax returns.

ANSWER: Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48, except states that to the extent that the purported Partners and the purported Partnership relied on any such advice, such reliance was unreasonable.

49.    The Partners were introduced to the Transactions by their long-time advisor Ernest [sic] & Young, LLP, which presented the Transactions as sound and legal business investments, both before and after tax considerations were taken into account.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 except states that to the extent that the purported Partners relied on any such advice, such reliance was unreasonable.

50.    Ernest [sic] & Young, LLP ultimately provided advice regarding all aspects of the Transactions, including profit potential, investment strategy, choice of entities, business structure, and accounting and tax reporting.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

1834728.1

belief as to the truth of the allegations contained in paragraph 50 except states that to

the extent that the Partners relied on any such advice, such reliance was unreasonable.

51.    The Partners at all times considered Ernest [sic] & Young, LLP to be a qualified and independent professional entity having no interest in the Transactions other than in the capacity of the providing professional investment, accounting and tax advice.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 51.

52.    At the suggestion of Ernest [sic] & Young, LLP, the Partners obtained a written legal opinion from Proskauer Rose LLP on December 29, 2000 (the "Opinion"), herein Proskauer Rose LLP opined, on a more-likely-than-not basis, as to the federal income tax consequences of the Transactions.  The conclusions set forth in the Opinion provided the bases for the manner in which the Transactions were reported for federal income tax purposes.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 52 except states that to

the extent that the purported Partners relied on any such advice, such reliance was

unreasonable.

**VIII.**

53.    Plaintiff incorporates paragraphs 1 through 52 as though fully set forth herein.

ANSWER: Defendant incorporates its answers to paragraphs 1 through 52 of the

Complaint as though fully set forth herein.

54.    By its FPAA, the Commissioner erred in determining that:
        a)    The net loss from Form 4797 is $0.00 in lieu of the amount of ($1,851,000.00) as reported by the Partnership for short tax year ended December 27, 2000.
        b)    Ordinary dividends are $0.00 in lieu of the amount of $150.00 as

18

reported by the Partnership for tax year 2000.

c)    Net short-term gain is $0.00 in lieu of the amount of $26,429.00 as reported by the Partnership for tax year 2000.

d)    Tax-exempt interest income is $0.00 in lieu of $24,712.00 as reported by the Partnership for tax year 2000.

e)    The Partnership's outside basis is disallowed in its entirety for tax year 2000.

ANSWER:  Denied.

55.    By its FPAA, the Commissioner erred in determining that neither the Partnership nor its Partners have established the existence of the Partnership as a partnership as a matter of fact.

ANSWER: Denied.

56.    By its FPAA, the Commissioner erred in determining that even if the Partnership existed as a partnership, it was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its Partners.

ANSWER: Denied.

57.    By its FPAA, the Commissioner erred in determining that the formation of the Partnership, the acquisition of any interest in the Partnership by the Partners, the purchase of offsetting options, the transfer of offsetting options to the Partnership in return for a partnership interests, the purchase of assets by the Partnership, the distribution of those assets to the Corporation in complete liquidation of the partnership interests in the Partnership, and the subsequent sale of those assets to generate a loss, all within a period of less than nine months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the Commissioner erred in determining that the Partnership and the preceding described transactions shall be disregarded in full and:

a)    Any losses resulting from the above transactions are not allowable as deductions; and

b)    Increases in bases of assets are not allowed to eliminate gain for federal income tax purposes.

ANSWER:  Denied.

58.    By its FPAA, the Commissioner erred in determining that the Partnership was a sham, lacked economic substance, and under Treasury Regulation § 1.701-2 was formed and availed of in connection with a transaction or transactions in tax year 2000, a principal purpose of which was to reduced substantially the present

1834728.1

value of the Partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Code.  Consequently, the Commissioner erred in determining that:

    a)    The Partnership is disregarded and that all transactions engaged in by the partnership are treated as engaged in directly by its Partners, including the determination that the assets acquired by the Partnership, including but not limited to the foreign currency options, were acquired directly by the Partners;

    b)    The foreign currency options contributed to or assumed by the Partnership are treated as never having been contributed to or assumed by the Partnership and any gains or losses realized by the Partnership on such options are treated as having been realized by its Partners;

    c)    The Partners of the Partnership should be treated as not being partners in the Partnership; and

    d)    Contributions to the Partnership will be adjusted to reflect clearly the Partnership's or its Partners' income.

