- a description of each document or material or a citation to the beginning and ending bates stamp numbers of the document or material;
- the person who created the document or other tangible thing;
- whether you were given a copy of the document or other tangible thing;
- if a copy was given to you, whether and where the copy still exists;
- if you were not given a copy of the document; what is the reason for your not receiving a copy of the document;
- if you have not furnished the bates stamp numbers for the document or other tangible thing, the person who has custody of the document or other tangible thing and its location;
- and, if it does not exist, how the document or other tangible thing was disposed of and any person who authorized its disposal or who has knowledge of its disposal.

**113. Please identify and provide the information listed below for every marketing or other material used in presenting the transactions described in Part V of the Complaints to the Individual Participants and/or any advisor thereof:**

**a. type of document or other tangible thing;**

**b. general subject matter;**

**c. date of the document or other tangible thing; and**

**d. author(s), addressee(s), and recipient(s).**

**e. the person who created the document or other tangible thing;**

**f. whether you were given a copy of the document or other tangible thing;**

**g. if a copy was given to you, whether and where the copy still exists.**

**h. If you have not furnished the bates stamp numbers for the document or other tangible thing, the person who has custody of the document or other tangible thing and its location;**

**114. Describe each document or material or a citation to the beginning and ending bates stamp numbers of the document or material;**

**115. If you were not given a copy of the document; what is the reason for your not receiving a copy of the document.**

**116. If the document does not exist, how the document or other tangible thing was disposed of and any person who has knowledge of its disposal.**

**117. Identify the person who authorized the disposal of the document.**

INTERROGATORY NO. 36: Paragraph #24 of the Complaint in Docket No. 06-245 and ¶ 22 in Complaint Nos. 06-246 and 06-247 allege that "the Partners entered into certain over-the-counter, non-publicly traded European-style foreign currency option positions on the Euro and Swiss Franc, as applicable (collectively the "Options") with Deutsche Bank AG New York Branch (the "Bank"), with each Partner purchasing an Option and selling an Option."

Please identify and provide the information listed below for every communication, oral or otherwise, in which a person stated, represented, suggested, implied, intimated, or in any other way communicated that the Plaintiffs, the Individual Participants and/or the Additional Participants could terminate any of these European-style digital options prior to the expiration of their full term:

- the date on which the communication was made;

- the means of communication (e.g., in person, by phone, by email, by fax), and, if in person, the place where the communication was made;
- the person who made the communication;
- the person to whom the communication was made;
- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;
- the duration of the communication;
- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;
- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words; and
- a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

**118. Please identify and provide the [requested] information listed below for every communication... that Murphy Pork Partners, LLC, the Individual Participants and/or the Additional Participants could terminate any of these European-style digital options prior to the expiration of their full term.**

**119. Provide a description of the documents memorializing the communication.**

<u>INTERROGATORY NO. 37:</u> Please explain, completely and accurately, regarding the transactions described in Part V of the Complaints, how much the Plaintiffs, the Individual Participants and/or the Additional Participants paid to Ernst & Young, Jenkens & Gilchrist,

Brown & Wood, Scheef & Stone, Proskauer Rose, and/or Deutsche Bank, including as to each such payment:

- the date of payment;
- the amount of the payment;
- the person making the payment;
- the reason for payment;
- the account from which the payment was drawn;
- the account to which the payment was deposited;
- a description of any document memorializing the payment.

Please organize this information in a table sorted chronologically by the date on which the payment was made.

**120. Please explain, completely and accurately, regarding the transactions described in Part V of the Complaints, how much Murphy Pork Partners, LLC, the Individual Participants and/or the Additional Participants paid to Ernst & Young, Jenkens & Gilchrist, Brown & Wood, Scheef & Stone, Proskauer Rose, and/or Deutsche Bank, including [the requested information] as to each such payment.**

**121. Provide a description of the documents memorializing the payment.**

<u>INTERROGATORY NO. 38:</u> Attached as Exhibit A is a legal opinion letter from Proskauer Rose, dated December 29, 2000, to Additional Participants HDM, LLC, WHM Ventures, LLC, and WHMJ, LLC. Pages 2 through 4 contain a list of purported facts.

