# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Nos. 06-245T, 06-246T, and 06-247T
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

**UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT AND OPINIONS OF STUART A. SMITH**

DENNIS M. DONOHUE
Chief Senior Litigation Counsel
U.S. Department of Justice, Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

## TABLE OF CONTENTS


INTRODUCTION . . . . . 2

ARGUMENT . . . . . 2

I. Smith's Opinion That the Plaintiff Could Reasonably Rely Upon the Proskauer Rose Opinion in Preparing Their Tax Returns Is a Legal Conclusion . . . . . 2

ARGUMENT . . . . . 9

II. Smith's Report and Accompanying Testimony Should be Excluded Because Smith Improperly Attempts to Present Legal Analysis and Legal Opinions to the Court . . . . . 9

A. Opinions Regarding the Law Are Inadmissable . . . . . 9

B. Smith's Opinion That Plaintiffs Acted "Reasonably" Is Itself an Improper Legal Opinion . . . . . 14

C. Smith's Report Should Be Excluded Because He Is Opining on the Wrong Law . . . . . 17

D. Smith's Opinion Testimony Will Not Assist the Court . . . . . 19

CONCLUSION . . . . . 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abbott Laboratories v. Brennan*, 952 F.2d 1346 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . 10

*Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . 11

*Aguilar v. International Longshoremen's Union Local #10,966*, F.2d 443 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Askanase v. Fatjo*, 130 F.3d 657 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Casper v. SMG*, 389 F. Supp. 2d at 622 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Casper v. SMG,389*, F. Supp. 2d 618 (D. N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cemco Investors L.L.C. v United States*, __ F.3d __, 2008 WL. 321270 (7th Cir. 2/07/08) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) . . . . . . . . . . . . . . 9

*Endress + Hauser, Inc. v. Hawk Measurement System Pty. Ltd.*, 122 F.3d 1040 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hart v. United States*, 291 F. Supp. 2d 635 (N.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . 4

*In re Initial Public Offering Sec. Litigation*, 174 F. Supp. 2d 61 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Klamath Strategic Investment Fund v. United States*, 472 F. Supp. 2d 885 (E.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 14

*Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . 10

*Loeb v. Hammond*, 407 F.2d 779 (7th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122 (D. Conn. 2004), *aff'd* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977) . . . . . . . . . . . . . . . 10, 11

*Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537 (11th Cir. 1990) . . . . . . 11

*Moore v. Ashland Chemical Inc.*, 151 F.3d 269 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . 10

*Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir. 1997) . . . . . . . . . . . . . . . . 10, 11

*In re Northwest Airlines Corp. Antitrust Litigation*, 197 F. Supp. 2d 908 (E.D. Mich. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 11

*Pelletier v. Main Street Textiles, LP*, 470 F.3d 48 (1st Cir. 2006) . . . . . . . . . . . . . . . . 10

*Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . 11, 16

*Estate of Sowell v. United States*, 198 F.3d 169 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . 15

*Sparton Corp. v. United States*, 77 Fed. Cl. 1 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*St. Hilaire v. City of Laconia*, 71 F.3d 20 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 16

*The Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037 (D.Ariz. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Curtis*, 782 F.2d 593 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Leo*, 941 F.2d 181 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Prigmore*, 243 F.3d 1 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Vreeken*, 803 F.2d 1085 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . 11

*Ward v. Westland Plastics, Inc.*, 651 F.2d 1266 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . 11

**STATE CASES**

*Jade Trading, L.L.C. v. United States*, 2007 WL. 4553043 (Fed. Cl. December 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## FEDERAL STATUTES

1 C.F.R. § 10.0 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15, 19

I.R.C. § 6664(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Treas. Reg. § 1.6664-4(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Treas. Reg. § 301.6221-1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## MISCELLANEOUS

*McCormick on Evidence*, § 12 at 26-27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Nos. 06-245T, 06-246T, and 06-247T
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

## APPENDIX

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| 1 | Expert Report of Stuart A. Smith dated May 30, 2007 | 1 - 25 |
| 2 | Deposition of Stuart A. Smith, dated August 30, 2007 | 26 - 76 |
| 3A | Opinion letters dated December 29, 2000 from Proskauer Rose LLP to the following entities: (1) WMC, LLC, WHM Ventures, LLC, WHMJ, LLC, JMN Ventures, LLC, and ANB, LLC; (2) HDM, LLC, WHM Ventures, LLC, and WHMJ, LLC, LLC; and (3) HDM, LLC, MDM Ventures, LLC, and SKM Ventures, LLC. | 77 - 140 |

| | | |
|---|---|---|
| 3B | Opinion letters dated December 29, 2000 from Proskauer Rose LLP to the following entities: (1) WMC, LLC, WHM Ventures, LLC, WHMJ, LLC, JMN Ventures, LLC, and ANB, LLC; (2) HDM, LLC, WHM Ventures, LLC, and WHMJ, LLC, LLC; and (3) HDM, LLC, MDM Ventures, LLC, and SKM Ventures, LLC. | 141 - 203 |
| 3C | Opinion letters dated December 29, 2000 from Proskauer Rose LLP to the following entities: (1) WMC, LLC, WHM Ventures, LLC, WHMJ, LLC, JMN Ventures, LLC, and ANB, LLC; (2) HDM, LLC, WHM Ventures, LLC, and WHMJ, LLC, LLC; and (3) HDM, LLC, MDM Ventures, LLC, and SKM Ventures, LLC. | 204 - 266 |

