IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 06-245T, 06-246T, and 06247T
(Consolidated)

-----------------------------------x

MURFAM FARMS, LLC, :
By and Through Wendell H. Murphy, Jr.,
A Partner Other Than Tax Matters Partner, :

PSM FARMS, LLC, :
By and Through Stratton K. Murphy,
A Partner Other Than Tax Matters Partner, :

MURPHY PORK PARTNERS, LLC, :
By and Through Wendell H. Murphy, Jr.,
A Partner Other Than Tax Matters Partner, :

Plaintiffs, :

v. :

UNITED STATES OF AMERICA, :

Defendant :

-----------------------------------x

**PLAINTIFFS' EXPERT REPORT OF STUART A. SMITH**

Stuart A. Smith
460 Park Avenue
New York, New York 10022
Tel.: 212-759-8285
Fax: 212-759-4032

GOVERNMENT EXHIBIT
1

GOVERNMENT'S EXHIBIT
2408 DT
Smith 8-30-07
PENGAD 800-631-6989

I have been asked by counsel for the Plaintiffs in these consolidated partnership tax refund proceedings to review three opinion letters dated December 29, 2000, of the New York City law firm of Proskauer Rose LLP, that were issued to (1) HDM, LLC; MDM Ventures, LLC; and SKM Ventures, LLC; (2) WMC, LLC; WHM Ventures, LLC; WHMJ, LLC; JMN Ventures, LLC; and ANB, LLC; and (3) HDM, LLC; WHM Ventures, LLC, and WHMJ, LLC, concerning the transactions at issue in these cases. These opinion letters analyze the Federal income tax consequences of certain partnership investment transactions engaged in by Wendy M. Crumpler, Wendell H. Murphy, Wendell H. Murphy, Jr., Joyce Murphy Norman, Angela N. Brown, Harry D. Murphy, Marc D. Murphy, and Stratton K. Murphy, acting through Delaware single-member limited liability companies.

Specifically, I have been asked to address the question whether the opinion letters are of the quality and character upon which these above-mentioned parties could reasonably rely in preparing their tax returns.

These opinions conclude that there was a greater than 50 percent likelihood that four identified positions sought by the taxpayers would be upheld if challenged by the Internal Revenue Service, and that, on an overall basis, there was a greater than 50 percent likelihood that the tax treatment described in the opinion letter would be upheld if challenged by the Internal Revenue Service. It is my understanding that the partnerships through which these transactions were conducted, and the above-mentioned parties (hereinafter sometimes referred to as "taxpayers" or "plaintiffs") as owners of interests in those partnerships through their Delaware single-member limited liability companies,

prepared and filed their 2000 Federal income tax returns in accordance with the conclusions reached in these opinion letters.

For the reasons set forth in greater detail below, I am of the opinion that these opinion letters are of the character and quality upon which taxpayers such as the above-mentioned parties could reasonably rely in preparing their tax returns on the basis of the conclusions reached in the letters. In addressing this question, I am aware that the Internal Revenue Service has subsequently challenged the conclusions of these opinion letters and has disallowed the tax treatment claimed for the transactions in which these investors and other similarly-situated taxpayers have been engaged. However, it is pertinent to note that at this juncture there is no court decision at any level that has thus far upheld the Internal Revenue Service's legal attack against the transactions at issue in these cases. The fact that the Internal Revenue Service may challenge the taxpayers' treatment of transactions is not inconsistent with the conclusion of the opinions that the Service is more likely than not incorrect in its position. Nevertheless, with the exception of the comments that follow, I will not attempt to determine the "correct" substantive tax treatment of the complex transaction in question. I will instead focus my discussion in this Report primarily upon the question whether the opinion letters received by the taxpayers are of the type, and have the character and quality, on which a taxpayer could rely.

Pursuant to the requirements of F.R.Civ.P. 26(a)(2)(B), I set forth in Appendix A to this Report my resume, which describes my professional career and qualifications, and the compensation to be paid for this Report and my testimony, and the cases in which I have testified as an expert at trial or by deposition within the preceding four years.

