**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Nos. 06-245T, 06-246T, and 06-247T**
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

# UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF MELVIN F. JAGER

DENNIS M. DONOHUE
Chief Senior Litigation Counsel
U.S. Department of Justice, Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . iii, iv

APPENDIX.. . . . . . . . . . . v

INTRODUCTION . . . . . . . . . . 2

STATEMENT . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . 10

I. Jager's Report Should Be Excluded Because It Is Untimely . . . . . . . . . . 10

II. Jager's Report Is No More Than Legal Arguments Dressed Up As Expert Testimony . . . . . . . . . . 11

III. Jager's Opinion Testimony Will Not Assist The Court. . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Abbott Laboratories v. Brennan*,
952 F.2d 1346 (Fed. Cir. 1991) . . . . . 12

*Adalman v. Baker, Watts & Co.*,
807 F.2d 359 (4th Cir. 1986) . . . . . 13

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997). . . . . . 12

*Burkhart v. Washington Metropolitan Area Transit Authority*,
112 F.3d 1207 (D.C. Cir. 1997). . . . . . 12, 13

*Casper v. SMG*,
389 F.Supp.2d 618 (D.N.J. 2005) . . . . . 14, 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) . . . . . 11

*In re Initial Pub. Offering Sec. Litig.*,
174 F. Supp. 2d 61 (S.D.N.Y. 2001) . . . . . 14

*Kuhmo Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999).. . . . . . 11

*Loeb v. Hammond*,
407 F.2d 779 (7th Cir. 1969) . . . . . 13

*Marx & Co. v. Diners' Club, Inc.*,
550 F.2d 505 (2d Cir. 1977). . . . . . 12, 13

*Montgomery v. Aetna Cas. & Sur. Co.*,
898 F.2d 1537 (11th Cir. 1990) . . . . . 13

*Moore v. Ashland Chemical Inc.*,
151 F.3d 269 (5th Cir. 1998).. . . . . . 12

*Nieves-Villanueva v. Soto-Rivera*,
133 F.3d 92 (1st Cir. 1997). . . . . . 12, 13

*Owen v. Kerr-McGee Corp.*,
698 F.2d 236 (5th Cir. 1983). . . . . . 13

*Pelletier v. Main Street Textiles*,
470 F.3d 48 (1st Cir. 2006). . . . . . . . . . . 12

*Peterson v. City of Plymouth*,
60 F.3d 469 (8th Cir. 1995) . . . . . . . . . . . 13

*Simmons v. Johnson*,
2008 U.S. Dist. LEXIS 11074 (M.D. La. February 14, 2008). . . . . . . . . . . 11

*Sparton v. United States*,
77 Fed. Cl.1, 7 (Fed. Cl. 2007) . . . . . . . . . . . 13

*Specht v. Jensen*,
853 F.2d 805 (10th Cir. 1988) . . . . . . . . . . . 14

*The Pinal Creek Group v. Newmont Mining Corp.*,
352 F.Supp.2d 1037 (D.Ariz. 2005) . . . . . . . . . . . 12

*United States v. Curtis*,
782 F.2d 593 (6th Cir. 1986) . . . . . . . . . . . 12, 13

*United States v. Leo*,
941 F.2d 181(3rd Cir. 1991). . . . . . . . . . . 13

*United States v. Prigmore*,
243 F.3d 1, 18 n.3 (1st Cir. 2001). . . . . . . . . . . 12

*United States v. Vreeken*,
803 F.2d 1085 (10th Cir. 1986). . . . . . . . . . . 13

*Ward v. Westland Plastics, Inc.*,
651 F.2d 1266 (9th Cir. 1980). . . . . . . . . . . 13

**Federal Statutes**

26 U.S.C. Section 6103. . . . . . . . . . . 7

**Federal Rules of Evidence**

702 . . . . . . . . . . . 11, 15

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Nos. 06-245T, 06-246T, and 06-247T
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

