# Deutsche Bank AG New York Branch

17 April, 2000

**Foreign Exchange Digital Option Transaction**
Our ref: ex24627

MDM Ventures,LLC
Care of David Parse
DB Alex Brown
222 W.Adam's Suite 1900
Chicago,IL. 60606
312-424-6020

Deutsche Bank AG New York Branch
31 West 52nd Street
New York NY 10019

Telephone: 212-469-4035
Fax: 212-469-4465
Swift: DEUTUS 33

Ladies and Gentlemen:

The purpose of this letter agreement (this "Confirmation") is to confirm the terms and conditions of the Foreign Exchange Digital Option Transaction entered into between us ("Party A") and you ("Party B") on the Trade Date referred to below (the "Transaction"). The parties acknowledge and agree that B.T. Alex Brown has acted as introducing broker to Party A with respect to this Transaction. The Transaction consists of a number of elements as detailed below in Sections 1, 2(i) and (ii), 3(i) and (ii) and Section 4. Certain definitions and provisions which are applicable to more than one element of the Transaction are detailed in Section 1. The terms of the Transaction to which this Confirmation relates are as follows:

1. **Section 1 – General Terms**

| | |
|---|---|
| Notional Amount: | USD 12,600,000 |
| Trade Date: | 14th April 2000 |
| Termination Date: | 13 June 2000,subject to modification in accordance with the Following Business Day Convention |
| Business Days: | In New York |
| Calculation Agent: | Party A |
| Currency Pair: | USD/CHF |

2. **Section 1 – First Digital Option Transaction**

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | Zero |
| Party B Initial Exchange Amount: | USD 6,300,000 |
| Initial Exchange Date: | 18 April 2000 subject to adjustment in accordance with the Following Business Day Convention. |

(ii) Final Exchange Provisions;

| | |
|---|---|
| Party A Final Exchange Amount: | USD 12,600,000 |
| Party B Final Exchange Amount: | Zero |
| First Range Level: | CHF 1.5835 per USD 1.0000 |
| First Rate Determination Date. | Means the Termination Date |
| Final Exchange Date: | 15 June 2000, subject to adjustment in accordance with the Following Business Day Convention |

(A) If the Spot Rate is, on the First Rate Determination Date at 10:00 a.m. local time in New York, less than or equal to the First Range Level (such event being a "First Digital Option Trigger Event"), then upon the occurrence of such First Digital Option Trigger Event, (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a First Digital OptionTrigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of the First Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and, if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the First Digital Option Trigger Event and provide details of the occurrence of such First Digital Option Trigger Event. A failure to give such notice shall not, however, prejudice the occurrence of the First Digital OptionTrigger Event.

24627

APR-17-2000 09:29 DEUTSCHE BANK NY 212 469 4465 P.11/14

3. Section 1 – Second Digital Option Transaction

(i) Initial Exchange Provisions:

| | |
|---|---|
| Party A Initial Exchange Amount: | USD 8 111.000 |
| Party B Initial Exchange Amount: | Zero |
| Initial Exchange Date: | 18 April 2000, subject to adjustment in accordance with the Following Business Day Convention |

(ii) Final Exchange Provisions:

| | |
|---|---|
| Party A Final Exchange Amount: | Zero |
| Party B Final Exchange Amount: | USD 12,174,750 |
| Second Range Level | CHF 1 5837 per USD 1 0000 |
| Second Rate Determination Date: | Means the Termination Date |
| Final Exchange Date: | 15 June 2000, subject to adjustment in accordance with the Following Business Day Convention |

(A) If the Spot Rate is, on the Second Rate Determination Date at 10:00 a.m. local time in New York, less than or equal to the Second Range Level (such event being a "Second Digital Option Trigger Event"), then upon the occurrence of such Second Digital Option Trigger Event (i) Party A shall pay to Party B the Party A Final Exchange Amount and (ii) Party B shall pay to Party A the Party B Final Exchange Amount. In determining whether a Second Digital Option Trigger Event has occurred, a particular spot rate shall be disregarded if the Calculation Agent, acting in good faith considers that it would not be commercially reasonable to take account of it.

