**Internal Revenue Manual**

# 10 — Audit Techniques - Development of Potential Penalty Issues for Tax Shelter Cases

## Objective

In developing a penalty, the examiner needs to determine what efforts the taxpayer made to determine the correctness of the return position. The examiner's objective is to determine accountability for the return position, and determine whether the paper trail corroborates the taxpayer's position.

Of course, every effort should be made to apply penalties in a fair and consistent manner. Penalties should not be applied as "bargaining chips" or because the taxpayer was uncooperative during the examination.

## Inquiries relating to accuracy-related penalty

Examiners should obtain information and documentation relating to the following:

*Does the taxpayer have an underpayment of tax?*

- What was the amount shown on the return? Did the taxpayer file a qualified amended return?
- Are there any amounts assessed before the return was filed that were not shown on the return, such as termination assessment under IRC §6861 or a jeopardy assessment under IRC §6861?
- Are there any rebates?

*Was the taxpayer negligent?*

- Did the taxpayer make a reasonable attempt to comply with the Federal tax laws?
- Is the return position reasonably based on one or more authorities? What type of authority? Does the taxpayer have contemporaneous documentation to demonstrate consideration of authorities?
- Did the taxpayer disclose the return position on Form 8275? Did the taxpayer disclose a reportable transaction on Form 8886?
- Did the taxpayer keep adequate books and records?
- Can the taxpayer substantiate the items properly?
- Is the transaction one which would appear to a reasonable person "too good to be true"?
- Does the taxpayer have an approval process to enter into a transaction of the size or dollar amount involved? Did the taxpayer comply with this approval process? Obtain copies of approval documents. Compare documents to similar approval documents of like size company or taxpayer transactions for the same time period.
- Who was responsible for the decision to take the reporting position? Did the taxpayer obtain advice from outside counsel or other tax professional? From whom? What is the relationship, if any, between the outside counsel and the promoter? Did the promoter refer the taxpayer to outside counsel? Did the taxpayer's inside counsel review or comment on the tax aspects of the transaction? Did the taxpayer obtain the views of tax professionals other than the promoter, the promoter's agent or persons otherwise having a financial interest in the promotion?
- After the transaction began, what did the taxpayer do to monitor its progress? Did the taxpayer have a "checksheet" or evaluation process in place to see that the various steps in the transaction were accomplished?
- Did the taxpayer obtain an appraisal or other valuation?

EXHIBIT
tabbies
E

PL.SS.APP00063

- Are there in-house, tax advisor and/or consultant memoranda questioning the proposed return position?

*Did the taxpayer disregard a rule or regulation?*

- Did the taxpayer carelessly, recklessly or intentionally disregard a revenue ruling or a notice (other than a notice of proposed rulemaking)?
- Does the taxpayer's position which is contrary to a revenue ruling or notice have a 1 in 3 likelihood of being sustained on the merits?
- Did the taxpayer disclose the position that is contrary to a revenue ruling or notice on Form 8275?
- Is the transaction reportable?
- Did the taxpayer carelessly, recklessly or intentionally disregard a regulation?
- Is the taxpayer taking the position that a regulation is invalid?
- Does the position represent a good faith challenge to a regulation?
- Did the taxpayer disclose the position that is contrary to a regulation on Form 8275-R? Did the taxpayer disclose the position that the regulation is invalid on Form 8275-R?
- Did the taxpayer disclose a reportable transaction on Form 8886?
- Is the Service's position which is believed to be contrary to the taxpayer's position a longstanding position or very recent position? In what manner was the Service's position disseminated?
- What evidence is there in the return preparation workpapers that the taxpayer knew about the existence of a contrary position?

*Is there a substantial understatement?*

- What is the correct income tax liability?
- What is the tax reported by the taxpayer?
- Is the taxpayer entitled to a reduction in the amount of the understatement under IRC §6662(d)(2)(B)?

Is the amount of the understatement $5,000 ($10,000 for a corporation)

- or 10% of the tax required to be shown on the return?

*Is the transaction a tax shelter?*

- Is the transaction a plan or arrangement? Is a significant purpose of the transaction to avoid or evade Federal income tax?
- Is there a legitimate business purpose other than tax savings? To what extent was the taxpayer influenced by tax benefits as opposed to investment potential?
- Why did the taxpayer enter into the transaction?
- Why did the taxpayer structure the transaction, adopt the accounting treatment or characterize the assets in the manner that the taxpayer used?
- To what extent did the taxpayer take steps to conceal the transaction (e.g., netting inside a partnership or grantor trust)?

*If the taxpayer is **not** a corporation, did he have substantial authority and a reasonable belief that the tax treatment of the item was more likely than not the proper treatment?*

***Substantial Authority:***

- What authority supports the taxpayer's position? What authority contradicts the taxpayer's position? Note that different authorities carry different weight, e.g., a regulation holds greater weight than a private letter ruling.
- Did the taxpayer request, and rely on, a private letter ruling or a determination letter?
- Does the taxpayer have contemporaneous documentation?

***Reasonable Belief:***

- Did the taxpayer analyze the facts and authorities? Did the taxpayer reasonably conclude in good faith that there is a greater than 50 percent likelihood that the tax treatment of the item will be upheld if

challenged by the Service?

- Did the taxpayer reasonably rely upon the opinion of a tax advisor? (See below for inquiries relating to reliance on a tax opinion.) Did the tax advisor unambiguously conclude that there is a greater than 50 percent likelihood that the tax treatment of the item will be upheld if challenged by the Service?

*Is there a valuation misstatement?*

- What is the value of the property? What is the claimed value of the property?
- What is the adjusted basis of the property? What is the claimed adjusted basis of the property?

*Is the underpayment due to fraud?* The examiner should coordinate closely with local Chief Counsel attorneys on cases involving potential fraud.

- What was the taxpayer's intent? Did the taxpayer intend to evade tax? Was the underpayment due to inadvertence, reliance on incorrect advice, honest indifference, negligence or carelessness?

## Inquiries relating to Reasonable Cause & Good Faith

*What effort did the taxpayer make to assess the proper tax liability?*

- Did the taxpayer rely on an erroneous information return? Is the information contained on the information return inconsistent with other information reported or otherwise furnished to the taxpayer or with the taxpayer's knowledge of the transaction?
- Was the underpayment due to an isolated mathematical error?
- Is the taxpayer's position one in which the Service would issue a private letter ruling or determination letter? If so, did the taxpayer request a private letter ruling or determination letter? What was the outcome of the private letter ruling or determination letter, e.g., favorable, adverse, withdrawal? Did the taxpayer abide by the private letter ruling or determination letter?
- Did the taxpayer attempt to conceal the transaction? If applicable, was the M-1 analysis misleading? Did the taxpayer net transactions or provide incorrect or misleading labels?
- Did the taxpayer provide the difference between financial statements and tax returns without concealment?
- Were there assurances or statements made to a third party that characterized the transaction differently for tax purposes?

*What is the sophistication of the taxpayer?*

- What is the taxpayer's background, business experience, sophistication and education?
- Was there an honest misunderstanding of fact or law that is reasonable in light of the facts?
- Does the taxpayer have a history of entering into sophisticated or complex tax related transactions?

