**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Nos. 06-245T, 06-246T, and 06-247T**
**(Consolidated)**

**MURFAM FARMS, LLC,** §
**By and Through Wendell H. Murphy Jr.,** §
**a Partner Other Than Tax Matters Partner,** §
§
**PSM FARMS, LLC,** §
**By and Through Stratton K. Murphy,** §
**a Partner Other Than Tax Matters Partner,** §
§
**MURPHY PORK PARTNERS, LLC,** §
**By and Through Wendell H. Murphy, Jr.,** §
**a Partner Other Than Tax Matters Partner,** §
§
**Plaintiffs,** §
§
**v.** §
§
**UNITED STATES OF AMERICA,** §
§
**Defendant.** §

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO THE UNITED STATES' INTERROGATORIES (NOS. 71 THROUGH 95)**

Pursuant to Judge Damich's Order dated February 13, 2008, Plaintiffs MURFAM Farms, LLC ("MURFAM"), PSM Farms, LLC ("PSM") and Murphy Pork Partners, LLC ("MPP", and collectively with MURFAM and PSM, the "Partnerships" or the "Plaintiffs") hereby object and respond to the United States' Interrogatories (Nos. 71 though 95) as follows. All capitalized terms not otherwise defined herein shall have the meaning assigned to such terms in Plaintiffs' Complaints.



GOVERNMENT EXHIBIT
2

## GENERAL OBJECTIONS

1. Plaintiffs object to all Interrogatories to the extent that they seek information protected by the Attorney/Client Privilege, the Attorney Work Product Doctrine, the Tax Practitioner Privilege under 26 U.S.C. § 7525, or any other applicable privilege.

2. Plaintiffs object to all Interrogatories on the grounds that they request information that is cumulative and duplicative of information previously provided by Plaintiffs to the United States during discovery of this case.

## SPECIFIC OBJECTIONS AND RESPONSES

INTERROGATORY NO. 71: State each factual or legal issues you contend are depending upon the value of the options on their contribution date to MURFAM Farms, LLC; PSM Farms, LLC and Murphy Pork Partners, LLC, describe all legal theories and principal facts (including expert witness testimony) supporting your contention, and identify all principal documents that support your contention.

ANSWER: **Plaintiffs object to this Interrogatory on the grounds that it is vague and confusing. This Interrogatory seems to request Plaintiffs' contentions regarding *which* legal issues are influenced by the value of the Options on the contribution date, but does not inquire as to Plaintiffs' contentions regarding the legal issues themselves. Accordingly, subject to and without waiving the foregoing objection, Plaintiffs contend that the value of the Options contributed to the Partnerships on their contribution date is relevant to: in the event that it is ultimately determined that any obligations underlying the Short Options constitute a liability for purposes of IRC § 752 or any interpreting authority, whether, and to what extent, the partners' adjusted basis in their Partnership interests should be**

**adjusted pursuant to IRC §§ 733 and 722, which in turn impacts (i) the Partnerships' respective adjusted basis in the Short Options under IRC § 723, (ii) the Murphy family members' respective adjusted basis under IRC § 358 in MURFAM, Inc., PSM, Inc. and Murphy Pork, Inc. (as applicable) upon the contribution of their Partnership interests to the corporations, (iii) MURFAM, Inc.'s, PSM, Inc.'s, and Murphy Pork, Inc.'s adjusted basis under IRC § 362 in the contributed MURFAM, PSM, and MPP partnership interests, respectively, (iv) MURFAM, Inc.'s and PSM, Inc.'s adjusted basis in the North Carolina municipal bonds upon the liquidation of MURFAM and PSM, respectively, (v) Murphy Pork, Inc.'s adjusted basis in the EURO dollars upon MPP's liquidation, and (vi) the Murphy family members' at-risk amounts under IRC § 465. The principal documents supporting Plaintiffs' contentions are the legal opinions rendered by Proskauer Rose LLP, Bates labeled MUPR00739-879; MUPR01007-077 (collectively, the "Tax Opinions").**

**INTERROGATORY NO. 72:** If you contend the option transaction had a reasonable possibility of profit in the hands of MURFAM Farms, LLC; PSM Farms, LLC and Murphy Pork Partners, LLC, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**ANSWER: Plaintiffs do contend that the Options had a reasonable possibility of a profit in the hands of the Partnerships. This contention is principally supported by the expert opinions and analyses rendered by Drs. Don Chance and Alan Hess, whose reports are hereby incorporated by reference and form part of Plaintiffs' response. As detailed in his report, Dr. Chance concluded that (i) the individual Options had a probability of profit ranging from 12.04% to 22.26%, which were reasonable values compared to the profit probabilities of typical options, and (ii) collectively, the Options in the hands of (A)**

**MURFAM and PSM had a probability of profit ranging from 30.26% to 41.61%, (B) MPP had a probability of profit ranging from 12.12% to 18.59%. Dr. Hess similarly concluded that, as of the contribution date, all of the Options had a positive probability of being in-the-money on their termination date, ranging from 21.15% to 24.10%.**

**INTERROGATORY NO. 73:** If you contend the amount of the fees relating to the COBRA transaction paid to any third party or the treatment of the same fees on the tax returns of the S corporations, partnerships or individual partners, are at issue in this case, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**ANSWER: Plaintiffs object to this Interrogatory on the grounds that the term "at issue" is vague and ambiguous and the question asked is confusing. By this Interrogatory the United States appears to be inquiring as to (i) Plaintiffs' belief whether or not the United States has put at issue the fees paid to these professional firms, or possibly (ii) Plaintiffs' counsel's impressions as to whether or not fees are at issue in these proceedings. Item (ii) is protected by the work-product privilege. Item (i) is not relevant to any claim or defense in these proceedings, as only the tax items *actually* disputed by the United States are relevant. Item (i) is also cumulative and duplicative, as the United States is fully aware of the tax issues actually in controversy in these proceedings.**

**INTERROGATORY NO. 74:** If you contend MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC were formed for a legal purpose under state law and are partnerships in fact and not a factual sham, describe all legal theories and principal facts (including expert witness testimony) for such contention, including any theories and factual support for any claim

that the partnerships were organized for other reasons than the sole purpose of avoiding federal and state income taxes and identify all principal documents that support your contention.

