**Union Calendar No. 598**

| | | |
|---|---|---|
| 106TH CONGRESS<br>*2d Session* | HOUSE OF REPRESENTATIVES | REPORT<br>106–1036 |

# REPORT ON THE LEGISLATIVE AND OVERSIGHT ACTIVITIES

OF THE

# COMMITTEE ON WAYS AND MEANS

DURING THE

# 106TH CONGRESS

DECEMBER 21, 2000.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
89–006 WASHINGTON : 2001

PENGAD-Bayonne, N.J.
GOVERNMENT EXHIBIT
Appendix A4

to $7.5 billion in "New Markets Tax Credits" to community development entities that provide assistance to individuals and businesses in low-income areas. The bill also includes an increase in the low income housing tax credit and an acceleration of the scheduled increase in the private activity bond volume cap. In addition, the bill permits greater deduction (rather than capitalization) of certain environmental remediation costs.

H.R. 5662 also renamed "medical savings accounts" as "Archer MSAs" and extended the program for two more years. The bill also extended the D.C. homebuyer credit for two years and the D.C. enterprise zone for one year. It extended and modified the enhanced deduction for corporate donations of computer technology and modified the tax treatment of Indian tribes for FUTA purposes. The bill included several administrative provisions and technical corrections, substantially identical to those in H.R. 5542 (see I.A.2.b., below).

2. COMPREHENSIVE TAX RELIEF PROPOSALS

*a. Taxpayer Refund and Relief Act of 1999*

On January 20, 1999, the Committee held hearings on the Outlook for the State of the U.S. Economy in 1999. On February 4 and March 10, 1999, the Committee held hearings on the President's Fiscal Year 2000 Budget. On June 16 and 23, 1999, the Committee held hearings on Reducing the Tax Burden. On June 30, 1999, the Committee held a hearing on the Impact of U.S. Tax Rules on International Competitiveness.

On July 13, 1999, Committee Chairman Archer introduced H.R. 2488, the "Financial Freedom Act of 1999." On July 13 and 14, 2000, the Committee marked up the bill (H. Rept. 106–238). The House passed the bill on July 22, 1999. The Senate passed the bill, as amended, on July 30, 1999. On August 4, 1999, the conference report on H.R. 2488 (H. Rept. 106–289), retitled the "Taxpayer Refund and Relief Act of 1999," was filed. The House passed the conference report, as did the Senate, on August 5, 1999. The President vetoed the bill on September 23, 1999.

In summary, title I of the conference report included broad-based and family tax relief, including a reduction in individual income tax rates and expansion of the lowest individual regular income tax rate bracket, marriage penalty relief provisions (see section I.A.3.a., below), and repeal of the individual alternative minimum tax. Title II included capital gains tax relief and IRA changes. Title III consisted of business alternative minimum tax relief. Titles IV, V, and VI included education savings incentives (see section I.A.3.g., below), health care provisions (see section I.A.3.i., below), and death tax relief (see section I.A.3.b., below). Title VII would have provided tax relief for distressed communities and industries, including renewal communities (see section I.A.1.g., above) and farming, oil and gas, and timber incentives. Title VIII related to tax relief for small businesses (see section I.A.3.h., below). International tax relief, including modification of the interest allocation rules, was included in title IX, and provisions relating to tax-exempt organizations were included in title X. Title XI consisted of real estate provisions, including an increase in the low income housing tax credit (see section I.A.1.g., above) and a provision allowing tax-

able REIT subsidiaries. Title XII was composed of provisions relating to pensions (see section I.A.3.e., below). Title XIII included miscellaneous provisions affecting individuals, businesses, excise taxes, and the United States Tax Court. Title XIV would have extended several expiring provisions (see section I.A.1.b., above). Title XV included several revenue offsets.

*b. Taxpayer Relief Act of 2000*

On October 25, 2000, Representative Armey introduced H.R. 5542, the "Taxpayer Relief Act of 2000." The provisions of H.R. 5542 were incorporated by reference into the conference report on H.R. 2614. The conference report on H.R. 2614 passed the House on October 26, 2000.

In summary, the bill included several provisions similar to or identical to provisions that had previously passed the House, including FSC repeal and extraterritorial income exclusion (see section I.A.1.f., above), small business tax relief (see section I.A.3.h., below), health insurance and long-term care insurance provisions (see section I.A.3.i., below), pension and individual retirement arrangement provisions (see section I.A.3.e., below), tax-exempt bond provisions for school construction (see section I.A.3.g., below) and an expansion of the qualified zone academy bond program, and community revitalization (see section I.A.1.g., above). The bill also included several administrative and miscellaneous provisions and technical corrections (see section I.A.1.g., above).

