**Calendar No. 346**

106TH CONGRESS 1st Session | SENATE | REPORT 106–201

# TAX RELIEF EXTENSION ACT OF 1999

OCTOBER 26, 1999.—Ordered to be printed

Mr. ROTH, from the Committee on Finance, submitted the following

## REPORT

[To accompany S. 1792]

The Committee on Finance reported an original bill (S. 1792) to amend the Internal Revenue Code of 1986 to extend expiring provisions, to fully allow the nonrefundable personal credits against regular tax liability, and for other purposes, having considered the same, reports favorably thereon and recommends that the bill do pass.

CONTENTS

| | Page |
|---|---|
| I. Legislative Background | 2 |
| II. Explanation of the bill | 3 |
| Title I. Extension of Expired and Expiring Tax Provisions | 3 |
| A. Extend Minimum Tax Relief for Individuals (sec. 101) | 3 |
| B. Extend Exclusion for Employer-Provided Educational Assistance (sec. 102) | 4 |
| C. Extension of Research and Experimentation Credit, Increase in the Rates for the Alternative Incremental Research Credit, and Expansion to Puerto Rico and U.S. Possessions (sec. 103) | 6 |
| D. Extend Exceptions Under Subpart F for Active Financing Income (sec. 104) | 9 |
| E. Extend Suspension of Net Income Limitation on Percentage Depletion From Marginal Oil and Gas Wells (sec. 105) | 11 |
| F. Extend the Work Opportunity Tax Credit (sec. 106) | 12 |
| G. Extend the Welfare-to-Work Tax Credit (sec. 106) | 13 |
| H. Extend and Modify Tax Credit for Electricity Produced by Wind and Closed-Loop Biomass Facilities (sec. 107) | 14 |
| I. Expansion of Qualifying Sites for Expensing of Environmental Remediation Expenditures (sec. 108) | 17 |
| J. Temporary Increase in Amount of Rum Excise Tax That is Covered Over to Puerto Rico and the U.S. Virgin Islands (sec. 109) | 18 |
| K. Delay Requirement That Registered Motor Fuels Terminals Offer Dyed Fuel as a Condition of Registration (sec. 110) | 19 |

79–010

GOVERNMENT EXHIBIT Appendix A7

the provision. For example, it is intended that regulations prevent avoidance of the purposes of the provision by inappropriate or improper reliance on the limited exceptions provided for certain beneficiaries under bona fide charitable gift annuities and for certain noncharitable recipients of an annuity or unitrust amount paid by a charitable remainder trust.

#### EFFECTIVE DATE

The deduction denial provision applies to transfers after February 8, 1999 (as provided in H.R. 630). The excise tax provision applies to premiums paid after the date of enactment. The reporting provision applies to premiums paid after February 8, 1999 (determined as if the excise tax imposed under the provision applied to premiums paid after that date).

No inference is intended that a charitable contribution deduction is allowed under present law with respect to a charitable split-dollar insurance arrangement. The provision does not change the rules with respect to fraud or criminal or civil penalties under present law; thus, actions constituting fraud or that are subject to penalties under present law would still constitute fraud or be subject to the penalties after enactment of the provision.

### M. PREVENT DUPLICATION OR ACCELERATION OF LOSS THROUGH ASSUMPTION OF CERTAIN LIABILITIES (SEC. 213 OF THE BILL AND SEC. 358 OF THE CODE)

#### PRESENT LAW

Generally, no gain or loss is recognized when one or more persons contribute property in exchange for stock and immediately after the exchange such person or persons control the corporation. However, the person may recognize gain to the extent it receives money or other property ("boot") as part of the exchange (sec. 351).

The assumption of liabilities by the controlled corporation generally is not treated as boot received by the transferor. One exception to this rule is when, "taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption or acquisition was made, it appears that the principal purpose of the taxpayer * * * was a purpose to avoid Federal income tax on the exchange, or * * * if not such purpose, was not a bona fide business purpose" (sec. 357(b)). Another exception applies to the extent that the liabilities assumed exceed the total of the adjusted basis of the property transferred to the controlled corporation pursuant to the exchange (sec. 357(c)).

In general, the transferor's basis in the stock of the controlled corporation is the same as the basis of the property contributed to the controlled corporation, increased in the amount of any gain recognized by the transferor on the exchange, and reduced by the amount of any money or property received (sec. 358). For this purpose, the assumption of a liability is treated as money received by the transferor.

