# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Nos. 06-245T, 06-246T, and 06-247T
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

## UNITED STATES' RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to RCFC 56(h)(2), defendant responds to plaintiff's Proposed Findings of Uncontroverted Facts submitted by Plaintiff in Support of its Motion for Partial Summary Judgment as to the Validity of Treasury Regulation § 1.752-6.

1. On April 4, 2000, MURFAM Farms, LLC ("MURFAM") was formed as a limit liability company under Delaware law. Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9.

**Response:** Denies. MURFAM Farms, LLC ("MURFAM") purports to have been formed as a partnership. See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp. 454-455.

1a. The initial members of MURFAM were Wendell Murphy, Wendell Murphy, Jr., Wendy Crumpler, Joyce Norman, and Angela Brown. Pl. Ex. 2, App. A at pp. 3-9.

**Response:** Denies. MURFAM Farms, LLC ("MURFAM") purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. A1, App. A at pp. 1-2. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys. The Limited Liability Company Agreement of MURFAM is dated as of April 10, 2000, six (6) days later. Pl. Ex. A2, App. A at pp. 3-9.

1b. No election under Treas. Reg. § 301.7701-3(c) was filed with the Internal Revenue Service by or on behalf of MURFAM to be classified as a corporation for federal income tax purposes.

**Response**: Admits.

2. On April 4, 2000, PSM Farms, LLC ("PSM") was formed as a limited liability company under Delaware law. Pl. Ex. 3, App. A at pp. 10-11; Pl. Ex.4, App. A at pp. 12-18.

**Response:** Denies. PSM purports to have been formed as a partnership. See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp. 458-459.

2.a. The initial members of PSM were Harry Murphy, Marc Murphy, and Stratton Murphy. Pl. Ex. 4, App. A at pp. 12-18.

**Response**: Denies. PSM purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. A3, App. A at pp. 10-11. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys. The Limited Liability Company Agreement of PSM is dated as of April 10, 2000, six (6) days later. Pl. Ex. A4, App. A at pp. 12-18.

2b. No election under Treas. Reg. § 301.7701-3(c) was filed with the Internal Revenue Service by or on behalf of PSM to be classified as a corporation for federal tax purposes.

**Response**: Admits.

3. On April 4, 2000, Murphy Pork Partners, LLC ("Pork") was formed as a limited liability company under Delaware law. Pl. Ex. 5, App. A at pp. 19-20; Pl. Ex. 6, App. A at pp. 21-27.

**Response:** Denies. Murphy Pork Partners, LLC ("Pork") purports to have been formed as a partnership. See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp. 456-457.

3a. The initial members of Pork were Wendell Murphy, Wendell Murphy, Jr., and Harry Murphy. Pl. Ex. 6, App. A at pp. 21-27.

**Response**: Denies. Pork purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys. The Limited Liability Company Agreement of PSM is dated as of April 10, 2000, six (6) days later. Pl. Ex. 6, App. A at pp. 21-27.

3b. No election under Treas. Reg. § 301.7701-3(c) was filed with the Internal Revenue Service by or on behalf of Pork to be classified as corporation for federal income tax purposes.

**Response**: Admits.

4a. On April 6, 2000, the following entities were formed. WHM Ventures, LLC (WHM) was formed as a limited liability company

under Delaware law. Pl. Ex. 7, App. A at pp. 28-29.

**Response**: Denies. WHM purports to have been formed as a "disregarded entity." See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp. 442-443. It is admitted that WHM purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys.

4b. WHMJ, LLC (WHMJ) was formed as a limited liability company under Delaware law. Pl. Ex. 8, App. A at pp. 30-31.

**Response**: Denies. WHMJ purports to have been formed as a "disregarded entity." See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp. 452-453. It is admitted that WHMJ purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys.

4c. WMC, LLC (WMC) was formed as a limited liability company under Delaware law. P. Ex. 9, App. at pp. 32-34.

