IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 06-245 T, 06-246 T, and 06-247 T
(Consolidated)

MURFAM FARMS, LLC, By and Through Wendell H. Murphy Jr., a Partner Other Than the Tax Matters Partner,

PSM FARMS, LLC, By and Through Stratton K. Murphy, a Partner Other Than the Tax Matters Partner,

MURPHY PORK PARTNERS, LLC, By and Through Wendell H. Murphy, Jr., a Partner Other Than the Tax Matters Partner,

Plaintiffs,

v.

United States of America,

Defendant.

---

# DECLARATION OF A. LAWRENCE KOLBE

ON

# ECONOMIC IMPLICATIONS OF THE PLAINTIFF'S RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MELVIN F. JAGER

Prepared for the
U.S. Department of Justice

*The Brattle Group*
44 Brattle Street
Cambridge, MA 02138-3736
617.864.7900 voice
617.864.1576 fax

May 16, 2008

PENGAD 800-631-6989
GOVERNMENT'S
EXHIBIT
2

## Table of Contents

INTRODUCTION AND SUMMARY .......... 1
Purpose of Declaration .......... 1
Summary of Findings .......... 2

ANALYSIS .......... 2

## I. Introduction and Summary

My name is A. Lawrence Kolbe. My business address is The Brattle Group, 44 Brattle Street, Cambridge, Massachusetts 02138. I hold a B.S. in from the U.S. Air Force Academy (1968) and a Ph.D. from the Massachusetts Institute of Technology (1979), both in economics. I am a financial economist with three decades of experience in the field. I am co-author of three books and author or co-author of a number of articles. I have testified on financial and regulatory issues in many forums in the U.S. and other countries, including U.S. District Courts and the U.S. Court of Federal Claims. The appendix to this reply declaration provides more detail on my professional qualifications. My Expert Report in this matter was submitted on June 1, 2007 ("Kolbe Report"), and my Rebuttal Report on July 2, 2007 ("Kolbe Rebuttal"). My deposition in this matter was taken on August 23, 2007. I prepared a Declaration in this matter on another topic that was filed on March 7, 2008.

### A. Purpose of Declaration

I have been provided with two documents, the "Expert Report of Melvin F. Jager," dated June 29, 2007 ("Jager Report") and the "Plaintiff's Response to Government's Motion to Exclude Expert Report and Testimony of Melvin F. Jager," dated April 21, 2008 ("Plaintiff Response"). The latter document indicates that at least part of Mr. Jager's testimony is intended as rebuttal to parts of the Kolbe Report. I have been asked by counsel to the Tax Division of the U.S. Department of Justice ("DOJ") to provide my views as to whether, from an economic perspective, the Jager Report is inconsistent in any way with the analyses and conclusions in the Kolbe Report. The purpose of this declaration is to respond to this request.

### B. Summary of Findings

Factually, the fees paid to the COBRA advisors and attorneys are a "transaction cost" regardless of what they are called, why they are paid, or how they are computed.[1] Moreover, as a practical matter, if re-labeling the fees to advisors and attorneys in arrangements such as the COBRA transactions rendered the fees irrelevant to an analysis of the transactions' profitability apart from tax, it would essentially always be possible to design such transactions so that their profitability apart from tax was no different from that of other investments.

Thus, had I been informed before writing my report that the fees to advisors and attorneys were payments for intellectual property in the form of a trade secret for how to save taxes, I would have changed none of my economic analyses or conclusions. Consequently, nothing in the Jager Report is inconsistent with the economic analyses and conclusions in my report.

The remainder of this reply declaration analyzes the statements in the Plaintiff Response.

## II. ANALYSIS

In a section entitled "Statement of Facts," the Plaintiff Response quotes the Kolbe Report to the effect that I was asked to analyze transactions independently of any tax benefit and taking account all transaction costs, and that that is what I did in my analyses.[2] It then states that[3]

> ... Plaintiff will argue that fees should be allocated to the tax benefits of the transactions and that any economic analysis of the transactions that does not take into account the tax benefits should likewise exclude the associated fees. In support of its position that professional fees should be attributed solely to the tax benefits,

---

1 The statements in this section are summaries of detailed discussions in the body of the declaration. It is prepared only for the convenience of the reader, and this section cannot and is not intended to replace the subsequent, more detailed discussions. For this reason, this summary does not contain references to documents or data sources. Footnotes that provide the sources of the information on which I rely appear in the body of the declaration.

