PROSKAUER ROSE LLP

1585 Broadway
New York, NY 10036-8299
Telephone 212.969.3000
Fax 212 969 2900

LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
PARIS

December 29, 2000

WMC, LLC
P.O Box 1087
Rose Hill, N.C. 28458

WHM Ventures, LLC
P.O Box 1087
Rose Hill, N.C. 28458

WHMJ, LLC
P.O Box 1087
Rose Hill, N.C. 28458

JMN Ventures, LLC
P.O Box 970
Rose Hill, N.C. 28458

ANB, LLC
P.O Box 970
Rose Hill, N.C. 28458

Gentlemen:

You have requested our opinion regarding certain federal income tax consequences of various investment transactions (the "Transactions"), described more fully below, that you are contemplating making, directly, through a limited liability company and through a subchapter S corporation, in foreign currency.

Our opinion is based upon certain representations and warranties of the Parties (defined below) and the facts contained in the Certificate of Facts provided by the Parties and described below, certain assumptions set forth below and on the provisions of the Internal Revenue Code of 1986, as amended (the "Code"), Treasury Regulations promulgated thereunder[1], and interpretations of the foregoing as expressed in court decisions, administrative determinations, and the legislative

---

[1] All sections references herein are to the Code, unless otherwise indicated All references to Regulations herein are to the Treasury Regulations promulgated pursuant to the Code, unless otherwise indicated

**EXHIBIT 1**

history as of the date of this opinion (collectively, the "Law"). The Law is subject to change, which may or may not be retroactive in effect, that might result in modifications of our opinion. We assume no obligation to update our opinion in light of any subsequent change in Law. Any variation of actual facts from the facts and assumptions set forth herein may also affect the continuing validity of our opinion. There can be no guarantee that following an audit, the Internal Revenue Service (the "IRS") will not take a position contrary to the opinion set forth herein, which ultimately may be sustained by the courts, since an opinion of counsel is binding on neither the IRS nor the courts.

In rendering our opinion, we have made factual and legal examinations, including an examination of statutes, regulations, records, certificates and other documents as we have considered necessary or appropriate, including the following: (1) the Certificate of Facts provided by the Parties and (2) the LLC Agreement of MURFAM Farms, LLC (collectively, these written representations and the documents described in the immediately preceding sentence are referred to herein as the "Transaction Documents")

In our review, we have assumed, with your consent, that all of the representations and statements set forth in the Transaction Documents are true and correct, and all of the obligations imposed by any such documents on the parties thereto have been and will be performed or satisfied in accordance with their terms. We also have assumed the genuineness of all signatures, the proper execution of all documents, the authenticity of all documents submitted to us as originals, the conformity to originals of documents submitted to us as copies, and the authenticity of the originals from which any copies were made.

For the purpose of our opinion, we have not made an independent investigation of the facts of this transaction. We consequently have assumed that the information presented or otherwise furnished to us accurately and completely describes all material facts relevant to our opinion. No facts have come to our attention, however, that would cause us to question the accuracy and completeness of such facts in a material way.

Each of the Parties has reviewed the description of the investment transactions described herein and such description is accurate and complete, and there are no pertinent facts relating thereto that have not been set forth in such description.

In rendering our opinion, we understand the facts to be as follows:

WMC, LLC is a Delaware limited liability company with Wendy M. Crumpler ("WMC") as its sole member

WHM Ventures, LLC is a Delaware limited liability company with Wendell H. Murphy ("WHM") as its sole member.

WHMJ, LLC is a Delaware limited liability company with Wendell H. Murphy, Jr. ("WHMJ") as its sole member.

JMN Ventures, LLC is a Delaware limited liability company with Joyce Murphy Norman ("JMN") as its sole member

ANB, LLC is a Delaware limited liability company with Angela N. Brown ("ANB") as its sole member.

MURFAM Farms, LLC ("MURFAM LLC," also referred to as the "Partnership") is a Delaware limited liability company whose only members are WMC, WHM, WHMJ, JMN and ANB (collectively referred to as the "Parties")

On April 14, 2000, WMC contributed $159,000 to WMC, LLC. At this time, WMC was the sole member of WMC, LLC. WMC, LLC then purchased an over the counter, European-style European Union Euro put option (the "A Long Option") and sold an over the counter, European-style European Union Euro put option (the "A Short Option"). Such options are exercisable only upon their expiration date and will result in a payout of a single lump sum payment on the settlement date if the fair market value of the European Union Euro is lower than the strike price on such date. The premium paid for, and value of the long position held by WMC, LLC was $5,300,000 and the premium received for, and value of the short position held by WMC, LLC was $5,141,000.

On the same date, WHM contributed $792,000 to WHM Ventures, LLC. At this time, WHM was the sole member of WHM Ventures, LLC. WHM Ventures, LLC then purchased an over the counter, European-style European Union Euro put option (the "B Long Option") and sold an over the counter, European-style European Union Euro put option (the "B Short Option"). Such options are exercisable only upon their expiration date and will result in a payout of a single lump sum payment on the settlement date if the fair market value of the European Union Euro is lower than the strike price on such date. The premium paid for, and value of the long position held by WHM Ventures, LLC was $26,400,000 and the premium received for, and value of the short position held by WHM Ventures, LLC was $25,608,000.

On the same date, WHMJ contributed $519,000 to WHMJ, LLC. At this time, WHMJ was the sole member of WHMJ, LLC. WHMJ, LLC then purchased an over the counter, European-style European Union Euro put option (the "C Long Option") and sold an over the counter, European-style European Union Euro put option (the "C Short Option") Such options are exercisable only upon their expiration date and will result in a payout of a single lump sum payment on the settlement date if the fair market value of the European Union Euro is lower than the strike price on such date. The premium paid for, and value of the long position held by WHMJ, LLC was $17,300,000 and the premium received for, and value of the short position held by WHMJ, LLC was $16,781,000.

