**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Nos. 06-245T, 06-246T, and 06-247T**
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

**PLAINTIFFS' REPLY TO UNITED STATES' OPPOSITION TO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE VALIDITY OF TREASURY REGULATION § 1.752-6**

JOEL N. CROUCH
ANTHONY P. DADDINO
Meadows, Collier, Reed,
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowscollier.com
adaddino@meadowscollier.com

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

I. Introduction ........ 1
II. Summary of Dispute ........ 2
III. Argument ........ 3

A. The objective facts surrounding Section 309 and the Regulation's issuance confirm that the legislative-grant exception under I.R.C. § 7805(b)(6) is not met. ........ 3
B. The anti-abuse exception under I.R.C. § 7805(b)(3) is also not met because the Regulation fails to address the abuses contemplated by I.R.C. § 358(h) and thus Section 309, and was promulgated for the sole and improper purpose of enhancing the government's litigation position in Notice 2000-44 cases. ........ 8
C. The recent decision in Sala marks the second time that a federal district court has invalidated the Regulation. ........ 10

IV. Conclusion ........ 13

# TABLE OF AUTHORITIES

## Federal Cases

*Cemco Investors, LLC v. United States*, 515 F.3d 749 (7th Cir. 2008) ....................................... 11
*Cemco Investors, LLC v. United States*, 2007 WL 951944, *5 (N.D.Ill. 2007) ..................... 11, 12
*Klamath v. Strategic Investment Fund, LLC v. United States*,
440 F. Supp. 2d 608 (E.D. Tex. 2006 ........................................................................... 9, 11
*Kornman & Assoc., Inc. v. United States*, No. 06-11422, 2008 WL 2009848
(5th Cir. May 12, 2008) ......................................................................................................... 11
*Sala v. United States*, No. 05-cv-00636-LTB, 2008 WL 1836693
(D. Colo. April 22, 2008)........................................................................... 5, 9, 10, 11, 12

## Federal Statutes

114 Stat. 2763, 2763A-638 (2000) ......................................................................................... 2
I.R.C. § 358(a)(1)...................................................................................................................... 7
I.R.C. § 358 ..................................................................................................................... passim
I.R.C. § 358 (a)(1), (h)(1), (h)(3) .............................................................................................. 6
I.R.C. § 358(a)(1), (h)(1) & (h)(3) ............................................................................................ 7
I.R.C. § 358(h) ................................................................................................................... 6, 10
I.R.C. § 358(h)(3)................................................................................................................ 7, 10
I.R.C. § 358(h)(2)(A) ............................................................................................................ 2, 4
I.R.C. § 358(h)(2)(B) ................................................................................................................ 4
I.R.C. § 752 ............................................................................................................ 5, 7, 9, 11
I.R.C. § 7805 ........................................................................................................... 1, 2, 3, 10
I.R.C. § 7805 (b)(3)................................................................................................................... 8
I.R.C. § 7805(b)(3).................................................................................................................... 2
I.R.C. § 7805(b)(6)................................................................................................................ 2, 3
I.R.C. 7805(b)(6)....................................................................................................................... 3

## Federal Regulations

68 Fed. Reg. 37414, 37415 (June 24, 2003) ............................................................................. 1
Temp. Reg. § 1.752-6T ............................................................................................................. 1
Treas. Reg. § 358(h)................................................................................................................. 10
Treas. Reg. § 7805(b)(3) ....................................................................................................... 6, 8
Treas. Reg. § 1.358-7 ................................................................................................................ 7
Treas. Reg. § 1.358-7 ................................................................................................................ 7
Treas. Reg. §1.752-6 ........................................................................................................ 1, 11, 12
Treas. Reg. § 1.752-6(a) ........................................................................................................... 2
Treas. Reg. § 1.752-6(b)(1), (2)................................................................................................ 2