ANSWER:  Denied.

59.    By its FPAA, the Commissioner erred in determining that the obligations under the sold option positions transferred to the Partnership (the Short Options) constitute liabilities for purposes of Treasury Regulation § 1.752-6, the assumption of which by the Partnership shall reduce the Partners' bases in the Partnership in the amounts of $25,608,000.00 for Wendell H. Murphy, $16,781,000.00 for Wendell H. Murphy, Jr., $5,141,000.00 for Wendy M. Crumpler, $9,409,000.00 for Joyce N. Minchew, and $2,910,000.00 for Angela N. Brown, but not below the fair market value of the partnership interests.

ANSWER:  Denied.

60.    By its FPAA, the Commissioner erred in determining that neither the Partnership nor its partners entered into the options positions, acquired North Carolina State bonds or purchased stock with a profit motive for purposes of Code Section 165(c)(2).

ANSWER:  Denied.

61.    By its FPAA, the Commissioner erred in determining that the economically offsetting option positions constitute an arrangement under Code Section 465(b)(4) to limit the exposure to risk of loss and that neither the partnership nor its Partners established any other amounts considered to be at-risk for purposes of Code Section 465 that would allow the Partners to deduct losses arising from

1834728.1

or in connection with the Partnership.

ANSWER:  Denied.

62.    By its FPAA, the Commissioner erred in determining that, even if the foreign currency options are treated as having been contributed to the Partnership, the amount treated as contributed by the Partners under Code Section 722 is reduced by the amounts received by the contributing Partners from the contemporaneous sales of the call options to the same counter-party.  Thus, the Commissioner erred in determining that the basis of the contributed options is reduced both in the hands of the contributing Partners and the Partnership, and consequently that any corresponding claims increases in the outside basis in the Partnership resulting from the contributions of the foreign currency options is disallowed.

ANSWER:  Denied.

63.    By its FPAA, the Commissioner erred in determining that the adjusted bases of the purchased option positions and other contributions made by the Partners to the Partnership have not been established under Code Section 723.  Consequently, the Commissioner erred in determining that the Partners of the Partnership have not established adjusted bases in their respective interests in the Partnership in an amount greater than zero.

ANSWER:  Denied.

64.    By its FPAA, the Commissioner erred in determining that, in the case of a sale, exchange, or liquidation of the interests in the Partnership, neither the Partnership nor its Partners have established that the bases of the Partners' interests were greater than zero for purposes of determining gain or loss to such Partners from the sale, exchange, or liquidation of such partnership interests.

ANSWER:  Denied.

65.    By its FPAA, the Commissioner erred in determining that the adjustments of partnership items of the Partnership are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the Partnership or its Partners that the position taken was more-likely-than-not the correct treatment of the tax shelter and related transactions.

ANSWER:  Denied.

1834728.1

66.    By its FPAA, the Commissioner erred in determining that all of the alleged underpayments of tax resulting from the FPAA's adjustments of partnership items are attributable to, at a minimum:
      a)     Substantial understatements of income tax;
      b)     Gross valuation misstatement(s); or
      c)     Negligence or disregarded rules or regulations.

ANSWER:  Denied.

67.    By its FPAA, the Commissioner erred in determining that there has not been a showing by the Partnership or any of its Partners that there was reasonable cause for any of the resulting underpayments, that the Partnership or any of its Partners acted in good faith, or that any other exceptions to the penalty apply.

ANSWER:  Denied.

68.    By its FPAA, the Commissioner therefore erred in determining that, at a minimum, the accuracy-related penalty under Code Section 6662(a) applied to all underpayments of tax attributable to adjustments of partnership items of the Partnership, and that the penalty should be imposed on the components of underpayment as follows:
      a)     A 40% penalty should be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Code Section 6662(a), 6662(b)(3), 6662(e), and 6662(h).
      b)     A 20% penalty should be imposed on the portion of the underpayment attributable to negligence or disregard of the rules and regulations as provided by Code Section 6662(a), 6662(b)(1) and 6662(c).
      c)     A 20% penalty should be imposed on the underpayment attributable to the substantial understatement of income tax as provided by Code Sections 6662(a), 6662(b)(2), and 6662(d).
      d)     A 20% penalty should be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Code Sections 6662(a), 6662(b)(3), and 6662(e).