Please identify who provided the wording for each of these representations. If the other Additional Participants or Individual Participants received a similar letter, please identify who provided the wording for each representation therein.

**122. Please identify who provided the wording for each of these representations.**

INTERROGATORY NO. 39: For each person listed in your response to the previous Interrogatory, please provide the information listed below for, every communication, oral or otherwise, by each Individual Participant (or their advisors) with such persons:

- the date on which the communication was made;
- the means of communication (e.g., the person, by phone, by email, by fax), and if in person, the place where the communication was made;
- the person who made the communication;
- the person to whom the communication was made;
- the person who heard or received any portion of the communication, if different or in addition to those individuals to whom the communication was made;
- the duration of the communication;
- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;
- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words; and
- a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

**123. For each person listed in your response to the previous Interrogatory, please provide the [requested] information listed below for, every communication, oral or otherwise, by each Individual Participant (or their advisors) with such persons.**

**124. Provide a description of the documents memorializing the communication.**

INTERROGATORY NO. 40: Page 3 of the legal opinion letter to Additional Participants HDM, LLC, WHM Ventures, LLC, and WHMJ, LLC, by Proskauer Rose, dated December 29, 2000, which is attached as Exhibit A, states the following:

> The purpose of the purchase and sale of these options is that each of the Parties believed that such investments could result in substantial profits with only limited downside risk.
>
> * * *
>
> Each of the Parties' primary motivation in participating in the Transactions was to attain, on a risk-adjusted basis, an attractive return on his investment through the Transactions, without regard to tax benefits. Each of the Parties anticipates earning, taking into account transaction expenses, a pre-tax return on his net investment in the Transactions significantly great than investments offering comparable risk profiles.

Please explain completely and accurately all non-tax business reasons that you had for entering into the series of transactions described in Part V of the Complaint, including the reasons listed in the above-quoted paragraph, if true, and for each reason the facts upon which you rely to support that reason.

**125. Please explain completely and accurately all non-tax business reasons that you had for entering into the foreign currency digital options.**

**126. Explain the facts upon which you rely to support that reason.**

**127. Please explain completely and accurately all non-tax business reasons that you had for contributing the foreign currency digital options to Murphy Pork Partners.**

**128. Explain the facts upon which you rely to support that reason.**

**129. Please explain completely and accurately all non-tax business reasons that you had for distributing the partnership interests in Murphy Pork Partners from the Additional Participant LLCs to the Individual Participants.**

**130. Explain the facts upon which you rely to support that reason.**

**131. Please explain completely and accurately all non-tax business reasons that you had for Murphy Pork Partners' acquisition and sale of publicly traded stocks and securities.**

**132. Explain the facts upon which you rely to support that reason.**

**133. Please explain completely and accurately all non-tax business reasons that you had for Murphy Pork Partners' acquisition of foreign currency.**

**134. Explain the facts upon which you rely to support that reason.**

**135. Please explain completely and accurately all non-tax business reasons that you had for contributing the partnership interests in Murphy Pork Partners to Murphy Pork, Inc.**

**136. Explain the facts upon which you rely to support that reason.**

**137. Please explain completely and accurately all non-tax business reasons that you had for Murphy Pork Inc.'s sale of foreign currency.**

**138. Explain the facts upon which you rely to support that reason.**

INTERROGATORY NO. 41: Please explain completely and accurately the basis for the Individual Participants' belief, if such a belief existed, that he/she had a reasonable opportunity to earn a reasonable profit, including in such explanation:

- How much profit the Individual Participants believed they could earn on the Transactions.
- The probability that the Individual Participants could earn such profit.
- How much money the Individual Participants believed that they could lose on the Transactions.
- The probability that the Individual Participants could lose the amounts specified.