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Nos. 06-245T, 06-246T, and 06-247T
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

**UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT AND OPINIONS OF STUART A. SMITH**

Plaintiffs seek to rely on improper expert witness testimony from a lawyer, Stuart A. Smith (Smith), to try to support its case. Smith offers nothing more than legal analysis and legal opinion. Because it is black-letter law that expert testimony on the law is inadmissible at trial, the United States moves this Court to enter an order precluding Plaintiffs from introducing at trial the expert report and the testimony of Smith.

## INTRODUCTION

On June 1, 2007, the parties exchanged expert witness reports.[1] The Plaintiffs submitted the report of Stuart A. Smith, an attorney. Upon review of the expert report prepared by Smith, it is clear that he is attempting to provide legal analysis and a legal opinion to the Court. After the submission of Smith's report, the United States deposed Smith. During this deposition, the fact that Smith is improperly opining on the law was further illuminated. Smith's expert witness testimony is improper and should be excluded.

## ARGUMENT

### I. Smith's Opinion That the Plaintiff Could Reasonably Rely Upon the Proskauer Rose Opinion in Preparing Their Tax Returns Is a Legal Conclusion.

For over forty years, Smith has been, and continues today to be, a practicing lawyer.[2] According to Smith's report, he was asked "to address the question whether the opinion letters [of Proskauer Rose LLP[3]] are of the quality and character upon which taxpayers such as Woods and McCombs could reasonably rely in preparing their tax returns."[4] Not surprisingly, Smith

---

[1]The parties also exchanged rebuttal expert witness reports. Smith did not issue a rebuttal expert witness report.

[2]*See* Expert Report of Stuart A. Smith dated May 30, 2007, attached as Gov. Ex. 1 (hereinafter the "Smith Report"), Appendix A. Smith boldly states that he considers his "field of expertise to be taxation" and "federal tax law." *See* Deposition of Stuart A. Smith, dated August 30, 2007, attached as Gov. Ex. 2, p. 9, ll.3-4, 23-25 (hereinafter "Smith Deposition").

[3]Proskauer Rose LLP will be referred to as "Proskauer Rose."

[4]Smith Report, Gov. Ex. 1, p. 1. During his deposition, Smith expanded on his task: "*My mission was as a tax lawyer* who's seen lots of these opinions, who understand the standards that the Treasury – or that profession imposes and the more elaborate standards that the Treasury has in Circular 230 was to consider whether these opinions were objectively reasonable and were of the character and quality that the taxpayer could rely on." Smith Deposition, Gov. Ex. 2, p. 34, l.25 – p. 35, l.5 (emphasis added).

concludes: "I am of the opinion that [the opinion letters of Proskauer Rose] are of the character and quality upon which [the Plaintiffs[5]] could reasonably rely in preparing their tax returns on the basis of the conclusions reached in the letters."[6] In arriving at his opinion, Smith draws upon his "extensive experience as a tax lawyer for more than 40 years during which I have addressed . . . the tax consequences of comparable transactions and the reliability of written tax opinions for those transactions."[7]

In setting up his conclusion, Smith begins his report with a recitation of various courts' views on the reasonableness of taxpayers' reliance on professional advice and legal opinions. In fact, Smith admits in his deposition that, at this point in his report, he is discussing what he believed to be the applicable case law to support his point.[8]

Smith then opines on "what the appropriate standards are for the issuance of an opinion that the taxpayer can rely on."[9] His conclusion that the Plaintiffs in this case could reasonably rely on the Proskauer Opinions is fleshed out a bit more when he states, on page 7 of his report,

---

[5]As Smith notes in his report, he opines on three opinion letters issued by Proskauer Rose to (1) HDM, LLC; MDM Ventures, LLC; and SKM Ventures, LLC; (2) WMC, LLC; WHM Ventures, LLC; WHMJ Ventures, LLC; JMN Ventures, LLC; and ANB, LLC; and (3) HDM, LLC; WHM Ventures, LLC, and WHMJ, LLC. *See* Gov. Ex. 1, p. 1. These opinion letters analyzed the Federal tax consequences of certain partnership transactions engaged in by Wendy M. Crumpler, Wendell H. Murphy, Wendell H, Murphy, Jr., Joyce Murphy Norman, Angela N. Brown, Harry D. Murphy, Marc D. Murphy, and Stratton K. Murphy. *Id.* For convenience, these entities and individuals will be referred to collectively as the "Plaintiffs."