In reaching my conclusion, I have examined all of the statutory, judicial, and administrative authorities cited in my Report, the opinion letters and the authorities cited therein, and the pertinent provisions of Treasury Circular 230, Appendix B, infra, that were extant as of the issuance of the opinions which prescribed the Internal Revenue Service's requirements for the issuance of tax opinions, the taxpayers' three signed Certificates of Facts dated December 29, 2000, relating to MURFAM Farms, LLC, PSM Farms, LLC, and Murphy Pork Partners, LLC; [1] and the expert reports in these cases of Don M. Chance, Ph.D., CFA, dated May 8, 2007, and of Alan C. Hess, Ph D., dated May 7, 2007, and the expert report of Dr Chance dated May 8, 2007, and the expert report of Dr. Hess dated May 7, 2007, in the related case styled JZ Buckingham Investment LLC, Tax Matters Partners of JBJZ Partners, a South Carolina general partnership, v. United States, No. 05-231T (Fed.Cl.). I have also drawn upon my extensive experience as a tax lawyer for more than 40 years during which I have addressed, both in government service as Tax Assistant to the Solicitor General in the Department of Justice and in private practice, the tax consequences of comparable transactions and the reliability of written tax opinions for those transactions.

Moreover, I am fully familiar with the general type of transaction at issue in these cases because I served as an expert witness for the Plaintiffs in Klamath Strategic Investment Fund v. United States, 2007 U.S. Dist. LEXIS 6939 (E.D. Tex.), decided January 31, 2007, which involved a comparable transaction with respect to which two law firms' tax opinions were rendered that employed analyses that were similar to the Proskauer Rose Opinions in these cases. In Klamath, the Court accepted the conclusions I

[1] The taxpayers' representations are set forth in paragraphs 18-23 of the Certificates of Facts.

reached in my Report and my testimony that the two law firms' tax opinions involved in that case complied with professional and Treasury standards. It therefore ruled that the taxpayers in that case were entitled to rely on the two law firms' opinions and accordingly relieved the taxpayers of civil penalties sought by the Internal Revenue Service. For the reasons set forth below, I reach the same conclusion with respect to the Proskauer Rose Opinions in these cases.

I. Reliance Upon Professional Advice Is Both Reasonable and Necessary.

The tax law is complex and is often difficult to understand and apply Tax professionals therefore frequently provide written opinions to taxpayers to assist them in understanding and reporting the tax consequences of their transactions. And, it is common for taxpayers to look to the written advice and recommendations of attorneys who are versed in the tax law in planning and reporting their transactions. In light of the great complexities of the modern tax law, it is plainly reasonable for taxpayers to look to such professional advice in conducting their business affairs whenever such advice is of sufficient character and quality to warrant their reliance. Indeed, in view of the enormous complexities of the provisions of the Internal Revenue Code, there is no realistic alternative for individuals, partnerships or corporate taxpayers: reliance on properly prepared professional advice is not only reasonable, it is a fundamental necessity of modern life.

This basic, realistic fact has, of course, been widely recognized by the courts. As the Supreme Court reaffirmed in United States v. Boyle, 469 U.S. 241 (1985), a taxpayer has the right to rely upon the substantive tax advice of an accountant or attorney to avoid the imposition of penalties According to Boyle (469 U.S. at 250-251; citation omitted):

> When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a second opinion, or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place . . . . "Ordinary care and prudence" do not demand such actions.

To the same effect is Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995). There, the Fifth Circuit stated (id. at 733; footnote omitted):

> Taxpayers sought the advice of a tax expert about claiming the loss. The expert advised that there was "a good faith, supportable position" concerning the deductibility of the loss. The Tax Court erred in finding taxpayers negligent for claiming the loss. The record reflects no basis for a finding or conclusion that it was not reasonable for taxpayers to rely on the expert's advice "To require the taxpayer to challenge the [expert], to seek a 'second opinion,' or to try to monitor [the expert] on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place." Because the taxpayers reasonably relied on the advice of a tax expert in claiming the loss, the negligence penalty should not have been imposed.

Accord: Durrett v. Commissioner, 71 F.3d 515, 518 (5th Cir. 1996); Streber v. Commissioner, 138 F.3d 216, 219-224 (5th Cir. 1998); Stanford v. Commissioner, 152 F.3d 450, 460-463 (5th Cir 1998); McMurray v. Commissioner, 985 F.2d 36, 43 (1st Cir. 1993); Decleene v. Commissioner, 115 T.C. 457 (2000); Daoust v. Commissioner, T.C Memo 1994-203 (1994); Wright v. Commissioner, T.C. Memo 1994-288; English v. Commissioner, T.C. Memo 1993-111 (1993).