______________

## APPENDIX

| | | |
|---|---|---|
| Exhibit 1 | Expert Report of Melvin F. Jager, June 29, 2007. | Pages 001-032 |
| Exhibit 2 | Deposition Transcript of Melvin Jager, August 2, 2007. | Pages 033-087 |
| Exhibit 3 | Pages 51 through 53, deposition of Gary Woods, June 21, 2007. | Pages 088-089 |
| Exhibit 4 | Powerpoint presentation presented to Gary Woods. | Pages 090-104 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Nos. 06-245T, 06-246T, and 06-247T**
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF MELVIN F. JAGER**

Plaintiffs seek to rely on improper expert witness testimony from a lawyer, Melvin F. Jager ("Jager"), to try to support its case. Jager's report is untimely. Moreover, Jager offers nothing more than legal analysis and legal opinion dressed up as expert testimony. Jager's report is styled as a rebuttal report, but it rebuts nothing and in fact brings up a completely new issue. Thus, the United States never had an opportunity to rebut Jager's report. For this reason and also

because it is black-letter law that expert testimony on the law is inadmissible at trial, the United States moves this Court to enter an order precluding Plaintiffs from introducing at trial the expert report and testimony of Jager.

## INTRODUCTION

Pursuant to the Court's order of May 17, 2007, the parties exchanged initial expert reports on June 1, 2007, and rebuttal expert reports on July 2, 2007. Plaintiffs submitted the report of Melvin F. Jager, an attorney, on July 2, 2007. Upon review of the expert report prepared by Jager, it is clear that he is attempting to provide legal analysis and a legal opinion to the Court. After the submission of Jager's report, the United States deposed Jager. During this deposition, the fact that Jager is improperly opining on the law was further illuminated. Although Jager's report was served on the date for rebuttal report, Jager's report is not a rebuttal report, nor could it be, because Jager had not read any of the government's initial expert reports and addressed none of their opinions and analyses. Jager's report is not even styled as a rebuttal report, but rather simply as "Expert Report of Melvin F. Jager". Moreover, Jager's report deals with an issue not dealt with in the government's expert reports, *i.e.*, does the COBRA strategy constitute some kind of intellectual property under intellectual property law. Even under the heroic assumption that the issue of whether the COBRA tax strategy constitutes some kind of intellectual property is somehow relevant to this case, Jager's report is untimely and is also no more than a legal brief. Jager's expert witness testimony is therefore improper for multiple reasons and should be excluded.

## STATEMENT

Jager is a practicing intellectual property lawyer.[1] Just what his report is about, however, is not altogether clear. His report states that he "discusses (1) whether the Investment and Tax Strategy [*i.e.*, the COBRA tax strategy] can be categorized as intellectual property, and (2) whether an appropriate compensation structure for use of intellectual property is a percent of the potential benefit it enables."[2] Jager then goes on to describe four basic kinds of intellectual property, *i.e.*, patents, trademarks, copyrights, and trade secrets.[3] Jager then says that he knows of no patents, trademarks, or copyrights which pertain to COBRA, which leaves only the question of whether COBRA could be characterized as a trade secret.[4] At first blush, it appears that Jager concluded that COBRA was a trade secret. He concludes "that the Investment and Tax Strategy . . . had the characteristics of a trade secret at the time the strategy was implemented."[5] In his deposition, however, it became clear that Jager knew little, if anything, about COBRA, and was merely opining on law. Specifically, Jager seemed to backtrack and testify that his report did not actually determine whether or not COBRA was a trade secret. At deposition, Jager testified that "[m]y assignment was not to determine in the absolute sense that this was – this business strategy was something that was a trade secret in the ultimate or abstract

---

[1]*See* Expert Report of Melvin F. Jager dated June 29, 2007, attached as Gov. Ex. 1 (hereinafter the "Jager Report").

[2]Jager Report, Gov. Ex. 1, p.3.

[3]Jager Report, Gov. Ex. 1, pp. 5-8.