(B) Upon the occurrence of a Second Digital Option Trigger Event, the Calculation Agent shall notify the other party orally (and if requested, shall confirm such notice in writing by telex or telecopy) of the occurrence of the Second Digital Option Trigger Event and provide details of the occurrence of such Second Digital Option Trigger Event. A failure to give such notice shall not however prejudice the occurrence of the Second Digital Option Trigger Event.

Section 2 - Other Provisions

(i) For the purposes of this Transaction only, the following provision shall apply:

"Subparagraph (ii) of Section 2 (c) of the ISDA Form shall not apply to the First Digital Option Transaction and the Second Digital Option Transaction.

(ii) Offices:

(a) The Office of Party A for the Transaction is New York; and
(b) The Office of Party B for the Transaction is Delaware.

3. **Representations:**

Each party represents to the other party as of the date that it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

(i) **Non-Reliance.** It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether the Transaction is appropriate or proper for it based upon its own judgement and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(ii) **Assessment and Understanding.** It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts the terms and conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of the Transaction.

(iii) **Status of Parties.** The other party is not acting as a fiduciary for or adviser to it in respect of this Transaction.

4. **ISDA Agreement:**

If you and we are parties to either an ISDA Interest Rate and Currency Exchange Agreement (for which purposes this Transaction shall constitute a "Swap Transaction") or an ISDA Master Agreement (in each case an "Agreement") then this Confirmation supplements forms part of and is subject to such Agreement. If you and we are not yet parties to an Agreement then this Confirmation evidences a complete and binding agreement between Party A and Party B as to the terms of the Transaction to which this Confirmation relates. In addition Party A and Party B agree to use all reasonable efforts promptly to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border) (the "ISDA Form") with such modifications as you and we will in good faith agree. Upon execution by Party A and Party B of such an agreement, this Confirmation will supplement, form part of, and be subject to that agreement. All provisions contained or incorporated by reference in that agreement upon its execution will govern this Confirmation. Until we execute and deliver that agreement, this Confirmation, together with all other documents referring to the ISDA Form (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation) shall supplement, form a part of, and be subject to an agreement in the form of the ISDA Form as if we had executed an agreement on the Trade Date of the first such Transaction between us in such form with the Schedule thereto (i) specifying only that (a) the governing law is New York law and (b) the Termination Currency is U.S., Dollars, (ii) incorporating the addition to the definition of "Indemnifiable Tax" contained in (page 48 of) the ISDA "Users Guide to the 1992 ISDA Master Agreements" and (iii) incorporating any other modifications to the ISDA form specified below.

5. **Definitions:**

The definitions and provisions contained in the 1991 ISDA Definitions (as amended by the 1997 Supplement) as published by the International Swaps and Derivatives Association, Inc (the "Swap Definitions") and in the 1998 FX and Currency Option Definitions (the "FX Definitions") as published by the International Swaps and Derivatives Association, Inc. the Emerging Markets Traders Association and The Foreign Exchange Committee (the "1998 Definitions" and together with the Swap Definitions, the "Definitions"), are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the 1998 Definitions, the 1998 Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter or telex substantially similar to this letter, which letter or telex sets forth the material terms of the Transaction to which this Confirmation relates and indicates your agreement to those terms.

Yours faithfully,
for and on behalf of
Deutsche Bank AG, New York

By: [signature]
Name: Rick Pychewicz
Title: VP

By: [signature]
Name:
Title:

Confirmed as of the date first above written:
MDM Ventures,LLC

By: Marc D. Murphy By: [signature], Attorney-in-Fact
Name:
Authorised Signatory

By: ____________________
Name:
Authorised Signatory

For any query relating to this Confirmation please contact : 212-469-4033

APP. A
Page 74

24627