*Did the taxpayer rely upon the advice of a tax advisor?* See below for inquiries relating to tax advice.

*Are there other facts and circumstances that might apply that mitigate the taxpayer's behavior or suggest that a penalty should be imposed?*

- Did the taxpayer disclose under Announcement 2002-2, even though the taxpayer was not eligible to do so? While taxpayers cannot avoid penalty consideration under Announcement 2002-2, disclosure could be a mitigating factor.
- Has the taxpayer engaged in other listed transactions or is this the only listed transaction the taxpayer has attempted?
- Was the transaction listed after the taxpayer filed the return? Did the taxpayer notify the Service of the position after it was listed?
- Are there any meeting notes, board statements, etc., consistent with the taxpayer's assertion of reasonable cause and good faith?
- If the transaction is related to another segment of the business, was the other unit consulted or informed?
- Were there assurances or statements made to third parties that characterized the transaction in a

manner different from the characterization for tax purposes?
- Was the taxpayer's participation in the transaction subject to a confidentiality agreement? Provide details.

*In the case of a **corporation** with a **substantial understatement** attributable to a tax shelter item:*

- Can the corporation show legal justification?

  ***Substantial Authority:***
  - What authority supports the taxpayer's position? What authority contradicts the taxpayer's position? Note that different authorities carry different weight, e.g., a regulation holds greater weight than a private letter ruling.
  - Did the taxpayer request, and rely on, a private letter ruling or a determination letter?
  - Does the taxpayer have contemporaneous documentation?

  ***Reasonable Belief:***
  - Did the taxpayer analyze the facts and authorities? Did the taxpayer reasonably conclude in good faith that there is a greater than 50 percent likelihood that the tax treatment of the item will be upheld if challenged by the Service?
  - Did the taxpayer reasonably rely upon the opinion of a tax advisor? (See below for inquiries relating to reliance on a tax opinion.) Did the tax advisor unambiguously conclude that there is a greater than 50 percent likelihood that the tax treatment of the item will be upheld if challenged by the Service?
- Did the corporation participate in a tax shelter lacking significant business purpose?

Are the benefits claimed by the taxpayer unreasonable compared to the benefits? What were the risks to the taxpayer? Did the taxpayer have an out-of-pocket investment?

## Inquiries Relating to Reliance on Advice

When a taxpayer claims reasonable reliance on the advice of a tax advisor, always obtain a copy of the opinion (s). If the taxpayer refuses to turn over the opinion(s) on privilege or other grounds, contact your subject matter technical advisors or local Chief Counsel Attorney.

- How did the taxpayer choose the tax advisor? Did they have a long standing relationship? Did a promoter or other person with a financial interest in the transaction refer the taxpayer to the advisor?
- Does the taxpayer have a regular tax advisor? If the taxpayer did not consult with its regular tax advisor, why not?
- Did the advisor prepare the return? Why did the taxpayer use a different person to prepare the return?
- How was the compensation for the outside advice determined (e.g., time based, a flat fee, a percentage of the tax savings, etc.)? Was there a compensation arrangement, such as a referral fee or fee sharing arrangement, between the author of the opinion and the person promoting, marketing or recommending the tax shelter? Did the taxpayer have knowledge of any fee arrangement between the advisor and a promoter? Obtain a copy of the invoice to identify the source of the opinion, number of hours or other method used to determine the fee and the date the work was done.
- What are the credentials of the tax advisor? Does the tax advisor have any special knowledge or expertise relating to the transaction or the underlying industry? Did the advisor do its own research?
- Was the advice in writing? In what format, e.g., opinion letter, offering materials, e-mail, etc.? Did the taxpayer discuss the opinion or advice with the author of the advice? If not, who explained the advice, e.g, in-house counsel? Are there any contemporaneous notes or minutes relating to these discussions?
- Is the advice dated? Are there contemporaneous documents that discuss the transaction or the advice?
- Is there an engagement letter defining the scope of the opinion or advice? Does the opinion or advice reflect the intent of the parties as outlined in the engagement letter? Obtain a copy of the engagement letter to determine any limitations or restrictions placed on the advice agreed to by the advisor and taxpayer.
- Does the opinion identify and ascertain the facts and determine which are relevant? What was the source of the documents used to ascertain the facts? Are the facts in the opinion supported by the documents provided to the advisor?
- Are pertinent facts assumed, and, if so, are the assumptions reasonable? For example, if the opinion

depends on a valuation, has an independent confirmation of the valuation been made?

- Does the opinion relate the applicable law (including potentially applicable judicial doctrines such as the step transaction, business purpose, economic substance, substance over form, and sham doctrines) to the relevant facts?
- If the opinion is based upon hypothetical facts and assumptions, did the taxpayer seek independent advice based on individual circumstances?
- Was the opinion or advice marketed to several taxpayers? Were there additional marketing and/or offering materials? Obtain a copy of the marketing and/or offering materials.
- Did any of the materials contain disclaimers, disclosures or other warnings that would suggest the taxpayer should obtain outside advice based on individual circumstances?
- Does the opinion consider all material Federal tax issues? Is the opinion limited to one or more material Federal tax issue?
- Did the taxpayer seek independent legal advice on the feasibility of the transaction or merely rely upon a legal opinion provided by the outside vendor/promoter of the product at issue or an agent of that vendor/promoter? Did the taxpayer obtain an appraisal or a valuation?
- What kind of scrutiny did the taxpayer perform of the outside advice before it was adopted? Did the taxpayer have meetings or prepare analyses?

Did the taxpayer actually follow the advice? Did the taxpayer enter into a transaction as described in the advice, or were there material differences between the transaction described in the advice and the transaction into which the taxpayer entered? Policy Statement 20-1 (formerly P-1-18)

## Effective Date: June 29, 2004

(1.)**Penalties enhance voluntary compliance:** The Internal Revenue Service has a responsibility to collect the proper amount of tax revenue in the most efficient manner. Penalties provide the Service with an important tool to achieve that goal because they enhance voluntary compliance by taxpayers. In order to make the most efficient use of penalties, the Service will design, administer, and evaluate penalty programs based on how those programs can most efficiently encourage voluntary compliance.

(2.)Penalties encourage voluntary compliance by: (1) demonstrating the fairness of the tax system to compliant taxpayers; and (2) increasing the cost of noncompliance

(3.)In order to effectively use penalties to encourage compliant conduct, examiners and their managers must consider the applicability of penalties in each case, and fully develop the penalty issue when the initial consideration indicates that penalties should apply. That is, examiners and their managers must consider the elements of each potentially applicable penalty and then fully develop the facts to support the application of the penalty, or to establish that the penalty does not apply, when the initial consideration indicates that penalties should apply. Full development of the penalty issue is important for Appeals to sustain a penalty and for Counsel to successfully defend that penalty in litigation.