**<u>ANSWER:</u> Plaintiffs object to this Interrogatory on the grounds that it is cumulative and duplicative. *See* Plaintiffs' Objections and Response to Interrogatory No. 15. Subject to and without waiving said objection, Plaintiffs contend that each Partnership was formed for a legal purpose under state law. For among other reasons, Ernst & Young LLP advised that the Partnerships were formed to (i) initially own and hold the Option investments, which had the effect of diversifying the Murphy family members' individual Option investments, and (ii) subsequently make additional investments. These purposes are evident from the (x) written LLC Agreement for each Partnership, (y) actual transfer of the Options to the Partnerships, and (z) the Partnerships' subsequent investment activities (purchasing a variety of stocks and securities and in some instances foreign currency). The principal supporting documents are (1) the written LLC agreements for the Partnerships, Bates labeled MUEY02258-264, MUEY02360-366, and MUEY02601-607, (2) assignment agreements and related documents, Bates labeled MUCO00142-152, MUEY00274-280, MUEY01867-869, MUEY02223-224, MUEY02428-429, MUEY02488-489, MUEY02514-515, MUEY3798-803, MUEY04556-558, MUFOIA00313-314, MUFOIA01353-355, MUPR00563-565, and (3) brokerage statements Bates labeled MUD00121-124, MUDB00287-291, MUEY00089-095, MUEY00243-247, MUEY00719-723, MUEY01349-355, MUEY01625-630, MUEY02936-941, MUEY04702-707, MUMU16642-650, MUMU16968-973, MUMU17057-062, MUPR00655-73, MUPR00666-673, MUPR00679-684, MUPR00694-699, MUPR00700-704, MUPR00705-710, MUPR00711-738. Moreover,**

the Partnerships were validly formed under Delaware state law. *See* Bates labeled MUPR00519-24.

Plaintiffs also contend that each Partnership existed as a partnership in fact and was not a factual sham for federal income tax purposes. The Partnerships' state-law organization and activities outlined above satisfy the definition of partnership under IRC §§ 761 and 7701(a)(2). The Partnerships were also properly classified as such under the Check-the-Box Regulations: each Partnership was a properly organized domestic (i.e., Delaware) entity with more than two members, and no election to be classified as an entity other than a partnership was filed with the IRS. Further, to the extent applicable, the Partnerships are properly recognized as "partnerships" under the federal common law, which provides that a partnership is respected if either (i) its purpose at the time of formation is to conduct a trade or business activity (including investment activity), or (ii) the partnership actually carries on a trade or business following its formation. As outlined above, the purposes for forming the Partnerships as well as the Partnerships' activities following formation satisfy both prongs of this disjunctive test. Moreover, the Murphy family members joined in their respective Partnerships for common purposes, one of which was to make a profit on the Options, and they proportionately shared in the Partnerships' gains and losses, with no partners' share being guaranteed or limited. The principal documents supporting Plaintiffs' contentions are the same as the documents referenced above. *See also* Tax Opinions (re: Plaintiffs' legal theories regarding the existence of the Partnerships).

**INTERROGATORY NO. 75:** Assuming MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC were not formed and availed of for other than the sole purpose of tax avoidance by artificially overstating basis in the partnership interest of its partners, describe all legal theories and facts (including expert witness testimony) for your contention and identify all principal documents that support your contention.

**ANSWER: Plaintiffs object to this Interrogatory on the grounds that the terms "availed of," "tax avoidance" and "artificially overstating" are vague and ambiguous. Plaintiffs also object to this Interrogatory on the grounds that it is cumulative and duplicative. Subject to and without waiving said objections, Plaintiffs contend that the Partnerships were not formed or otherwise utilized in the Transactions solely for tax-avoidance purposes, but rather were formed for, and served, a variety of reasons, including non-tax reasons. *See* Plaintiffs' Objection and Response to Interrogatory No. 74 above.**

**INTERROGATORY NO. 76:** If you contend the purchase of the offsetting option transactions and their contribution to MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC had economic substance and were not an economic sham, describe all legal theories and principal facts (including expert witness testimony) for such contention, and identify all documents that support your contention.

**ANSWER: Plaintiffs object to this Interrogatory on the grounds that the term "offsetting" is vague and ambiguous, and dispute any characterization of the Options as "offsetting." Subject to and without waiving said objection, Plaintiffs contend that the purchase of the Options and their contribution to the Partnerships had economic substance and were not an economic sham, principally for the following reasons:**

1. **The Options had a reasonable probability of making a profit. This is primarily supported by the expert reports of Dr. Chance and Dr. Hess.**

2. **As members of the Murphy family testified during their depositions, they entered into the Options with a desire to earn a positive return. Also, E&Y represented to the Murphy family and their representatives prior to the Transactions that the Transactions had an excellent chance of earning a positive return.**

3. **As Brewer Ezzell testified in his deposition, the Murphy family selected the Options based on the advice and counsel of David Parse of Deutsche Bank, who represented that the options on the Swiss Franc and Euro presented the best opportunity for the Murphy family to earn a profit on the Option transactions. Brewer Ezzell also tracked the movement of the underlying currencies during the Option period to monitor their profitability.**