3. ISSUE SPECIFIC TAX BILLS

*a. Marriage Tax Penalty Relief*

On February 10, 1999, Representative Weller introduced H.R. 6. See discussion of the "Taxpayer Refund and Relief Act of 1999" at section I.A.2.a., above, for earlier action relating to marriage tax penalty relief. On February 2, 2000, the Full Committee marked up and ordered reported with an amendment, H.R. 6, the "Marriage Tax Penalty Relief Act of 2000." The report was filed on February 7, 2000 (H. Rept. 106–493) and the House passed the bill on February 10, 2000. Pursuant to H.Con.Res. 290, budget reconciliation for Fiscal Year 2001, the provisions of H.R. 6 were introduced as H.R. 4810 and passed by the House on July 12, 2000. H.R. 4810 was amended and approved by the Senate on July 18, 2000. On July 19, 2000, a conference report to accompany H.R. 4810 was filed (H. Rept. 106–765) and was passed by the House on July 20 by a vote of 271–156 and by the Senate on July 21, 2000, by a vote of 60–34. On August 5, 2000, the President vetoed H.R. 4810. On September 13, 2000, the House failed to override the President's veto.

In summary, H.R. 6 would have provided net tax reduction of over $50 billion during the period Fiscal Year 2000–2005. Under the bill, the basic standard deduction for a married couple filing a joint return would have increased to twice that of a taxpayer filing a single return, effective for tax years after 2000. The bill also would have expanded, over a six-year phase-in period beginning in tax years after 2002, the 15 percent regular income tax bracket for a married couple filing a joint return to twice the size of the corresponding bracket for a single return. In addition, H.R. 6 would

have repealed current law provisions that offset refundable income tax credits by the amount of the alternative minimum tax (AMT), effective for tax years after 2001. Finally, the bill would have increased by $2,000 the beginning and ending income levels for the earned income credit (EIC) phaseout for married couples filing jointly, effective for tax years after 2000.

The conference agreement would have provided over $89 billion of net tax relief over fiscal years 2001–05, incorporating many of the provisions of the House passed bill. The primary difference related to the effective dates of the provisions. Under the conference agreement, the standard deduction and EIC increases, together with the 15 percent bracket expansion, would have been effective in tax year 2000. Finally, all of the tax reductions would have sunset January 1, 2005.

*b. Death Tax Repeal*

On February 25, 1999, Representative Dunn introduced H.R. 8, the "Death Tax Elimination Act." On May, 25, 2000, the Committee marked up H.R. 8, retitled the "Death Tax Elimination Act of 2000" (H. Rept. 106–651). The bill passed the House on June 9, 2000, by a vote of 279–136 and the Senate on July 14, 2000 by a vote of 59–39. The bill was vetoed by the President on August 31, 2000, and the House failed to override the veto on September 7, 2000.

In summary, the bill provided for a phased-in repeal of estate, gift, and generation-skipping taxes. Prior to full repeal in 2010, the estate and gift tax rates (and the generation-skipping tax rate) would have been reduced as follows. Beginning in 2001, the 55 percent tax rate and the 5 percent surtax would have been repealed. Beginning in 2002, the highest rate would be 50 percent. Each of these rates would be reduced by 1 percentage point per year from 2003 through 2006, 1.5 percentage point in 2007, and 2 percentage points in 2008 and 2009. However, no rate would be reduced below the lowest general individual income tax rate for unmarried individuals and the highest rate would not be reduced below the highest general individual income tax rate for unmarried individuals. From 2003 through 2009, the State death tax credit rates would be reduced in proportion to the Federal estate and gift tax rate reductions. Beginning in 2001, the unified estate and gift tax credit would be replaced by an exemption. After repeal of the estate, gift, and generation skipping taxes, the basis of assets received from a decedent generally would be the basis of the decedent (i.e., carryover basis); however, current law basis step up rules would be retained for $3 million of assets left to a surviving spouse and $1.3 million of other assets left to any beneficiary (the $3 million and $1.3 million figures would be indexed for inflation).

The bill would have made a number of simplifying changes to the generation-skipping tax prior to its repeal. In addition, the bill would have expanded the availability of the estate tax rule for qualified conservation easements by modifying the distance requirements. Under the bill, the maximum distance of eligible land from a metropolitan area, national park, or wilderness area would have been increased from 25 to 50 miles, and from an Urban National Forest, it would have been increased from 10 to 25 miles. The bill also would have clarified that the date for determining