Special rules apply in connection with the assumption of a liability that would give rise to a deduction. These liabilities are not taken into account in determining whether the transferor has gain on the exchange, and the transferor's basis in the stock of the con-

trolled corporation is not reduced by the assumption of these liabilities. The Internet Revenue Service has ruled that the assumption of certain contingent liabilities by an accrual basis corporation is covered by this rule.[28]

REASONS FOR CHANGE

The Committee is concerned about a type of transaction in which taxpayers seek to accelerate, and potentially duplicate, deductions involving certain liabilities. As an example, assume a transferor corporation transfers assets with a fair market value basis) in exchange for preferred stock of the transferee corporation, plus the transferee's assumption of a contingent liability that is deductible in the future. The transferor claims a basis for the stock equal to the basis of the transferred assets. However, the value of the stock is reduced by the amount of the liability, creating a potential loss. The transferor may then attempt to accelerate the deduction that would be attributable to the liability by selling or exchanging the stock. Furthermore, the transferee might take the position that it is entitled to deduct the payments on the liability, effectively duplicating the deduction attributable to the liability.

The conference report to the Taxpayer Refund and Relief Act of 1999 contained a provision that would have amended the "principal purpose" aspect of the anti-abuse rule. The Committee believes that a different approach is more appropriate; one that eliminates any loss on the sale of stock attributable to such liabilities.

EXPLANATION OF PROVISION

The provision provides that if the basis of stock received by a transferor as part of a tax-free exchange with a controlled corporation exceeds its fair market value (without regard to this proposal), then the basis of the stock received is reduced (but not below the fair market value) by the amount (determined as of the date of the exchange) of any liability that (1) is assumed in exchange for such property, and (2) did not otherwise reduce the transferor's basis of the stock by reason of the assumption. The provision does not apply where the trade or business giving rise to the liability is transferred to the corporation as part of the exchange. Nor does the provision change the tax treatment with respect to the transferee corporation. For this purpose, the term "liability" includes any obligation to make payment, without regard to whether the obligation is fixed or contingent or otherwise taken into account under the Code. The Secretary of the Treasury shall prescribe such regulations as may be necessary to carry out the purposes of this provision.

The application of the provision is illustrated in the following example: Assume a taxpayer transfers assets with an adjusted basis and fair market value of $100 to its wholly-owned corporation and the corporation assumes $40 of liabilities (the payment of which would give rise to a deduction). Thus, the value of the stock received by the transferor is $60. Under present law, the basis of the stock would be $100. The provision requires that the basis of the stock be reduced to $60 (i.e., a reduction of $40). The basis reduc-

[28] Rev. Rul. 95-74, 1995-2 C.B. 36.

tion would not be required if the transferred assets consisted of the trade or business with respect to which the liability arose.

The Secretary of the Treasury is directed to prescribe rules providing appropriate adjustments to prevent the acceleration or duplication of losses through the assumption of liabilities (as defined in the provision) in transactions involving partnerships.

EFFECTIVE DATE

The provision is effective for assumptions of liabilities on or after October 19, 1999. Except as provided by the Secretary of the Treasury, the rules addressing transactions involving partnerships would be effective for assumptions of liabilities on or after October 19, 1999.

### N. Require Consistent Treatment and Provide Basis Allocation Rules for Transfers of Intangibles in Certain Nonrecognition Transactions (sec. 214 of the bill and secs. 351 and 721 of the Code)

PRESENT LAW

Generally, no gain or loss is recognized if one or more persons transfer property to a corporation solely in exchange for stock in the corporation and, immediately after the exchange such person or persons are in control of the corporation. Similarly, no gain or loss is recognized in the case of a contribution of property in exchange for a partnership interest. Neither the Internal Revenue Code nor the regulations provide the meaning of the requirement that a person "transfer property" in exchange for stock (or a partnership interest). The Internal Revenue Service interprets the requirement consistent with the "sale or other disposition of property" language in the context of a taxable disposition of property. See, e.g., Rev. Rul. 69-156, 1969-1 tax-free exchange and stock received will be treated as payments for the use of property rather than for the property itself. These amounts are characterized as ordinary income. However, the Claims Court has rejected the Service's position and held that the transfer of a nonexclusive license to use a patent (or any transfer of "something of value") could be a "transfer" of "property" for purposes of the nonrecognition provision. See *E.I. DuPont de Nemours & Co.* v. *U.S.*, 471 F.2d 1211 (Ct. Cl. 1973).

REASONS FOR CHANGE

The Committee is concerned that the uncertainty of present law may encourage transferors and transferees to attempt to take inconsistent reporting positions that may have the effect of "whipsawing" the government. Also, the Committee believes that clear basis allocation rules should be provided.

EXPLANATION OF PROVISION

The provision treats a transfer of an interest in intangible property constituting less than all of the substantial rights of the transferor in the property as a transfer of property for purposes of the nonrecognition provisions regarding transfers of property to con-