**Response**: Denies. WMC purports to have been formed as a "disregarded entity." See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp.444-445. It is admitted that WMC purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys.

4d. HDM, LLC (HDM) was formed as a limited liability company under Delaware law. Pl. Ex. 10. App. A. at pp. 35-36.

**Response**: Denies. HDM purports to have been formed as a "disregarded entity." See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp. 450-451. It is admitted that HDM purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys.

4e. MDM Ventures, LLC (MDM) was formed as a limited liability company under Delaware law. Pl. Ex. 11, App. A at pp. 37-38.

**Response**: Denies. MDM purports to have been formed as a "disregarded entity." See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp. 448-449.

It is admitted that MDM purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys.

4f. SKM Ventures, LLC (SKM) was formed as a limited liability company under Delaware law. Pl. Ex. 12, App. A at pp. 39-40.

**Response**: Denies. SKM purports to have been formed as a "disregarded entity." See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp. 446-447. It is admitted that SKM purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys.

g. JMN Ventures, LLC (JMN) was formed as a limited liability company under Delaware law. Pl. Ex. 13, App. A at pp. 41-42.

**Response**: Denies. JMN purports to have been formed as a "disregarded entity." See Govt. Ex. 33. It is admitted that JMN purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys.

h. ANB, LLC (ANB) was formed as a limited liability company under Delaware law. Pl. Ex. 14, App. A at pp. 43-44.

**Response**: Denies. WHM purports to have been formed as a "disregarded entity." See application for Employer Identification Number ("EIN") dated June 5, 2000, signed by Brewer Ezzell, the in-house accountant for the Murphy family, Govt. Ex. 33, App. at pp.442-443.
It is admitted that ANB purports to have been formed on April 4, 2000 by Ira Akselrad of Proskauer Rose ("PR") as an "authorized agent." Pl. Ex. 1, App. A at pp. 1-2; Pl. Ex. 2, App. A at pp. 3-9. However, it is unclear on who's behalf PR was then acting as an agent, E&Y or the Murphys.

5. None of the following entities dissolved during calendar year 2000.

a. WHM did not dissolve under Delaware law during calendar year 2000. Pl. Ex. 7, App. A at pp. 28-29.

b. WHMJ did not dissolve under Delaware law during calendar year 2000. Pl. Ex. 8, App. A at pp. 30-31.

c. WMC did not dissolve under Delaware law during calendar year 2000. Pl. Ex. 9, App. A at pp. 32-34.

d. HDM did not dissolve under Delaware law during calendar year 2000. Pl. Ex. 10, App. A at pp. 35-36.

e. MDM did not dissolve under Delaware law during calendar year 2000. Pl. Ex. 11, App. A at pp. 37-38.

f. SKM did not dissolve under Delaware law during calendar year 2000. Pl. Ex. 12, App. A at pp. 39-40.

g. JMN did not dissolve under Delaware law during calendar year 2000.

Pl. Ex. 13, App. A at pp. 41-42.

h. ANB did not dissolve under Delaware law during calendar year 2000.

Pl. Ex. 14, App. A at pp. 43-44.

**Response**: Denies. The allegations ares not supported by the cited documents.

6. On April 14, 2000, the limited liability companies identified in paragraph 4 above entered into the following over-the-counter, non-publicly traded European-style foreign currency option positions with Deutsche Bank AG New York Branch (collectively, the "Options").