2 Plaintiff Response, Section II, part A.

3 Plaintiff Response, Section II, part B, citation footnote omitted.

> Plaintiff has produced the expert testimony of Mr. Jager. The Jager Report concludes that the transactions at issue had the characteristics of a trade secret and, because they were valued as such in the market, an appropriate way to compensate for use of the tax aspects of the transactions was to charge a percent of the realized or potential tax benefits. This is precisely the compensation structure used in this case.

I have two observations about this statement.

The first observation is that, as a factual matter, the fees paid to advisors are a "transaction cost" of a set of COBRA transactions regardless of what they are called, why they are paid, or how they are computed. All of the sets of COBRA transactions analyzed in my report had such fees (although their magnitude varied depending on the year).[4] It would be economically irrational for the advisors to the COBRA transactions to work for free, and economically irrational of the participants to pay fees for which they received nothing in return.

It is true that the COBRA transactions' design included the possibility of an economic as well as a tax benefit.[5] However, it was not possible to enter the COBRA transactions without paying professional fees for both of these types of potential benefit. Absent the fees, neither benefit could be obtained, because the transactions could not go forward.

In my report, I was asked to determine whether absent potential tax benefits, the COBRA transactions produced a reasonable possibility of profit taking into account all transaction costs. Since, as just discussed, the fees are inextricably linked to the COBRA transactions, they are plainly "transaction costs." Hence the fees are an essential element of any economic analysis of the

---

4 Recall that the 1999 sets of transactions, which include the JBJZ and Tesoro disputes, all had fees to attorneys and advisors equal to 4.5 percent of the stated cost of the long options (2003EY001567, 001581-82, 007040; DOJ 049119-21), and the 2000 transactions, i.e., the Murphy Farms disputes, had fees equal to 2.5 percent of the stated cost of the long options (DB-DOJ-COBRA-00013479, 3485, 3541, 3547, 3588, 3594, 3639, 3645, 3681, 3687, 3733, 3739, 3779, 3785, 3848, 3933, 3964, 3995, 4083, 9525, 9526, 9527, 9626, 9632; DB-DOJ-COBRA-00240679 - 00240799).

5 Recall that I have concluded that the COBRA transactions could not provide a reasonable possibility of profit, taxes aside. See the Kolbe Report, Section III, part F.

reasonableness of the possibility of profit of the COBRA transactions, regardless of their label and regardless of whether they are viewed as costs associated with the tax-benefit component rather than the economic-benefit component of the transactions. A re-labeling of the fees as "compensation for a trade secret for how to save taxes" does not contradict the economic analyses and conclusions in my report.

My second observation is that, as a practical matter, if re-labeling the fees to advisors and attorneys in arrangements such as the COBRA transactions rendered the fees irrelevant to an analysis of the transactions' profitability apart from tax, it would essentially always be possible to design such transactions so that their profitability apart from tax was no different from that of other investments. All that would be required would be (1) to insure that all transaction costs, including any unusual fees going to any investment bank or banks involved, were billed as a fee of the irrelevant sort, and (2) to conduct all other transactions at market value. Transactions at market value without any transaction costs involved are quite unlikely to produce any abnormal measures of non-tax profitability.[6]

In short, had I been informed before writing my report that the fees to advisors and attorneys were payments for intellectual property in the form of a trade secret for how to save taxes, I would have changed none of my economic analyses or conclusions, although I presumably would have used different words to describe the fees. Thus, nothing in the Jager Report is inconsistent with the economic analyses and conclusions in my report. Put another way, the Jager Report does not rebut my report in any way.

---

6 The "essentially always" and "quite unlikely" parts of this paragraph are present for safety's sake only. As this is written, I cannot think of any way that the non-tax, no-transaction cost profitability of an investment at market value but associated with a tax strategy could be economically different from that of an investment at market value but not associated with a tax strategy.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. This declaration was executed in Cambridge, Massachusetts on May 13, 2008.