On the same date, JMN contributed $291,000 to JMN Ventures, LLC. At this time, JMN was the sole member of JMN Ventures, LLC. JMN Ventures, LLC then purchased an over the counter, European-style European Union Euro put option (the "D Long Option") and sold an over the counter, European-style European Union Euro put option (the "D Short Option"). Such options are exercisable only upon their expiration date and will result in a payout of a single lump sum payment on the settlement date if the fair market value of the European Union Euro is lower than

the strike price on such date. The premium paid for, and value of the long position held by JMN Ventures, LLC was $9,700,000 and the premium received for, and value of the short position held by JMN Ventures, LLC was $9,409,000.

On the same date, ANB contributed $90,000 to ANB, LLC. At this time, ANB was the sole member of ANB, LLC. ANB, LLC then purchased an over the counter, European-style European Union Euro put option (the "E Long Option" and collectively with the A Long Option, the B Long Option, the C Long Option and the D Long Option, the "Long Options") and sold an over the counter, European-style European Union Euro put option (the "E Short Option" and collectively with the A Short Option, the B Short Option, the C Short Option and the D Short Option, the "Short Options"). Such options are exercisable only upon their expiration date and will result in a payout of a single lump sum payment on the settlement date if the fair market value of the European Union Euro is lower than the strike price on such date. The premium paid for, and value of the long position held by ANB, LLC was $3,000,000 and the premium received for, and value of the short position held by ANB, LLC was $2,910,000. The terms of the Long Options purchased were identical and the terms of the Short Options sold were identical. The purpose of the purchase and sale of these options is that each of the Parties believed that such investments could result in substantial profits with only limited downside risk.

Each of the Parties has not identified, and will not identify, the Options (defined below) as being part of a hedging transaction under Regulation Section 1.446-4. The Options can be transferred, sold or assigned independently.

On April 16, 2000, each of the Parties contributed their respective Long Option and Short Option to MURFAM LLC in exchange for membership interests in MURFAM LLC. At the time of their transfers to MURFAM LLC, the Short Options were "out of the money," meaning that the value of the European Union Euro was higher than the strike price.

Each of the Parties' primary motivation in participating in the Transactions was to attain, on a risk-adjusted basis, an attractive return on his investment through the Transactions, without regard to tax benefits. Each of the Parties anticipates earning, taking into account transaction expenses, a pre-tax return on his net investment in the Transactions significantly greater than investments offering comparable risk profiles.

On June 15, 2000, the Long Options and Short Options expired. Following this date, MURFAM LLC engaged in certain investment activities. It only traded in assets whose sale would produce gain or loss of a capital nature (the "Assets").

In August, 2000, each of the Parties transferred their membership interest in MURFAM LLC to MURFAM, Inc., a corporation formed under the laws of the State of Delaware (such corporation having elected to be treated as a subchapter S corporation) in exchange for common shares of MURFAM, Inc. In December, 2000, MURFAM, Inc. sold the Assets to an unrelated third party. The decision to transfer their membership interests was at the sole discretion and control of each of the Parties. Each of the Parties' decisions was based on a variety of factors, including future market conditions, currency exchange rates, interest rates, the availability of alternative investments, and each of the Parties' financial situation.

Based on and subject to the descriptions and assumptions set out above and the analysis of the relevant statutory provisions and other legal authority in effect on the date hereof, as set out below, we are of the opinion that for federal income tax purposes, it would be more likely than not that:

1. Each of the Parties would not recognize gain or loss on the contributions of the Long Options and the Short Options (collectively known as the "Options") to MURFAM LLC.

2. Each of the Parties' basis in his MURFAM LLC interest would equal his respective basis in the Long Options purchased, reduced by the amount of liabilities assumed by MURFAM LLC and increased by each of the Parties' respective pro rata share of such liabilities after such assumption. The Short Options would not be considered liabilities for purposes of section 752 as currently enacted or as a result of recent legislative proposals. Each of the Parties' basis in the Assets would also equal his respective basis in the Long Options purchased, reduced by the amount of liabilities assumed by MURFAM LLC and increased by each of the Parties' respective pro rata share of such liabilities after such assumption.

3. Any gain or loss recognized by each of the Parties upon the sale of the Assets would equal the Parties' proportionate share of the total amount of proceeds received by MURFAM, Inc. for the Assets less his adjusted basis in the Assets sold by MURFAM, Inc.

4. Any gain or loss recognized by each of the Parties upon the sale of the Assets would be treated as capital gain or loss.

5. None of the Parties would be subject to accuracy related penalties as a result of the described treatment on their federal income tax returns of his investments in the Transactions.

## ANALYSIS

### A. Contribution of Options to MURFAM LLC

#### 1. In General

The general rule of section 721(a) and Regulation § 1.721-1 is that no gain or loss is recognized by either the partnership or any partner in the case of a contribution of property to the partnership in exchange for a partnership interest. While neither the Code nor the Regulations define the term "property" under section 721, that section is similar to section 351 in the corporate context, where the term "property" is given a broad interpretation, and serves to distinguish services from property. *See*, *Stafford v. United States*, 611 F.2d 990 (5th Cir. 1980); PLR 8225069 (March 24, 1982); McKee, Nelson & Whitmire, Federal Taxation of Partnerships and Partners ¶4.02[1] (3rd ed.). Under both sections, a taxpayer does not recognize gain or loss on the contribution of property, but will recognize gain on the contribution of services in exchange for an ownership