**<u>Other Authorities</u>**

Chief Counsel Notice 2003-020 .......... 9
Community Renewal Tax Relief Act of 2000, Pub. L. 106-554 .......... 2
H.R. Conf. Rep. No. 106-289 at 538 .......... 6
Notice 2000-44 .......... 8, 9, 10, 11
Treasury Decision 9207 (2005) .......... 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Nos. 06-245T, 06-246T, and 06-247T**
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

**PLAINTIFFS' REPLY TO UNITED STATES' OPPOSITION TO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE VALIDITY OF TREASURY REGULATION § 1.752-6**

## I. Introduction

This Court need go no further than I.R.C. § 7805 in granting Plaintiffs' Motion. That section imposes a statutory bar on retroactive regulations, unless one of the specially-enumerated exceptions is met. Although the Government's response is heavy on verbiage, it offers little, if any, justification for the retroactive effect of Treas. Reg. § 1.752-6. Accordingly, because none of the exceptions to the statutory bar is met, Treas. Reg. § 1.752-6 is invalid.

## II. Summary of Dispute

On May 26, 2005, the Treasury finalized Regulation § 1.752-6 (the "Regulation"), which purported to retroactively apply a new definition of "liability" to partnership transactions going as far back as October 18, 1999.[1] The Regulation provides:

> If, in a transaction described in section 721(a), a partnership assumes a liability (defined in section 358(h)(3)) of a partner (other than a liability to which section 752(a) and (b) apply), then, after application of section 752(a) and (b), the partner's basis in the partnership is reduced (but not below the adjusted value of such interest) by the amount (determined as of the date of the exchange) of the liability. For purposes of this section, the adjusted value of a partner's interest in a partnership is the fair market value of that interest increased by the partner's share of partnership liabilities under §§1.752-1 through 1.752-5.[2]

The Regulation generally incorporates the exceptions contained in I.R.C. § 358(h)(2)(A) and (B)—which exclude liabilities transferred in connection with the sale of a business or substantially all of the assets to which the liabilities relate. But the Regulation expressly carves out these exceptions in the case of Notice 2000-44 transactions.[3]

The Government argues that the Regulation's retroactivity is valid because it satisfies two exceptions to the statutory bar under I.R.C. § 7805. First, it alleges that the Regulation satisfies I.R.C. § 7805(b)(6), which permits a retroactive regulation pursuant to a legislative grant of authority from Congress (the legislative-grant exception). Second, it alleges that the Regulation satisfies I.R.C. § 7805(b)(3), which permits a retroactive date to prevent abuse (the anti-abuse exception). Regarding the former, the Government claims that the Regulation carries out the

---

[1] T.D. 9207 (2005). This Treasury Decision finalized temporary regulations introduced June 24, 2003. *See* Preamble to Temp. Reg. § 1.752-6T, 68 Fed. Reg. 37414, 37415 (June 24, 2003).
[2] Treas. Reg. § 1.752-6(a).
[3] Treas. Reg. § 1.752-6(b)(1), (2).

Congressional mandate in Section 309(c) and (d)(2) of the 2000 Tax Act (the "2000 Act").[4] Section 309(c) provides:

> Application of Comparable Rules to Partnerships and S Corporations
>
> The Secretary of the Treasury or his Delegate – (1) shall prescribe rules which provide appropriate adjustments under subchapter K of chapter 1 of the Internal Revenue Code of 1986 to prevent the acceleration or duplication of losses through the assumption of (or transfer of assets subject to) liabilities described in section 358(h)(3) of such Code (as added by subsection (a)) in transactions involving partnerships, and (2) may prescribe rules which provide appropriate adjustments under subchapter S of Chapter 1 of such Code in transactions described in paragraph (1) involving S corporations rather than partnerships.[5]

Plaintiffs contend that the retroactive Regulation exceeds the scope of Section 309's grant of authority and fails to address the abuses that I.R.C. § 358 was designed to prevent. Accordingly, the Regulation does not satisfy any exception under I.R.C. § 7805 and thus fails to overcome the statutory bar against retroactive regulations.