ANSWER:  Denied.

69.    By its FPAA, the Commissioner erred in making each and every adjustment set forth therein.

ANSWER:  Denied.

**IX.**

22

1834728.1

70.    Plaintiff incorporates paragraphs 1 through 69 as though fully set forth herein.

ANSWER:  Defendant incorporates its answers to paragraphs 1 through 69 of the

Complaint as though fully set forth herein.

71.    The Partnership properly calculated and reported its net ordinary loss from Form
       4797 for tax year 2000 equal to ($1,851,000.00).

ANSWER: Denied.

72.    The Partnership properly calculated and reported its ordinary dividend income for
       tax year 2000 equal to $150.00.

ANSWER: Denied.

73.    The Partnership properly calculated and reported its net short-term capital gain
       for tax year 2000 equal to $26,429.00.

ANSWER:  Denied.

74.    The Partnership properly calculated and reported its tax-exempt interest income
       for tax year 2000 equal to $24,712.00.

ANSWER:  Denied.

75.    In addition to the foregoing, the Partnership properly calculated and reported all
       of its items of income, and gain, loss, deduction, and credit for tax year 2000.

ANSWER:  Denied.

76.    The Partnership properly calculated and reported its outside partnership basis for
       tax year 2000.

ANSWER:  Denied.

77.    The Partnership is an entity validly created and existing for all state and federal
       law purposes, and recognized as a "partnership" for federal income tax purposes
       for tax year 2000.

ANSWER: Defendant admits that the purported Partnership purported to be a Delaware

Limited Liability Company, but states that the purported Partnership is a factual sham

1834728.1

and that, even if it did exist, this entity is disregarded for federal tax purposes because it

had no business purpose, and also states that the purported Partnership, even if it did

exist, was created as a sham entity as a step in a prearranged plan and is thus also

disregarded for federal income tax purposes under the step transaction doctrine, and

also states that this entity, if it did exist, was created for a purpose which was

inconsistent with the intent of Subchapter K of the Internal Revenue Code.

78.    The Partnership was not formed and/or availed of solely for purposes of tax
       avoidance.

ANSWER: Denied.

79.    The Partnership was not a sham – in substance or in fact – for federal income tax
       purposes for tax year 2000.

ANSWER: Denied.

80.    The Partnership did not lack economic substance for federal income tax
       purposes for tax year 2000.

ANSWER: Denied.

81.    No part of the Transactions may be ignored, disregarded, or recharacterized on
       the basis that they lacked economic substance, business purpose, or otherwise
       constituted a sham – in  fact or substance – for federal income tax purposes.

ANSWER: Denied.

82.    The Partnership and its Partners properly determined and reported the tax
       consequences of the Transactions for federal income tax purposes.

ANSWER: Denied.

83.    The losses and other benefits claimed by the Partners on their federal tax returns
       cannot be disallowed on the basis that either the Transactions or any of the
       entities involved therein constituted shams or lacked economic substance
       because neither of these doctrine is incorporated into or otherwise a part of the
       Code.

ANSWER: Paragraph 83 states allegations of law to which no response is required.  To

1834728.1

the extent that a response is required, the allegations are denied.

84.    Disallowance of the losses or other benefits claimed by the Partners in this case on the basis of either the sham-transaction or economic-substance theories asserted by the Commissioner would violate the separation of powers provisions of the United States Constitution.

ANSWER:  Paragraph 84 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

85.    The Partnership was not formed or availed of in connection with a transaction or transactions in a manner inconsistent with the intent of Subchapter K of the Code and may not otherwise be disregarded, nor may any of its transactions be recharacterized , in whole or in part, under the authority of Treasury Regulation § 1.701-2.

ANSWER:  Paragraph 85 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

86.    Treasury Regulation § 1.701-2 is invalid.

ANSWER:  Paragraph 86 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

87.    The obligations under the Short Options do not constitute liabilities under Code Section 752.  Consequently, the Partnership's assumption of those obligations is not regarded as a distribution of money to the Partners under the Code and cannot serve to reduce the Partners' bases in their interests in the Partnership.

ANSWER:  Paragraph 87 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

88.    Even if the obligations under the Short Options do constitute liabilities under Code Section 752, the amount of the "liability" transferred to the Partnership under those Options is equal to zero.   Consequently, the Partners' bases in the Partnership cannot be reduced by any part of the Short Options transferred to the Partnership.