**139. Please explain completely and accurately the basis for the Individual Participants' belief, if such a belief existed, that he/she had a reasonable opportunity to earn a reasonable profit, including [the requested information].**

INTERROGATORY NO. 42: Page 4 of the legal opinion letter to HDM, LLC, WHM Ventures, LLC, and WHMJ, LLC, by Proskauer Rose, dated December 29, 2000, which is attached as Exhibit A, states the following:

> The decision to transfer their membership interest was at the sole discretion and control of each of the Parties. Each of the Parties' decisions was based on a variety of factors, including future market conditions, currency exchange rates, the availability of alternative investments, each of the Parties' financial situation.

Please explain completely and accurately all non-tax business reasons that the partners of MURFAM Farms, LLC, PSM [sic], LLC, and Murphy Pork Partners had for transferring their partnership interest to the MURFAM, Inc., PSM, Inc., and Murphy Pork, Inc. respectively.

140. **Please explain completely and accurately all non-tax business reasons that the partners of Murphy Pork Partners had for transferring their partnership interests to Murphy Pork, Inc.**

INTERROGATORY NO. 43: For each person listed in your response to Interrogatory 39, please provide the information listed below for every communication, oral or otherwise, by each individual participant (or their advisors) with such persons:

- the date on which the communication was made;
- the means of communication (e.g., in person, by phone, by email, by fax), and if in person, the place where the communication was made;
- the person who made the communication;
- the person to whom the communication was made;
- the person who heard or received any portion of the communication; if different, or in addition to those individuals to whom the communication was made;
- the duration of the communication;
- the nature and content of the communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;
- the nature, content, and person making any response, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;
- and a description of any document memorializing the communication.

Please organize this information in a table sorted chronologically by the date on which the communication was made.

**141. For each person listed in your response to Interrogatory 39, please provide the [requested] information listed below for every communication, oral or otherwise, by each Individual Participant (or their advisors) with such persons.**

**142. Please provide a description of any document memorializing the communication.**

INTERROGATORY NO. 44: Please explain where, on the tax returns of Plaintiffs, the Additional Participants and/or the Individual Participants, fees regarding the Transactions for Ernst & Young are taken into account.

**143. Please explain where, on the tax returns of Murphy Pork Partners, LLC, the Additional Participants and/or the Individual Participants, fees regarding the Transactions for Ernst & Young are taken into account.**

INTERROGATORY NO. 45: Please explain where, on the tax returns of Plaintiffs, the Additional Participants and/or the Individual Participants, fees regarding the Transactions for Proskauer Rose are taken into account.

**144. Please explain where, on the tax returns of Murphy Pork Partners, LLC, the Additional Participants and/or the Individual Participants, fees regarding the Transactions for Proskauer Rose are taken into account.**

INTERROGATORY NO. 46: Identify each person who participated in answering any of these Interrogatories on your behalf and for each such person, specify which interrogatories he/she participated in answering.

**145. Identify each person who participated in answering any of these Interrogatories on your behalf and for each such person, specify which interrogatories he/she participated in answering.**

INTERROGATORY NO. 47: The letter from Ernst & Young addressed to and signed by Wendell H. Murphy, bates stamped DOJ 040260, dated February 4, 2000, which is attached as Exhibit B, states the following:

> The client will not hold Ernst & Young LLP or all successors and assigns responsible for any penalties assessed by the Internal Revenue Service due to entering into the COBRA strategy. However, Ernst & Young LLP will be held responsible for any preparer penalties assessed by the IRS due to the strategy.

Please explain who requested that any or all of the Individual Participants sign such a letter.

**146. Please explain who requested that any or all of the Individual Participants sign such a letter.**

INTERROGATORY NO. 48: Did all of the Individual Participants sign such a letter as described in Interrogatory 47. If not, why not?

**147. Did all of the Individual Participants sign such a letter as described in Interrogatory 47. If not, why not?**

INTERROGATORY NO. 49: Why did Ernst & Young say that the Individual Participants should sign such a letter as described in Interrogatory 47?