[6]Smith Report, Gov. Ex.1, p. 2. The Proskauer Rose opinion letters are attached as Government Exhibit 3.

[7]Smith Report, Gov. Ex.1, p. 3.

[8]Smith Deposition, Gov. Ex.2, p.105, l.6-10.

[9]Smith Deposition, Gov. Ex.2, p.119, l.2-4.

as follows:

> Because the opinions in these cases comply both with the standards common to the profession and also with the administrative standards established by Treasury Circular 230, those opinions unquestionably constitute opinions of the type and character upon which the plaintiffs could reasonably rely.

At his deposition, Smith reaffirms his belief that Treasury Circular 230[10] has relevance to the issue as to whether the Plaintiffs could reasonably rely on the Proskauer Rose opinion letters"[11] As will be discussed *infra*, Smith here is not only offering an opinion on a pure question of law – what law applies in determining whether Plaintiffs can reasonably rely on legal advice as a defense to the application of accuracy-related penalties – but in fact happens to be opining on the wrong law. That is, Treasury Circular 230 has absolutely no applicability to any issue in this case.

In his report, Smith nevertheless details the five elements that he states must be met to satisfy §10.33 of Circular 230,[12] and then discusses whether the Proskauer Rose opinion letters satisfy each of these separate requirements. To determine whether these requirements were

---

[10]Treasury Circular 230, set forth at 31 C.F.R. Part 10, is entitled "Practice Before the Internal Revenue Service" and contains rules regarding who may represent taxpayers in administrative proceedings before the IRS. *See* 1 C.F.R. § 10.0.; *Hart v. United States*, 291 F. Supp. 2d 635, 643 (N.D. Ohio 2003).

[11]Nowhere in his report does he define what he means by "standards common to the profession." At his deposition, Smith states that what he meant by the reference to "standards common to the profession" was an ABA formal opinion, which he thought was No. 346. Smith Deposition, Gov. Ex. 2, p.119, l.8-10.

[12]Section 10.33 (a) of Circular 230, set forth in Appendix B of Smith's report, is entitled "Tax Shelter Opinions," and details a list of requirements that practitioners must comply with in issuing certain types of tax shelter opinions. In his report, Smith states that this provision did not strictly apply to the Proskauer Rose legal opinions but concludes that because these opinions nevertheless did comply with these administrative standards (as well as what he calls "standards common to the profession"), they "unquestionably constitute opinions of the type and character upon the plaintiffs could reasonably reply." Smith Report, Gov. Ex 1, p. 8.

satisfied, Smith states that he examined "all of the statutory, judicial, and administrative authorities cited in my Report, the opinion letters and the authorities cited therein," the representations of the participants to the transaction, and then drew upon "my extensive experience as a tax lawyer for more than 40 years."[13]

In concluding that each of these five requirements had been met, Smith relies almost exclusively on legal analysis. Perhaps the most glaring display of legal analysis is the portion of Smith's report beginning on page 8 in which Smith discusses the application of the law to facts under Treasury Circular 230. Smith provides an extensive legal analysis of Section 752, including the recently-decided *Klamath* decision.[14] As demonstrated below, this portion of Smith's report contains the type of legal analysis one might expect to find in a brief submitted to a court rather than the report of a taxpayer's expert.

In opining on the "objective reasonableness" of the conclusion in the Proskauer Rose Wood opinion letters, Smith declares that this conclusion is "objectively reasonable because *it is squarely supported by the language of the applicable statutory provision that were then extant.*[15] Smith then proclaims that the "central *tax issue* in these cases concerns the treatment of 'contingent' liabilities in determining the taxpayers' 'basis' in their ownership of their partnership interests under Section 752 of the Code."[16] Finally, Smith concludes that

The determination of the opinions that the taxpayers' obligations under the Short

---

[13]Smith Report, Gov. Ex. 1, p.3.

[14]*Klamath Strategic Investment Fund v. United States*, 472 F.Supp.2d 885 (E.D. Tex. 2007) (*appeal pending*, Fifth Circuit Court of Appeals).

[15]Smith Report, Gov. Ex. 1, p.9 (emphasis added).

[16]*Id.* (emphasis added).

> Option is only a 'contingent' liability, and that under the case law such a 'contingent' liability does not reduce the partner's basis in this partnership interest, represented an objectively reasonable conclusion at the time the opinions were issued.[17]

In this one paragraph alone, Smith (i) identified "the central tax issue" in this case, (ii) interpreted the language of the "applicable statutory provisions," and (iii) declared that the legal conclusion of the Proskauer Rose opinion letters regarding the treatment of "contingent" liabilities was "objectively reasonable" because it was "squarely supported" by the applicable statutory provisions.