II. The Opinions Involved in This Case Meet the Standards for Taxpayer Reliance.

It is a common standard in the tax field that, in deciding whether to rely on professional advice, taxpayers are expected to choose qualified advisors and to obtain opinions from them that are both objectively and subjectively reasonable. For the reasons discussed below, those widely accepted standards are well satisfied in these cases

The Treasury Department has also applied, in its internal administrative practice, a different and more complicated standard that addresses the conduct of practitioners who provide tax opinions. This standard is set forth in detail in the version of § 10.33 of

Circular 230, Appendix B, infra, that was extant on December 29, 2000, the date of the opinions involved in this case. This Section of the Treasury Circular states that a practitioner who provides a "tax shelter opinion" analyzing the Federal tax consequences of a tax shelter investment is to comply with five separate enumerated requirements.[2]

For the reasons that follow, I believe that the Proskauer Rose Opinions involved in this case meet all five of the Treasury requirements adopted for its internal administrative practice While it is plainly not necessary for an opinion to satisfy the particular requirements of this Circular for a taxpayer to act reasonably in relying on it, it is nonetheless of interest that the opinions obtained by the taxpayers in this case meet even the government's own internal standards.

Because the opinions involved in this case comply both with the standards common to the profession and also with the internal administrative standards established by Treasury Circular 230, those opinions unquestionably constitute opinions of the type and character upon which the plaintiffs could reasonably rely.

(1) Factual Matters One requirement contained in the Circular (that is not a component of the common professional standards of tax practitioners) is that the practitioner is to make inquiry as to all relevant facts and be satisfied that the material facts are accurately and completely described in the offering materials, and assure that any representations as to future activities are clearly identified, reasonable and complete.

---

[2] The version of § 10.33 during the year 2000, the tax year addressed by the opinions is set forth in Appendix B, infra. During 2000, Treasury Circular 230, § 10.33 defined a "tax shelter opinion" as "advice by a practitioner . . . directed to persons other than the client who engaged the practitioner to give the advice." Since the Proskauer Rose opinions were prepared for that firm's clients, viz., the plaintiffs in these cases, the standards of Treasury Circular did not strictly apply to them. Nevertheless, the opinions comply with the standards of Treasury Circular 230.

The opinion letters comply with this requirement. There is a detailed description in each of these letters that confirms that the opinion writer has inquired as to all relevant facts This discussion is set forth at the outset of each of the three opinions (pp. 2-4), which recite the facts and the taxpayers' representations in a detailed and comprehensive manner. I am advised that Proskauer Rose prepared substantially all of the underlying documents necessary to carry out these transactions. Hence, the firm was fully familiar with all of the factual details pertaining to the transactions. The opinions analyze the tax consequences of a series of transactions, all of which were completed as of December 31, 2000. Accordingly, there are no representations as to future activities of the parties to the transactions. I have also examined the three Certificates of Facts signed by the various taxpayers that certify as true the facts and representations. In my view, Proskauer Rose was therefore amply justified in accepting as true the taxpayers' representations without an independent verification insofar as there is nothing about them that would appear to be untrue or unreasonable. See Treasury Circular 230, § 10.33(a)(1)(ii).

(2) Relate Law to Facts. The practitioner is also to relate the law to the actual facts and, when addressing issues based on future activities, clearly identify what facts are assumed. The opinion letters also comply with this requirement. For example, on pages 9-10 of each of the Proskauer Rose Opinions, the opinions set forth five different positions and conclude that it is more likely than not that they will be upheld if challenged by the Internal Revenue Service. Accordingly, the opinions conclude that the taxpayers will be able to claim a capital loss on the sale of certain assets of a capital nature (the "Assets"). The opinions also conclude that, on an overall basis, it is more

likely than not that nine different possible theories to limit the taxpayers' loss deductions will not be upheld if they are advanced by the Internal Revenue Service.

There is a comprehensive discussion on pages 5-33 of the Proskauer Rose Opinions that closely and completely relates the applicable tax law to the facts of the case. This discussion thoroughly analyzes the Federal tax consequences of the transaction and concludes (pp. 5, 33) that each taxpayer's basis in his partnership interest would equal his respective basis in certain Long Options purchased, reduced by the amount of liabilities assumed by the Partnership and increased by each of the taxpayer's respective pro rata share of such liabilities after such assumption.

This conclusion is also objectively reasonable because it is squarely supported by the language of the applicable statutory provisions that were then extant. In particular, the central tax issue in this case concerns the treatment of "contingent" liabilities in determining the partners' "basis" in their ownership of their partnership interests under Section 752 of the Code. The determination of the opinions that the taxpayers' obligations under the Short Option is only a "contingent" liability, and that under the case law such a "contingent" liability does not reduce the partner's basis in his partnership interest, represented an objectively reasonable conclusion at the time the opinions were issued.