[4]*Id.*

[5]Jager Report, Gov. Ex. 1, p.19.

sense."[6]

Jager's deposition made clear that he had not reviewed the record in COBRA and had virtually no knowledge thereof. Exhibit B of the Jager Report, which lists the documents which Jager reviewed, reveals that he reviewed only a minuscule fraction of the voluminous record in this case, and while his report is replete with legal citations, it contains only a handful of citations to the record. When asked at deposition whether anyone had told him that there were well over a million pages of documents in the record in this matter, Jager responded "[n]o, and I'm glad they didn't."[7] During the deposition, when the Government asked if Jager could explain the COBRA strategy, Jager responded:

> Probably not. It has been explained to me and I've been told to assume things, which I as an engineer and noneconomic person did, in fact, assume. It had something to do – and I think I mentioned it briefly in the assignment or the background of the report. It has something to do with a purchase of options and then the sale of options or puts and calls and then the conversion of these to a partnership and then to an S Corporation and then the generation of potential income profit and then potential tax savings. That's in general terms my understanding of it.[8]

Beyond that (which itself is incorrect[9]), however, Jager apparently had no knowledge of

---

[6] Deposition of Melvin F. Jager, dated August 2, 2007, attached as Gov. Ex. 2, p. 149: 10-14 (hereinafter "Jager Deposition").

[7]Jager Deposition, Gov. Ex.2, p. 41:1.

[8]Jager Deposition, Gov. Ex.2, p. 42:9-19.

[9]Among the various inaccuracies with this description, the COBRA tax strategy does not result in the transfer of the offsetting options to an S Corporation. Ernst & Young used a powerpoint presentation to market COBRA. This presentation outlined the steps involved in the strategy. As can be seen in "Step Three" and "Step Four" of the presentation, the options expired while they were the property of the partnership and thus were never contributed to the subchapter S corporation. *See* Government Exhibit 4.

COBRA, as evidenced by this exchange:

> Q: (BY MR. DONOHUE) Mr. Jager, without looking at any documents, can you go through and describe to me the COBRA strategy?
>
> A. No, I could not except what I just generally described.
>
> Q. For example, you mentioned offsetting options. Do you recall that?
>
> A. Yes.
>
> Q. Do you – can you describe what the nature of these options were?
>
> A. It has been explained to me in general terms, but I can't describe them to you. As I've said many times, I'm not a tax man or an economic expert, so – I'm just a patent lawyer.
>
> Q. Do you know, for example, the strike prices and the difference in the strike prices between the long and short options in the strategy?
>
> A. No, I do not.
>
> Q. Do you know, what the position of the taxpayer (sic) regarding the basis in the short option when the short option and long options are assigned to a partnership?[10]
>
> A. No, I don't.
>
> Q. Do you know the approximate term of the options?
>
> A. No, I do not.
>
> Q. Do you know why the strategy has a step [for] the assignment of the options to a partnership?
>
> MS. GAVIOLI: Objection. Form.
>
> A. Those are tax and economic questions that I can't answer. That was not my specific assignment.

---

[10] Jager Deposition, Gov. Ex.2, p. 43:4-25.

Q. (BY MR. DONOHUE) Do you know what the business purpose is of the partnership to which the options are assigned?

MS. GAVIOLI: Objection. Form.

A. No, I do not.[11]

Jager summed it up nicely nearer the end of the deposition when he said "I didn't look into the exact COBRA strategy, so I can't answer those detailed questions you've been trying to ask me. I don't know the COBRA strategy that well."[12]

This background, or lack thereof, sets the stage for a better comprehension of Jager's Report. From pages nine through thirteen, Jager discusses whether COBRA can be seen, under intellectual property law, as a trade secret. Jager states that there are four key characteristics of a trade secret, to wit, novelty, secrecy, security, and value.[13] Relying almost wholly on James Pooley's *Trade Secrets*, Law Journal Press, 1997, Jager comes to the conclusion that COBRA has the characteristics of a trade secret. As pointed out above, however, what Jager means by this is a bit obscure because, according to his deposition, he is not actually concluding that COBRA is, indeed, a trade secret. Moreover, given Jager's lack of understanding of COBRA, his conclusions, whatever these conclusions are supposed to mean, seem devoid of foundation. For example, he bases his conclusion that COBRA was novel, *inter alia*, on the basis that Ernst & Young added enhancements to the tax strategy (which it presumably originally learned of from Jenkens & Gilchrist).[14] As became clear in the deposition, however, Jager had no idea what

---

[11]Jager Deposition, Gov. Ex.2, p. 44:1-14.