(4.)Abusive transactions, frivolous returns, and other abusive taxpayer conduct undermine the fairness and integrity of the federal tax system and undercut voluntary compliance. Thus, it is particularly important in those cases for examiners and their managers to consider the potential applicability of penalties, and to develop fully the facts to either support the application of the penalty or to demonstrate that penalties should not apply. Consistent development and proper application of the accuracy-related and fraud penalties in abusive transaction cases will help curb this activity by imposing tangible economic consequences on taxpayers who engage in those transactions. In addition, consistent development and proper application of the promoter and preparer penalties in abusive transaction cases will help curb this activity by providing an economic deterrent for promoting abusive transactions and preparing returns claiming tax benefits from abusive transactions. An abusive transaction is one where a significant purpose of the transaction is the avoidance or evasion of Federal tax.

(5.)Special Rule for Listed Transactions. The Service will fully develop accuracy-related or fraud penalties in all cases where an underpayment of tax is attributable to a listed transaction. For purposes of this Policy Statement, a listed transaction is a transaction the Service has identified as a listed transaction pursuant to the regulations under §6011 of the Code.

(6.)In limited circumstances where doing so will promote sound and efficient tax administration, the Service

may approve a reduction of otherwise applicable penalties or penalty waiver for a group or class of taxpayers as part of a Service-wide resolution strategy to encourage efficient and prompt resolution of cases of noncompliant taxpayers.

(7.)In considering the application of penalties to a particular case, all Service functions must develop procedures that will promote:

a. Consistency in the application of penalties compared to similar cases;
b. Unbiased analysis of the facts in each case; and
c. The proper application of the law to the facts of the case.

(8.)The Service will demonstrate the fairness of the tax system to all taxpayers by:

a. Providing every taxpayer against whom the Service proposes to assess penalties with a reasonable opportunity to provide evidence that the penalty should not apply;
b. Giving full and fair consideration to evidence in favor of not imposing the penalty, even after the Service's initial consideration supports imposition of a penalty; and
c. Determining penalties when a full and fair consideration of the facts and the law support doing so.

This means that penalties are not a "bargaining point" in resolving the taxpayer's other tax adjustments. Rather, the imposition of penalties in appropriate cases serves as an incentive for taxpayers to avoid careless or overly aggressive tax reporting positions.

(9.)The Service will continue to develop, monitor, and revise programs to help taxpayers voluntarily comply with the law and avoid penalties.

(10.) To promote consistent development, consideration, and application of penalties, the Service prescribes guidelines in a Penalty Handbook that all operating divisions and functions will follow. The Office of Penalty and Interest Administration must review and approve changes to the Penalty Handbook for consistency with Service Policy before making recommended changes.

(10.) The Service collects statistical and demographic information to evaluate penalties and penalty administration, and to determine the effectiveness of penalties in promoting voluntary compliance. The Service continually evaluates the impact of the penalty program on compliance and recommends changes when the Internal Revenue Code or penalty administration does not effectively promote voluntary compliance.

(11.) Approved: Mark E. Matthews, Deputy Commissioner for Services and Enforcement LMSB Commissioner Memorandum dated December 20, 2001

DEPARTMENT OF THE TREASURY

INTERNAL REVENUE SERVICE

**December 20, 2001**

**MEMORANDUM FOR** Large and Mid-Size Business Division Executives, Managers, & Examiners

**FROM:** Larry R. Langdon, Commissioner, Large and Mid-Size Business Division, LM

**SUBJECT:** Consideration of Penalties in Listed Transactions and other Abusive Tax Shelter Cases

This memorandum accompanies the Disclosure Initiative that will be announced tomorrow by the IRS. Under the Disclosure Initiative, the IRS will waive the accuracy-related penalty for transactions that produce an underpayment of tax and that taxpayers disclose to the IRS during the period the initiative is in effect. See Announcement 2002-2, 2002-2 I.R.B., for the details of the initiative. Disclosure is critical to the IRS's ability to efficiently and judiciously use its resources to administer the tax laws.

Properly and judiciously used, penalties enhance voluntary compliance. Complementing the Disclosure Initiative, this memorandum provides guidelines for the consideration of the accuracy-related penalty under section 6662 in examinations involving listed transactions and other potentially abusive tax shelters. Together with the Disclosure Initiative, these penalty guidelines create a compliance incentive by ensuring that in appropriate circumstances we will use the penalty tools already available to us. I am issuing these penalty guidelines to ensure that penalties are considered and applied consistently, impartially, and fairly among all taxpayers. See Penalty Policy Statement (P-20-1) and the Penalty Handbook (IRM 120.1.1.2).

Chapter 5.3 of the Penalty Handbook (IRM 102.1.5.3) contains requirements to be followed in examinations in which penalties are a consideration because an adjustment has been made to a tax return. Subject to the guidelines described below in this memorandum, the requirements contained at IRM 120.1.5.3 apply to all Large and Mid-Size Business (LMSB) taxpayers, including Coordinated Industry Case (CIC) taxpayers. Revisions will be made to the Internal Revenue Manual to incorporate these new guidelines

## GUIDELINES

1. Examiners must consider the accuracy-related penalty under section 6662 for underpayments attributable to a taxpayer's participation in a listed transaction.

Transactions that are the same as, or substantially similar to, listed transactions within the meaning of §1.6011-4T(b)(2) of the temporary Income Tax Regulations are tax avoidance transactions. See §1.6011-4T (b)(2); Notice 2001-51, 2001- 34 I.R.B. 190. However, depending on the facts, a taxpayer's participation in a listed transaction may not result in an underpayment of tax. If an underpayment of tax is attributable to a taxpayer's participation in a listed transaction, the examiner must develop the accuracy-related penalty issue and prepare a written report supporting the recommendation to impose or not to impose the penalty.

In developing the penalty issue, the examiner must give the taxpayer the opportunity to demonstrate that the penalty does not apply. Depending on the ground(s) for imposing the accuracy-related penalty, the examiner must assess a number of factors, including whether the taxpayer has shown that (i) the transaction was not a tax shelter and thus not subject to the provisions in sections 6662 and 6664 that apply to a substantial understatement attributable to a tax shelter, (ii) the taxpayer was not negligent, (iii) the taxpayer satisfied the requirements of section 6662(d)(2)(B) and (C) (in the case of a noncorporate taxpayer with a substantial understatement attributable to a tax shelter), or (iv) the taxpayer satisfied the requirements of the reasonable cause and good faith exception under section 6664(c).

In all cases in which there is an underpayment attributable to a listed transaction, the Director of Field Operations (DFO) must approve the decision to impose or not to impose the accuracy-related penalty.

2. Cases involving potentially abusive tax shelters should be coordinated with the Office of Tax Shelter Analysis.

Section 6662 defines a tax shelter as a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement, if a significant purpose of such arrangement is the avoidance or evasion of Federal income tax. This definition provides little guidance to assist an examiner in determining whether a transaction is an abusive tax shelter for which the imposition of a penalty is appropriate.

An aid in evaluating a transaction is §1.6011- 4T(b)(3), which lists five characteristics that may be indicative of tax shelter activity. See T.D. 8877, 2000-11 I.R.B. 747. A transaction in which two or more of these characteristics are present (the threshold for reportable transactions other than listed transactions) is not necessarily a tax shelter and may not be one for which any adjustment to the taxpayer's return position is warranted. An examiner should carefully scrutinize, however, a transaction that gives rise to an underpayment where business purpose for the transaction was lacking, or where it is apparent that tax avoidance was a significant purpose of the taxpayer's participation in the transaction and the tax benefits claimed by the taxpayer are unusual or not of a kind clearly contemplated under the Code.