4. **The contribution of the Options to the Partnerships had the dual benefit of diversifying the Murphy family members' specific investment risk on their respective Option transactions, as well as increasing the overall profit probability of the Options compared to the profit probabilities of the Options individually. *See* expert report of Dr. Hess.**

**<u>INTERROGATORY NO. 77:</u>** If you contend the offsetting option transactions, viewed objectively, had a reasonable possibility of profit (other than in the hands of MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC inquired about in Interrogatory No. 72), describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**<u>ANSWER:</u> Plaintiffs object to this Interrogatory on the grounds that the terms "offsetting" and "objectively" are vague and ambiguous, and dispute any characterization of the Options as "offsetting." Plaintiffs further object to this Interrogatory on the grounds that it seeks information that is cumulative and duplicative of information already provided to the United States. *See* Plaintiffs' Response to Interrogatory No. 72. Subject to and without waiving said objections, Plaintiffs contend that the Options did have a reasonable possibility of profit. This contention is principally supported by the expert reports of Dr. Chance and Dr. Hess, previously discussed above.**

<u>INTERROGATORY NO. 78:</u> If you contend that absent the tax benefits, there were reasonable expectations that the LLCs or the purported partnerships would realize a profit in excess of the fees and transaction costs associated with the COBRA transactions, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**<u>ANSWER:</u> Plaintiffs object to this Interrogatory on the grounds that "reasonable expectations" and "fees and transaction costs associated with the COBRA transactions" are vague and ambiguous. It is unclear what portion, if any, of the fees paid to Ernst & Young and Proskaur Rose in connection with the Transactions should be considered when evaluating the parties' expectations of profit with respect to the Transactions. Plaintiffs contend that, at a minimum, a portion of such fees is attributable to the intellectual property rights associated with the COBRA technique which had independent value. *See* expert reports of Melvin F. Jager and Richard S. Gruner, whose conclusions and analyses are hereby incorporated by reference. Subject to and without waiving said objections, Plaintiffs contend that the Murphy family expected to realize a pre-tax profit with respect**

**to their investment in the Transactions based on Ernst & Young's representation prior to the Transactions that the Transactions had an excellent chance of earning a profit. The reasonableness of their profit expectations is supported by Dr. Chance's expert rebuttal report, wherein he concluded that (1) MURFAM had a probability of earning a profit, net of fees ranging from $173,999 to $288,749, in the realm of 12.12% to 41.61%, respectively, (2) PSM had a probability of earning a profit, net of fees ranging from $71,999 to $112,499, in the realm of 18.36% to 41.61%, and (3) MPP had a probability of earning a profit, net of fees up to $119,999, in the realm of 12.12% to 18.59%.**

INTERROGATORY NO. 79: If you contend the offsetting option transactions had a non-tax business purpose other than the creation of income tax losses, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

ANSWER: **Plaintiffs object to this Interrogatory on the grounds that the term "offsetting" is vague and ambiguous, and dispute any characterization of the Options as "offsetting." Plaintiffs further object to this Interrogatory on the grounds that it seeks information cumulative and duplicative of information previously provided to the United States. Subject to and without waiving this objection, Plaintiffs do contend that the Options had a non-tax business purpose, namely the Options provided the opportunity to make a reasonable profit. *See* Plaintiffs' Objection and Response to Interrogatory Nos. 76, 77, and 78.**

**INTERROGATORY NO. 80:** If you contend MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC had a non-tax business purpose, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**ANSWER: Plaintiffs object to this Interrogatory on the grounds that it seeks information cumulative and duplicative of information previously provided to the United States. Subject to and without waiving this objection, Plaintiffs do contend that the Partnerships served a non-tax business purpose. *See* Plaintiffs' Objections and Response to Interrogatory No. 74 above.**

**INTERROGATORY NO. 81:** If you contend MURFAM Farms, LLC; PSM Farms, LLC and Murphy Pork Partners, LLC (as defined under §1.701-2 of Income Tax Regulations) were not formed and availed of in connection with a transaction or transactions in taxable year 2000, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code, describe all legal theories and principal facts (including expert witnesses testimony) supporting your contention and identify all principal documents that support your contention.

**ANSWER: Plaintiffs object to this Interrogatory on the grounds that the phrase "a transaction or transactions" is vague and ambiguous. Plaintiffs also object to this Interrogatory on the grounds that it requests information cumulative and duplicative of information previously provided to the United States. Further, Plaintiffs object to this Interrogatory on the grounds that it imposes an undue burden on Plaintiffs, as Treasury**

**Regulation § 1.702-1 is unconstitutionally vague, requiring Plaintiffs to guess as to both its requirements and how such requirements might apply to the Transactions. Subject to and without waiving said objections, Plaintiffs contend that the Transactions did not have as its principal purpose to reduce substantially the partners' aggregate federal tax liability, but rather served a number of non-tax purposes, and no tax savings resulted in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code (as defined under § 1.701-2 of Income Tax Regulations). *See* Objections and Responses to Interrogatory Nos. 72, 74, 76, and 78 above (re: purposes for the Transactions) and to previous Interrogatory No. 40; *see also* Tax Opinions (re: legal theories and facts regarding application of § 1.701-2).**

<u>INTERROGATORY NO. 82:</u> If you contend that the obligations under the short positions (written call options) transferred to MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC do not constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by the partnership should reduce the purported partners' bases in the partnership, but not below the fair market value of the purported partnership interest, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