**Response:** Denies. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that Deutsche Bank participated in this COBRA tax shelter strategy as a co-promoter in which it received a fee equal to 1% of the amount of the tax loss to be generated. Deutsche Bank's fee of 1% is included in the net premium paid to Deutsche Bank. Under the 2000 COBRA strategy, the net premium to be paid to Deutsche Bank was equal to 3% of the amount of the tax loss to be generated. See Lindquist Declaration ¶34. In exchange for the 1% fee Deutsche Bank received, Deutsche Bank papered the COBRA transactions as over-the-counter, non-publicly traded European-style foreign currency option positions. *Id.* Deutsche Bank's purported over-the-counter, non-publicly traded European-style foreign currency option positions with WHM, SKM, WHMJ, HDM, MDM, WMC, JMN, and ANB were not what they purported to be. See DB Memo dated July 20, 2000, on "Binary Option Strategy," written by Chuck Binder of DB, in which he detailed the steps of the strategy and wrote, *inter alia*:

- Strikes on both options are about the same. Any spread must fall within DB's ability to set a bid/ask spread. Both options must either pay off or not.

Binder Memo p.4, Govt. Ex. 32, Govt. App. pp.361- 368, at 363. We will also show that the other promoters, Ernst & Young and Proksauer also charged a fee equal to a fixed percentage of the tax loss to be generated, 2.5% of $100,300,000.00. See Lindquist Declaration ¶¶32-39.

6a. WHM purchased – for a premium of $26,400,000.00 – a digital option on the USD/EURO exchange rate with a strike price of less than or equal to .9207 USD per 1.00 EURO, a termination date of June 13, 2000, and a final exchange amount of $52,800,000.00. Pl. Ex. 15, App. A at pp. 45-47.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6b. WHM purchased – for a premium of $8,000,000.00 – an Option on the USD/EURO exchange rate with a strike price of less than or equal to .9207 USD per 1.00 EURO, a termination date of June 13, 2000, and a final exchange amount of $16,000,000.00. Pl. Ex. 16, App. A at pp. 48-50.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6c. WHMJ purchased – for a premium of $17,300,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5839 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $34,600,000.00. Pl. Ex. 17, App. A at pp. 51-53.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6d. WHMJ purchased – for a premium of $4,000,000.00 – an Option on the

CHF/USD exchange rate with a strike price of less than or equal to 1.5839 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $8,000,000.00. Pl. Ex. 18, App. A at pp. 54-56.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6e. WMC purchased – for a premium of $5,300,000.00 – an Option on the USD/EURO exchange rate with a strike price of less than or equal to .9207 USD per 1.00 EURO, termination date of June 13, 2000, and a final exchange amount of $10,600,000.00. Pl. Ex. 19, App. A at pp. 57-59.

6f. JMN purchased – for a premium of $9,700,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5839 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $19,400,000.00. Pl. Ex. 20, App. A at pp. 60-62.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6g. ANB purchased – for a premium of $3,000,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5839 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $6,000,000.00. Pl. Ex. 21, App. A at pp. 63-65.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6h. HDM purchased – for premium of $2,000,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5839 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $4,000,000.00. Pl. Ex. 22, App. A at pp. 66-68.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6i. HDM also purchased – for a premium of $12,000,000.00 – an Option on the USD/EURO exchange rate with a strike price of less than or equal to .9207 USD per 1.00 EURO, a termination date of June 13, 2000, and a final exchange amount of $24,000,000.00. Pl. Ex. 23, App. A at pp. 69-71.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6j. MDM purchased – for a premium of $6,300,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5839 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $12,6000,000.00. Pl. Ex. 24, App. A at pp. 72-74.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6k. SKM purchased – for a premium of $6,300,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5839 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $12,600,000.00. Pl. Ex. 25, App. A at pp. 75-77.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6l. WHM sold – for a premium of $25,608,000.00 – an Option on the USD/EURO exchange rate with a strike price of less than or equal to .9205 USD per 1.00 EURO, a termination date of June 13, 2000, and a final exchange amount of $51,018,000.00. Pl. Ex. 15, App. A at pp. 45-47.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6m. WHM sold – for a premium of $7,760,000.00 – an Option on the USD/EURO exchange rate with a strike price of less than or equal to .9205 USD per 1.00 EURO, a termination date of June 13, 2000, and a final exchange amount of $15,460,000.00. Pl. Ex. 16, App. A at pp. 48-50.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6n. WHMJ sold – for a premium of $16,781,000.00 – an Option on the the CHF/USD exchange rate with a strike price of less than or equal to 1.5837 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $33,432,250.00. Pl. Ex. 17, App. A at pp. 51-53.