A. Lawrence Kolbe

## Appendix: QUALIFICATIONS OF A. LAWRENCE KOLBE

### EDUCATION

B.S. in International Affairs (Economics), U.S. Air Force Academy, 1968.
Ph.D. in Economics, Massachusetts Institute of Technology, 1979.

### EMPLOYMENT

U.S. Air Force, 1963-1977
Charles River Associates, 1978-1985
Putnam, Hayes and Bartlett, 1985-1990
The Brattle Group, 1990-

### HONORS AND AWARDS

Sears Foundation National Merit Scholarship, 1963 (declined).
Fairchild Award, U.S. Air Force Academy, 1968 (for standing first in his class, academically).
National Science Foundation Graduate Fellowship in economics, MIT, 1968-1971.
Joint Service Commendation Medal, 1975.

### PROFESSIONAL AFFILIATIONS

American Economic Association
American Finance Association
The Econometric Society
Served as Referee for *The Rand Journal of Economics*, *Land Economics*, *The Journal of Industrial Economics*

### PAPERS AND PUBLICATIONS IN THE LAST TEN YEARS

"How to Value a Lost Opportunity: Defining and Measuring Damages from Market Foreclosure," (with William B. Tye and Stephen H. Kalos), *The Economics of Antitrust Injury and Firm-Specific Damages*, Kevin S. Marshall, ed., Tucson, Arizona: Lawyers & Judges Publishing Company, Inc. (2008). (Republication of a 1995 article.)

"Measuring Return on Equity Correctly: Why current estimation models set allowed ROE too low," *Public Utilities Fortnightly* (with Michael J. Vilbert and Bente Villadsen), August 2005.

"The Effect of Debt on the Cost of Equity in a Regulatory Setting," (with Michael J. Vilbert and Bente Villadsen, and with "The Brattle Group" listed as author), published by the Edison Electric Institute (dated January 2005, issued April 2005)

*Capital Investment and Valuation,* (with Richard A. Brealey and Stewart C. Myers, with "The Brattle Group" listed as third author), New York: McGraw-Hill/Irwin (2003).

"The True Hourly Rate for Private Counsel in the State of Louisiana Tobacco Lawsuit," (with August J. Baker and Bin Zhou), Brattle report prepared for private counsel to the Louisiana Attorney General in the state's lawsuit to recover health care costs from the tobacco industry (July 2000).

"The Cost of Capital for the Dampier to Bunbury Natural Gas Pipeline," (with M. Alexis Maniatis and Boaz Moselle) Brattle report submitted to the Office of Gas Access Regulation, Western Australia (October 1999).

"Compensation for Asymmetric Risks," (with others) Brattle report prepared for GPU PowerNet, Melbourne, Australia (October 1999).

"A Non-Practitioner's Guide to the State of the Art in Cost of Capital Estimation," (with others) Brattle report prepared for GPU PowerNet, Melbourne, Australia (June 1999).

"A Note on the Pre-tax Weighted Average Cost of Capital in a Regulatory Context with Australian Dividend Tax Credits and Alternative Debt Refinancing Policies" (with M. Alexis Maniatis), Working Paper in Progress.

"The Impact of Stranded-Cost Risk on Required Rates of Return for Electric Utilities: Theory and An Example" (with Lynda S. Borucki). *Journal of Regulatory Economics* Vol. 13 (1998), 255-275.

**TRIAL TESTIMONY AND DEPOSITIONS IN LAST FOUR YEARS**

**2004**

| | |
|---|---|
| Case: | Coltec Industries, Inc. v. The United States of America, Fed. Cl. No. 01-72T |
| Party: | The United States of America |
| Forum: | The United States Court of Federal Claims |
| | |
| Case: | Liberty Digital, Inc. v. AT&T Broadband, LLC and Comcast Corporation, Civil Action No. 03-CV-95 |
| Party: | AT&T Broadband, LLC and Comcast Corporation |
| Forum: | Colorado District Court, County of Arapahoe, 18th Judicial District |
| | |
| Case: | West Virginia-American Water Company, Case No. 04-0373-W-42T |
| Party: | West Virginia-American Water Company |
| Forum: | Public Service Commission of West Virginia |
| | |
| Case: | Koch Industries, Inc., and Subsidiaries v. The United States, Fed. Cl. No. 02-8T |
| Party: | The United States |
| Forum: | The United States Court of Federal Claims |