## III. Argument

The Government's claims that the Regulation satisfies the legislative-grant and anti-abuse exception are hollow, as they rest on myopic statutory interpretations and inferences belied by the key facts surrounding Section 309 and the Regulation's issuance.

### A. The objective facts surrounding Section 309 and the Regulation's issuance confirm that the legislative-grant exception under I.R.C. § 7805(b)(6) is not met.

The Regulation does not satisfy the legislative-grant exception because (i) the text and legislative history of Section 309 reveals Congress' intent to provide rules for partnerships engaged in corporate transactions, and (ii) even *if* Congress contemplated pure partnership adjustments, the Regulation exceeded such authority by providing for *non*-comparable rules that

[4] Government Brief at 18.

[5] Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, § 309(c), 114 Stat. 2763, 2763A-638 (2000).

apply to transactions that do *not* involve loss duplication or accerlation. These arguments are rooted in facts that the Government, despite its contentious efforts, simply can not dispute:

- **Section 309 authorized rules to prevent the "acceleration and duplication" of losses through the assumption of an I.R.C. § 358(h) liability. This type of duplication and acceleration of loss can only exist in corporate transactions.**

The Government offers no counter point. It ignores the fact that the type of loss acceleration and duplication that Congress spoke to in I.R.C. § 358 is only possible in corporate transactions, and makes no effort to otherwise prove how this phenomena could arise in pure partnership transactions. In fact, the Government effectively concedes (as it should) that the Regulation does not address the acceleration or duplication of losses.

Although offering no *counter* arguments, the Government still argues. It claims that Section 309 vested the Treasury with what amounts to *plenary* authority to issue regulations to prevent losses generated through the assumption of liabilities.[6] While at times the Treasury acts as if it had such authority, in reality, such an expansive grant of power has no foundation in law or fact. Indeed, the Government cites no authority for its position, and it is doubtful that Congress could make such a grant without running afoul of constitutional barriers.

- **Congress authorized rules "comparable" to I.R.C. § 358. The Regulation excludes two (2) exceptions to I.R.C. § 358(h)'s definition of "liability."[7] It also does not address duplicated/accelerated losses.[8]**

The Government does not challenge that the Regulation deviates from the statutory definition of liability in I.R.C. § 358(h) to include otherwise excluded obligations. Significantly,

---

[6] Government Brief at 30-1.
[7] I.R.C. § 358(h)(2)(A) & (B).
[8] As previously noted, the Government effectively concedes the Regulation does not address duplication and acceleration of loss.

had the Regulation followed the statutory exceptions, the Regulation would not reach the transactions at issue.[9]

The Government's attempt to formulate a comparability argument falls flat. It contends that the Regulation is comparable simply because it involves basis adjustments upon the contribution of liabilities.[10] The idea that Section 309's narrowly-crafted grant of authority conferred such *carte blanche* authority is too far-fetched to warrant serious consideration. This conclusion is in line with the recent *Sala* decision, wherein another district court struck down the Regulation as invalid under I.R.C. § 7805. That court found the Regulation's "exception to the exception" determinative and ruled that "[e]ven a cursory look at the authorizing statute demonstrates §1.752-6 is not a comparable rule."[11]

- **Congress mandated "appropriate adjustments." The Treasury has publicly acknowledged that the Regulation's adjustments are not "appropriate" for prospective transactions.**

The Government does not dispute the fact that the Regulation provides for *inappropriate* adjustments. (Indeed, it can't.) In a curious move, the Government reiterates Treasury's admission that the immediate basis adjustments required by the Regulation are *not appropriate* in partnership transactions. It then throws its hands in the air and claims that it did the best it could under the circumstances – i.e., that the Regulation's adjustments were necessary to fall within the ambit of Section 309 "even though [Treasury] did not believe that this was the best approach for the assumption of liabilities by partnerships given their pass thru nature."[12]

---

[9] I.R.C. § 358(h)(2)(B) excludes from its grasp liabilities that are transferred with substantially all of the assets to which the liabilities relates from I.R.C. § 358(h)(3)'s definition of "liability." Accordingly, but for the exception to the exception" that the Regulation creates, the options contributed in the current transaction would be excluded from the definition in I.R.C. § 358(h)(3).