ANSWER:  Paragraph 88 states allegations of law to which no response is required.  To

1834728.1

the extent that a response is required, the allegations are denied.

89.    Treasury Regulation § 1.752-6 is invalid and inapplicable to the facts of this case.

ANSWER:  Paragraph 89 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

90.    Code Section 165(c)(2) only applies with respect individuals, and therefore does not apply to the Partnership.  Moreover, to the extent that Code Section 165(c)(2) applies to the Partners, it requires partner-level determinations, over which this Court lacks jurisdiction in connection with this TEFRA proceeding.

ANSWER:  Paragraph 90 states allegations of law to which no response is required.

91.    Alternatively, Code Section 165(c)(2) does not operate to disallow the losses or other tax benefits claimed by either the Partnership or the Partners for tax year 2000.

ANSWER:  Paragraph 91 states allegations of law to which no response is required.

92.    Code Section 465 applies at the partner – rather than partnership – level, and therefore does not apply to the Partnership.  Moreover, to the extent that Code Section 465 applies to the Partners, it requires partner-level determinations, over which this Court lacks jurisdiction in connection with this TEFRA proceeding.

ANSWER:  Paragraph 92 states allegations of law to which no response is required.

93.    Alternatively, the Options do not represent an arrangement under Code Section 465(b)(4) to limit the exposure to risk of loss, and Section 465 otherwise does not operate to limit the losses or other tax benefits claimed by either the Partnership or its Partners for tax year 2000.

ANSWER:  Paragraph 93 states allegations of law to which no response is required.

94.    The Long Options and the Short Options are separate investments for federal income tax purposes.

ANSWER: Denied.

95.    The amounts treated as contributed by the Partners to the Partnership under

1834728.1

Code Section 722 are not reduced by the amounts received by the amounts received by the Partners from the sales of the Short Options.

ANSWER:  Paragraph 95 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

96.    The Partners have adequately established and substantiated their adjusted bases in their interests in the Partnership under Code Section 723, and have properly calculated and reported such adjusted bases for federal income tax purposes.

ANSWER: Denied.

97.    In every other respect, the federal tax consequences of the transactions at issue in this case, including without limitation the Transactions, are as set forth in the Opinion discussed above and as reported by the Partnership and its Partners on their federal tax returns for tax year 2000.

ANSWER:  Paragraph 97 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

98.    The Partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and the Partners acted in good faith as contemplated by Code Section 6664(c)(1).

ANSWER: Paragraph 98 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

99.    The Partners are not subject to accuracy-related penalties under Code Section 6662 because any tax liability ultimately determined is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

ANSWER: Paragraph 99 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

100.    The Partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined is attributable to items for which the relevant facts were adequately disclosed in the Partnership's and the Partners'

federal tax returns or in a statement attached thereto, and there is a reasonable basis for the tax treatment of such item.

ANSWER: Paragraph 100 states allegations of law to which no response is required.

To the extent that a response is required, the allegations are denied.

101.    The Transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

ANSWER: Paragraph 101 states allegations of law to which no response is required.

To the extent that a response is required, the allegations are denied.

102.    In the alternative, even if the Transactions do constitute a tax shelter, the Partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and furthermore, the Partners reasonably believed that the tax treatment of such item by them as more-likely-than-not the proper treatment.

ANSWER:  Paragraph 102 states allegations of law to which no response is required.

To the extent that a response is required, the allegations are denied.

## X.

103.    Defendant has the burden of proof under Section 7491 of the Code.

ANSWER:  Paragraph 103 states allegations of law to which no response is required.

To the extent that a response is required, the allegation is denied.

1834728.1

**XI.**

WHEREFORE, defendant prays that plaintiff's complaint for readjustment be dismissed and that defendant be granted such other and further relief as the Court deems to be just and appropriate.


 s/ Dennis M. Donohue
DENNIS M. DONOHUE
Senior Litigation Counsel
JOHN LINDQUIST
DAVID M. STEINER
Trial Attorneys
Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-5892
Facsimile: (202) 514-5238
E-Mail: David.M.Steiner@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

Dated:   July 31,   2006

1834728.1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2006, I electronically filed the foregoing Answer with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Owens, Collier, Reed
    Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ David M. Steiner
David M. Steiner
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892

1834728.1