**148. Why did Ernst & Young say that the Individual Participants should sign such a letter as described in Interrogatory 47?**

INTERROGATORY NO. 50: Did Ernst & Young tell any of the Individual Participants that Ernst & Young would not proceed with the Transactions unless the Individual Participants signed such a letter as described in Interrogatory 47?

**149. Did Ernst & Young tell any of the Individual Participants that Ernst & Young would not proceed with the Transactions unless the Individual Participants signed such a letter as described in Interrogatory 47?**

INTERROGATORY NO. 51: Did any of the Individual Participants express any reservations about signing such a letter as described in Interrogatory No. 47?

**150. Did any of the Individual Participants express any reservations about signing such a letter as described in Interrogatory No. 47?**

INTERROGATORY NO. 52: The stock ownership disclosed on Murphy Pork, Inc.'s Consent of Directors form and the Form 2553 differs from the stock ownership shown on the Shareholder Summaries and Schedule K-1's of Murphy Pork, Inc. *See* Exhibit A. Please provide a detailed explanation of how the initial equal ownership of the stock of the corporation became the disproportionate ownership shown on and with the corporation's Year 2000 Form 1120S.

**151. Please provide a detailed explanation of how the initial equal ownership of the stock of the Murphy Pork Inc. became the disproportionate ownership shown on and with the corporation's Year 2000 Form 1120S.**

INTERROGATORY NO. 53: The stock ownership disclosed on PSM, Inc.'s Consent of Directors form and the Form 2553 differs from the stock ownership shown on the Shareholder Summaries and Schedule K-1's of PSM, Inc. *See* Exhibit B. Please provide a detailed explanation of how the initial equal ownership of the stock of the corporation became the disproportionate ownership shown on and with the corporation's Year 2000 Form 1120S.

**NOT APPLICABLE**

INTERROGATORY NO. 54: The ownership disclosed on MURFAM, Inc.'s Consent of Directors form and the Form 2553 differs from the stock ownership shown on the Shareholder

Summaries and Schedule K-1's of MURFAM, Inc. *See* Exhibit C. Please provide a detailed explanation of how the initial equal ownership of the stock of the corporation became the disproportionate ownership shown on and with the corporation's Year 2000 Form 1120S.

**NOT APPLICABLE**

INTERROGATORY NO. 55: For PSM Farms, LLC, the Limited Liability Agreement listed the individual owners of the single-member LLCs, and not the LLCs themselves, as the equal members. *See* Exhibit D. However, on the Partner Summaries and Schedule K-1s included with the Form 1065, the single-member LLCs, and not their individual owners, were listed as the partners. *See* Exhibit E. Why do the ownership percentages disclosed on the Form 1065 differ substantially from the equal ownership percentages specified in the LLC Agreement?

**NOT APPLICABLE**

INTERROGATORY NO. 56: Please provide a detailed explanation of how the ownership of PSM Farms, LLC, was transferred or otherwise conveyed from the individuals to their respective LLCs.

**NOT APPLICABLE**

INTERROGATORY NO. 57: Please explain why the single-member LLCs, and not their individual owners, were listed as the partners/members of PSM Farms, LLC on Form 1065.

**NOT APPLICABLE**

INTERROGATORY NO. 58: For Murphy Pork Partners, LLC, the Limited Liability Agreement listed the individual owners of the single-member LLCs, and not the LLCs themselves, as the equal members. *See* Exhibit F. However, on the Partner Summaries and Schedule K-1s included with the Forms 1065, the single-member LLCs, and not their individual owners, were listed as

the partners. *See* Exhibit G. Why do the ownership percentages disclosed on the Form 1065 differ substantially from the equal ownership percentages specified in the LLC Agreement?

**152. Why do the ownership percentages disclosed on the Form 1065 for Murphy Pork Partners differ substantially from the equal ownership percentages specified in the LLC Agreement?**

INTERROGATORY NO. 59: Please provide a detailed explanation of how the ownership of Murphy Pork Partners, LLC, was transferred or otherwise conveyed from the individuals to their respective LLCs.