Smith then embarks on a discussion of the IRS' legal position regarding "contingent liabilities." According to Smith,

> the contrary conclusion of the Service lacks an objective appearance of reasonableness because it appears to be based on a proposition that directly conflicts with its past position. Specifically, the Service took the opposite position in several cases that it won prior to 2000 that a 'contingent' liability is not to be taken into account in partnership basis calculations when doing so would have had the effect of decreasing the taxpayer's taxes; here, however, the Service now claims that a 'contingent liability is to be taken into account in basis calculations when doing so would have the effect of increasing the taxpayer's tax liability.[18]

Without commenting on the obvious fallacies in Smith's conclusions, the above passage represents nothing more than impermissible legal analysis of the Service's perceived position regarding contingent liabilities.

Smith concludes this portion of his "brief" with an extensive analysis of the recently decided decision in *Klamath Strategic Investment Fund v. United States*. Smith attempts to lay

---

[17] *Id.*

[18] *Id.* (emphasis in original).

the groundwork for his discussion of *Klamath* by pointedly noting that he was "fully familiar with the general type of transaction at issue in this case because I served as an expert witness for the Plaintiffs" in *Klamath*.[19] Smith then notes that *Klamath* involved a "comparable" transaction (despite the fact that Smith does not ever explain the transaction at issue in *Klamath*) and that the court in *Klamath* "accepted the conclusions" he reached in relieving the taxpayers of penalties.[20]

In discussing *Klamath*, Smith states that the "legal analysis of the Klamath court therefore provides solid support for the 'more likely than not' conclusions of the Proskauer Rose opinions that were issued to the plaintiffs in these cases."[21] In *interpreting* the *Klamath* opinion as proving support for the Proskauer Rose opinion letters, Smith impermissibly places himself squarely in the shoes of this Court in rendering a legal opinion.

Any doubts as to whether Smith's report represents nothing more than legal analysis are laid to rest when Smith analyzes the holdings in *Klamath*. For example, Smith states that the *Klamath* court "*held* that the Service's retroactive Temporary Regulation, which sought to change the law, was ineffective."[22] Next, Smith interprets the grounds upon which the court in

[19] *Id.* p.3

[20] *Id.* p. 4.

[21] *Id.* p. 11.

[22] *Id.* (emphasis added). But see the recently decided case of *Cemco Investors L.L.C. v United States*, __ F3d __, 2008 WL 321270 (7th Cir. 2/07/08) where the Seventh Circuit flatly disagreed with the conclusion of *Klamath*, holding that the language of Treasury Regulation §1.752-6 was explicit and clearly applied retroactively to require a liability arising from an offsetting option to be subtracted from the basis of the corresponding partnership asset. As the court stated, "Thus if Cemco's basis in the euros comes from the premium for one option, then the premium for the offsetting option must be subtracted." *Id* at *3.

*Klamath* rejected the civil penalties sought by the IRS.[23] Finally, Smith concludes that the court in *Klamath* ruled that the term "liability" under Section 752 does not include a contingent liability and the retroactivity of Treasury Regulation § 1.752-6 was ineffective as to the taxpayers in Klamath.[24] For good measure, Smith interprets the court's holding as to the deductibility of certain expenses (the "Court also held that the taxpayers could deduct the operational and interest expenses . . . *on the ground that the transactions had economic substance apart from tax benefits*).[25]

As these passages clearly demonstrate, Smith is merely validating his own self-serving legal analysis of the *Klamath* decision. This Court is more than capable of (i) deciding whether the transaction in *Klamath* is "comparable," and (ii) interpreting the *Klamath* decision and its applicability to this case. To the extent this Court needs assistance in these endeavors, Plaintiffs' counsel can surely provide this assistance through their trial briefs. Smith's "expert" report is an inappropriate vehicle for the Plaintiffs to advance their legal theories.

Not content with his analyses of (i) the proper standards to apply in this case, (ii) Section 752 of the Code, and (iii) the *Klamath* decision, Smith states, in footnote 5 that

> "[t]he bases in the taxpayers' Partnership interests equal the cost of the Long Option without adjustment for the obligations under the Short Option because the contingent liability under the Short Option is not a liability within the meaning of Section 752."[26]

Curiously, Smith does not cite *any* legal authority for this proposition; rather, *he merely recites*

---

[23]*Id.*

[24]*Id.* p. 12.

[25]*Id.* (emphasis added).

[26]*Id.* p. 14 n.5.

*his interpretation of Section 752's treatment of contingent liabilities*. In any event, the treatment of contingent liabilities under Section 752 is one of the ultimate issues in this case, and Smith's interpretation and opinion regarding this ultimate issue is improper.