By contrast, the contrary conclusion of the Service lacks an objective appearance of reasonableness, because it appears to be based on a proposition that directly conflicts with its past position. Specifically, the Service took the opposite position in several cases that it won prior to 2000 that a "contingent" liability is <u>not</u> to be taken into account in partnership basis calculations when doing so would have had the effect of <u>decreasing</u> the

taxpayer's taxes; here, however, the Service now claims that a "contingent" liability is to be taken into account in basis calculations when doing so would have the effect of increasing the taxpayer's tax liability. The Service's position of "heads I win and tails you lose" is a position that appears to be inconsistent with the agency's duty to apply the tax laws neutrally and evenhandedly.

The opinions' conclusions that the obligation under the Short Option was not a liability within the meaning of § 752 and its conclusion with respect to the resulting basis of the taxpayer's Partnership interest are the heart of the opinions insofar as they are the legal foundation for the taxpayers' calculations of their bases in their partnership interests and further eligibility for claimed loss on the sale of the Assets.

The objective reasonableness of the opinions' conclusion on the law extant in the year 2000 is reinforced by the actions of the Service taken long after the consummation of the transactions at issue in this case. On June 24, 2003, the Service promulgated temporary Regulations which apply retroactively to partnership transactions after October 19, 1999. It is noteworthy that the Service employed the extraordinary and legally questionable stratagem of issuing regulations that reach back more than three years in time in order to bootstrap its litigating position.[3] Moreover, as the cogent professional criticism pointedly observed, the legislation addressing basis adjustments in the corporate context provided no authority to the Service to issue regulations that apply in the pure

[3] The issuance of a retroactive Regulation in 2003 that related back to 1999 represents an explicit acknowledgment by the Service that it was attempting to change the law. It is highly questionable whether the Internal Revenue Service can issue retroactive regulations to alter the civil tax consequences of a pre-existing transaction.

partnership context. Hence, the "quick fix" the Service sought to impose was neither quick nor effective.

Finally, the Section 752 legal analysis of the transactions set forth in the Proskauer Rose Opinions was thereafter squarely upheld in Klamath Strategic Investment Fund LLC v. United States, 440 F.Supp. 2d 608 (E.D. Tex. 2006), involving a similar transaction. There, the Court flatly rejected the Service's attempt to change its position on the definition of "liability" under Section 752 of the Internal Revenue Code. The legal analysis of the Klamath Court therefore provides solid support for the "more likely than not" conclusion of the Proskauer Rose Opinions that were issued to the plaintiffs in these cases. As the Klamath Court stated, in terms that eloquently support the analysis which formed the basis of the opinions in these cases (440 F.Supp. 2d at 619):

> It is clear from the record that the government has often and consistently relied on the principle that a "liability" under Section 752 does not include an obligation that is contingent. The government has applied this principle when it works to its benefit (to increase taxes owed). This Court will consistently apply these same principles even if they sometimes work to the benefit of taxpayers (to decrease taxes owed) The Court's analysis of "liability" under Section 752 will not vary in meaning simply based on whose ox is being gored.

Moreover, the Court in Klamath held that the Service's retroactive Temporary Regulation, which sought to change the law, was ineffective for conduct occurring before August 11, 2000, the date of the issuance of IRS Notice 2000-44 attacking the transaction. The Court therefore denied the government's motion for summary judgment.

After trial, the Court in Klamath rejected civil penalties sought by the IRS on the ground that the taxpayers relied in good faith upon the advice of accountants and tax lawyers who had issued comprehensive written opinions that were comparable to the

Proskauer Rose Opinions. See 2007 U.S. Dist. LEXIS 6939 (E.D. Tex.), decided January 31, 2007.

Finally, the Klamath Court has recently reaffirmed its ruling that the term "liability" under Section 752 does not include an obligation that is contingent and that the retroactivity of Treasury Reg. § 1.752-6 was ineffective to the taxpayers in that case. The Court therefore denied the government's motion to vacate its summary judgment ruling on Section 752 as moot. The Court also held that the taxpayers could deduct the operational and interest expenses that were associated with transactions in that case on the ground that the transactions had economic substance apart from the tax benefits. See 2007 U.S. Dist. LEXIS 24806, decided April 3, 2007.[4]

(3) Identification of Material Issues. The practitioner is to ascertain that all material Federal tax issues have been considered, and that all of those issues which involve the reasonable possibility of a challenge by the Internal Revenue Service have been fully and fairly addressed.