[12]Jager Deposition, Gov. Ex.2, p. 154:14-17.

[13]Jager Report, Gov. Ex. 1, p. 9.

[14]*Id.*

these enhancements were or, in fact, if Ernst & Young had really made enhancements:

> Q. Specifically referring to the enhancements we have made to the strategy, what's your understanding as to the enhancements that Ernst & Young made to the strategy.
>
> A. I couldn't describe what they are. I was relying only from my very general purposes of the fact that they added enhancements or at least they said they added enhancements. I couldn't tell you what those enhancements might be.[15]

Moreover, Jager based his conclusion that COBRA was novel, in part, on his assumption that Ernst & Young was the only company providing this strategy.[16] Jager, however, was not familiar with offsetting-options tax shelters marketed by other accounting firms which are very similar to COBRA.[17]

Regarding the secrecy prong, Jager based his conclusions, *inter alia*, on the assumption that a trade secret remains secret even if disclosed to the IRS. Jager based this conclusion on 26 U.S.C. § 6103.[18] As became clear in the deposition, however, Jager was apparently unaware that Section 6103 merely prevents the government from disclosing a taxpayer's personal information. It does not prevent the IRS from describing tax shelters in public announcements:

> Q. (BY MR. DONOHUE) But I was just referring to the secrecy requirement. And for purposes of rendering an opinion, if the Internal Revenue Service announced the features of the strategy, would that affect your opinion as to whether or not the strategy was secret?
>
> MS. GAVIOLI: Objection. Form.

---

[15]Jager Deposition, Gov. Ex.2, p. 116:6-14.

[16]Jager Report, Gov. Ex. 1, p.10.

[17]*See* Jager Deposition, Gov. Ex.2, pp. 124-126.

[18]Jager Report, Gov. Ex. 1, p.11.

A. If they in fact announce it?

Q. (BY MR. DONOHUE) Yes.

A. And published it in the --

Q. Yes.

A. – New York Times or whatever?

Q. Well, in an announcement.

A. Well, it's a public document.

Q. Yeah, a public document.

A. Well, then, you know, that would be a major factor to look at because you've just defined the matter as being in the public domain and that could change things, but it would be one factor you would have to look at.[19]

In the section of the Jager Report discussing value, Jager states that his "opinion is that, at the time the Investment and Tax Strategy was implemented, it had sufficient value to meet the value-related characteristic of a trade secret. This is evidenced by the fact that *clients paid to use the Investment and Tax Strategy*."[20] [Emphasis in original]. As mentioned previously, it is not at all clear how this report is relevant to this case. It seems, however, that Plaintiffs may wish to use this report as some perverse, if not absurd, justification for why it paid fees to the promoters of the COBRA strategy based on a percentage of their desired tax loss.[21] Jager opines that it is common to pay a fee for the use of intellectual property based on a percent of its potential

[19]Jager Deposition, Gov. Ex.2, p. 168:5-23.

[20]Jager Report, Gov. Ex. 1, p.12.

[21]Taxpayers purchasing COBRA paid aggregate fees and transaction costs of 9.5% of their desired tax loss, consisting of 3% to Jenkens and Gilchrist, 1.5% to Ernst & Young, and 5% to the Deutsche Bank.

economic benefits.[22] Given that economic benefits derived from the COBRA tax strategy were tax related, Jager reasons that the tax losses arising from the COBRA tax strategy provided the participants with valuable benefits in the form of huge tax savings. On page 13 of his report, Jager calculates the total promoter fees and transaction costs paid by the participants as a percent of their tax savings, which costs, according to him, amounted to 9.71%, of their anticipated tax savings – which he says amounted to roughly $22.7 million.[23]

Jager devotes the remaining seven pages of his report to support his legal conclusion that trade secrets have compensable value, and that fees paid for such value are frequently based on a percent of the profits realized from the use of the intellectual property. In this regard, he notes that a "25% Rule of Thumb" is a traditional starting point for negotiating how much use of a trade secret is worth. To support this conclusion, he cites and relies upon his understanding of statutory law (1985 Amendments to the Uniform Trade Secrets Act) as well as case law.[24] Here again, this is a purely legal argument and, as discussed below, is inadmissible as an expert report.