Once examiners have identified and evaluated the facts regarding a potentially abusive tax shelter, they must contact LMSB field counsel and the Office of Tax Shelter Analysis (OTSA), which is responsible for coordinating and assisting in the identification of tax shelters. If the examiner concludes that the accuracy-related penalty should be imposed, the DFO must approve that decision.

3. Factors to consider in evaluating the reasonable cause and good faith exception of section 6664(c).

Sections 6662 and 6664 impose higher standards on taxpayers for a substantial understatement attributable to a tax shelter. (These higher standards do not apply in the case of any other basis for imposing an accuracy-related penalty attributable to a tax shelter.) For a corporation, the only relief from the substantial understatement penalty attributable to a tax shelter is found in section 6664(c)(1), which provides that no penalty shall be imposed with respect to any portion of an underpayment if the taxpayer can show that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.

The determination of whether a corporation acted with reasonable cause and in good faith regarding its treatment of a tax shelter is based on all of the pertinent facts and circumstances. Legal justification is one factor that may be taken into account in establishing whether a corporation acted with reasonable cause and in good faith. Facts and circumstances other than legal justification may also be considered, as appropriate, in determining whether a corporation acted with reasonable cause and in good faith with respect to a tax shelter item regardless of whether it satisfied the minimum requirements for legal justification. See §1.6664-4(e).

To rely on legal justification, a corporation must demonstrate, at a minimum, that (1) there was substantial authority for its tax treatment of the item, and (2) based on all of the facts and circumstances, the corporation reasonably believed, at the time the return was filed, that the tax treatment of the item was more likely than not the proper tax treatment. A corporation's failure to satisfy these minimum requirements precludes a finding of reasonable cause and good faith based on legal justification. See §1.6664-4(e)(2)(i).

Satisfaction of the minimum requirements for legal justification is not necessarily dispositive however. For example, depending on the circumstances, satisfaction of the minimum requirements may not be dispositive if the taxpayer's participation in the tax shelter lacked significant business purpose, if the taxpayer claimed tax benefits that are unreasonable in comparison to the taxpayer's investment in the tax shelter, or if the taxpayer agreed with the organizer or promoter of the tax shelter that the taxpayer would protect the confidentiality of the tax aspects of the structure of the tax shelter. See §1.6664-4(e)(3) In addition to legal justification, an important factor is whether the corporation disclosed the transaction to the Service. Under §1.6011-4T, corporations are required to disclose reportable transactions — transactions that satisfy the projected tax effect requirement and (1) are the same as, or substantially similar to; listed transactions, or (2) have at least 2 of 5 specified characteristics and do not satisfy certain exceptions. See §1.6011-4T(b). Compliance with §1.6011-4T may indicate that a taxpayer has acted in good faith with respect to an underpayment attributable to the disclosed transaction. Conversely, if a taxpayer has an underpayment attributable to a reportable transaction that was not properly disclosed on its return, the nondisclosure could indicate that the taxpayer has not acted in good faith with respect to the underpayment, minimum requirements of section 6664(c)(1). See T.D. 8877, 200-11 I.R.B. 747. A corporation that did not disclose a reportable transaction nevertheless may be able to demonstrate that it acted with reasonable cause and in good faith. For example, a corporation that did not disclose a reportable transaction may show that it reasonably believed that it satisfied one of the exceptions in §1.6011-4T(b)(3)(ii).

To assist in determining whether a corporation satisfied the special rules for the reasonable cause and good faith exception for a substantial understatement attributable to a tax shelter, examiners should consult with LMSB field counsel.

## CONTACT INFORMATION

For information regarding these guidelines, contact David Harris, Manager of the Office of Tax Shelter Analysis at (202) 283- 8386 (not a toll-free call). LMSB Commissioner Memorandum dated July 10, 2003

| | |
|---|---|
| MEMORANDUM FOR | LARGE AND MID-SIZE BUSINESS DIVISION<br>EXECUTIVES, MANAGERS AND AGENTS |
| FROM: | Deborah M. Nolan /s/<br>Commissioner, Large and Mid-Size Business Division |

It has come to my attention that there may be some confusion regarding the application of penalties in cases where taxpayers disclosed their participation in abusive tax avoidance transactions under the Announcement 2002-2 Disclosure Initiative. As a result, I am taking this opportunity to reiterate our penalty policy in these cases.

Under the Disclosure Initiative, the IRS is committed to waiving the accuracy related penalty under § 6662(b) for that section of an underpayment attributable to the disclosed item and due to one or more of the following: (i) negligence or disregard of rules or regulations; (ii) any substantial understatement of income tax; (iii) any substantial or gross valuation misstatement, except for any underpayment attributable to a net § 482 transfer price adjustment; and (iv) any substantial overstatement of pension liabilities.

Disclosure under Announcement 2002-2 does not affect whether the IRS will impose, as appropriate, any other civil penalty that may be applicable under the Code or will investigate any associated criminal conduct or recommend prosecution for violation of any criminal statute. However, the IRS will waive the accuracy related penalty under §6662(b) for all cases that otherwise qualifies under the terms of Announcement 2002-2. As a result, examiners should not develop the accuracy related penalty in cases where the taxpayer filed and was considered qualified under the terms of Announcement 2002-2. This determination should be confirmed by the team manager and no further approval is required. This applies for all years for which the taxpayer voluntarily disclosed and was considered eligible under the terms of Announcement 2002-2.

With respect to cases not qualifying for treatment under the Disclosure Initiative, we will continue our policy of mandatory penalty consideration. If an underpayment of tax is attributable to a taxpayer's participation in a listed transaction, the examiner must develop the accuracy-related penalty issue and prepare a written report supporting the recommendation to impose or not to impose the penalty. In all cases in which there is an underpayment attributable to a listed transaction, the Director of Field Operations (DFO) must approve the decision to impose or not to impose the accuracy-related penalty.

In cases involving potentially abusive tax shelters, examiners should identify and evaluate the facts regarding the shelter, then contact LMSB field counsel and the Office of Tax Shelter Analysis (OTSA), which is responsible for coordinating and assisting in the identification of tax shelters. If the examiner concludes that the accuracy-related penalty should be imposed, the DFO must approve that decision.

Please follow these guidelines in your examination. If you have any questions, please call John Risacher, Acting Manager, and Office of Tax Shelter Analysis at (202) 283-8386 or Kathy K. Petronchak, Acting Director, PFTG at (202) 283-8463. LMSB-SB/SE Memorandum dated August 21, 2003

```
MEMORANDUM FOR LMSB AND SB/SE EXECUTIVES, MANAGERS AND AGENTS
FROM:               Deborah M. Nolan /s/
                    Commissioner, Large and Mid-Size Business Division
                    Dale F. Hart /s/
                    Commissioner, Small Business/Self Employed Division
SUBJECT:            Coordination of Listed Transactions
```

The Internal Revenue Service has alerted taxpayers to transactions that are potentially abusive and identified these transactions as "listed transactions." Listed transactions must be disclosed by taxpayers pursuant to Treasury Regulations §1.6011-4. Organizers, sellers and material advisors must maintain and furnish certain investor information under Treas. Reg. §301.6112-1. Organizers, managers and sellers (also referred to as "promoters") may be required to register certain listed transactions under Temp. Treas. Reg. §301.6111-1 T and Treas. Reg. §301.6111-2.