<u>ANSWER:</u> **Plaintiffs contend that the obligations under the Short Options do not constitute liabilities for purposes of Treasury Regulation § 1.752-6T because that Treasury Regulation is invalid on its face and as applied to the Transactions. Plaintiffs further contend the Regulation is only valid prospectively from the date of its issuance and that Congress did not grant the Treasury Department the authority to retroactively apply such rules as set forth in the Regulation. Alternatively, even if the Regulation applies**

**retroactively, Plaintiffs contend that the Regulation does not apply to the Transactions because the parties contributed, and the Partnerships assumed the obligations under, the Short Options on April 17, 2000, which is several months prior to the issuance of Notice 2000-44. In the event it is ultimately determined that Treasury Regulation § 1.752-6T is valid and applies to the Transactions, Plaintiffs contend that the amount of the liabilities assumed by the Partnerships on the contribution of the Options is limited to the value of the Short Options as of the date of their contribution to the Partnerships. *See* Table 12 of Dr. Chances' expert report. Plaintiffs hereby incorporate by reference Plaintiffs' arguments and analyses set forth in its motion for partial summary judgment regarding the validity of Treasury Regulation § 1.752-6T (later finalized), which shall form part of Plaintiffs' response.**

INTERROGATORY NO. 83: If you contend that MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC and their partners entered into the option(s) positions or purchased the foreign currency or stock with a profit motive for purposes of §165(c)(2), describe all legal theories and principal factual support (including expert witness testimony) for such contention, and identify all documents that support your contention.

ANSWER: **Plaintiffs object to this Interrogatory on the grounds that it seeks information that is not relevant to these partnership proceedings. IRC § 165(c)(2) does not apply to partnerships, and its application to the individual taxpayers does not satisfy the definition of a "partnership item" under IRC § 6231(a)(5). Plaintiffs also object to this Interrogatory on the grounds that it seeks information cumulative and duplicative of the information previously provided to the United States. Subject to and without waiving said objections,**

**the parties entered into the Options with a profit motive. *See* Response to Interrogatory No. 76 above.**

<u>INTERROGATORY NO. 84:</u> If you contend that the offsetting (long and short) options are "separate" positions and not in substance a "single" position, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

<u>ANSWER:</u> **Plaintiffs object to this Interrogatory on the grounds that the terms "offsetting," "separate positions" and "single position" are vague and ambiguous, and dispute any characterization of the Options as "offsetting." Subject to and without waiving said objections, Plaintiffs contend that the federal income tax treatment each Long Option and each Short Option is determined independently of the tax treatment of the other Options. The legal theories and principal facts supporting this contention are set forth in the Tax Opinions. This interpretation is consistent with the IRS' view of digital option positions for purposes of IRC § 6707. *See* deposition transcript of Mario Verdolini and Ex. 1 thereto. Plaintiffs also refer to, and hereby incorporate, the rebuttal expert report of Dr. Don Chance, wherein he opined on this issue.**

<u>INTERROGATORY NO. 85:</u> What do you contend can be established under Section 723 as the adjusted bases of the long call positions (purchased call options), and the adjusted bases of any other contributions purportedly contributed by the partners to MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

<u>ANSWER:</u> Plaintiffs object to this Interrogatory on the grounds that the term "other contributions purportedly contributed" is vague and ambiguous. Subject to and without waiving said objection, Plaintiffs contend that the Partnerships acquired an adjusted basis under IRC § 723 in the Options and cash contributed by their partners equal to the partners' adjusted bases in said assets. MURFAM and PSM likewise acquired an adjusted basis under IRC § 723 in the North Carolina municipal bonds contributed by their partners equal to the partners' adjusted bases in the bonds.

Plaintiffs contend that (1) Wendell Murphy's adjusted basis (through WHM Ventures LLC) in (i) (A) the Long Option on the Euro contributed to MURFAM was $26,400,000.00 and (B) the Long Option on the Euro contributed to MPP was $8,000,000.00, which represent the amounts Wendell paid for the Options, and (ii) the cash contributed to MURFAM and MPP in the amounts of $567,873.00 and $172,083.00, respectively, was equal to the amounts transferred, (2) Wendell Murphy, Jr.'s adjusted basis (through WHMJ, LLC) in (i) (A) the Long Option on the Swiss Franc contributed to MURFAM was $17,300,000.00 and (B) the Long Option on the Swiss Franc contributed to MPP was $4,000,000.00, which represent the amounts Wendell Jr. paid for the Options, and (ii) the cash contributed to MURFAM and MPP in the amounts of $370,661.00 and $85,702.00, respectively, was equal to the amounts transferred, (3) Wendy Crumpler's adjusted basis (through WMC, LLC) in (i) the Long Option on the Euro contributed to MURFAM was $5,300,000.00, which represents the amount she paid for the Option, and (ii) the cash contributed to MURFAM in the amount $111,497.00 was equal to the amount transferred, (3) Joyce Minchew's adjusted basis (through JMN Ventures, LLC) in (i) the Long Option on the Swiss Franc contributed to MURFAM was $9,700,000.00, which

represents the amount she paid for the Option, and (ii) the cash contributed to MURFAM in the amount $204,160.00 was equal to the amount transferred, (4) Angela Brown's adjusted basis (through ANB, LLC) in (i) the Long Option on the Swiss Franc contributed to MURFAM was $3,000,000.00, which represents the amount she paid for the Option, and (ii) the cash contributed to MURFAM in the amount $63,060 was equal to the amount transferred, (5) Marc Murphy's adjusted basis (through MDM Ventures, LLC) in (i) the Long Option on the Swiss Franc contributed to PSM was $6,300,000.00, which represents the amount he paid for the Option, and (ii) the cash contributed to PSM in the amount $132,457.00 was equal to the amount transferred, (6) Stratton Murphy's adjusted basis (through SKM Ventures, LLC) in (i) the Long Option on the Swiss Franc contributed to PSM was $6,300,000.00, which represents the amount he paid for the Option, and (ii) the cash contributed to PSM in the amount $132,457.00, was equal to the amount transferred, and (6) Harry Murphy's adjusted basis (through HDM, LLC) in (i) (A) the Long Option on the Swiss Franc contributed to MPP was $2,000,000.00, and (B) the Long Option on the Euro contributed to PSM was $12,000,000.00, which represent the amounts Harry paid for the Options, and (ii) the cash contributed to MPP and PSM in the amounts of $42,632 and $255,790.00, respectively was equal to the amounts transferred.