6o. WHMJ sold – for a premium of $3,880,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5837 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $7,730,000.00. Pl. Ex. 18, App. A at p. 54-58.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6p. WMC sold – for a premium of $5,141,000.00 – an Option on the USD/EURO exchange rate with a strike price of less than or equal to .9205 USD per 1.00 EURO, a termination date of June 13, 2000, and a final exchange amount of $10,242,250.00. Pl. Ex. 19, App. A at pp. 57-59.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6q. JMN sold – for a premium of $9,409,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5837 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $18,745,250.00. Pl. Ex. 20, App. A at pp. 60-62.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6r. ANB sold – for a premium of $2,910,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5837 CHF per 1.0 USD, a termination date of June 13, 2000, and a final exchange amount of $5,797,5000.00. Pl. Ex. 21, App. A at pp. 63-65.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6s. HDM sold – for a premium of $1,940,000.00 – an Option on the CHF/USD exchange rate with a strike price of less or equal to 1.5837 CHF per 1.00 USD, termination date of June 13, 2000, and final exchange amount of $3,865,000.00. Pl. Ex. 22, App. at pp. 66-68.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6t. HDM sold – for a premium of $11,640,000.00 – an Option on the USD/EURO exchange rate with a strike price of less than or equal to .9205 USD per 1.00 EURO, a termination date of June 13, 2000, and a final exchange amount of $23,190,000.00. Pl. Ex. 23, App. A at pp. 69-71.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6u. MDM sold – for a premium of $6,111,000.00 – an Option on the CHF/USD exchange rate with a strike price of less than or equal to 1.5837 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $12,174,750.00. Pl Ex. 24, App. A at pp. 72-74.

**Response:** Denied for the reasons stated in our response to No. 6, above.

6v. SKM sold – for a premium of $6,111,000.00 – an Option on the CHF/USD exchange rate of strike price of less than or equal to 1.5837 CHF per 1.00 USD, a termination date of June 13, 2000, and a final exchange amount of $12,174,750.00. Pl. Ex. 25, App. A at pp. 75-77.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7a. Under the terms of their respective sold (short) options, the limited liability companies incurred the following obligations:

WHM had an obligation to pay $51,018,000.00 if the USD/Euro exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal to .9205 USD per 1.00 EURO. Pl. Ex. 15, App. A at pp. 45-47.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7b. WHM had obligation to pay $15,460,000.00 if the USD/Euro exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal to .9205 USD per 1.00 EURO. Pl. Ex. 16, App. A at pp.-48-50.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7c. WHMJ had an obligation to pay sold $33,432,250.00 if the CHF/USD exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal to 1.5837 CHF per 1.00 USD. Pl. Ex. 17, App. A at pp. 51-53.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7d. WHMJ had an obligation to pay $7,730,000.00 if the CHF/USD exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal 1.5837 CHF per 1.00 USD. Pl. Ex. 18, App. A at pp. 54-56.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7e. WMC had an obligation to pay $10,242,250.00 if the USD/Euro exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal to .9205 USD per 1.00 EURO. Pl. Ex. 19, App. A at pp. 57-59.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7f. JMN had an obligation to pay $18,745,250.00 if the CHF/USD exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal to 1.5837 CHF per 1.00 USD. Pl. Ex. 20, App. A at pp. 60-62.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7g. ANB had an obligation to pay $5,797,500.00 if the CHF/USD exchange rate on the termination date (or such later date provided by the option agreement) was less than or equal to 1.5837 CHF per 1.00 USD. Pl. Ex. 21, App. A at pp. 63-65.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7h. HDM had an obligation to pay $3,865,000.00 if the CHF/USD exchange