| | |
|---|---|
| Case: | United States of America v. Anne (Sandy) Batchelor-Robjohns, a/k/a/ Anne O'Neill Batchelor; Daniel J. Ferraresi; Marvin C. Gutter; and Father Patrick O'Neill, Co-Personal Representatives of the Estate of George E. Batchelor, Case No. 03-20164-CIV-Ungaro-Benages/Brown |
| Party: | United States of America |
| Forum: | United States District Court for the Southern District of Florida, Miami Division |

**2005**

| | |
|---|---|
| Case: | TransCanada PipeLines Limited 2004 Mainline Tolls and Tariff (Phase 2), RH-2-2004 |
| Party: | TransCanada PipeLines Limited |
| Forum: | [Canadian] National Energy Board |
| Case: | Polymer Dynamics, Inc. v. Bayer Corporation |
| Party: | Polymer Dynamics, Inc. |
| Forum: | U.S. District Court for the Eastern District of Pennsylvania |
| Case: | Jade Trading, LLC, by and through Robert W. Ervin and Laura Kavanaugh Ervin on Behalf of Ervin Capital, LLC, Partners Other than the Tax Matters Partner, v. The United States, Case No. 03-2164T |
| Party: | The United States |
| Forum: | The United States Court of Federal Claims |

**2006**

| | |
|---|---|
| Case: | Arizona-American Water Company, Inc., for Utility Service by its Paradise Valley Water District, Docket No. WS-01303A-05-0405 |
| Party: | Arizona-American Water Company, Inc. |
| Forum: | Arizona Corporation Commission |
| Case: | K2 Trading Ventures, LLC, New Vista, LLC, Tax Matters Partner, v. The United States of America, by and through the Internal Revenue Service, Case No. 04-1419T |
| Party: | The United States of America |
| Forum: | The United States Court of Federal Claims |
| Case: | Garco Investments LLP, et al. v. Sprint Corporation, Case No. 04 CV 01714 |
| Party: | Garco Investments LLP, et al. |
| Forum: | District Court of Johnson County, Kansas, Civil Court Department |

**2007**

| | |
|---|---|
| Case: | JZ Buckingham Investments, LLC as Tax Matters Partner of JBJZ Partners, a South Carolina general partnership, v. United States of America, Case No. 05-231 T |
| Party: | United States of America |
| Forum: | The United States Court of Federal Claims |
| Case: | Gary Woods, as Tax Matters Partner of Tesoro Drive Partners, a Texas general partnership, and Gary Woods, as Tax Matters Partner of SA Tesoro Investment Partners, a Texas general partnership, v. United States of America, Case Nos. SA-05-CA-0216-XR. |
| Party: | United States of America |
| Forum: | United States District Court for the Western District of Texas, San Antonio Division |
| Case: | MURFAM FARMS, LLC, By and Through Wendell H. Murphy Jr., a Partner Other Than the Tax Matters Partner; PSM FARMS, LLC, By and Through Stratton K. Murphy, a Partner Other Than the Tax Matters Partner; MURPHY PORK PARTNERS, LLC, By and Through Wendell H. Murphy, Jr., a Partner Other Than the Tax Matters Partner, v. United States of America, Case Nos. 06-245 T, 06-246 T, and 06-247 T (Consolidated). |
| Party: | United States of America |
| Forum: | The United States Court of Federal Claims |
| Case: | Fidelity International Currency Advisor A Fund, L.L.C., by the Tax Matters Partner, v. United States of America, Case No. 05-40151-FDS. |
| Party: | United States of America |
| Forum: | United States District Court for the District of Massachusetts |

**2008**

| | |
|---|---|
| Case: | Northwestern Energy, Docket No. 2007.7.82 |
| Party: | Northwestern Energy |
| Forum: | Department of Public Service Regulation, Montana Public Service Commission |