[10] Government Brief at 31.

[11] *Sala v. United States*, No. 05-cv-00636-LTB, 2008 WL 1836693, at *27 (D. Colo. April 22, 2008). A copy of the *Sala* decision is attached as Exhibit 1 to this Reply.

[12] Government Brief at 34.

Simply put, the Government argues that the Regulation's *inappropriate* adjustments were necessary to fall within Section 309's grant of authority for *appropriate* adjustments. This illogical, circular reasoning borders on the absurd and should be summarily rejected.

- **The legislative history behind I.R.C. § 358(h) and Section 309(c) makes *no mention* of (i) I.R.C. § 752 or §§ 722, 723, 733, or any other provision in Subchapter K potentially applicable to the transfer of contingent obligations to a partnership, or (ii) Notice 2000-44.**

Without any discernable legislative history supporting its position, the Government turns to a mundane comment in a Committee Report from a *failed* piece of legislation.[13] This does little for the Government for a number of reasons. First, the vetoed legislative history is significantly outweighed by the direct legislative history as well as the plain language of Section 309, which indicate Congress' intent to limit the Treasury's retroactive rule-making to corporate transactions.[14] Second, even assuming it has some persuasive value, at best the committee report indicates that Congress was *aware* of possible abuses in the contribution of contingent liabilities in a partnership transaction. The report gives no indication whatsoever that the legislature authorized or even intended the Treasury to take action.

Lastly, and importantly, the report only states that the Treasury *could* issue regulations *if* necessary to prevent abuse under Section 7805(b)(3) – the anti-abuse exception.[15] Had Congress contemplated a directive authorizing retroactive regulations, it certainly would have referenced Section 7805(b)(6)—the legislative-grant exception—as the source of retroactive authority. This omission bolsters the notion that Congress did not intend to make a specific grant of retroactive authority.

---

[13] Government Brief at 24.

[14] *See also*, *Sala* at *28 (finding that that "nothing in the Act or its legislative history suggest" that Congress intended to make a sea change in the law with respect to transactions between partners and their partnerships.)

[15] H.R. Conf. Rep. No. 106-289 at 538. ("The conferees note that pursuant to section 7805(b)(3), if necessary to prevent abuse, the Secretary could determine that any regulations applying such rules should be effective on the same date as this provision, i.e. July 15, 1999.")

Moreover, the Government oddly quotes *its own Treasury Decision* as evidence of Congressional concern over I.R.C. § 358(h)-type abuses in the partnership context.[16] At the risk of stating the obvious, a Treasury Decision is not legislative history, nor is the Treasury's statements therein indicative of legislative intent.

- **Section 309(c) authorizes Treasury to promulgate rules applying to "liabilities described in section 358(h)(3)."[17] This definition is limited to liabilities assumed in connection with a transaction "to which section 351, 354, 355, 356, or 361 applies."[18] These provisions all appear in subchapter C of the Internal Revenue Code and address only <u>corporate</u> transactions.**

The Government's attempts to refute these facts through truncated and cherry-picked statutory references are all without merit.

The Government first relies on an incomplete quote from I.R.C. § 358(h)(3) to argue that the definition of "liability" is not limited to corporate transactions.[19] A proper review of the *full* statutory text, however, reveals that subsection (h) must be read in conjunction with subsection (a)(1), and thus the definition of "liability" is limited to transactions "to which section 351, 354, 355, 356, or 361 applies."[20] Because all of these Code sections pertain to corporate transactions, the natural conclusion is that I.R.C. § 358(h)(3)'s definition of "liability" is limited to corporate transactions.