**153. Please provide a detailed explanation of how the ownership of Murphy Pork Partners, LLC, was transferred or otherwise conveyed from the individuals to their respective LLCs.**

INTERROGATORY NO. 60: Please explain why the single-member LLCs, and not their individual owners, were listed as the partners/members on Murphy Pork Partners, LLC and Form 1065.

**154. Please explain why the single-member LLCs, and not their individual owners, were listed as the partners/members on Murphy Pork Partners, LLC and Form 1065.**

INTERROGATORY NO. 61: For MURFAM Farms, LLC, the Limited Liability Agreement listed the individual owners of the single-member LLCs, and not the LLCs themselves, as the equal members. *See* Exhibit H. However, on the Partner Summaries and Schedule K-1s included with the Form 1065, the single-member LLCs, and not their individual owners, were listed as the partners. *See* Exhibit I. Why do the ownership percentages disclosed on the Form 1065 differ substantially from the equal ownership percentages specified in the LLC Agreement?

**NOT APPLICABLE**

INTERROGATORY NO. 62: Please provide a detailed explanation of how the ownership of MURFAM Farms, LLC, was transferred or otherwise conveyed from the individuals to their respective LLCs.

**NOT APPLICABLE**

INTERROGATORY NO. 63: Please explain why the single-member LLCs, and not their individual owners, were listed as the partners/members of MURFAM Farms, LLC on Form 1065.

**NOT APPLICABLE**

INTERROGATORY NO. 64: Please explain why, although explicitly electing to be disregarded entities, each of the single-member LLCs filed a Form SS-4 despite the fact that the instructions for Form SS-4 state that "[a] single-member domestic LLC that accepts the default classification [i.e., to be classified as a disregarded entity] does not need an EIN and generally should not file Form SS-4. Generally, the LLC should use the name and the EIN of its owner for all federal tax purposes."

**155. Please explain why, although explicitly electing to be disregarded entities, each of the single-member LLCs filed a Form SS-4 despite the fact that the instructions for Form SS-4 state that "[a] single-member domestic LLC that accepts the default classification [i.e., to be classified as a disregarded entity] does not need an EIN and generally should not file Form SS-4. Generally, the LLC should use the name and the EIN of its owner for all federal tax purposes."**

INTERROGATORY NO. 65: Please explain why the Schedule K-1s for PSM Farms, LLC, Murphy Pork Partners, LLC and MURFAM Farms, LLC, did not disclose the fact that the listed partner was a single-member LLC which was a disregarded entity for federal income tax purposes.

**156. Please explain why the Schedule K-1s for Murphy Pork Partners, LLC did not disclose the fact that the listed partner was a single-member LLC which was a disregarded entity for federal income tax purposes.**

INTERROGATORY NO. 66: For each of the Subchapter S corporations involved in these consolidated cases, please explain why the statement required by Treas. Reg. § 1.351-3(b) was not attached to the S corporations Form 1120S.

**157. Please explain why the statement required by Treas. Reg. § 1.351-3(b) was not attached to the S corporations Form 1120S for Murphy Pork, Inc.**

INTERROGATORY NO. 67: For each of the stockholders of each of the Subchapter S corporations in these consolidated cases, please explain why the statement required by Treas. Reg. § 1.351-3(a) was not attached to his or her 2000 Form 1040.

**158. For each of the stockholders of each of Murphy Pork Inc., please explain why the statement required by Treas. Reg. § 1.351-3(a) was not attached to his or her 2000 Form 1040.**

INTERROGATORY NO. 68: Please specify the date in August 2000 on which the members of PSM Farms, LLC, assigned their membership interests to PSM, Inc.

**NOT APPLICABLE**

INTERROGATORY NO. 69: Please explain why the tax year of PSM Farms, LLC, was not closed on that date, as required by IRS § 708(b)(1)(B).