**ARGUMENT**

**II. Smith's Report and Accompanying Testimony Should be Excluded Because Smith Improperly Attempts to Present Legal Analysis and Legal Opinions to the Court.**

**A. Opinions Regarding the Law Are Inadmissable**

The Federal Rules of Evidence limit admissibility of expert testimony to situations where the expert's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue."[27] If a witness has specialized knowledge that will be *helpful to the trier of fact*, and he qualifies as an expert, then the witness may testify to his specialized knowledge "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[28] Thus, "under the Rules the trial judge must ensure that any and all scientific testimony is or evidence admitted is not only relevant but reliable."[29] The trial judge's "basic gatekeeping obligation," however, applies to "all expert testimony," and not only to scientific testimony.[30] The burden to show that an expert witness should not be excluded is on the party offering the expert.[31]

---

[27]Fed. R. Evid. 702.

[28]*Id.*

[29]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

[30]*Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

[31]*See, e.g., Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

This Court has "broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury."[32] In construing this rule, the Court of Appeals for the Sixth Circuit succinctly described the proper scope of expert testimony:

> Experts are supposed to interpret and analyze factual evidence. They do not testify about the law because the judge's special knowledge is presumed to be sufficient . . .[33]

Here, the "expert legal opinions" of Smith clearly impinge on the role of this Court, and should be excluded.

As previously noted, it is black-letter law that legal "experts" may not usurp the court's role by providing legal instruction.[34] As one court succinctly noted, "[t]he principle that legal opinion evidence concerning the law is inadmissible is so well-established that it is often deemed a basis premise or assumption of evidence law–a kind of axiomatic principle."[35] Testimony that

---

[32]*Pelletier v. Main Street Textiles*, LP 470 F.3d 48, 54 - 55 (1st Cir. 2006). *See also Abbott Laboratories v. Brennan* 952 F.2d 1346, 1352 (Fed. Cir. 1991) (trial court has broad discretion to admit or exclude expert testimony).

[33]*United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986).

[34]*See, e.g.*, *Askanase v. Fatjo*, 130 F.3d 657, 672-673 (5th Cir. 1997) (lawyer not allowed to testify about whether, in his opinion, officers and directors breached their fiduciary duties – the Fifth Circuit court stated that parties may not use legal experts to "tell the trier of fact what to decide."); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (giving general explanation of "black-letter" legal expert exclusion); *United States v. Prigmore*, 243 F.3d 1, 18 n.3 (1st Cir. 2001) ("[e]xpert testimony proffered solely to establish the meaning of a law is presumptively improper"); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-510 (2d Cir. 1977) (court excludes opinion on interpretation and legal effect of sales contract).

[35]*The Pinal Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1042 (D.Ariz. 2005)(internal quotation marks omitted)(holding that a law professor's attempt to offer expert testimony on law regarding piercing the corporate veil in Maine constituted inadmissible legal opinion and was excluded since testimony merely discussed and applied the law). *See also Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("[e]ach courtroom comes equipped with a 'legal expert,' called a judge"). Thus, courts have uniformly prohibited testimony on legal issues. *See, e.g.*, *Nieves-Villanueva*, 133 F.3d at

consists of legal conclusions – the application of law to facts – is inadmissible because it does not assist the trier of fact, but, instead, impermissibly invades the role of the court.[36]

The case of *Casper v. SMG*[37] is particularly instructive. In *Casper,* an antitrust case, plaintiff sought to have a law professor testify as an expert witness. Just as Smith does here, the expert in *Casper* "relies on case law and statutes, applying them to the contemporaneous documentary record and oral testimony ... to answer legal questions."[38] The court in *Casper* held that the proposed testimony, whether it was characterized as addressing an issue of fact or law, was inadmissible. The court concluded by saying that plaintiff "is free when the time comes to make such arguments and offer such conclusions in legal memoranda, [but] he may not do so through the expert testimony of a law professor."[39]

---

100 (1st Cir. 1997); *Marx & Co., Inc.*, 550 F.2d at 509-10 (2d Cir 1977); *United States v. Leo*, 941 F.2d 181, 196 (3rd Cir. 1991); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 365-68 (4th Cir. 1986); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *Curtis*, 782 F.2d at 599 (6th Cir. 1986); *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995); *Ward v. Westland Plastics, Inc*., 651 F.2d 1266, 1270 (9th Cir. 1980); *United States v. Vreeken*, 803 F.2d 1085, 1091 (10th Cir. 1986); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *Burkhart*, 112 F.3d at 1213 (D.C. Cir.).

[36]*See, e.g., Burkhart*, 112 F.3d at 1212; *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant"); *Marx*, 550 F.2d at 510 (2d Cir. 1977) ("[S]uch testimony 'amounts to no more than an expression of the [witness's] general belief as to how the case should be decided" (quoting *McCormick on Evidence*, § 12 at 26-27)); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what result to reach.... A witness also may not testify to the legal implications of conduct").