The opinion letters comply with this requirement. For example, as I have previously stated (supra, p. 8), the Proskauer Rose Opinions identify five different statutory and judicial theories which the Internal Revenue Service might invoke to

[4] Each Taxpayer's Certificate of Facts represents that (par. 18) "each of the Member's primary motivation in participating in the Transactions was to attain on a risk-adjusted basis, an attractive return on his investment through the Transactions without regard to tax benefits." Dr. Hess's report (p. 33) confirms the accuracy of this representation. He found that "all of the options had positive probabilities of being in-the-money on their termination date and all of the options had positive expected payoffs." (See also id. at p. 29). Dr. Chance's Report is to the same effect. He concludes (p. 3): ". . . that the transaction did have a reasonable probability of profit." In reaching this conclusion, he compared the probability of earning a profit on the transactions in this case versus the probability of earning a profit on standard options transactions that are conducted on U.S. options exchanges. He found that those probabilities to be (p. 4) "comparable if not much lower than those of the transactions in this case."

disallow the taxpayers' claimed losses. The opinions conclude that there is a greater than 50 percent likelihood that the various arguments by the Internal Revenue Service would not be successful. The opinions set forth a detailed discussion (pages 33-59) of various theories that the Internal Revenue Service might possibly advance. These include the step transaction doctrine, the sham transaction doctrine, the alleged absence of a profit motive, the alleged absence of an economic loss, the business purpose doctrine, the economic substance doctrine, the at-risk rules, the passive loss activity rules, the partnership anti-abuse rules, and the possible applicability of IRS Notice 2000-44. The opinions also conclude (pp. 59-63) that none of the parties to the transaction would be subject to accuracy-related penalties as a result of the described treatment on their federal income tax returns of their investments in the Transactions. All of these possible theories are discussed in great detail in the opinions, which conclude that the taxpayers are more likely than not to prevail in any challenge by the Internal Revenue Service.

(4) Opinion On Each Material Issue Where possible, the practitioner is to provide an opinion whether it is more likely than not that an investor will prevail on the merits of each material tax issue presented by the offering which involves a reasonable possibility of a challenge by the Internal Revenue Service.

The opinion letters comply with this requirement. The discussion of each material tax issue is accompanied by a conclusion that it is more likely than not that the taxpayer will prevail on the merits if challenged by the Internal Revenue Service

In the Proskauer Rose Opinions, the issue and the citation to the more likely than not conclusion are as follows:

1. Each of the taxpayers' LLCs would not recognize gain or loss on the contributions of the Long Options and the Short Options to the Partnership (pp. 5-6).

2. Each of the taxpayers' LLCs' basis in their Partnership interests would equal their respective basis in the Long Options purchased, reduced by the amount of liabilities assumed by the Partnership and increased by each of the Taxpayers' LLCs' respective pro rata shares of such liabilities after such assumption (pp 11-12).

3. The Short Options would not be considered liabilities for purposes of Section 752 of the Internal Revenue Code as currently enacted or as a result of recent legislative proposals (pp. 12-26).[5]

4. Each of the taxpayers' LLCs' basis in the assets acquired and held by the Partnership would equal his respective basis in the Long Options purchased, reduced by the amount of liabilities assumed by the partnership and increased by each of the taxpayers' respective pro rata share of such liabilities after such assumption (p. 4).

5 Any gain or loss recognized by each of the Taxpayers upon the sale of Assets by an S corporation to which their partnership interests were contributed

---

[5] Once the taxpayers transferred the Options to the Partnership, the basis rules of Subchapter K (the partnership provisions) of the Internal Revenue Code apply. The bases in the taxpayers' Partnership interests equal the cost of the Long Option without adjustment for the obligations under the Short Option because the contingent liability under the Short Option is not a liability within the meaning of Section 752

would equal their proportionate share of the total amount of proceeds received by the S corporation less his adjusted basis in the Assets sold by the S corporation. (pp 26-30)

6. Any gain or loss recognized by each of the Taxpayers upon the sale of the Assets would be treated as capital gain or loss (pp. 30-31).

7. None of the parties to the Transactions would be subject to accuracy related penalties as a result of the described treatment on their federal income tax returns of his investments in the transactions (pp. 58-62).

With respect to the application of certain loss limitation rules potentially affecting the deductibility of any loss claimed by the Taxpayers in connection with the Transactions, the Proskauer Rose Opinions conclude:

8. The requisite profit motive exists to support the deduction of any loss on the disposition of the Assets under Section 165(c)(2) of the Internal Revenue Code (pp. 31-32);

9. Any loss that the Taxpayers' corporation incurs upon the sale of the Assets would not be subject to the passive activity loss limitations under Section 469 of the Internal Revenue Code (pp. 32-33).