## ARGUMENT

### I. <u>Jager's Report Should be Excluded Because It is Untimely</u>

As mentioned above, by order of this Court, the parties exchanged initial expert reports on June 1, 2007, and exchanged rebuttal reports on July 2, 2007. Plaintiffs served Jager's report

---

[22] Jager Report, Gov. Ex. 1, p.14.

[23] Jager Report, Gov. Ex. 1, p.13.

[24] Jager Report, Gov. Ex. 1, p. 17-18.

on the United States on July 2, 2007. Jager's report, however, is not a rebuttal report, nor is it so styled. It does not address any issue brought up in the government's expert reports. Nor could it have. As Jager testified in the deposition:

> Q. Do you – as you sit here today, do you have any knowledge as to what are the opinions and conclusions of the Government's expert witnesses?
>
> A. Well, I cannot tell you what any one of these reports say because I didn't read them, but my assignment was more in terms of principals or contingents, if you will, instead of specifically responding to any particular line of testimony or point of testimony.
>
> My – the assignment that I understood is what I addressed in the reports is to look at the – the particular tax strategy from an intellectual property standpoint. And what exactly the Meadows people were going to do with that opinion afterwards, whether it's a rebuttal report or not, is something that I – that's not my jurisdiction, if you will.
>
> Q. Okay. Well, do you know whether any of the Government's expert witnesses opined on whether or not the tax strategy at issue in this litigation was or was not patentable or eligible for trade secret protection?[25]
>
> A. Not directly. I was just asked to opine that it – whether or not it was. And I wasn't told specifically that somebody was saying that it was or wasn't. This is not a patent case as I understand it. I would understand it more if you would turn it into a patent case.[26]

None of the government's experts opined on whether COBRA constituted some kind of intellectual property.[27] Jager never read the government's expert reports. The Jager report is not a rebuttal report. Rather, it is an untimely initial report which the United States never had an opportunity to rebut. Courts routinely refuse to admit untimely expert reports. See *Simmons v.*

---

[25] Jager Deposition, Gov. Ex.2, p. 26:1-25.

[26] Jager Deposition, Gov. Ex.2, p. 27:1- 6.

[27] Declaration of David Steiner, ¶ 3.

*Johnson, et al.*, 2008 U.S. Dist. LEXIS 11074 (M.D. La. February 14, 2008), and cases cited therein. Similarly, the Court should reject Jager's report as untimely.

## II. Jager's Report Is No More than Legal Arguments Dressed up as Expert Testimony

The Federal Rules of Evidence limit admissibility of expert testimony to situations where the expert's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue."[28] If a witness has specialized knowledge that will be *helpful to the trier of fact*, and he qualifies as an expert, then the witness may testify to his specialized knowledge "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[29] Thus, "under the Rules the trial judge must ensure that any and all scientific testimony is or evidence admitted is not only relevant but reliable."[30] The trial judge's "basic gatekeeping obligation," however, applies to "all expert testimony," and not only to scientific testimony.[31] The burden to show that an expert witness should not be excluded is on the party offering the expert.[32]

This Court has "broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury."[33] In construing this rule, the Court of

---

[28]Fed. R. Evid. 702.

[29]*Id.*

[30]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

[31]*Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

[32]*See, e.g., Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

[33]*Pelletier v. Main Street Textiles*, 470 F.3d 48, 54 - 55 (1st Cir. 2006). *See also Abbott Laboratories v. Brennan* 952 F.2d 1346, 1352 (Fed. Cir. 1991) (trial court has broad discretion to admit or exclude expert testimony).