In order to ensure consistency and uniformity in issue development for each listed transaction, this guidance is provided to field examiners and their managers. There are two scenarios to consider:

1. The transaction is a listed transaction.
2. The transaction is new and the facts need to be developed to determine if it should be listed.

Each type of transaction is described below.

## Listed Transaction

When a listed transaction is identified during an examination, the issue will be raised and developed. Examiners should contact the Technical Advisor, identified Coordinator or Issue Management Team handling the issue. The examiner should provide the name of the taxpayer, taxable period(s) involved, type of listed transaction, and the name of the promoter, if known. LMSB examiners should include the names of the Team

Manager and Team coordinator and their telephone numbers. SB/SE examiners should include the name of their Group Manager and their telephone number. The initial contact may be via e-mail (utilizing secure messaging), fax, or telephone. The most recent summary of the listed transactions can be found on the LMSB website at http://Imsb.irs.gov/hq/pftq/otsa/downloads/Listed%20Transactions/Contact%2OList.doc.

As a transaction is listed, the Technical Advisor, with the assistance of the Field Counsel Attorney assigned to the issue, will prepare a paper describing the facts of the issue, questions raised, and the best way to address the issue to ensure full development and consistency among taxpayers. Training, reference, and resource materials will also be provided. The Technical Advisor, with the assistance of the Field Counsel Attorney assigned to the issue, will develop and propose a Coordinated Issue Paper or similar document, as appropriate.

Examiners should consult with the Technical Advisor on the development of the issue. Examiners must secure the concurrence of the Technical Advisor if their examination deviates from any mandated specific audit techniques proposed for issue development or their proposal for adjustment deviates from any stated legal positions. In addition, examiners must consult with and secure the concurrence of the Technical Advisor before proposing any resolution other than full concession of the issue by the taxpayer.

The penalties under Internal Revenue Code Section 6662 must be considered for all listed transactions where there is an underpayment attributable to a listed transaction. Examiners must follow established policies. LMSB examiners should follow LMSB commissioner's Memorandum dated December 20, 2001, that directs Director of Field Operations' (DFO) approval of the decision to impose or not to impose the accuracy related penalty. If the transaction was property disclosed under the Announcement 2002-2 Disclosure Initiative, then penalties under §6662(b) as described in the Announcement will be waived. SB/SE examiners should follow existing penalty policies.

## Transactions which may be Considered for Listing

When an examiner identifies and evaluates the facts regarding a new potentially abusive tax shelter transaction, LMSB examiners must contact LMSB Field Counsel Attorney as well as the Office of Tax Shelter Analysis (OTSA). SB/SE examiners should send the promoter information to the Lead Development Center and contact the appropriate Technical Advisor in compliance Policy, Reporting Enforcement. OTSA and Reporting Enforcement are responsible for coordinating and assisting in the identification of tax shelters.

This directive will become effective for all listed transactions and remain in effect for each listed transaction until:

- It is superseded by a published resolution offer and the taxpayer elects to participate in the offer,
- The issue becomes a coordinated issue,
- The transaction is no longer a listed transaction, or
- An additional directive is issued for a specific listed transaction withdrawing it from this process.

If you have any LMSB questions, please contact Kathy K. Petronchak, Acting Director, PFTG, at (202) 283-8463 or Mary B. Baker, Manager, Office of Tax Shelter Analysis, at (202) 283-8386. For SB/SE questions, please contact Joseph R. Brimacombe, Deputy Director, Compliance Policy, at (202) 283 2200 or Elizabeth Cashin, Program Manager, ATAT Offshore, at (202) 283-7183.

Additional References:

1. SB/SE website with the list of Technical Advisors and Issue Management Teams http://abusiveshelter.web.irs.qov/AbusivePromotions/AbusiveSchemes.htm
2. LMSB Commissioner's Memorandum dated July 10, 2003: Penalty Policy in Disclosure Initiative Cases http://Imsb.irs.qov/hq/pftq/otsa/downloads/Penalty%20Policv%20&%2ODiscl%201nitiativ e/Penalty%20Policy%2OReiteration%207-10-03%2ODebbie%2ONolan.pdf
3. LMSB Commissioner's Memorandum dated December 20, 2001: Consideration of Penalties in Listed transactions and other Abusive Tax Shelter Cases http://Imsb.irs.qov/hq/pftQ/otsa/downloads/Penalty%20Policv%20&%2ODiscl%201nitiativ e/Penalty%2OPolicv-Larrv%20(12-20-01).pdf
4. Announcement 2002-02, Disclosure Initiative for Certain Transactions Resulting in Waiver of certain Penalties under IRC §6662 of the Internal revenue Code http://Imsb.irs.qov/hq/pftq/otsa/downloads/Penalty%2OPolicy%20&%2ODiscl%201nitiativ e/IRB%

20Ann%20of%20Initiative.pdf

Accuracy-Related Penalty - IRC §6662

## Negligence or disregard of rules or regulations - IRC §6662(c)

*Negligence (the following applies to both individuals and corporations):*

- Reasonable attempt to comply with Code
- Position is "too good to be true"
- Position has a reasonable basis
- Adequate disclosure
- Taxpayer kept adequate books and records
- Taxpayer can substantiate properly
- Reasonable cause and good faith exception under IRC §6664(c) may apply.

*Disregard of a Revenue Ruling or Notice (the following applies to both individuals and corporations):*

- Careless, reckless or intentional disregard of a revenue ruling or notice
- Position satisfies the realistic possibility standard
- If the transaction is reportable, penalty applies regardless of disclosure
- Reasonable cause and good faith exception under IRC §6664(c) may apply.

*Disregard of a Regulation (the following applies to both individuals and corporations):*

- Careless, reckless or intentional disregard of a regulation
- Position represents a good faith challenge to the validity of the regulation
- Taxpayer disclosed position on Form 8275-R
- Taxpayer disclosed reportable transaction on Form 8886
- Taxpayer kept adequate books and records
- Taxpayer can substantiate properly
- Adequate disclosure
- Reasonable cause and good faith exception under IRC §6664(c) may apply.

## Substantial Understatement of income tax - IRC §6662(d)

*Amount of Understatement*

*The following applies to an individual:*

- 10% of tax required to be shown on return or $5,000.

*The following applies to a corporation:*

- 10% of tax required to be shown on return or $10,000 (for corporation other than an S corporation or personal holding company).

*Reductions for items not attributable to a tax shelter (the following applies to both individuals and corporations):*

- Substantial authority or
- Adequate disclosure and reasonable basis for the tax treatment
- Reasonable cause and good faith exception under IRC §6664(c) may apply.