Additionally, Plaintiffs contend that the partners' basis in the North Carolina municipal bonds contributed to MURFAM and PSM was the adjusted basis transferred to them under IRC § 1015 as a result of Wendell Murphy's gift of the bonds to them. Wendell Murphy's adjusted basis in those bonds was equal to at least $122,290. Plaintiffs further contend that the Partnerships acquired no basis, nor was any adjustment to existing basis required, by virtue of the partners' contribution of the Short Options to the

**Partnerships. Any obligation assumed by the Partnerships in connection with said transfer did not constitute a "liability" for purposes of IRC § 752 and interpreting authority, or alternatively, the amount of the liability assumed was zero. Further elaboration of Plaintiffs' legal theories, as well as supporting facts, appear in the Tax Opinions. Other supporting documents include the following transactional documents Bates labeled MUCO0004-14, MUCO00023-056, MUCO00082, MUCO00165-175, MUCO00180-190, MUEY00047-52, MUEY00082-88, MUEY00205-210, MUEY00237-242, MUEY00267-273, MUEY01279-1285, MUMU16962-967, MUMU17051-056, MUD00121-124, MUDB00287-291, MUEY00089-95, MUEY00243-247, MUEY00719-723, MUEY01349-355, MUEY01625-630, MUEY02936-941, MUEY04702-707, MUMU16642-650, MUMU16968-973, MUMU17057-062, MUPR00655-673, MUPR00679-684, MUPR00694-99, MUPR00700-704, MUPR00705-710, MUPR00711-738, MUPR00720-25, MUPR00726-730, MUPR00731-738, MUC00142-52, MUEY00274-280, MUEY01867-869, MUEY02223-224, MUEY02428-429, MUEY02488-489, MUEY02514-515, MUEY3798-3803, MUEY04556-558, MUFOIA00313-314, MUFOIA01353-1355, MUPR00563-565.**

**INTERROGATORY NO. 86:** If you contend that, in the cases of a sale, exchange, or liquidation of MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC, or the partners' partnership interests, either the purported partnerships or their purported partners have established that the bases of the partners' partnership interest were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest, state what you contend the purported partnerships or the purported partners have established the basis of the partnerships' or partners' partnership interest are, and describe

all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**ANSWER:** **Plaintiffs object to this Interrogatory on the grounds that it is vague and confusing. Subject to and without waiving said objections, Plaintiffs contend that (1) MURFAM, Inc. acquired an adjusted basis under IRC § 362(a) in the MURFAM partnership interests equal to the partners' then-adjusted basis in such interests, (2) PSM, Inc. acquired an adjusted basis under IRC § 362(a) in the PSM partnership interests equal to the partners' then-adjusted basis in such interests, and (3) Murphy Pork, Inc. acquired an adjusted basis under IRC § 362(a) in the MPP partnership interests equal to the partners' then-adjusted basis in such interests. Plaintiffs previously provided information regarding the partners' bases in the Partnerships in response to Interrogatory No. 85, above. As fully explained in the Tax Opinions, IRC § 362(a) is applicable because the contributions of the Partnerships' interests MURFAM Inc., PSM Inc., and Murphy Pork Inc. (as applicable) qualified as tax-free exchanges pursuant to IRC § 351. The Partnership interests constitute property and the contributing shareholders owned more than 80% of each corporation following the transfers. Plaintiffs further contend that said contributions caused a liquidation of the Partnerships for federal income tax purposes since, following the contributions, each Partnership only had one member. MURFAM Inc., PSM Inc., and Murphy Pork Inc. therefore acquired an adjusted basis under IRC § 732(b) in the property distributed to them by MURFAM, PSM, and MPP, respectively, equal to their adjusted basis in the Partnership interests. The principal documents supporting Plaintiffs' contentions, in addition to the Tax Opinions and the documents identified in**

**Plaintiffs' response to Interrogatory 85, are Bates labeled MUPR00014-033, MUPR00623-624.**

<u>INTERROGATORY NO. 87:</u> If you contend the step transaction doctrine is not applicable in this case, requiring that the individual steps of the COBRA transaction be collapsed, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

<u>ANSWER:</u> **Plaintiffs object to this Interrogatory on the grounds that the term "individual steps of the COBRA transaction" is vague and ambiguous. Subject to and without waiving said objection, Plaintiffs contend that the step-transaction doctrine does not apply to the Transactions because (i) the parties were not legally committed to consummate each aspect of the Transactions, and (ii) each aspect possessed economic and/or legal significance. The legal theories and principal facts supporting these contentions are set forth in the Tax Opinions. Plaintiffs elaborate that the following transactions had independent significance for the reasons given: (i) the formation of the LLCs that acquired the Options because they limited the liability of the Murphy family members and facilitated Deutsche Bank's approval of the investment in the Options, *see* Bates labeled DB-DOJ-COBRA00246222-2232, (ii) the purchase of the Options because the Options had a reasonable probability to earn a profit, *see* expert reports of Drs. Chance and Hess, (iii) the contribution of the Options to the Partnerships because said contributions (A) altered the parties' legal rights regarding investment risk and the economic gain or loss on the termination of the Options, and (B) increased the overall profit probability on the Options compared to the profit probabilities of the Options individually, *see* expert report of Dr. Chance, (iv) each Partnership's acquisition of a variety of publicly-traded stocks, as well as MURFAM's and**