rate on the termination date (or such later date as provided by the option agreement) was less than or equal to 1.5837 CHF per 1.00 USD. Pl. Ex. 22, App. A at pp. 66-68.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7i. HDM had an obligation to pay $23,190,000.00 if the USD/Euro exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal to .9205 USD per 1.00 EURO. Pl. Ex. 23, App. A at pp. 69-71.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7j. MDM had an obligation to pay $12,174,750.00 if the CHF/USD exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal to 1.5837 CHF per 1.00 USD. Pl. Ex. 24, App. A at pp. 72-74.

**Response:** Denied for the reasons stated in our response to No. 6, above.

7k. SKM had an obligation to pay $12,174,750.00 if the CHF/USD exchange rate on the termination date (or such later date as provided by the option agreement) was less than or equal to 1.5837 CHF per 1.00 USD. Pl. Ex. 25, App. A at pp. 75-77.

8. On April 17, 2000, the following transfers occurred:

a. WHM transferred the options described in paragraph 6.a and 6.1 above to MURFAM. WHM did not reduce the adjusted basis in its partnership interest in MURFAM for the sold (short) option described in paragraph 6.1 above. Pl. Ex. 26, App. A at pp. 78-79.

**Response**: Denied. It is admitted that WHM did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its “FX Digital Options Transactions” to MURFAM. We

submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8b. WHM transferred the options described in paragraphs 6.b and 6.m above to Pork. WHM did not reduce the adjusted basis in its partnership interest in Pork for the sold (short) option described in 6.m above. Pl. Ex. 27, App. A at pp. 80-81.

**Response**: Denied. It is admitted that WHM did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to Pork. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8c. WHMJ transferred the options described in paragraphs 6.c and 6.n above to MURFAM. WHMJ did not reduce the adjusted basis in its partnership interest in MURFAM for the sold (short) option described in paragraph 6.n above. Pl. Ex. 28, App. A at pp. 82-83.

**Response**: Denied. It is admitted that WHMJ did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to MURFAM. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8d. WHMJ transferred the options described in paragraphs 6.d and 6.o above to Pork. WHMJ did not reduce the adjusted basis in its partnership interest in Pork for the sold (short) option described in paragraph 6.o above. Pl. Ex. 29, App. A at pp. 84-85.

**Response**: Denied. It is admitted that WHMJ did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to Pork. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8e. WMC transferred the options described in paragraphs 6.e and 6.p above to MURFAM. WMC did not reduce the adjusted basis in its partnership interest in MURFAM for the sold (short) option described in paragraph 6.p above. P. Ex. 30, App. A at pp. 86-88.

**Response**: Denied. It is admitted that WMC did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to MURFAM. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8f. JMN transferred the options described in paragraphs 6.f and 6.q above to MURFAM. JMN did not reduce the adjusted basis in its partnership interest in MURFAM for the sold (short) option described in paragraph 6.q above. Pl. Ex. 31, App. A at pp. 89-90.

**Response**: Denied. It is admitted that JMN did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to MURFAM. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8g. ANB transferred the options described in paragraphs 6.g and 6.r above to MURFAM. ANB did not reduce the adjusted basis in its partnership interest in MURFAM for the sold (short) option described in paragraph 6.r above. Pl. Ex. 32, App. A at pp. 91-93.

**Response**: Denied. It is admitted that ANB did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to MURFAM. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8h. HDM transferred the options described in paragraphs 6.h and 6.s above to Pork. HDM did not reduce the adjusted basis in its partnership interest in Pork for the sold (short) option described in paragraph 6.s above. Pl. Ex. 33, App. A at pp. 94-96.

**Response**: Denied. It is admitted that HDM did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to Pork. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the

United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8i. HDM transferred the options described in paragraph 6.I and 6.t above to PSM. HDM did not reduce the adjusted basis in its partnership interest in PSM for the sold (short) option described in paragraph 6.t above. Pl. Ex. 34, App. A at pp. 97-99.