The Government also argues that Section 309 mandates that the Secretary "prescribe rules which provide appropriate adjustments *under Subchapter K*." The government claims this language authorized the Secretary to promulgate regulations under I.R.C. § 752 because it is in Subchapter K. This argument is flawed because it requires the court to ignore the "which

[16] Government Brief at 19.
[17] Section 309(c)(1).
[18] *See* I.R.C. § 358(a)(1), (h)(1), (h)(3).
[19] The government omits the limiting phrase "for purposes of this subsection" from its quoted definition of liability. It is this language which incorporates by cross-reference the corporate limitations found in I.R.C. § 358(a)(1).
[20] *See* I.R.C. § 358(a)(1), (h)(1) & (h)(3)

provide appropriate adjustments" language of Section 309 and instead read the statute as authorizing *new* rules under Subchapter K. In reality, Section 309 only authorized corporate regulations that provided for adjustments under *existing* Subchapter K rules for transactions involving shareholder partnerships. The Treasury enacted exactly these kind of rules in Treas. Reg. § 1.358-7.[21]

Finally, the Government suggests that in the absence of a specific limitation to corporate transactions, that Section 309 authorized regulations outside of Subchapter C.[22] Essentially the Government argues that, in the absence of a limitation, the Treasury's rulemaking power is plenary. Such a broad grant of authority has no basis in either fact or law.

**B. The anti-abuse exception under I.R.C. § 7805(b)(3) is also not met because the Regulation fails to address the abuses contemplated by I.R.C. § 358(h) and thus Section 309, and was promulgated for the sole and improper purpose of enhancing the government's litigation position in Notice 2000-44 cases.**

Other than a labeling Plaintiffs' claims are circumstantial, the Government offers no viable retort. The best argument that the Government can muster is that "abuse is patent" in Notice 2000-44 transactions. The Government never defines the "abuse" they are attempting to prevent, nor does the Government explain why the current transaction is abusive. This type of blanket statement falls well short of establishing the anti-abuse exception. Indeed, in the recently-decided *Sala* case, the court rejected the identical "abuse is patent" defense to later find that the Regulation did not satisfy the anti-abuse exception of I.R.C. § 7805(b)(3).[23]

---

[21] *See* Treas. Reg. 1.358-7 (providing adjustments under existing Subchapter K rules for corporate contributions by shareholder partners.)
[22] Government Brief at 29-30.
[23] *Sala* at *30.

The Government also makes the convoluted argument that the Regulation was the final step, after Notice 2000-44, in complying with the mandate of Section 309.[24] This argument is fallacious for at least two reasons. First, Section 309 defines with great specificity the abuse Congress was trying to prevent: the acceleration and duplication of losses. The Regulation does not address this type of abuse—a truism the Government concedes.[25] Second, the Government is confused as to the nature of Notice 2000-44. This notice was <u>not</u> a notice of proposed rulemaking; rather, it was simply a press release announcing the IRS's view of certain transactions—nothing more and nothing less. As such, it certainly was *not* a step in the process of promulgating regulations.

Further, the Government's attempt to discount, as mere coincidences, facts revealing its litigation posturing in issuing the Regulation is specious.[26] The Regulation makes numerous references to Notice 2000-44, and the day after the Regulation's issuance, the Treasury directed its attorneys to use the newly-enacted Regulation as a principal ground to challenge Notice 2000-44 transactions.[27] The *Sala* Court found these so-called coincidences to be conclusive evidence that the Regulation was a improper "make-weight regulation" and an "obvious effort to bootstrap the government's litigating position with respect to so-called 'Son of Boss' cases."[28]

---

[24] Government Brief at 26. *See supra,* Argument at III.A for discussion of how the Regulation failed to comply with Section 309.
[25] *See supra* Argument III.A at p. 4.
[26] Government Brief at 26.
[27] *See* Chief Counsel Notice 2003-020.
[28] *See Sala* at *30 ("[i]nstead of protecting the statutes from abuse, Treasury's attempt to legislate an exception to the statutory exception to be applied only in Notice 2000-44 transactions was an obvious effort to bootstrap the government's litigating position with respect to so-called "Son of Boss" cases. … such make weight regulations are frequently disregarded by the courts.").