**NOT APPLICABLE**

INTERROGATORY NO. 70: Please specify the date in August 2000, on which the members of Murphy Pork Partners, LLC, assigned their membership interest to Murphy Pork, Inc.

**159. Please specify the date in August 2000, on which the members of Murphy Pork Partners, LLC, assigned their membership interest to Murphy Pork, Inc.**

INTERROGATORY NO. 71: Please explain why the tax year of Murphy Pork Partners, LLC, was not closed on that date, as required by IRS § 708(b)(1)(B).

**160. Please explain why the tax year of Murphy Pork Partners, LLC, was not closed on that date, as required by IRS § 708(b)(1)(B).**

INTERROGATORY NO. 72: Please specify the date in August 2000 on which the members of MURFAM Farms, LLC, assigned their membership interests to MURFAM, Inc.

**NOT APPLICABLE**

INTERROGATORY NO. 73: Please explain why the tax year of MURFAM Farms, LLC, was not closed on that date, as required by IRS § 708(b)(1)(B).

**NOT APPLICABLE**

INTERROGATORY NO. 74: Please confirm that the fees paid to Ernst & Young and to Proskauer Rose in 2000 were capitalized to the LLC member interests of PSM Farms, LLC, Murphy Pork Partners, LLC, and MURFAM Farms, LLC, and then included in the basis of the Bonds or the Euros by the S Corporation upon the termination and dissolution of the related multi-member LLCs.

**161. Please confirm that the fees paid to Ernst & Young and to Proskauer Rose in 2000 were capitalized to the LLC member interests of Murphy Pork**

**Partners, LLC, and then included in the basis of the Euros by the S Corporation upon the termination and dissolution of the related multi-member LLCs.**

INTERROGATORY NO. 75: If the answer to Interrogatory No. 74 is yes, please explain the purpose for capitalizing these amounts, rather than deducting them as business or investment expenses on the tax returns of the payors of these various amounts.

**162. If the answer to Interrogatory No. 74 is yes, please explain the purpose for capitalizing these amounts, rather than deducting them as business or investment expenses on the tax returns of the payors of these various amounts.**

INTERROGATORY NO. 76: Please explain to whom the $22,725 in "Professional Fees" deducted on PSM, Inc.'s 2000 Form 1120S were paid and what was the nature of the services rendered for this amount.

**NOT APPLICABLE**

INTERROGATORY NO. 77: Please confirm that the $22,725 in "Professional Fees" deducted on PSM, Inc.'s 2000 Form 1120S was deducted by the individual shareholders on Part II of Schedule E of their respective 1040s.

**NOT APPLICABLE**

INTERROGATORY NO. 78: Please confirm that PSM, Inc. included the $22,725 in "Professional Fees" which it deducted on its 2000 Form 1120S in the tax basis which the S Corporation used to determine the amount of loss claimed on the sale of the bonds.

**NOT APPLICABLE**

INTERROGATORY NO. 79: Please explain to whom the $14,750 in "Professional Fees" deducted on Murphy Pork, Inc 's 2000 Form 1120S were paid and what was the nature of the services rendered for this amount.

**163. Please explain to whom the $14,750 in "Professional Fees" deducted on Murphy Pork, Inc.'s 2000 Form 1120S were paid and what was the nature of the services rendered for this amount.**

INTERROGATORY NO. 80: Please confirm that the $14,750 in "Professional Fees" deducted on Murphy Pork, Inc.'s 2000 Form 1120S was deducted by the individual shareholders on Part II of Schedule E of their respective Form 1040s.

**164. Please confirm that the $14,750 in "Professional Fees" deducted on Murphy Pork, Inc.'s 2000 Form 1120S was deducted by the individual shareholders on Part II of Schedule E of their respective Form 1040s.**

INTERROGATORY NO. 81: Please confirm that Murphy Pork, Inc. included the $14,750 in "Professional Fees" which it deducted on its 200 Form 1120S in the tax basis which the S Corporation used to determine the amount of loss claimed on the sale of the Euros.