[37]389 F.Supp.2d 618 (D. N.J. 2005).

[38]*Id.* at 621.

[39]*Id*. at 622.

Testimony "which articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case."[40] As stated by the Court in *Specht*

> A witness cannot be allowed to give an opinion on a question of law. . . . In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge. . . . To allow anyone other than the judge to state the law would violate the basic concept.[41]

Furthermore, the Federal Circuit has further cautioned judges to be wary of attorneys parading as "experts" on the ultimate issue before the court:

> this court has on numerous occasions noted the impropriety of patent attorneys giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide.[42]

In *Sparton Corp. v. United States*,[43] the defendants sought to exclude the plaintiff's expert testimony in this patent infringement case on the grounds that the plaintiff's expert was merely providing legal arguments in the guise of expert testimony. The defendant argued that plaintiff's expert interpreted various legal doctrines, opined on whether the Navy properly exercised discretion not to include certain terms in a contract, and impermissibly applied the law to the facts. The plaintiff countered that their expert was being offered as a "government contract expert" and that testimony on an ultimate issue was not per se inadmissible.

---

[40]*Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

[41]*Id. at* 807 (citation omitted).

[42]*Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997).

[43]77 Fed. Cl. 1 (2007).

In excluding the plaintiff's expert testimony, this Court recites that "[i]n general, federal courts have found expert testimony on issues of law, either giving a legal conclusion or discussing the legal implications evidence, to be inadmissible."[44] The Court notes that, while the Federal Rules of Evidence were amended so as not to preclude expert testimony on the ultimate issue, the "amendment was not intended to allow an expert to advise the court on what outcome to reach."[45] Ultimately, this Court concludes that the expert's "testimony consists of his legal conclusions based on the evidence of record" and that his testimony serves the "sole purpose of advising the Court on how to interpret the ASPR and the contract provisions and whether to apply the *Christian* doctrine. *Such legal conclusions are the province of the Court*."[46] Against this backdrop of well-established and universally[47] applied legal precedent, the soundest path for the Court to follow is to exclude Smith's legal opinions from the trial.

As noted above, the analysis in Smith's report reads more like a legal brief than independent expert analysis on an issue of fact that could possibly assist this Court, as required by Rule 702 of the Federal Rules of Evidence. In their legal briefs, Plaintiffs are free to advocate whether the legal opinions issued to them are based on a correct interpretation of outstanding law, including the proper interpretation of the Treasury Regulations under Section 752, and the

---

[44]*Id.* at 7 (citations omitted).

[45]*Id.* at 8 (citations omitted).

[46]*Id.* at 9 (emphasis added). "Expert testimony is an improper mechanism for offering legal arguments to the Court. Plaintiff's counsel can make each of the arguments proffered by Professor Nash during the trial. It would be unfair to Defendant for the Court to award Plaintiff's legal arguments the elevated stamp of 'expert.'" *Id.*

[47]"Every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001)(citing numerous cases).

application of the law to the facts at issue. Smith's reports and testimony are not the vehicles through which these arguments can be made. Similarly, Plaintiff may retain and use Smith to assist in preparing the legal analysis and conclusions for their trial and post trial papers in this case. But it would be error to permit Plaintiffs' expert to testify and opine on the law at the trial of this case.[48]

Summed up, Smith's report represents nothing more than an inappropriate attempt to bolster the opinions of Proskauer Rose. Smith is improperly attempting to usurp the role of the Court in this case by continuously citing and analyzing law. As Smith indicates in his report and acknowledges in his deposition, all of the skills that allow him to give an opinion in this case were skills that he acquired solely in connection with the practice of law. That acknowledgment is not surprising given the fact that, in his opinion, Smith analyzes the Internal Revenue Code, Treasury Regulations, and case law. The Court should exclude Smith's testimony on the law since it will not assist the trier of fact. *See* Fed.R.Evid. 702.

### B. Smith's Opinion That Plaintiffs Acted "Reasonably" Is Itself an Improper Legal Opinion.

As set forth above, it is Smith's opinion that the Proskauer Rose opinion letters are of the character and quality upon which Plaintiffs could reasonably rely in preparing their tax returns.

---

[48]It is anticipated that Plaintiffs will heavily emphasize that Smith's testimony on the issue of "reasonable reliance" was admitted and even relied upon by the court in *Klamath Strategic Investment Fund v. United States*, 472 F.Supp.2d 885 (E.D. Tex. 2007) (*appeal pending*, Fifth Circuit Court of Appeals). But the United States did not challenge Smith's report or the admissibility of his testimony in *Klamath.* Thus, the court there had no occasion to rule on this admissibility of this evidence. In any event, the fact that the court in *Klamath* may have relied on Smith's report has absolutely no bearing on this matter. This rule is succinctly stated by one court: "[p]lainly, however, *the admissibility or exclusion of . . . expert testimony in other cases has no bearing whatsoever on the court's inquiry in the present case.*" *In re Northwest Airlines Corp. Antitrust Litig.*, 197 F.Supp.2d 908, 914 n.6 (E.D. Mich. 2002) (emphasis added).