10. Any loss that the Taxpayers' corporation incurs upon the sale of the Assets would not be limited by the "at risk" rules of Section 465 of the Internal Revenue Code (p. 33).

11. The step transaction doctrine would not apply to the Transactions (pp 33-37).

12. The sham transaction, business purpose, and economic substance doctrines would not apply to the Transactions (pp 37-43).

13. The Partnership would not be disregarded for federal income tax purposes (pp. 43-44).

14. The partnership anti-abuse rules would not apply to the Transactions (pp. 44-51).

15. IRS Notice 2000-44 would not support disallowance of the loss arising from the Transactions (pp. 51-58).

(5) Overall Evaluation. Where possible, the practitioner is to provide an overall evaluation whether the material tax benefits in the aggregate more likely than not will be realized.

The opinion letters comply with this requirement. The Proskauer Rose Opinions state (p. 4) as follows: "Based on and subject to the descriptions and assumptions set out above and the analysis of the relevant statutory provisions and other legal authority in effect on the date hereof, as set out below, it would be more likely than not that: [the four enumerated positions of the taxpayers would be upheld if challenged by the IRS]."[6]

---

[6] This conclusion complies with § 10.33(a)(5)(ii) of Circular 230 which allows a practitioner to make an overall evaluation only when "it is based on a conclusion that substantially more than half the material tax benefits, in terms of their financial impact on a typical investor, more likely than not will be realized if challenged by the Internal Revenue Service." That condition has been met in these cases.

III. Conclusion

In light of the above, it is my conclusion that the Proskauer Rose Opinion Letters are both objectively and subjectively reasonable and that they comply in all respects with the professional requirements common to the tax profession and also with the specific internal administrative practice requirements of Treasury Circular 230, § 10.33. In these circumstances, they constitute opinions upon which a taxpayer could reasonably rely in preparing and filing his tax return.

The quality and breadth of coverage of the opinions confirm the opinion writers' sophisticated knowledge of the relevant provisions of Federal tax law. The Certificates of Facts signed by the taxpayers also confirm the reasonableness and candor of the taxpayers' conduct vis-à-vis his advisor. These objective and subjective indications of the reasonableness of the opinions reinforce my conclusion that the opinion letters involved in this case were of sufficient quality and character that the taxpayers in these cases could reasonably rely on them. In light of the general complexity of the tax law and the specific complexity of the issues involved in this case, taxpayers such as the plaintiffs in these consolidated cases necessarily must seek and obtain such professional advice, and be permitted to rely upon it, in planning and reporting their transactions.

Respectfully submitted,

Stuart A. Smith

Stuart A. Smith

Dated: May 30, 2007

## APPENDIX A

**STUART A. SMITH**

460 Park Avenue
New York, New York 10022
Tel.: 212-759-8285
Fax: 212-759-4032

**EDUCATION**

| | | |
|---|---|---|
| Harvard Law School | LL. B., 1964 |
| Columbia College | A.B., 1961 |

**PROFESSIONAL EXPERIENCE**

**PRIVATE LAW PRACTICE** New York, New York

1983 to present

Federal and State Taxation and Related Litigation

Represent corporations and individuals in controversies with the Internal Revenue Service and with state and local tax authorities in civil and criminal tax matters and in related trial and appellate litigation.
Extensive trial experience in Tax Court, Court of Federal Claims, District Court, and oral appellate argument.
Advise individuals with tax compliance problems both at federal and state level. Corporate and individual tax planning in both domestic and international contexts.
Transactional tax structuring, including acquisitions, mergers, liquidations, insolvency reorganizations, offshore tax matters, and foreign trusts. Expert testimony in complex tax litigation, and in arbitration involving tax consequences of offshore insurance companies.
Tax legislative representation, including appearances before the Treasury, members of Congress, and their staffs.