Appeals for the Sixth Circuit succinctly described the proper scope of expert testimony:

> Experts are supposed to interpret and analyze factual evidence. They do not testify about the law because the judge's special knowledge is presumed to be sufficient . . . .[34]

Here, the "expert legal opinions" of Jager clearly impinge on the role of this Court, and should be excluded.

As previously noted, it is black-letter law that legal "experts" may not usurp the court's role by providing legal instruction.[35] As one court succinctly noted, "[t]he principle that legal opinion evidence concerning the law is inadmissible is so well-established that it is often deemed a basic premise or assumption of evidence law–a kind of axiomatic principle."[36] Testimony that consists of legal conclusions – the application of law to facts – is inadmissible because it does

---

[34]*United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986).

[35]*See, e.g.*, *Askanase v. Fatjo*, 130 F.3d 657, 672-673 (5th Cir. 1997) (lawyer not allowed to testify about whether, in his opinion, officers and directors breached their fiduciary duties – the Fifth Circuit court stated that parties may not use legal experts to "tell the trier of fact what to decide."); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (giving general explanation of "black-letter" legal expert exclusion); *United States v. Prigmore*, 243 F.3d 1, 18 n.3 (1st Cir. 2001) ("[e]xpert testimony proffered solely to establish the meaning of a law is presumptively improper"); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-510 (2d Cir. 1977) (court excludes opinion on interpretation and legal effect of sales contract).

[36]*The Pinal Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1042 (D.Ariz. 2005)(internal quotation marks omitted)(holding that a law professor's attempt to offer expert testimony on law regarding piercing the corporate veil in Maine constituted inadmissible legal opinion and was excluded since testimony merely discussed and applied the law). *See also Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("[e]ach courtroom comes equipped with a 'legal expert,' called a judge"). Thus, courts have uniformly prohibited testimony on legal issues. *See, e.g.*, *Nieves-Villanueva*, 133 F.3d at 100 (1st Cir. 1997); *Marx & Co., Inc.*, 550 F.2d at 509-10 (2d Cir 1977); *United States v. Leo*, 941 F.2d 181, 196 (3rd Cir. 1991); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 365-68 (4th Cir. 1986); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *Curtis*, 782 F.2d at 599 (6th Cir. 1986); *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995); *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1270 (9th Cir. 1980); *United States v. Vreeken*, 803 F.2d 1085, 1091 (10th Cir. 1986); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *Burkhart*, 112 F.3d at 1213 (D.C. Cir.).

not assist the trier of fact, but, instead, impermissibly invades the role of the court.[37]

As this Court has recently noted, "[i]n general, federal courts have found expert testimony on issues of law, either giving legal conclusion or discussing the legal implications of evidence, to be inadmissible. *Sparton v. United States*, 77 Fed. Cl.1, 7 (Fed. Cl. 2007). In *Sparton*, this Court held that the sole purpose of a law professor's proposed testimony was to advise the Court on how to interpret procurement regulations and how to apply a legal doctrine set forth in the case law. The Court held that such legal conclusions were in the province of the Court. Significantly, the Court emphasized that "[e]xpert testimony is an improper mechanism for offering legal arguments to the Court. Plaintiff's counsel can make each of the arguments proffered by Professor Nash during the trial. It would be unfair to Defendant for the Court to award Plaintiff's legal arguments the elevated stamp of 'expert.'" *Id* at 9.

The case of *Casper v. SMG*[38] is particularly instructive. In *Casper*, an antitrust case, plaintiff sought to have a law professor testify as an expert witness. Just as Jager does here, the expert in *Casper* "relies on case law and statutes, applying them to the contemporaneous documentary record and oral testimony . . . to answer legal questions."[39] The court in *Casper* held that the proposed testimony, whether it was characterized as addressing an issue of fact or

---

[37] *See, e.g., Burkhart*, 112 F.3d at 1212; *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant"); *Marx*, 550 F.2d at 510 (2d Cir. 1977) ("[S]uch testimony 'amounts to no more than an expression of the [witness's] general belief as to how the case should be decided" (quoting *McCormick on Evidence*, § 12 at 26-27)); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what result to reach.... A witness also may not testify to the legal implications of conduct").