*Reduction for items attributable to a tax shelter*

*The following applies to an individual:*

- Substantial authority and taxpayer reasonably believed that the tax treatment was more likely than not the proper treatment
- Reasonable cause and good faith exception under IRC §6664(c) may apply.

*The following applies to a corporation:*

- None
- Special rules to establish reasonable cause and good faith exception under IRC §6664(c).

## Substantial (or Gross) Valuation Misstatement under Chapter 1 and Net IRC §482 Transfer Price Adjustment - IRC §6662(e) (or (h)(2)(A))

*Amount of Underpayment of tax*

*The following applies to an individual:*

- Must exceed $5,000.

*The following applies to a corporation:*

- Must exceed $10,000 (for corporation other than an S corporation or personal holding company).

## Substantial valuation misstatement - IRC §6662(e) - Penalty is 20% of the underpayment of tax

*Transactional Penalty (the following applies to both individuals and corporations):*

- Value of any property (or adjusted basis) is 200% or more of the amount determined to be correct or
- Price for any property or services (or use of property) in connection with a transaction described in IRC §482 is 200% or more (or 50% or less) of the amount under IRC §482 determined to be correct.

*Net IRC §482 Transfer Price Adjustment (the following applies to both individuals and corporations):*

- Net IRC §482 transfer price adjustment exceeds the lesser of $5,000,000 or 10% of taxpayer's gross receipts.

## Gross valuation misstatement - IRC §6662(h)(2)(A) - Penalty is 40% of the underpayment of tax

*Transactional Penalty (the following applies to both individuals and corporations):*

- Value of any property (or adjusted basis) is 400% or more of the amount determined to be correct or
- Price for any property or services (or use of property) in connection with a transaction described in IRC §482 is 400% or more (or 25% or less) of the amount under IRC §482 determined to be correct.

*Net IRC §482 Transfer Price Adjustment (the following applies to both individuals and corporations):*

- Net IRC §482 transfer price adjustment exceeds the lesser of $20,000,000 or 20% of taxpayer's gross receipts.

## Reasonable Cause and Good Faith Exception under IRC §6664(c)

*Transactional Penalty (the following applies to both individuals and corporations):*

- Reasonable cause and good faith exception under IRC §6664(c) may apply.

*Net IRC §482 Transfer Price Adjustment (the following applies to both individuals and corporations):*

- Taxpayer not eligible for reasonable cause and good faith exception unless meets the requirements of IRC §6662(e)(3)(B)(i), (ii) or (iii).

## Substantial Overstatement (or Gross Valuation Misstatement) of Pension Liabilities IRC §6662(f)(or (h)(2)(B))

*Amount of overstatement (the following applies to both individuals and corporations):*

- Substantial overstatement or pension liabilities must exceed $1,000.

*Substantial Overstatement of Pension Liabilities - IRC §6662(f) - Penalty is 20% of the underpayment of tax (the following applies to both individuals and corporations):*

- Actuarial determination of liabilities under IRC §404(a)(1) or (2) is 200% or more of correct amount
- Reasonable cause and good faith exception under IRC §6664(c) may apply.

*Gross valuation misstatement - IRC §6662(h)(2)(B) - Penalty is 40% of the underpayment of tax (the following applies to both individuals and corporations):*

- Actuarial determination of liabilities under IRC §404(a)(1) or (2) is 400% or more of correct amount.

## Substantial Estate of Gift Tax Valuation Understatement (or Gross Valuation Misstatement) - IRC §6662(g)(or (h)(2)(C))

*Amount of understatement (the following applies to both individuals and corporations):*

- Substantial estate or gift tax valuation understatement must exceed $5,000.

*Substantial Estate of Gift Tax Valuation Understatement - IRC §6662(g) - Penalty is 20% of the underpayment of tax (the following applies to both individuals and corporations):*

- Value of property claimed on any return of tax imposed by subtitle B is 50% or less of the correct amount
- Reasonable cause and good faith exception under IRC §6664(c) may apply.

*Gross valuation misstatement - IRC §6662(h)(2)(C) - Penalty is 40% of the underpayment of tax (the following applies to both individuals and corporations):*

- Value of property claimed on any return of tax imposed by subtitle B is 25% or less of the correct amount.

## Reasonable Cause and Good Faith - IRC §6664(c)

*Facts and Circumstances test (the following applies to both individuals and corporations):*

- Taxpayer's efforts to assess the proper tax liability
- Taxpayer's experience, knowledge, sophistication and education
- Taxpayer's reasonable reliance on a tax advisor.

*Substantial understatement of a corporation attributable to a tax shelter item*

*The following applies to an individual:*

- Not applicable.

*The following applies to a corporation:*

*Facts and Circumstances test:*

- Legal Justification - minimum requirements must be met
- Taxpayer's efforts to assess the proper tax liability
- Taxpayer's experience, knowledge, sophistication and education.

Substantial Authority List

There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment. Treas. Reg. §1.6662-4(d)(3)(i). The weight accorded an authority depends on its relevance, persuasiveness and the type of document providing the authority. Treas. Reg. §1.6662-4(d)(3)(ii).

Except in cases described in Treas. Reg. §1.6662-4 (d)(3)(iv) concerning written determinations, only the following are authority for purposes of determining whether there is substantial authority for the tax treatment of an item:

- Applicable provisions of the Internal Revenue Code and other statutory provisions;
- proposed, temporary and final regulations construing such statutes;
- revenue rulings and revenue procedures;
- tax treaties and regulations there under, and Treasury Department and other official explanations of such treaties;
- court cases;
- congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers;
- General Explanations of tax legislation prepared by the Joint Committee on Taxation (the Blue Book);
- private letter rulings and technical advice memoranda issued after October 31, 1976;
- actions on decisions and general counsel memoranda issued after March 12, 1981 (as well as general counsel memoranda published in pre-1955 volumes of the Cumulative Bulletin);
- Internal Revenue Service information or press releases; and
- notices, announcements and other administrative pronouncements published by the Service in the Internal Revenue Bulletin.

Conclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority. The authorities underlying such expressions of opinion where applicable to the facts of a particular case, however, may give rise to substantial authority for the tax treatment of an item.

There also is substantial authority if the treatment of an item is supported by (1) the conclusion of a ruling or a determination letter issued to the taxpayer, (2) the conclusion of a technical advice memorandum in which the taxpayer is named, or (3) an affirmative statement in a Revenue Agent's report with respect to a prior taxable year of the taxpayer. Such a written determination does not, however, demonstrate substantial authority if there was a misstatement or omission of a material fact or the facts that subsequently develop are materially different from the facts on which the written determination was based or if the written determination is modified or revoked after the date of issuance. See Treas. Reg. §1.6662-4(e)(3)(iv)(A).
Determining Reasonable Cause and Good Faith

Focus: the extent of the taxpayer's effort to assess taxpayer's proper tax liability. Taxpayers are required to exercise ordinary business care and prudence, i.e., taking that degree of care that a reasonable prudent person would exercise.