**PSM's acquisition (by contribution) of municipal bonds and MPP's acquisition of foreign currency, because these investments diversified each Partnership's portfolio and reduced its overall investment risk, and (v) the formation of MURFAM, Inc., PSM, Inc. and Murphy Pork, Inc. and the contribution of the MURFAM, PSM, and MPP partnership interests, respectively, thereto because it further limited the shareholders' liability and risk of loss on the Partnerships' then-current and yet-to-be made future investments, *see* Plaintiffs' Objections and Response to United States Interrogatories Nos. 4-6, 15, and 40-42.**

<u>INTERROGATORY NO. 88:</u> If you contend MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC were used for other than the conduits to create an artificially inflated basis in the purported partners' partnership interests, which inflated basis could, in turn, then be allocated to property distributed to the purported subchapter S corporations upon the prearranged dissolution of the purported partnerships, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

<u>ANSWER:</u> **Plaintiffs object to this Interrogatory on the grounds that the terms "conduits," "artificially," "inflated" and "prearranged" are vague and ambiguous. Plaintiffs also object to this Interrogatory on the grounds that it seeks information that is cumulative and duplicative of information previously provided to the United States. Subject to and without waiving said objections, the parties formed and utilized the Partnerships for, among other reasons, a variety of non-tax reasons. *See* Objections and Response to Interrogatory Nos. 74 and 76 above; *see also* Objections and Response to United States Interrogatory Nos. 4-6 and 15.**

<u>INTERROGATORY NO. 89:</u> If you contend the creation of the disregarded entities, the partnerships and the S corporations and the contribution of the long and short offsetting options to the partnerships and the liquidation of the partnerships to the purported subchapter S corporation were not prearranged and therefore cannot be disregarded under the step transaction doctrine, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**<u>ANSWER:</u> Plaintiffs object to this Interrogatory on the grounds that the term "offsetting" is vague and ambiguous, and dispute any characterization of the Options as "offsetting." Plaintiffs also object to this Interrogatory on the grounds that the term "prearranged" is vague and ambiguous. Further, Plaintiffs object to this Interrogatory on the grounds that it seeks information that is cumulative and duplicative of information previously provided to the United States. Subject to and without waiving said objections, Plaintiffs contend that the step-transaction doctrine does not apply because each aspect of the Transactions, including those referenced above, had independent significance. *See* Plaintiffs' Response to Interrogatory No. 87 (re: step-transaction); *see also* Plaintiffs' Objections and Responses to Interrogatory No. 76 (re: Option contributions), No. 74 (re: formation of the Partnerships), No. 15 (re: purposes for the COBRA entities), Nos. 40 (re: non-tax reasons for the Transactions), and No. 42 (re: contributions of Partnership interests).**

<u>INTERROGATORY NO. 90:</u> If you contended in any attempt to obtain compensation or damages from the promoters or other third parties in connection with your participation in the COBRA transactions, that the documentation for the offsetting option transactions may not reflect the reality of these transactions, describe all legal theories and principal facts (including expert witness testimony) supporting your contention *or* that you presented to the promoters or

other third parties in pressing your attempt, and identify all principal documents that support your contention.

<u>ANSWER:</u> **Plaintiffs object to this Interrogatory on the grounds that it is vague and confusing, including, without limitation, its use of the terms "promoters or other third parties," "documentation for the offsetting options," and "reality of the transactions." Plaintiffs also object to this Interrogatory on the grounds that it seeks information about contract and/or tort claims wholly unrelated to the *income-tax* claims at issue in this case, and thus is not relevant to any claim or defense of any party in this litigation. Plaintiffs further object to this Interrogatory on the grounds it is unduly burdensome and seeks information that is cumulative and duplicative of information previously provided to the United States. *See* Plaintiffs' Objections and Responses to Interrogatory Nos. 26 and 27. Subject to and without waiving said objections, Plaintiffs have made no such contentions.**

<u>INTERROGATORY NO. 91:</u> If you contend that the documentation for the offsetting option transactions may not reflect the reality of these transactions, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

<u>ANSWER:</u> **Plaintiffs object to this Interrogatory on the grounds that the terms "documentation for the offsetting options" and "reality of these transactions" are vague and ambiguous. Plaintiffs further object to this Interrogatory on the grounds that it seeks information that is cumulative and duplicative of information previously provided by Plaintiffs to the United States. *See* Objections and Responses to Interrogatory No. 90 above. Subject to and without waiving said objection, Plaintiffs make no such contentions.**

<u>INTERROGATORY NO. 92:</u> If you contend that the partners, partnerships or disregarded entities (LLCs) were at risk, in whole or in part, within the "at risk" rules of §465, for the short option(s) sold to Deutsche Bank, state the amount you contend was at risk under the "at risk" rules of §465 and describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**<u>ANSWER:</u> Plaintiffs object to this Interrogatory on the grounds that it seeks information that is not relevant to these partnership proceedings. IRC § 465 does not apply to partnerships and its application to the individual taxpayers does not satisfy the definition of a "partnership item" under IRC § 6231(a)(5). Plaintiffs further object on the grounds that the Interrogatory's reference to the Short Options is confusing, given that (i) the at-risk limitations apply to taxpayer *activities* not specific assets, and (ii) the relevant inquiry would be the taxpayers' activity with respect to MURFAM Inc., PSM Inc., and Murphy Pork Inc. (i.e., the entities that recognized and reported the disputed tax losses), which never acquired the Short Options. Subject to and without waiving said objections, Plaintiffs contend that the individual taxpayers were at risk for purposes of IRC § 465 with respect to the S corporations, MURFAM Inc., PSM Inc., and Murphy Pork, Inc., to the extent of their adjusted basis therein. Plaintiffs further contend that each partners' basis in MURFAM Inc., PSM Inc., and Murphy Pork, Inc. (as applicable) was increased by their basis in MURFAM, PSM, and MPP, respectively, upon the contribution of the Partnership interests to the corporations. Plaintiffs previously provided information regarding the partners' adjusted bases in the Partnerships in its Response to Interrogatory No. 85.**