**Response**: Denied. It is admitted that HDM did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to PSM. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8j. MDM transferred the options described in paragraphs 6.j and 6.u above to PSM. MDM did not reduce the adjusted basis in its partnership interest in PSM for the sold (short) option described in paragraph 6.u above. Pl. Ex. 35, App. A at pp. 100-102.

**Response**: Denied. It is admitted that MDM did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to PSM. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

8k. SKM transferred the options described in paragraphs 6.k and 6.v above to PSM. SKM did not reduce the adjusted basis in its partnership interest in PSM for the sold (short) option described in paragraph 6.v above. Pl. Ex. 36, App. A at pp. 103–104.

**Response**: Denied. It is admitted that SKM did not reduce the adjusted basis in its Partnership interest as a result of the assignment of its "FX Digital Options Transactions" to MURFAM. We submit that the Court at best can only assume this fact for purposes of this motion. At trial, the United States will adduce ample evidence to show that the the "sold (short) option" is not a separate severable position and not what it purports to be.

9. On December 16, 2005, the IRS issued a final notice of partnership administrative adjustment (FPAA) to MURFAM. Pl. Ex. 37, App. A at pp. 105-115.

**Response**: Admitted.

10. The MURFAM FPAA makes the following allegation concerning the Regulation:

> It is determined that the obligations under the sold option positions transferred to MURFAM Farms constitute liabilities for purposes of Treasury Regulation § 1.752-6, the assumption of which by MURFAM Farms shall reduce the purported partners'...bases in MURFAM Farms....*Id.*

**Response**: Denied. It is admitted that the FPAA made this determination. An FPAA does not contain mere allegations. Under Appendix F, Rule 1(b)(5), a "notice of final partnership administrative adjustment" is defined as the notice described in Code Section 6223(a)(2). Under Rule 1(b)(2), the complaint filed in this action is an "action for readjustment of partnership items" under Code Section 6226.

11. On December 15, 2005, the IRS issued an FPAA to PSM. Pl. Ex. 38, App. A at pp. 116-130.

**Response**: Admitted.

12. The PSM FPAA makes the following allegation concerning the Regulation:

> It is determined that the obligations under the sold option positions transferred to PSM Farms constitute liabilities for purposes of PSM Farms § 1.752-6, the assumption of which by PSM Farms shall reduce the purported partners' bases in Murphy Pork Partners ....*Id.*

**Response**: Denied. It is admitted that the FPAA made this determination. An FPAA does not contain mere allegations. Under Appendix F, Rule 1(b)(5), a "notice of final partnership administrative adjustment" is defined as the notice described in Code Section 6223(a)(2). Under Rule 1(b)(2), the complaint filed in this action is an "action for readjustment of partnership items" under Code Section 6226.

**Response**: Admitted.

13. On December 15, 2005, the IRS issued an FPAA to Pork. Pl. Ex. 39, App. A at pp. 131-142.

**Response**: Admitted.

14. The Pork FPAA makes the following allegation concerning the Regulation:

> It is determined that the obligations under the sold option positions transferred to Murphy Pork Partners constitute liabilities for purposes of Treasury Regulation § 1.752-6, the assumption of

> which by Murphy Pork Partners shall reduce the purported partners' bases in Murphy Pork Partners....*Id.*

**Response**: Denied. It is admitted that the FPAA made this determination. An FPAA does not contain mere allegations. Under Appendix F, Rule 1(b)(5), a "notice of final partnership administrative adjustment" is defined as the notice described in Code Section 6223(a)(2). Under Rule 1(b)(2), the complaint filed in this action is an "action for readjustment of partnership items" under Code Section 6226.

Respectfully submitted,

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2008, I electronically filed the foregoing **UNITED STATES' RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ John A. Lindquist
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6561