**C. The recent decision in <u>Sala</u> marks the second time that a federal district court has invalidated the Regulation.**

The Eastern District of Texas was the first court to strike down the Regulation in the 2007 decision of *Klamath v. Strategic Investment Fund, LLC v. United States*.[29] The court held that the Regulation's application, at least to transactions occurring between October 18, 1999, and August 14, 2000 (the date Notice 2000-44 was issued) was an invalid abuse of discretion.[30] It reached this holding based on its findings that:

- The Regulation exceeded the Congressional grant of authority under Section 309(c),
- The Regulation retroactively changed existing law regarding the definition of liability under I.R.C. § 752,
- Treasury may have promulgated the Regulation for the purpose of buttressing the government's litigation position in Notice 2000-44 cases, and
- Taxpayers at large, including the plaintiffs in that case, were entitled to rely on settled case law and the well-established IRS position under I.R.C. § 752 that helped create it.[31]

The federal court for the district of Colorado recently joined the *Klamath* chorus in its 2008 decision of *Sala v. United States*. That case also involved a so-called Notice 2000-44 transaction. Unlike *Klamath*, however, the *Sala* court ruled <u>in favor</u> of the taxpayer on all issues and upheld the tax benefits claimed in connection with the transaction.[32]

One of the issues before the *Sala* Court was the validity of the Regulation. The court held that Regulation was invalid because it failed to overcome the statutory bar against retroactive regulations under I.R.C. § 7805. Rejecting the same arguments that the Government

---

[29] 440 F. Supp. 2d 608 (E.D. Tex. 2006).
[30] *Id.* at 625.
[31] *Id*. at 622-26.
[32] *Sala v. United States*, No. 05-cv-00636-LTB, 2008 WL 1836693 (D. Colo. April 22, 2008).

makes here, the court determined that neither the legislative-grant exception nor the anti-abuse exception was satisfied.

Regarding the legislative-grant exception, the *Sala* court found that the Regulation exceeded Section 309's grant of authority in several ways that are directly relevant to the current case:

- First, the court determined that the rules set out for partnerships in the Regulation are not "comparable" to the rules for corporations described in § 358(h) as required by Section 309(c). The court based this determination largely on its finding that the Regulation altered I.R.C. § 358's definition of "liability" by carving out an exception under § 358(h)(2)(B) for Notice 2000-44 transactions.[33]

- Next, the court ruled that the Regulation does not address the "acceleration and depreciation" of losses because the transactions described in Notice 2000-44 do not involve accelerated or duplicated losses.[34]

- Lastly, the court held that the Regulation does not apply to "liabilities described in section 358(h)(3)" of the tax code. In this regard, the *Sala* court determined that I.R.C. § 358(h)(3) only applies to liabilities assumed in an exchange to which section 351, 354, 355, 356, or 361 applies. The court then reasoned that, because all these sections involve corporate exchanges, the Section 309 grant of authority only relates to contingent liabilities assumed in a corporate exchange.[35]

The court's ruling on the anti-abuse exception is likewise relevant here. It found that the exception was not met because Treasury was only authorized to issue regulations to prevent "abuse of the statute" (i.e., I.R.C. § 358(h)-type abuses), and based on the reasons outlined above, the court found that the Regulation clearly did not do so.[36] The court expressly rejected the Government's commonly-plead defense that "abuse is patent in Son of Boss Transactions," and instead determined that the Regulation was an obvious attempt to bootstrap the Government's litigating position in Son of Boss cases.[37]

---

[33] *Sala* at *27
[34] *Id.*
[35] *Id.* at *28
[36] *Id.* at *30
[37] *Id.*

In short, *Sala* struck down the Regulation based on the *identical* arguments, and same impartial facts, that Plaintiffs rely on here.