**165. Please confirm that Murphy Pork, Inc. included the $14,750 in "Professional Fees" which it deducted on its 200 Form 1120S in the tax basis which the S Corporation used to determine the amount of loss claimed on the sale of the Euros.**

INTERROGATORY NO. 82: Please explain to whom the $65,735 in "Professional Fees" deducted on MURFAM, Inc.'s 2000 Form 1120S were paid and what was the nature of the services rendered for this amount.

**NOT APPLCABLE**

INTERROGATORY NO. 83: Please confirm that the $56,735 in "Professional Fees" deducted on MURFAM, Inc.'s 2000 Form 1120S was deducted by the individual shareholders on Part II of Schedule E of their respective Form 1040s.

**NOT APPLICABLE**

INTERROGATORY NO. 84: Please confirm that MURFAM, Inc. included the $56,735 in "Professional Fees" which it deducted on its 2000 Form 1120S in the tax basis which the S Corporation used to determine the amount of loss claimed on the sale of the bonds.

**NOT APPLICABLE**

INTERROGATORY NO. 85: Please explain why the term "Cost", rather than "other basis" was used to describe the tax bases used by PSM, Inc. and MURFAM, Inc. to compute their respective capital losses on the sale of the bonds.

**NOT APPLICABLE**

INTERROGATORY NO. 86: Please explain why the explanation required by the 2000 Instructions for Schedule D (Form 1120S)(at page 3) was not attached to the respective Form 1120Ss of PSM, Inc. and MURFAM, Inc.

**NOT APPLICABLE**

INTERROGATORY NO. 87: Please explain why the amount of long-term capital loss shown on Line 12 of Schedule D of the 2000 Form 1040s filed by each of the individual stockholders of PSM, Inc. and MURFAM, Inc. was less than the amount of the long-term capital loss allocated to that stockholder by the S Corporation on that stockholder's 2000 Schedule K-1.

**NOT APPLICABLE**

INTERROGATORY NO. 88: On Line 22 of Schedule A of each of the Amended 2000 Form 1040s of the individual stockholders of PSM, Inc. and MURFAM, Inc., a deduction was claimed

for an amount that was described in a separate statement as "Partnership, S corporation and estate and trust." Please provide a detailed explanation of these deductions, including the purpose of the payments and the identity of the payees.

**NOT APPLICABLE**

INTERROGATORY NO. 89: Identify any and all disputes, including mediations or other dispute resolution (including litigation), involving or relating to COBRA, the Transactions or transactions substantially similar to the Transactions, in which the Plaintiffs, the Individual Participants and/or the Additional Participants were involved in any manner. Attached as Exhibit J is a copy of a portion of the deposition of Mr. Brewer Ezzell identifying at least one possible such involvement regarding Ernst & Young.

**166. Identify any and all disputes, including mediations or other dispute resolution (including litigation), involving or relating to COBRA or the Transactions in which Murphy Pork Partners, LLC, the Individual Participants and/or the Additional Participants were involved in any manner.**

**167. Identify any and all disputes, including mediations or other dispute resolution (including litigation), involving or relating to transactions substantially similar to the Transactions, in which Murphy Pork Partners, LLC, the Individual Participants and/or the Additional Participants were involved in any manner.**

INTERROGATORY NO. 90: Please describe how the disputes identified in Interrogatory No. 89 were resolved. Identify the parties to each dispute and their attorneys. Identify any documents relating to the resolution of any dispute.

**168. Please describe how the disputes identified in Interrogatory No. 89 were resolved. Identify the parties to each dispute and their attorneys.**

**169. Identify any documents relating to the resolution of any dispute.**

INTERROGATORY NO. 91: Please describe the tax treatment of any resolution of any dispute identified in Interrogatory No. 89, identifying each return, year and schedule reflecting the tax treatment.

**170. Please describe the tax treatment of any resolution of any dispute identified in Interrogatory No. 89.**

**171. Identify each return, year and schedule reflecting the tax treatment.**