Besides the general principles analyzed above regarding the exclusion of experts who opine on the law, which clearly apply to Smith, Smith's report is improper for another reason: he may not testify as to whether Plaintiffs acted reasonably.

In *Estate of Sowell v. United States,*[49] the Fifth Circuit held that the district court did not abuse its discretion in precluding an estate's expert from testifying in response to hypothetical questions about whether the fiduciary acted with "reasonable cause" in late payment of estate taxes.[50] The estate's expert sought to testify about what a hypothetical executor, faced with the identical facts as the estate in the case, would do if "acting reasonably."[51] The Fifth Circuit noted that "[w]hether the Estate was 'acting reasonably' was, for all practical purposes, the only issue for the jury" to decide. [52] Accordingly, the court ruled that the district court did not abuse its discretion in excluding the taxpayer's expert on this issue.[53]

In determining whether certain police officers acted reasonably in a suit in which the officers asserted a qualified immunity defense, the court stated that the issue of reasonableness, among other issues, was one for the court alone to decide.[54] Similarly, in *Peterson v. City of Plymouth*,[55] a false imprisonment case, the court held that it was error to allow expert testimony

---

[49]198 F.3d 169 (5th Cir. 1999).

[50]*Id.* at 171-72.

[51]*Id.*

[52]*Id.*

[53]*Id.* (citation omitted).

[54]*See St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 (1st Cir. 1995).

[55]60 F.3d 469, 475 (8th Cir. 1995).

that police officers acted reasonably in their encounter with the plaintiff. The court found that the testimony of the expert was mere legal conclusion and remanded the case for a new trial since "[t]he legal conclusions were for the court to make."[56]

Finally, in *Aguilar v. International Longshoremen's Union Local #10*,[57] certain casual workers sought to enforce a contract using a promissory estoppel theory. In support of their case, they submitted an expert declaration stating that the employment application relied upon by the workers contained a promise, the workers reasonably relied on that promise and that the workers' reliance was appropriate. In affirming the exclusion of the expert witness, the court found that "the reasonableness and foreseeability of the casual workers' reliance were matters of law for the court's determination. As such, they were inappropriate subjects for expert testimony."[58]

These cases cited above stand for the proposition that whether a person acted reasonably is a legal question reserved solely for the court. Since Smith's opinion attempts to do just that, it must also be excluded on this ground.[59]

---

[56]*Id*. at 475.

[57]966 F.2d 443 (9th Cir. 1992).

[58]*Id.* at 447.

[59]*See also Casper v. SMG*, 389 F. Supp. 2d at 622, where the court excluded an expert witness, a law professor, stating as follows:

> Moreover, the analysis [by the law professor] * * * has direct bearing on the legal determination that this Court may be asked to make in a later stage of this litigation: namely, whether Defendants 'could not reasonably have foreseen that the subject matter of the agreement being challenged would be held to be unlawful under . . . § 8(e) [of the National Labor Relations Act].' Indeed, Professor Harvey's expert report explicitly opines that 'a sophisticated, experienced, and well-counseled employer like SMG should have realized that its

**C. Smith's Report Should Be Excluded Because He Is Opining on the Wrong Law.**

Smith's report and testimony should also be excluded because he is opining on the wrong law. In the first place, and most importantly, Smith's legal opinion that Treasury Circular 230 is relevant to whether or not the Plaintiffs reasonably relied upon the Proskauer Rose opinion letters is itself legally wrong. Treasury Circular 230, and more specifically, §10.33(a) of the Treasury Circular, has no relevance to any issue in this litigation. The Circular sets forth rules of conduct for practitioners representing taxpayers in administrative proceedings before the IRS. Section §10.33(a) of the Circular deals with the requirements that a practitioner must meet in providing certain kinds of tax shelter opinions. As Smith himself admits, the standards established by Treasury Circular 230 are not applicable to this case.[60]

Whether or not the Plaintiffs reasonably relied upon these two legal opinions is directly related to the liability for accuracy-related penalties. But the only available defense to accuracy-related penalties is the "reasonable cause" exception of I.R.C. § 6664(c), which allows a taxpayer to avoid penalties for any portion of an understatement if he shows that "there was a reasonable cause for such portion and that the taxpayer acted in good faith[.]"[61] Treasury regulations promulgated under Section 6664 do allow a taxpayer to rely on the advice of a

decision to require Service Contractors like AES to sign a collective bargaining agreement with [the Carpenters] violated Section 8(e).' Whether this conclusion is characterized as an issue of law or of ultimate fact, it is an issue for the Court to decide. (Internal citations omitted).