1973 to 1983

**THE SOLICITOR GENERAL, UNITED STATES DEPARTMENT OF JUSTICE** Washington, D.C.

Tax Assistant to the Solicitor General

Represented the United States in tax matters before the Supreme Court. Argued more than thirty cases before the

Supreme Court involving a broad range of issues including the constitutionality of the worldwide unitary method of state taxation, tax shelters, international and foreign taxation, inventory accounting, life insurance company taxation, bond discount, mineral extraction, pension regulation, occupational safety inspection, criminal tax and summons enforcement, and the attorney-corporate client privilege.
Coordinated all matters involving federal tax litigation with the Treasury and the Internal Revenue Service.
Established government litigation policy in tax cases by authorizing all appeals of adverse decisions to the Courts of Appeals and the Supreme Court.

| | |
|---|---|
| 1966 to 1973 | Served in the Department of Justice in the Appellate Section of the Tax Division, briefing and arguing more than sixty tax cases in the Circuit Courts of Appeals. Two years of Washington, D.C. private practice. |
| **LAW TEACHING** | **ADJUNCT PROFESSOR OF LAW, GEORGETOWN UNIVERSITY LAW CENTER** Washington, D.C. |
| 1969 to 1977 | Course in State and Local Taxation |
| **JUDICIAL CLERKSHIP** | **THE HONORABLE JOHN W. KERN, UNITED STATES TAX COURT** Washington, D.C. |
| 1964 to 1966 | |
| **PROFESSIONAL ACTIVITIES** | American Law Institute: Tax Advisory Group, Federal Income Tax Project |
| | ABA Tax Section: Past Chairman, Subcommittee on Incorporations, Corporate Tax Committee |
| | New York State Bar Association: Former Member, Executive Committee, Tax Section |
| | Association of the Bar of the City of New York: Former Member, Tax Committee |

Second Circuit Judicial Conference (1983-1996); Tax Club of the City of New York; various professional tax institutes

**PUBLICATIONS**

"Deferred Taxation of Gains Realized Upon Divestiture of Property to Avoid Conflicts of Interest: A Proposal," Federal Bar Journal (1989)

*How You Can Get the Most from the New Tax Law*, Bantam Books (1981)

"A View from the Solicitor General's Office: Procedures in Appealing Lower Court Decisions and Settlements," 35 N.Y.U. Tax Institute 35 (1977)

"Depreciation in the Year of Sale: An Analysis," 9 Tax Counselor's Quarterly (1965)

**BAR ADMISSIONS**

State of New York
District of Columbia

U.S. Supreme Court
All Federal Courts of Appeals
U.S. Tax Court
U.S. Court of Federal Claims
U.S. District Courts for the Southern and Eastern Districts of New York

**Compensation Statement of Stuart A. Smith**

| | |
|---|---|
| Fee for Expert Witness Report | $ 16,375 |
| Fee for testimony preparation and testimony | $ 500 per hour |

**Prior Expert Witness Testimony**

During the preceding four years, I have testified as an expert at deposition and at trial in Klamath Strategic Investment Fund v. United States, 2007 U.S. Dist. LEXIS 6939 (E.D Texas), decided January 31, 2007

# APPENDIX B

Treasury Circular 230, 31 C.F.R.

**§ 10.33 Tax shelter opinions.—**

(a) *Tax shelter opinions and offering materials.* A practitioner who provides a tax shelter opinion analyzing the Federal tax effects of a tax shelter investment shall comply with each of the following requirements:

(1) *Factual matters.*--(i) The practitioner must make inquiry as to all relevant facts, be satisfied that the material facts are accurately and completely described in the offering materials, and assure that any representations as to future activities are clearly identified, reasonable and complete.

(ii) A practitioner may not accept as true asserted facts pertaining to the tax shelter which he/she should not, based on his/her background and knowledge, reasonably believe to be true. However, a practitioner need not conduct an audit or independent verification of the asserted facts, or assume that a client's statement of the facts cannot be relied upon, unless he/she has reason to believe that any relevant facts asserted to him/her are untrue.

(iii) If the fair market value of property or the expected financial performance of an investment is relevant to the tax shelter, a practitioner may not accept an appraisal or financial projection as support for the matters claimed therein unless:

(A) The appraisal or financial projection makes sense on its face;

(B) The practitioner reasonably believes that the person making the appraisal or financial projection is competent to do so and is not of dubious reputation; and

(C) The appraisal is based on the definition of fair market value prescribed under the relevant Federal tax provisions.

(iv) If the fair market value of purchased property is to be established by reference to its stated purchase price, the practitioner must examine the terms and conditions upon which the property was (or is to be) purchased to determine whether the stated purchase price reasonably may be considered to be its fair market value.

(2) *Relate law to facts.* The practitioner must relate the law to the actual facts and, when addressing issues based on future activities, clearly identify what facts are assumed.

(3) *Identification of material issues*. The practitioner must ascertain that all material Federal tax issues have been considered, and that all of those issues which involve the reasonable possibility of a challenge by the Internal Revenue Service have been fully and fairly addressed in the offering materials.

(4) *Opinion on each material issue*. Where possible, the practitioner must provide an opinion whether it is more likely than not that an investor will prevail on the merits of each material tax issue presented by the offering which involves a reasonable possibility of a challenge by the Internal Revenue Service.

(5) *Overall evaluation*.--(i) Where possible, the practitioner must provide an overall evaluation whether the material tax benefits in the aggregate more likely than not will be realized. Where such an overall evaluation cannot be given, the opinion should fully describe the reasons for the practitioner's inability to make an overall evaluation. Opinions concluding that an overall evaluation cannot be provided will be given special scrutiny to determine if the stated reasons are adequate.

(ii) A favorable overall evaluation may not be rendered unless it is based on a conclusion that substantially more than half of the material tax benefits, in terms of their financial impact on a typical investor, more likely than not will be realized if challenged by the Internal Revenue Service.

(iii) If it is not possible to give an overall evaluation, or if the overall evaluation is that the material tax benefits in the aggregate will not be realized, the fact that the practitioner's opinion does not constitute a favorable overall evaluation, or that it is an unfavorable overall evaluation, must be clearly and prominently disclosed in the offering materials.

* * *

(2) A "tax shelter," as the term is used in this section, is an investment which has as a significant and intended feature for Federal income tax or excise tax purposes either of the following attributes: (i) deductions in excess of income from the investment being available in any year to reduce income from other sources in that year, or (ii) credits in excess of the tax attributable to the income from the investment being available in any year to offset taxes on income from other sources in that year. Excluded from the term are municipal bonds; annuities; family trusts (but not including schemes or arrangements that are marketed to the public other than in a direct practitioner-client relationship); qualified retirement plans; individual retirement accounts; stock option plans; securities issued in a corporate reorganization; mineral development ventures, if the only tax benefit would be percentage depletion; and real estate where it is anticipated that in no year is it likely that deductions will exceed gross income from the investment in that year, or that tax credits will exceed the tax attributable to gross income from the investment in that year. Whether an investment is intended to have tax shelter features

depends of the objective facts and circumstances of each case. Significant weight will be given to the features described in the offering materials to determine whether the investment is a tax shelter.

(3) A "tax shelter opinion," as the term is used in this section, is advice by a practitioner concerning the Federal tax aspects of a tax shelter either appearing or referred to in the offering materials, or used or referred to in connection with sales promotion efforts, and directed to persons other than the client who engaged the practitioner to give the advice. The term includes the tax aspects or tax risks portion of the offering materials prepared by or at the direction of a practitioner, whether or not a separate opinion letter is issued or whether or not the practitioner's name is referred to in the offering materials or in connection with the sales promotion efforts. In addition, a financial forecast or projection prepared by a practitioner is a tax shelter opinion if it is predicated on assumptions regarding Federal tax aspects of the investment, and it meets the other requirements of the first sentence of this subparagraph. The term does not, however, include rendering advice solely to the offeror or reviewing parts of the offering materials, so long as neither the name of the practitioner, nor the fact that a practitioner has rendered advice concerning the tax aspects, is referred to in the offering materials or in connection with the sales promotion efforts.

(4) A "material" tax issue as the term is used in this section is (i) any Federal income or excise tax issue relating to a tax shelter that would make a significant contribution toward sheltering from Federal taxes income from other sources by providing deductions in excess of the income from the tax shelter investment in any year, or tax credits available to offset tax liabilities in excess of the tax attributable to the tax shelter investment in any year; (ii) any other Federal income or excise tax issue relating to a tax shelter that could have a significant impact (either beneficial or adverse) on a tax shelter investor under any reasonably foreseeable circumstances (e.g., depreciation or investment tax credit recapture, availability of long-term capital gain treatment, or realization of taxable income in excess of cash flow, upon sale or other disposition of the tax shelter investment); and (iii) the potential applicability of penalties, additions to tax, or interest charges that reasonably could be asserted against a tax shelter investor by the Internal Revenue Service with respect to the tax shelter. The determination of what is material is to be made in good faith by the practitioner, based on information available at the time the offering materials are circulated.

(d) For purposes of advising the Director of Practice whether an individual may have violated section 10.33, the Director of Practice is authorized to establish an Advisory Committee, composed of at least five individuals authorized to practice before the Internal Revenue Service. Under procedures established by the Director of Practice, such Advisory Committee shall, at the request of the Director of Practice, review and make recommendations with regard to alleged violations of section 10.33 [Reg. § 10.33; Circular 230.]