[38] 389 F.Supp.2d 618 (D. N.J. 2005).

[39] *Id.* at 621.

law, was inadmissible. The court concluded by saying that plaintiff "is free when the time comes to make such arguments and offer such conclusions in legal memoranda, [but] he may not do so through the expert testimony of a law professor."[40]

Testimony "which articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case."[41] As stated by the Court in *Specht*:

> A witness cannot be allowed to give an opinion on a question of law. . . . In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge. . . . To allow anyone other than the judge to state the law would violate the basic concept.[42]

Against this backdrop of well-established and universally[43] applied legal precedent, the soundest path for the Court to follow is to exclude Jager's legal opinions from the trial.

As noted above, the analysis in Jager's report reads more like a legal brief – i.*e.*, citing law and applying law to facts – than independent expert analysis on an issue of fact that could possibly assist this Court, as required by Rule 702 of the Federal Rules of Evidence. In its legal briefs, Plaintiffs are free to advocate the various legal requirements for intellectual property and whether the COBRA tax strategy meets those requirements – although it is hard to fathom how

---

[40]*Id*. at 622.

[41]*Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

[42]*Id*. *at* 807 (citation omitted).

[43]"Every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Pub. Offering Sec. Litig*., 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001)(citing numerous cases).

such an argument is relevant to any issue in the case. At all events, Jager's report and testimony are not the vehicles through which these arguments can be made.

Summed up, Jager is improperly attempting to usurp the role of the Court in this case by continuously citing and analyzing law. The Court should exclude Jager's testimony on the law since it will not assist the trier of fact. *See* Fed.R.Evid. 702.

## III. Jager's Opinion Testimony Will Not Assist the Court.

The Court should exclude Jager's testimony on the law since it will not assist the trier of fact. *See* Fed.R.Evid. 702. For one thing, Jager is not only opining on the requirements of trade secret law but is also attempting to apply those requirements to the facts of record. However, Jager makes eminently clear that he has virtually no knowledge of the record in this litigation. Consequently, even assuming Jager were permitted to opine on whether the COBRA tax strategy was able to meet the requirements of trade secret law, Jager's opinion would not be helpful to the Court since he has virtually no knowledge of the record. Thus, his opinion could not possibly assist the Court, as is required by Rule 702 of the Federal Rules of Evidence. In trial and post trial briefs, Plaintiffs are free to argue that COBRA constituted a trade secret, assuming that has any relevance to this case. Expert witness reports and testimony are not the vehicles through which those arguments can be made.[44] Similarly, Plaintiffs here may retain and use Jager to assist in preparing the legal analysis and conclusions for his trial and post trial papers in this case. It would be error, however, to permit Jager to testify and opine on the law at the trial of this case.

---

[44]*See Casper v. SMG*, 389 F. Supp. 2d at 622 ("While Plaintiff is free when the time comes to make such arguments and offer such conclusions in legal memoranda, he may not do so through the expert testimony of a law professor.").

## CONCLUSION

The Jager Report is not a rebuttal report since it does not respond to any issue addressed in the expert reports of the United States. Instead it is a new report and, as such, is untimely and should be excluded. In any event, Plaintiffs are simply trying to improperly influence the Court by presenting ordinary legal argument dressed up as "expert" testimony. Instead of filing a brief to argue for their interpretation of the law, Plaintiffs are trying to use an expert witnesses to convince the Court that COBRA was a trade secret – apparently in a misguided attempt to justify their paying huge fees on the purchase of COBRA. Assuming, arguendo, that the issue of whether or not COBRA is a trade secret has relevance to any issue in this case, the obvious strategy is the hope that the Court will give Plaintiffs' legal argument more weight if the argument is presented through an "expert opinion." The Court should not allow Plaintiffs to thwart the Court's role and should preclude Plaintiffs from introducing Jager's untimely expert report and accompanying testimony at trial.

Respectfully submitted,

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7th, 2008, I electronically filed the foregoing **UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF MELVIN F. JAGER** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ David M. Steiner
David M. Steiner
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892