| Circumstances that may indicate reasonable cause and good faith: | Circumstances that may indicate lack of reasonable cause and good faith: |
|---|---|
| Honest misunderstanding of fact or | Failure to disclose a position |

| | |
|---|---|
| law that is reasonable given the experience, knowledge, sophistication and education of taxpayer | that a regulation is invalid. |
| An isolated computational or transcription error. | Reliance on advice of a tax advisor or appraiser who the taxpayer knows or should have known lacked sufficient expertise or lacked independence. |
| Reliance on erroneous information reported on Forms W-2, 1099, etc., provided that the taxpayer did not know or have reason to know that the information was incorrect. | Taxpayer agreed with the organizer or promoter of the tax shelter that the taxpayer would protect the confidentiality of the tax aspects of the structure of the tax shelter. |
| Reliance on advice of a tax advisor or appraiser who does not suffer from a conflict of interest or lack of expertise. | Claimed tax benefits are unreasonable in comparison to the taxpayer's investment in the tax shelter. |
| A corporation's legal justification. | Nondisclosure of a reportable transaction. |
| | Lack of significant business purpose. |

Excerpt from Treas. Reg. §1.6664(f) - Special rules for substantial understatement penalty attributable to tax shelter items of corporations

(1) *In general; facts and circumstances.* The determination of whether a corporation acted with reasonable cause and in good faith in its treatment of a tax shelter item (as defined in §1.6662-4(g)(3)) is based on all pertinent facts and circumstances. Paragraphs (f)(2), (3), and (4) of this section set forth rules that apply, in the case of a penalty attributable to a substantial understatement of income tax (within the meaning of section 6662(d)), in determining whether a corporation acted with reasonable cause and in good faith with respect to a tax shelter item.

(2) *Reasonable cause based on legal justification*—

(i) *Minimum requirements.* A corporation's legal justification (as defined in paragraph (f)(2)(ii) of this section) may be taken into account, as appropriate, in establishing that the corporation acted with reasonable cause and in good faith in its treatment of a tax shelter item only if the authority requirement of paragraph (f) (2) (i)(A) of this section and the belief requirement of paragraph (f)(2)(i)(B) of this section are satisfied (the minimum requirements). Thus, a failure to satisfy the minimum requirements will preclude a finding of reasonable cause and good faith based (in whole or in part) on the corporation's legal justification.

(A) *Authority requirement.* The authority requirement is satisfied only if there is substantial authority (within the meaning of §1.6662-4(d)) for the tax treatment of the item.

(B) *Belief requirement.* The belief requirement is satisfied only if, based on all facts and circumstances, the corporation reasonably believed, at the time the return was filed, that the tax treatment of the item was more likely than not the proper treatment. For purposes of the preceding sentence, a corporation is considered reasonably to believe that the tax treatment of an item is more likely than not the proper-tax treatment if (without taking into account the possibility that a return will not be audited, that an issue will not be raised on audit, or that an issue will be settled)—

(1) The corporation analyzes the pertinent facts and authorities in the manner described in §1.6662-4(d)(3)(ii), and in reliance upon that analysis, reasonably concludes in good faith that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service; or

(2) The corporation reasonably relies in good faith on the opinion of a professional tax advisor, if the opinion is based on the tax advisor's analysis of the pertinent facts and authorities in the manner described in §1.6662-4(d)(3)(ii) and unambiguously states that the tax advisor concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service. (For this purpose, the requirements of paragraph (c) of this section must be met with respect to the opinion of a professional tax advisor.)

(ii) *Legal justification defined.* For purposes of this paragraph (f), legal justification includes any

justification relating to the treatment or characterization under the Federal tax law of the tax shelter item or of the entity, plan, or arrangement that gave rise to the item. Thus, a taxpayer's belief (whether independently formed or based on the advice of others) as to the merits of the taxpayer's underlying position is a legal justification.

(3) *Minimum requirements not dispositive*. Satisfaction of the minimum requirements of paragraph (f)(2) of this section is an important factor to be considered in determining whether a corporate taxpayer acted with reasonable cause and in good faith, but is not necessarily dispositive. For example, depending on the circumstances, satisfaction of the minimum requirements may not be dispositive if the taxpayer's participation in the tax shelter lacked significant business purpose, if the taxpayer claimed tax benefits that are unreasonable in comparison to the taxpayer's investment in the tax shelter, or if the taxpayer agreed with the organizer or promoter of the tax shelter that the taxpayer would protect the confidentiality of the tax aspects of the structure of the tax shelter.

(4) *Other factors*. Facts and circumstances other than a corporation's legal justification may be taken into account, as appropriate, in determining whether the corporation acted with reasonable cause and in good faith with respect to a tax shelter item regardless of whether the minimum requirements of paragraph (f)(2) of this section are satisfied.

HISTORY: T.D. 8790, 63 FR 66433, 66435, Dec. 2, 1998; amend T.D. 9109, 68 FR 75126, Dec. 30, 2003. IRS Announcement 2002-2

## IRS Announcement 2002-2, I.R.B. 2002-2, (Dec. 21, 2001)

The Internal Revenue Service (IRS) announces a disclosure initiative to encourage taxpayers to disclose their tax treatment of tax shelters and other items for which the imposition of the accuracy-related penalty may be appropriate if there is an underpayment of tax. If a taxpayer discloses any item in accordance with the provisions of this announcement before April 23, 2002, the IRS will waive the accuracy-related penalty under §6662(b)(1) , (2), (3), and (4) for any underpayment of tax attributable to that item.

This disclosure initiative covers all items except items resulting from a transaction that (1) did not in fact occur, in whole or in part, but for which the taxpayer claimed a tax benefit on its return; (2) involved the taxpayer's fraudulent concealment of the amount or source of any item of gross income; (3) involved the taxpayer's concealment of its interest in, or signature or other authority over a financial account in a foreign country; (4) involved the taxpayer's concealment of a distribution from, a transfer of assets to, or that the taxpayer was a grantor of a foreign trust; or (5) involved the treatment of personal, household, or living expenses as deductible trade or business expenses.

## Scope of the Waiver

Under this disclosure initiative, the IRS will waive the accuracy-related penalty under §6662(b) for that portion of an underpayment attributable to the disclosed item and due to one or more of the following: (1) negligence or disregard of rules or regulations; (2) any substantial understatement of income tax; (3) any substantial or gross valuation misstatement under chapter 1 of the Code, except for any portion of an underpayment attributable to a net §482 transfer price adjustment, unless the standards of §6662(e)(3)(B) regarding documentation are met; and (4) any substantial overstatement of pension liabilities.

Disclosure under this initiative does not affect whether the IRS will impose, as appropriate, any other civil penalty that may be applicable under the Code or will investigate any associated criminal conduct or recommend prosecution for violation of any criminal statute.

## Period of Disclosure

The IRS will waive the accuracy-related penalty if the taxpayer discloses the item before the earlier of (1) the date the item or another item arising from the same transaction is an issue raised during an examination, or (2) April 23, 2002. For purposes of this disclosure initiative, an item is an issue raised during an examination if the person examining the return (the examiner) communicates to the taxpayer knowledge about the specific item or on or before December 21, 2001, the examiner has made a request to the taxpayer for information,

and the taxpayer could not make a complete response to that request without giving the examiner knowledge of the specific item.

## Information Required To Make a Disclosure

To disclose an item under this initiative, a taxpayer must provide the following:

(1) A statement describing the material facts of the item;
(2) A statement describing the taxpayer's tax treatment of the item;
(3) The taxable years affected by the item;
(4) If the taxpayer is a Coordinated Industry Case (CIC) taxpayer, a statement that the taxpayer will agree to address the disclosed item under the Accelerated Issue Resolution process described in Rev. Proc. 94-67, 1994-2 C.B. 800, if requested to do so by the IRS;
(5) The names and addresses of (a) any parties who promoted, solicited, or recommended the taxpayer's participation in the transaction underlying the item and who had a financial interest, including the receipt of fees, in the taxpayer's decision to participate, and (b) if known to the taxpayer, any parties who advised the promoter, solicitor or recommender with respect to that transaction;
(6) A statement agreeing to provide, if requested, copies of all of the following:
    (a.) All transactional documents, including agreements, contracts, instruments, schedules, and, if the taxpayer's participation in the transaction was promoted, solicited or recommended by any other party, all material received from that other party or that party's advisor(s);
    (b.) All internal documents or memoranda used by the taxpayer in its decision-making process, including, if applicable, information presented to the taxpayer's board of directors; and
    (c.) All opinions and memoranda that provide a legal analysis of the item, whether prepared by the taxpayer or a tax professional on behalf of the taxpayer; and
(7) A penalty of perjury statement that the person signing the disclosure has examined the disclosure and that to the best of that person's knowledge and belief, the information provided as part of the disclosure contains all relevant facts and is true, correct, and complete. In the case of an individual taxpayer, the declaration must be signed and dated by the taxpayer, and not the taxpayer's representative. In the case of a corporate taxpayer, the declaration must be signed and dated by an officer of the corporate taxpayer who has personal knowledge of the facts. If the corporate taxpayer is a member of an affiliated group filing consolidated returns, a penalties of perjury statement also must be signed, dated, and submitted by an officer of the common parent of the group. The person signing for a trust, a state law partnership, or a limited liability company must be, respectively, a trustee, general partner, or member-manager who has personal knowledge of the facts. A stamped signature is not permitted.

## Procedure for Making the Disclosure

A CIC taxpayer must submit the disclosure information to the assigned team manager and send a copy of the information to the Office of Tax Shelter Analysis.

A non-CIC taxpayer not under examination as of December 21, 2001, must send the disclosure information to the Office of Tax Shelter Analysis.

A non-CIC taxpayer under examination as of December 21, 2001, must submit the disclosure information to the examiner and send a copy of the information to the Office of Tax Shelter Analysis.

The address for the Office of Tax Shelter Analysis is LM:PFTG:OTSA, 1111 Constitution Ave, NW, Washington, DC 20224.

## Miscellaneous

The IRS is committed to considering and resolving disclosed items promptly. A taxpayer's disclosure of an item creates no inference that the taxpayer's tax treatment of the item was improper or that the accuracy-related penalty would apply if there is an underpayment of tax. Furthermore, taxpayers that do not disclose under this initiative are not prevented from demonstrating that they satisfy the reasonable cause exception under §6664 (c) and the regulations thereunder with respect to any portion of an underpayment of tax.

## Paperwork Reduction Act

The collection of information contained in this announcement has been reviewed and approved by the Office of Management and Budget in accordance with the Paperwork Reduction Act (44 U.S.C. §3507) under control number 1545-1764. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid OMB control number.

The collection of information in this announcement is in the section titled INFORMATION REQUIRED TO MAKE A DISCLOSURE. This information is required to assess the item the taxpayer is disclosing under the initiative. This information will be used to determine whether the taxpayer has reported the disclosed item properly for income tax purposes. The collection of information is required to obtain the benefit described in this announcement. The likely respondents are businesses or other for-profit institutions, small businesses or organizations, and individuals.

The estimated total annual reporting burden is 450 hours.

The estimated annual burden per respondent varies from 2 hours to 4 hours, depending on individual circumstances, with an estimated average of 3 hours. The estimated number of respondents is 150.

The estimated frequency of responses is one time per respondent.

Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally tax returns and tax return information are confidential, as required by 26 U.S.C. §6103.

## Contact Information

For further information regarding this announcement, contact Jozef Chilinski of the Office of Tax Shelter Analysis at (202) 283-8425 (not a toll-free call). Commissioner Memorandum dated December 29, 2003

```
MEMORANDUM FOR:
COMMISSIONER, LARGE & MID-SIZE BUSINESS DIVISION
COMMISSIONER, SMALL BUSINESS/SELF EMPLOYED DIVISION
FROM:         Mark W. Everson
              Commissioner of Internal Revenue
SUBJECT:      Penalty Policy Statement of the Internal Revenue Service
```

The following new penalty policy statement is being issued in conjunction with the issuance of new final regulations under sections 6662 and 6664 and proposed revisions to the Rules of Practice before the Service (Circular 230). Please ensure that your employees are provided with a copy of this statement and implement its provisions immediately.

Promoters of abusive tax shelters have encouraged or arranged for taxpayers to obtain tax opinions regarding the tax shelters from tax advisors with a financial interest in the promotion of the tax shelters or a preexisting referral agreement with the promoter. Tax advisors having a financial interest or a referral agreement relating to a tax shelter are not disinterested or independent tax advisors concerning the merits of the tax shelter.

In some cases, taxpayers do not know of the tax advisor's financial interest or referral agreement. In other cases, taxpayers know or have reason to know of the financial interest or referral agreement, but disregard that interest to obtain a favorable opinion concerning the merits of the tax shelter. In either case, taxpayers seek to rely on the tax advisor's opinion to avoid imposition of the accuracy-related penalty under section 6662.

On December 29, 2003, Treasury and the Service issued proposed revisions to Circular 230 governing tax shelter opinions that address this lack of independence. The proposed rules mandate the disclosure of a tax advisor's referral agreement or financial interest in the promotion of tax shelters. The proposed rules also require that a marketed tax shelter opinion expressly state that taxpayers should seek advice on their individual circumstances from their own tax advisors. These disclosures will provide taxpayers with critical

information to evaluate the quality and reliability of the advice they receive and put taxpayers on notice that they should seek independent tax advice.

Taxpayers may not rely on the advice of a tax advisor who has a financial arrangement or a referral agreement with a tax shelter promoter. The tax advisor's independent judgment is compromised by these arrangements and agreements. Accordingly, the Service will question the reasonableness and good faith of taxpayers who know or have reason to know that the tax advisor is not independent. The Service will not accept reliance on an opinion from a non-independent tax advisor as proof of reasonable cause and good faith on the part of the taxpayer.

The Service will scrutinize opinions from tax advisors who have financial interests in the tax shelter promotions as part of its broader effort to combat abusive tax shelters. The Service will impose appropriate penalties on taxpayers who rely on opinions from non-independent advisors regarding the merits of tax shelters. Accordingly, taxpayers should not rely on claims from tax advisors, who are not independent, that their opinions provide protection from accuracy-related penalties.

cc: Deputy Commissioner for Services and Enforcement
Acting Chief Counsel

END OF DOCUMENT -

© 2008 Thomson/RIA. All rights reserved.