<u>INTERROGATORY NO. 93:</u> If you contend the penalties asserted in the FPAA should not be asserted, describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

**<u>ANSWER:</u> Plaintiffs object to this Interrogatory on the grounds that it is vague and confusing. Whether Plaintiffs believe that the IRS should not have *asserted* penalties in the FPAA is irrelevant, as the IRS did in fact assert such penalties. Subject to and without waiving said objection, Plaintiffs contend that none of the penalties proposed by the FPAA *apply* because the parties properly reported the tax treatment of the Transactions on the relevant federal tax returns for tax year 2000. In the event that such reported tax treatment is not upheld, Plaintiffs contend that no penalty under IRC § 6662 applies because (i) the parties acted reasonably and not negligently, (ii) the reported tax treatment of the Transactions was supported by substantial authority, and (iii) the parties acted in good faith and with reasonable cause, all within the meaning of IRC §§ 6662 and 6664. The principal facts and documents supporting this contention are set forth below.**

- **While extremely successful in the hog-farming business, the Murphy family routinely relied on Ernst & Young LLP ("E&Y") and other professionals to advise them on *all* non-operational aspects of their business, including accounting and tax matters.**
- **E&Y was the Murphy family's long-time advisor, dating back to 1981. For over two decades, including the tax period at issue, E&Y provided a broad range of tax, general business, and accounting services to the Murphy family and their businesses including audit services, tax-return preparation, and business investment advice. In fact, since 1981, E&Y has prepared the**

**income tax returns for all the Murphy businesses as well as the Murphy family members individually. This includes the tax returns for all of the entities involved in the Transactions and each family member's individual Form 1040 return on which the tax consequences of the Transactions were reported.**

- **Prior to the Transactions, the Murphy family received and relied upon tax advice from Ernst & Young in connection with their hog-farming business, which withstood IRS scrutiny.**
- **E&Y introduced the Transactions to the Murphy family and represented to them that all aspects of the transactions had been vetted internally by E&Y and had the support of independent national law firms.**
- **E&Y brought the transactions to the Murphy family at a time when they had little diversification in their asset holdings as a result of the merger of their hog-farming business with Smithfield Foods. Based on E&Y's representations, the patriarchs of Murphy family believed that E&Y's proposal could provide asset diversification and management, significant profit potential, and tax benefits.**
- **Brewer Ezzell, a long-time advisor to the Murphy family, consulted with David Parse of Deutsche Bank regarding the best option investments for the Murphy family, and tracked the movement of the foreign currency exchange rates underlying the option contracts to monitor and evaluate the value of such contracts.**

- **Brewer Ezell also interfaced with E&Y to review transactional documents throughout the tax advisor's implementation of the Transactions.**
- **The Murphy family hired Proskauer Rose to provide tax opinions on the transactions at issue based on their national reputation and Ernst & Young's endorsement of them. In addition, E&Y represented to the Murphys that Proskauer Rose had not written any other COBRA tax opinions.**
- **The Tax Opinions concluded that the parties' tax treatment of the Transactions was more-likely-than-not proper, and that there was a greater than 50% chance that such treatment would be upheld if challenged by the IRS. *See* Tax Opinions.**
- **The Tax Opinions were of the character and quality upon which the Murphy family could reasonably rely in preparing their tax returns. *See* expert reports of Stuart Smith.**
- **Brewer Ezell, as well as the Murphy family's long-time advisors at Ernst & Young, reviewed the Tax Opinions including the representations made by the Murphy family in connection herewith.**
- **The Murphy family consulted with E&Y after the IRS issued Notice 2000-44, and both E&Y and the Tax Opinions advised that the Notice would not impact the tax treatment of the Transactions.**
- **All of the Murphy family members continued to use Ernst & Young's services until last year, when their long-time Ernst & Young advisor retired. Many of them still continue to use Ernst & Young services.**

Plaintiffs also contend that the substantial understatement penalty under IRC § 6662(b)(2), (d) does not apply because the reported tax positions at issue were supported by substantial authority, as outlined in the Tax Opinions. The analyses of these opinions are hereby incorporated by reference and form part of Plaintiffs' response. These opinions were objectively reasonable and of the character and quality upon which the parties were entitled to rely. *See* expert reports of Stuart Smith. Further, the retroactive effective date of Treasury Regulation 1.752-6T (later finalized) evidences the substantial authority that existed for the reported tax positions at the time the relevant tax returns were filed. Plaintiffs are not relying on IRC § 6662(d)(2)(B)(ii) to reduce the amount of any potential understatement.

Plaintiffs also contend that the substantial and gross valuation misstatement penalties under IRC § 6662 (b)(3), (e) and (h) do not apply because no "valuation" issue exists in these cases. The basis of the alleged misstatement is the parties' calculation of partnership basis and whether the Short Options contributed to the Partnerships should be included therein. This type of *legal* dispute is not a valuation issue and does not support a valuation penalty. Further, in the event that the tax benefits of the Transactions are completely disallowed, Plaintiffs contend that under *Heasley v. Commissioner*, 902 F2d 380 (5th Cir. 1990) and its progeny, any understatement of tax is not attributable to a valuation misstatement within the meaning of IRC § 6662(e) or (h).

Plaintiffs further contend that the negligence and disregard-of-rules penalties under IRC § 6662(b)(1), (c) do not apply for reasons previously stated in this response. Plaintiffs and their partners made a reasonable attempt to comply with the provisions of the Internal Revenue Code and exercised ordinary and reasonable care in procuring the Tax Opinions

**and relying on their long-time advisor and tax-return preparer, E&Y, to prepare the tax returns for the Transactions and the Murphy family's individual tax returns. E&Y's intimate knowledge about the Transactions and long-time business relationship with the Murphy family placed the firm in a unique position of trust and understanding. Plaintiffs and their partners did not act carelessly or recklessly, nor did they intentionally disregard any rule or regulation without a realistic possibility of being sustained on the merits. The principal facts and documents supporting these contentions are set forth in the preceding paragraphs of this response.**

**INTERROGATORY NO. 94:** If you contend MURFAM Farms, LLC, PSM Farms, LLC and Murphy Pork Partners, LLC or their partners had a reasonable belief the positions taken on the Form 1065 partnership returns and Form 1120S Subchapter S returns were more likely than not the correct treatment of the tax shelter and related transactions, describe all legal theories and principal facts (including expert witness testimony).

**ANSWER: Plaintiffs object to this Interrogatory on the grounds that "tax shelter and related transactions" is vague and ambiguous. To the extent this Interrogatory inquires as to the Transactions, Plaintiffs object to this Interrogatory on the grounds that it seeks information cumulative and duplicative of the information previously provided to the United States. Subject to and without waiving said objections, Plaintiffs and their partners had a reasonable belief that the positions taken on the 2000 Form 1065 returns for the Partnerships and the 2000 Form 1120S Subchapter S returns for MURFAM Inc., PSM Inc., and Murphy Pork Inc. were more-likely-than-not the correct treatment. The principal facts and documents supporting this contention are set forth in Plaintiffs' Response to Interrogatory No. 93 above.**

<u>INTERROGATORY NO. 95:</u> Do you contend that the COBRA transaction which you entered into is not a "tax shelter" within the meaning of Section 6662(d)(2)(C)? If you contend that the COBRA transaction which you entered into is not a "tax shelter" within the meaning of Section 6662(d)(2)(C), describe all legal theories and principal facts (including expert witness testimony) supporting your contention and identify all principal documents that support your contention.

<u>ANSWER:</u> **Plaintiffs object to this Interrogatory on the grounds that it seeks information cumulative and duplicative of the information previously provided to the United States. Subject to and without waiving said objection, Plaintiffs contend that the Transactions do not constitute a "tax shelter" within the meaning of IRC § 6662(d)(2)(C), as further defined by Treasury Regulation § 1.6662-4(g)(2)(i). The Transactions did not have as "the principal purpose of the entity, plan or arrangement...to avoid or evade Federal income tax." § 1.6662-4(g)(2)(i) [prior to amendment by TD 9109, 12/29/2003]. The tax benefits of the Transactions were only one of the purposes of the Transactions. Plaintiffs also entered into the Transactions for the purpose of earning a positive return on the Options, which had a reasonable probability of profit. The principal facts and documents supporting this contention are set forth in Plaintiffs' Objections and Responses to Interrogatory Nos. 72, 76, 77, and 78 above.**

Respectfully submitted,

By: ______________________________
Joel N. Crouch
Texas State Bar No. 05144220
M. Todd Welty
Texas State Bar No. 00788642
Michael E. McCue
Texas State Bar No. 13494150
Anthony P. Daddino
Texas State Bar No. 24036434

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202
Telephone: (214) 744-3700
Facsimile: (214) 747-3732
jcrouch@meadowscollier.com
twelty@meadowscollier.com
mmccue@meadowscollier.com
adaddino@meadowscollier.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 14th day of March, 2008, I served the foregoing Plaintiffs' Responses to the United States' Interrogatories (Nos. 71 though 95) to counsel listed below via Federal Express.

David Steiner, Esq.
United States Department of Justice
Tax Division
Civil Trial Section, Northern Region
555 Fourth Street, NW
Room 7804
Washington, D.C. 20001
David.M.Steiner2@usdoj.gov

Joel N. Crouch

**VERIFICATION**

STATE OF NORTH CAROLINA §
§
COUNTY OF Duplin §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Wendell H. Murphy, who, after being duly sworn, stated under oath that he is the Tax Matters Partner of Plaintiffs MURFAM Farms, LLC and Murphy Pork Partners, LLC in this lawsuit; that in his capacity as such, he has read the above Objections and Answers to United States' Interrogatories (Nos. 71 though 95) and each, to the best of his knowledge, is true and correct.

Wendell H. Murphy
Wendell H. Murphy

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 14th day of March 2008.

Dallace J Dudy
Notary Public, State of North Carolina

**VERIFICATION**

STATE OF FLORIDA §
§
COUNTY OF Broward §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Harry D. Murphy, who, after being duly sworn, stated under oath that he is a Notice Partner of Plaintiff PSM Farms, LLC in this lawsuit; that in his capacity as such, he has read the above Objections and Answers United States' Interrogatories (Nos. 71 though 95) and each, to the best of his knowledge, is true and correct.

Harry D. Murphy
Harry D. Murphy

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 13 day of March, 2008.

NOTARY PUBLIC-STATE OF FLORIDA
A. Y. McConnell, Jr.
Commission # DD536133
Expires: APR. 03, 2010
Bonded Thru Atlantic Bonding Co., Inc.

A. Y. McConnell
Notary Public, State of Florida