While Plaintiffs believe that *Klamath* and especially *Sala* are well-reasoned opinions that this Court should follow, they are not the only courts to address the Regulation's validity. As the Government points out, the Seventh Circuit upheld the validity of the Regulation in *Cemco Investors, LLC*, a case involving a Notice 2000-44 transaction executed by Paul Daugerdas, the opinion writer for the Jenkens & Gilchrist opinions at issue in this case.[38]

The Government makes much ado about *Cemco*, which forms the foundation for a large part of its Opposition.[39] But other than providing the Government with several choice quotes, this decision offers little else. As the *Sala* Court recognized, *Cemco* contains no analysis of the dispositive issue: whether the Regulation exceeds the grant of authority in Section 309.[40] In fact, the lower court did not even decide this issue, finding that the taxpayer conceded the Regulation's retroactive application.[41] The taxpayer raised an untimely challenge to the Regulation on appeal, but failed to engage the Seventh Circuit in an analysis of Section 309. Nonetheless, in a *sua sponte* fashion, the court declared that Section 309 gave Treasury broad authority to issue regulations governing basis.[42] Like Plaintiffs in this case, the *Sala* Court seemed baffled by the Seventh Circuit's emotion-driven opinion, which the court keenly noted

---

[38] *See Cemco Investors, LLC v. United States,* 515 F.3d 749 (7th Cir. 2008). In the interest of full disclosure, Plaintiffs also note that the Fifth Circuit recently rendered an opinion addressing whether a liability arising from a short sale of Treasury securities constitutes a liability within the meaning of I.R.C. § 752. The court never reached the question of, and thus did not rule on, the validity of the Regulation. *See Kornman & Assoc., Inc. v. United States*, No. 06-11422, 2008 WL 2009848 (5th Cir. May 12, 2008).

[39] Government's Brief at 3.

[40] *Sala* at *30.

[41] *Cemco Investors, LLC v. United States*, 2007 WL 951944, *5 (N.D.Ill. 2007) ("Treas. Reg. § 1.752-6 required CIP to account for the short option as a liability in determining the adjusted basis of its assets, a point which Cemco concedes.")

[42] Plaintiff also notes that *Cemco* merely affirms the lower court's decision that the taxpayer in that case did not raise and thus conceded the validity of §1.752-6. This may account for the absence of any analysis as to the scope of Section 309 and thus renders the Court's brief musings on the topic dicta. Moreover, the *Cemco* court considered the lack of 'economic substance' the core reason for its decision, which further bolsters the characterization of its passing references to §1.752-6 as dicta.

was "curiously lacking in substantive analysis."[43] The *Sala* court went on to hold that *Cemco* has no relevance to a court's determination on the validity of the Regulation:

> If the question presented in this case was whether the retroactive date in the regulation was a valid one, *Cemco*'s holding in this regard would have some persuasive relevance. As to the validity of the regulation's retroactivity overall, ***it has none***. (emphasis added).[44]

## IV. Conclusion

Based on the objective facts surrounding Section 309 and the Regulation's issuance, there can be little doubt that (1) the Regulation exceeded the grant of authority in Section 309, and (2) the Regulation was not issued to prevent abuse of the statute, but rather to bolster the Government's litigating position in "Son of Boss" cases. As such, neither the legislative-grant exception nor the anti-abuse exception to Section 7805 is met. Thus the Regulation cannot escape the statutory bar against retroactive regulations and is invalid.

Respectfully submitted,

By: s/Joel N. Crouch
Joel N. Crouch
Texas State Bar No. 05144220

MEADOWS, COLLIER, REED,
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile

jcrouch@meadowscollier.com

ATTORNEY FOR PLAINTIFFS

---

[43] *Sala* at *30.
[44] *Id.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2008, a copy of the foregoing Reply was served upon counsel listed below via the means indicated.

*Via Electronic Means*

Dennis Donahue
John Lindquist
David M. Steiner
United States Department of Justice
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, D.C. 20044

*Via Federal Express*

Joseph Pitzinger, Esq.
United States Department of Justice
Tax Division
717 North Harwood
Suite 400
Dallas, Texas 75201

***Attorneys for the United States***

s/Joel N. Crouch
Joel N.Crouch