[60]Smith Deposition, Gov. Ex. 2, p. 128, ll.9-18.

[61]Only the partnership itself may raise this defense here; the alleged "reasonable cause" of the individual partners must be asserted in partner-level proceedings. *Jade Trading, L.L.C. v. United States*, 2007 WL 4553043, *49 (Fed. Cl. December 21, 2007); Treas. Reg. § 301.6221-1(c).

professional tax advisor as a defense to such penalties. As a prerequisite for such reliance, however, the regulations make explicit that the taxpayer must prove that the advice satisfies two "minimum," threshold requirements.[62] First, the taxpayer must demonstrate that the advice was "based upon all pertinent facts and circumstances and the law as it relates to those facts and circumstances."[63] The regulation provides that the advice "must take into account the taxpayer's purposes" for entering the transaction.[64] Second, the taxpayer must demonstrate that the advice was neither "based on unreasonable factual or legal assumptions" nor unreasonably relied on any representation or assumption.[65] The regulation expressly provides that the advice must not be based on an "inaccurate representation or assumption as to the taxpayer's purposes for entering into a transaction."[66] Smith's report makes no attempt to discuss the requirements of this regulatory provision or the many cases that have applied the regulation.[67] If his report had discussed these requirements, Smith's report would at the very least have been opining on what

---

[62]Treas. Reg. § 1.6664-4(c)(1).

[63]*Id.* § 1.6664-4(c)(1)(i).

[64]*Id.*

[65]*Id.* § 1.6664-4(c)(1)(ii).

[66]*Id.* This requirement is particularly key in the tax-shelter context, where attorneys are able to provide their clients favorable tax opinions by assuming they had a legitimate business purpose for entering a particular transaction. *See* Joint Committee on Taxation, *Report of Investigation of Enron Corporation and Related Entities* (JCS-3-03) at 22-25, 172-180, C326-370 (Feb. 2003) (criticizing King & Spalding's facilitation of Enron's infamous tax-evasion by issuing "should" tax opinions that assumed a shelter had a "business purpose").

[67]*See, e.g. Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122, 204-211 (D. Conn. 2004), *aff'd* (unpublished order) (2d. Cir. Sept. 27, 2005) (holding that two legal opinions allegedly relied upon by the taxpayer did not constitute a defense to penalties because they failed to meet these two regulatory requirements).

is the correct law as to whether the Plaintiffs could have reasonably relied upon the Proskauer Rose opinions in this litigation. In short, Smith's report, quite apart from opining on law, is opining on the wrong law. For this reason alone, Smith's report and testimony must be excluded.

**D. Smith's Opinion Testimony Will Not Assist the Court**.

The Court should exclude Smith's testimony on the law since it will not assist the trier of fact. *See* Fed.R.Evid. 702. Smith admits in his deposition that his opinion contains law and/or legal analysis.[68] And a review of his report shows that, even when he refused to admit it, the report reads more like a legal brief than like independent expert analysis on an issue of fact that could possibly assist the Court, as required by Rule 702 of the Federal Rules of Evidence. In trial and post trial briefs, Plaintiffs are free to advocate as to whether the Plaintiffs' partnerships could "reasonably rely" on the Proskauer Rose opinions. Expert witness reports and testimony are not the vehicles through which those arguments can be made.[69] Similarly, Plaintiffs here may retain and use Smith to assist in preparing the legal analysis and conclusions for his trial and post trial papers in this case. But it would be error to permit Plaintiffs' experts to testify and opine on the law at the trial of this case.

---

[68]Smith Deposition, Gov. Ex.2, p.105, l.6-10.

[69]*See Casper v. SMG*, 389 F. Supp. 2d at 622 ("While Plaintiff is free when the time comes to make such arguments and offer such conclusions in legal memoranda, he may not do so through the expert testimony of a law professor.").

**CONCLUSION**

Plaintiffs are trying to improperly influence the Court by presenting ordinary legal argument dressed up as "expert" testimony. Instead of filing a brief to argue for their interpretation of the law, Plaintiffs are trying to use an expert witnesses to tell the Court what standards should apply as to whether Plaintiffs acted reasonably in relying on the Proskauer Rose opinion letters. The obvious strategy is the hope that the Court will give their legal argument more weight if their arguments are presented through an "expert opinion." The Court should not allow Plaintiffs to thwart the Court's role and should preclude Plaintiffs from introducing at trial Smith's expert report and accompanying testimony.

Respectfully submitted,

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2008, I electronically filed the foregoing **UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT AND OPINIONS OF STUART A. SMITH** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

/s/ Dennis M. Donohue
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov