# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Nos. 06-245T, 06-246T, and 06-247T
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

## UNITED STATES' REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE VALIDITY OF TREASURY REGULATION § 1.752-6

DENNIS M. DONOHUE
Chief Senior Litigation Counsel
U.S. Department of Justice, Tax Division
Post Office Box 403
Ben Franklin Station
Washington, D.C. 20044
(202) 307-6492

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii- iv

APPENDIX.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SALA'S REASONING IS FATALLY FLAWED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. *Sala* erred in holding that the rules in the Regulation and I.R.C. § 358(h) are not "comparable." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

C. *Sala*'s Reasoning That the 2000 Act Did Not Authorize the Regulation Because It Is Not Addressed to "Accelerated" or "Duplicative" Losses Is Meritless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

D. *Sala*'s conclusion that Section 309(c) of the 2000 Act does not authorize the Regulation because Section 309(c) only directed the Secretary to issue rules regarding the assumption of liabilities by corporations is flawed . . . . . . . . . . . . 6

E. *Sala* Wrongly Concludes That I.R.C. § 7805(b)(6) Does Not Authorize the Retroactivity of the Regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

F. *Sala* Also Wrongly Concludes That I.R.C. § 7805(b)(3) Does Not Authorize the Retroactivity of the Regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

G. *Sala* Also Applied the Wrong Standard of Review to Determine the Validity of Treas. Reg. § 1.752-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

H. Even if the Regulation were "interpretive" and even if the courts owed "interpretive" regulations less deference, the Regulation is still valid .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bankers Life and Casualty Co. v. United States*,
142 F.3d 973 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Busse v. Commissioner*,
479 F.2d 1147 (7th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cemco Investors, LLC v. United States*,
515 F.3d 749 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 8, 9, 10

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 11, 12, 13, 14

*Helmer v. Commissioner*,
34 T.C.M. (CCH) 727 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Hospital Corp. of America & Subsidiaries v. Commissioner*,
348 F.3d 136 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Klamath,Klamath Strategic Investment Fund, LLC v. United States*,
440 F.Supp. 2d 608 (E.D. Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Kornman & Associates Inc. v. United States*,
___ F.3d ___, 2008 WL 2009848
(5th Cir., May 12, 2008).. . . . . . . . . . . . . . . . . . . . 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15

*Nat'l Muffler Dealers Ass'n v. United States*,
440 U.S. 472 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Paxton v. Commissioner*,
53 T.C. 202 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Sala v. United States*, No. 05-cv-00636-LTB,
2008 WL 1836693 (D. Colo. April 22, 2008). . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 6, 8, 9, 10

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Snap-Drape, Inc. v. Commissioner*,
98 F.3d 194 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Swallows Holding, Ltd. v. Commissioner*,
515 F.3d 162 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S.A., Inc., v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

**FEDERAL STATUTES AND REGULATIONS**

I.R.C. § 358(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3,
I.R.C. § 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13
I.R.C. § 7805(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
I.R.C. § 7805(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
I.R.C. § 7805(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
I.R.C. § 7805(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9
I.R.S. Notice 2000-44 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
T.D. 9062, 2003-2 C.B. 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
T.D. 9062, 2003-2 C.B. 46, 67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Treas. Reg. §1.752-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 5, 8, 10, 16
Treas. Reg. § 1.752-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Nos. 06-245T, 06-246T, and 06-247T**
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | § |
| **By and Through Wendell H. Murphy, Jr.,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **PSM FARMS, LLC,** | § |
| **By and Through Stratton K. Murphy,** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **MURPHY PORK PARTNERS, LLC** | § |
| **By and Through Wendell H. Murphy, Jr.** | § |
| **a Partner Other Than Tax Matters Partner,** | § |
| | § |
| **Plaintiffs,** | § |
| | § |
| **v.** | § |
| | § |
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Defendant.** | § |

**APPENDIX**

| # | Description | Pages |
|---|---|---|
| Exhibit A | Declaration of Andrew J. Krieger. | 001-012 |

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Nos. 06-245T, 06-246T, and 06-247T
**(Consolidated)**

| | |
|---|---|
| **MURFAM FARMS, LLC,** | **§** |
| **By and Through Wendell H. Murphy, Jr.,** | **§** |
| **a Partner Other Than Tax Matters Partner,** | **§** |
| | **§** |
| **PSM FARMS, LLC,** | **§** |
| **By and Through Stratton K. Murphy,** | **§** |
| **a Partner Other Than Tax Matters Partner,** | **§** |
| | **§** |
| **MURPHY PORK PARTNERS, LLC** | **§** |
| **By and Through Wendell H. Murphy, Jr.** | **§** |
| **a Partner Other Than Tax Matters Partner,** | **§** |
| | **§** |
| **Plaintiffs,** | **§** |
| | **§** |
| **v.** | **§** |
| | **§** |
| **UNITED STATES OF AMERICA,** | **§** |
| | **§** |
| **Defendant.** | **§** |

## UNITED STATES' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE VALIDITY OF TREASURY REGULATION § 1.752-6

By order entered on May 29, 2008, the Court permitted the United States to file a sur-reply to the plaintiffs' reply memorandum. In its reply memorandum, the plaintiffs heavily relied on the recent decision of *Sala v. United States*, No. 05-cv-00636-LTB, 2008 WL 1836693 (D. Colo. April 22, 2008), which was issued one day after the United States filed it memorandum in opposition to the plaintiffs' motion for partial summary judgment. P. Reply at 5-6, 9-12. In

*Sala*, the District Court determined that Treas. Reg. § 1.752-6 was invalid because its language and rules exceeded the authority of its enabling statute. *Id* at 28. We respectfully submit that *Sala* was wrongly decided and its holding is irreconcilably inconsistent with the recent decision of the Seventh Circuit in *Cemco Investors, LLC v. United States*, 515 F.3d 749, 751 (7th Cir. 2008) upholding the validity of Treas. Reg. § 1.752-6.

## ARGUMENT

## *SALA'S* REASONING IS FATALLY FLAWED

### A. Introduction

The District Court in *Sala* held that Treas. Reg. § 1.752-6 (the "Regulation") is not authorized by Section 309(c) of the Community Renewal Tax Relief Act of 2000 (the "2000 Act").[1] The court based this holding on essentially three textual grounds: (1) that the rules for partnerships in the Regulation are not "comparable" to the rules for corporations described in I.R.C. § 358(h), as required by Section 309(c) of the 2000 Act; (2) that the Regulation does not address the "acceleration or duplication" of losses, as required by Section 309(c)(1) of the 2000 Act; and (3) that the Regulation does not apply to "liabilities described in section 358(h)(3)" of the Internal Revenue Code, as also required by Section 309(c)(1) of the 2000 Act. 2008 WL 1836693 at 26-28. Based on this line of reasoning, *Sala* held that the Regulation is therefore inconsistent with the plain language of § 309(c) of the 2000 Act and, accordingly, could not be

[1] Pub. L. No. 106-554, 114 Stat. 2763A-638. T.D. 9062, 2003-2 C.B. 46, 67.

applied retroactively pursuant to I.R.C. § 7805(6).[2]

Based on the same reasoning, *Sala* concluded that Treas. Reg. § 1.752-6 is therefore not a legislative regulation and thus was not entitled to *Chevron* deference, which requires a regulation to be treated as valid unless "arbitrary, capricious, or manifestly contrary to the statute."[3] In arriving at its conclusions on each of these positions, *Sala* adopted the reasoning of the taxpayer. *Id* at 27. In each instance, however, this reasoning was fundamentally flawed.

### B. *Sala* erred in holding that the rules in the Regulation and I.R.C. § 358(h) are not "comparable."

*Sala's* first textual holding is that § 309(c) of the 2000 Act does not authorize the Regulation because the rules in the Regulation are not comparable with those in I.R.C .§ 358(h). 2008 WL 1836693 at 27. *Sala* reasoned that although Section 309(a) of the 2000 Act carved out two exceptions to the requirement that contingent liabilities be treated as liabilities under I.R.C. § 358(h),[4] the Regulation added an"exception to the exceptions" for those cases where the exchange in question was a transaction described in I.R.S. Notice 2000-44. It is because of this "exception to the exceptions" that *Sala* determined that the rules in the Regulation were not "comparable" to those in § 358(h), and that the Secretary, therefore, exceeded his grant of authority.

---

[2]As fully discussed in our opposition memorandum, I.R.C. § 7805(b)(6) expressly authorizes retroactivity where a regulation is promulgated pursuant to a legislative grant from Congress. United States Mem. at 23-26.

[3]*See, Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

[4] Those two exceptions provide that contingent liability treatment will not occur when the trade or business or substantially all of the assets with which the contingent liability is associated are transferred to the person assuming the liability as part of the exchange. *See*, I.R.C. § 358(h)(2).

What *Sala* fails to take into account, however, is that the authority to make "exceptions to the exceptions" was expressly granted to the Secretary in § 358. Section 358(h)(2) expressly provides that its trade and business/transfer of assets exceptions to the basis adjustment rules apply "[*e]xcept as provided by the Secretary*." [Emphasis added.] In promulgating the Regulation and establishing rules for partnerships similar to those in § 358(h) for corporations, the Secretary invoked this provision and explicitly included an exception to the exceptions. As the Secretary stated when he issued the Regulation, "[t]he exceptions to section 358(h) were intended to exclude from the application of § 358(h) *ordinary business transactions*." *See* T.D. 9062, 2003-2 C.B. 46. (Emphasis added.) Obviously, the offsetting options transaction described in Notice 2000-44, which generates an artificially inflated outside partnership basis which is grossly disproportionate to the actual economics of the transaction, is no *ordinary business transaction*.

In short, Section 358(h) – which Congress told the Secretary to follow for purposes of promulgating similar rules for partnerships – expressly gave the Secretary discretion to provide for "exceptions to the exceptions." The "exception to the exceptions" for Notice 2000-44 transactions in the Regulation is entirely consistent with § 358(h). Therefore, the Secretary's use of that authority for Notice 2000-44 transactions was not arbitrary, capricious or manifestly contrary to law.[5]

---

[5]It is significant that plaintiff entirely misses the point here. Plaintiff incorrectly argues that the United States has conceded that the Regulation provides for *inappropriate* adjustments because the regulation which applies non-retroactively, Treas. Reg. § 1.752-7, applies a different rule. The government made no such concession. P. Reply Mem. at 5-6. Treas. Reg. § 1.752-6 provides for a perfectly appropriate rule. The Secretary considered the rule in Treas. Reg. § 1.752-7 to be a preferable rule, but felt constrained to adopt Treas. Reg. § 1.752-6 retroactively specifically because Section 309 required that, for retroactive purposes, only such a rule would

**C. *Sala*'s Reasoning That the 2000 Act Did Not Authorize the Regulation Because It Is Not Addressed to "Accelerated" or "Duplicative" Losses Is Meritless.**

*Sala's* second textual holding is that § 309(c) of the 2000 Act did not authorize the Regulation because, in its view, the Regulation disallowed a loss which was not "accelerated" or "duplicative" of another loss. 2008 WL 1836693 at 27. The Regulation, however, contains rules almost identical to those in § 358(h), both of which preclude the recognition of non-economic losses. Section 358(h) prevents the basis of a shareholder's interest in a corporation to be artificially inflated by contingent liabilities whereas Treas. Reg. § 1.752-6 prevents a partner's interest in a partnership to be artificially inflated by contingent liabilities. Both provisions therefore are designed to combat an artificial inflation of outside basis, one in the corporate context, while the other in the partnership context. The Secretary, therefore, promulgated the precise rules Congress so directed.

In short, the rules in Treas. Reg. §1.752-6 carry "out the congressional mandate in a proper manner,"and harmonize "with the plain language of the statute, its origin, and its purpose." *Nat'l Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477 (1979).

The fact that these similar sets of rules in the Regulation and § 358(h) disallow fictitious *non-economic* losses, as well as accelerated or duplicated *non-economic* losses, does not invalidate the Regulation. As we emphasized in our opposition memorandum, just because artificially inflating outside basis with contingent liabilities in a partnership, which is a passthrough entity, produces a slightly different non-economic result than artificially inflating a shareholder's stock

---

be valid. The fact that the Secretary does not consider a rule to be the best possible one does not make it inappropriate.

interest in a corporation, which is a taxable entity, does not mean that Congress did not intend the Treasury, acting under its express mandate, to prevent such abuse. United States Mem. at 30-32. In affirming the validity of the Regulation, the Seventh Circuit noted that the purpose of such regulations is to "avoid the need to litigate, one tax shelter at a time, whether any real economic transaction is inside the box." *Cemco*, 515 F.3d at 751.

### D. *Sala*'s conclusion that Section 309(c) of the 2000 Act does not authorize the Regulation because Section 309(c) only directed the Secretary to issue rules regarding the assumption of liabilities by corporations is flawed.

*Sala*'s third textual basis for invalidating the Regulation – that § 309(c) of the 2000 Act directed the Secretary to issue rules only with respect to a corporation's assumption of liabilities, 2008 WL 1836693 at 28, does not withstand scrutiny. Section 309(c) directed the Secretary to issue rules regarding the assumption of "liabilities *described*"in § 358(h)(3) in "transactions involving partnerships."[6] (Emphasis added.) *Sala*'s attempts to broaden that specific reference to § 358(h)(3) to a conclusion that Congress intended to restrict any regulations involving partnerships under subchapter K to corporate exchanges governed by §§ 351, 354, 355, 366, and 361 is not supported by the text of the statute or the legislative history.[7] In fact, plaintiffs

---

[6]Section 309(c) authorizes the Treasury to prescribe regulations under subchapter K of the
Internal Revenue Code—the subchapter on partnerships—addressing "the assumption of liabilities *described* in section 358(h)(3) . . . in transactions involving partnerships." Section 358(h)(3) provides, in turn, that "for purposes of this subsection," the term "liability" includes contingent liabilities. (Emphasis added.)

[7] As discussed in the United States' opposition memorandum, the legislative history expressly evidences Congress's concern with assumptions of contingent liabilities by partnerships. United States Mem. at 23-26.

concede that the legislative history indicates that Congress was aware of possible abuses in the contribution of contingent liabilities in a partnership transaction. P. Reply Mem. at 5-6.

In particular, contrary to *Sala's* conclusion, the introductory clause of § 358(h)(3) – "[f]or purposes of this subsection" – serves only to specify the applicability of the definition of liability contained in that subsection; it does not effect the change in the plain meaning of Section 309(c) that *Sala* ascribed to it. Section 309(c) simply directs the Secretary to use the definition of liability described in § 358(h)(3) – *viz.*, "any fixed or contingent obligation to make payment" – for purposes of any new regulations under subchapter K.

Plaintiffs argue that *Sala* reasoned that because § 358(h)(3) provides that "for purposes of this subsection," the term "liability" includes contingent liabilities, and since the scope of § 358 is limited to "an exchange or series or exchanges" to which "section 351, 354, 355, 356 or 361 applies," it therefore follows that § 358(h)(3) can *apply* only to liabilities assumed in connection with these specific sections. And since all these sections involve corporate exchanges, plaintiffs and *Sala* conclude that the language in § 309(c) authorizing the Treasury to issue regulations relating to "the assumption of liabilities described in section 358(h)(3)" can only be interpreted to relate to contingent liabilities assumed in a corporate exchange. 2008 WL 1836693 at 28. P. Reply Mem. at 10.

What plaintiffs and the *Sala* court overlook, however, is that the terms of Section 309(c) of the 2000 Act do not refer to liabilities to which § 358(h) *applies*; rather, this statute refers to "the assumption of liabilities *described in* § 358(h)(3)." (Emphasis added.) This is a significant drafting difference. *See Busse v. Comm'r*, 479 F.2d 1147 (7th Cir. 1973) (exception in former § 483(f)(4) for transfers "described in section 1235(a)" did not require that the transfer so

*described* also be a transfer to which the capital gain rule of § 1235 *applied*), *aff'g* 58 T.C. 389 (1972)); *see also Paxton v. Comm'r*, 53 T.C. 202 (1969) (same). In short, the statutory term "described" has a different and more focused meaning than the word "applies," which the *Sala* court failed to appreciate.

### E. *Sala* Wrongly Concludes That I.R.C. § 7805(b)(6) Does Not Authorize the Retroactivity of the Regulation.

Contrary to *Sala*, the Regulation is therefore not inconsistent with the terms of its enabling statute – § 309(c) of the 2000 Act. To the contrary, the Regulation is in perfect consonance with the language as well as the Congressional purpose of this statute. Thus, *Sala*'s conclusion that § 309(c) can not authorize the retroactivity of Treas. Reg. § 1.752-6 is simply wrong. As we noted in our opposition memorandum, § 7805(b)(6) explicitly authorizes the retroactivity because the 2000 Act expressly provides that regulations adopted pursuant to § 309(c) "shall apply to assumption of liabilities after October 18, 1999, or such later date as may be prescribed in such rules." 2000 Act, § 309(d)(2). That language is clear and unambiguous and applies here

Indeed, as we previously noted, the Seventh Circuit affirmed in no uncertain terms the clarity of the retroactive basis of the Regulation, stressing that Section 309(c):

> enacts basis reduction rules for many transactions and authorizes the IRS to adopt regulations prescribing similar rules for partnerships and S corporations. Section 309(d)(2) of the 2000 Act adds that these regulations may be retroactive to October 18, 1999. That's the power the Commissioner used when promulgating Treas. Reg. § 1.752-6.

*Cemco*, 515 F.3d at 752.

*Sala* cavalierly dismisses the Seventh Circuit's reasoning in *Cemco* because it did not

engage in the type of textual analysis as was discussed above. 2008 WL 1836693 at 30. However, as we have seen, two of these textual arguments fly in the face of the plain statutory language – *viz*., the expressed terms of I.R.C. § 358(h)(3) and §309(c) of the 2000 Act – and the other is utterly inconsistent with the fundamental Congressional purpose of these shareholder/partner basis reduction rules. The fact that the Seventh Circuit chose to focus its analysis on the critical aspects of the rationale of the *Klamath*[8] decision – which it was directly addressing – in no way diminishes the force of its cogent analysis that the retroactivity of the Regulation is explicitly authorized by I.R.C § 7805(b)(6).

### F. *Sala* Also Wrongly Concludes That I.R.C. § 7805(b)(3) Does Not Authorize the Retroactivity of the Regulation.

*Sala* is equally wrong in concluding that § 7805(b)(3) – which authorizes retroactive application to prevent abuse – does not validate the retroactivity of the Regulation. *Sala* concluded that § 7805(b)(3) is not applicable to the Regulation because the Regulation exceeds its grant of authority under § 309(c) of the 2000 Act. ( "A Treasury regulation that conflicts with the underlying statute is invalid, even if cast as an anti-abuse regulation"). 2008 WL 1836693 at 29. *Sala's* conclusion that the Regulation conflicts with § 309(c) is premised on it textual analysis discussed above. ("By creating an 'exception to the exception 'for Notice 2000-44 transactions, the regulation overrides the statutory directive, rather that protects it.") 2008 WL 1836693 at 30. But, as we have seen, two of these statutory-interpretation grounds are themselves contrary to express statutory language and the third is in conflict with the fundamental purpose § 309(c). None of these grounds can thwart the applicability of

---

[8]*Klamath Strategic Inv. Fund, LLC v. United States*, 440 F.Supp.2d 608 (E.D. Tex. 2006), *cross-appeals docketed*, Nos. 07-40861, 07-40915 (5th Cir. Sept. 7, 2007, Sept. 19, 2007).

§ 7805(b)(3).

*Sala* also supports its holding that § 7805(b)(3) cannot validate the retroactivity of the Regulation because – citing *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975) – it alters settled law upon which taxpayers can justifiably rely. 2008 WL 1836693 at 30. But, as discussed in our opposition memorandum, taxpayers could in no way rely on *Helmer* to justify the deductibility of the massive non-economic losses claimed by them. United States Mem. at 27-29. Here again, *Sala* is in direct conflict with *Cemco*, where the Seventh Circuit etched a totally contrary holding:

> Cemco says that in treating $50,000 of euros as having a $3.6 million basis, which turned into a loss when the euros were sold for exactly what they had been worth all along, it was just relying on *Helmer* . . . and a few similar decisions. That may or may not be the right way to understand *Helmer*; we need not decide, for it is not controlling in this court–or anywhere else. The Commissioner has a statutory power to disregard transactions that lack economic substance.

*Cemco*, 515 F.3d at 751.

Finally, *Sala* held that I.R.C. § 7805(3) cannot validate the retroactivity of the Regulation because it is not designed to combat the type of abuse which § 309 – which added §358(h) to the Code – is designed to deter. But, as discussed, §358(h) is designed to prevent the artificial inflation of a shareholder's basis in a corporation through the device of contingent liabilities. That is also the exact type of abuse the Regulation is designed to prevent – though in the partnership context. In short, the Regulation is manifestly the type of abuse which the statute is designed to prevent.

### G. *Sala* Also Applied the Wrong Standard of Review to Determine the Validity of Treas. Reg. § 1.752-6.

*Sala* held that because the Regulation exceeded the authority granted by § 309(c)(1), it

was not a legislative regulation and therefore was not entitled to *Chevro*n deference. 2008 WL 1836693 at 26, 28. Given that *Sala* erred in holding that the Regulation was not promulgated pursuant to an express grant of authority, it follows that *Sala* is equally wrong in concluding that the Regulation is not entitled to *Chevron* deference. Moreover, even if the Regulation were, as the *Sala* and *Klamath* courts found, "interpretive," as next discussed, it would still merit the deference accorded in *Chevron. See U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

Significantly, on May 12, 2008, the Fifth Circuit decided *Kornman & Associates Inc. v. United States*, ___ F.3d ___, No. 06-11422, 2008 WL 2009848 (5th Cir., May 12, 2008), upholding the district court's grant of summary judgment to the United States in a tax shelter matter similar to the COBRA shelter.[9] *Kornman*, while not reaching the issue of whether the Regulation is valid, did note that other circuits have held that Treasury Regulations, whether "legislative" or "interpretive,"are entitled to full *Chevron* deference. *Kornman*, 2008 WL 2009848 at *9, n.10.

In particular, *Kornman* cites the recent decision of *Swallows Holding, Ltd. v. Commissioner*, 515 F.3d 162 (3d Cir. 2008), in which a taxpayer challenged another Treasury regulation. The taxpayer argued that the regulation was interpretive, not legislative, and was owed less deference. The Tax Court agreed and found the regulation invalid. The Third Circuit, however, while finding that the regulation would have failed under the standard advocated by the

[9] The parties in *Kornman* argued the validity of the Regulation. The court did not reach the issue, however, because it held that an obligation to close a short-sale constitutes a liability under I.R.C. § 752. Therefore, the government prevailed whether or not the Regulation was valid.

taxpayer, held that the regulation, while interpretive, was nevertheless entitled to full *Chevron* deference and was therefore valid. The Third Circuit stated that "[t]here is no *per se* rule that relegates interpretive rules to the realm of *Skidmore* [*v. Swift & Co.*, 323 U.S. 134, 140 (1944)].[10] Here, the Secretary opened the rule to public comment, a move that is indicative of agency action that carries the force of law." 515 F.3d at 169 (footnote added). As explained in the United States' opposition memorandum, the same is true here. Treasury opened the Regulation to public comment, and the public did comment. United States Mem. at 35-38. The Regulation carries the force of law.

*Kornman* also cites *Hospital Corp. of America & Subsidiaries v. Commissioner*, 348 F.3d 136 (6th Cir. 2003). Taxpayer in *Hospital Corp.* challenged yet another "interpretive" Treasury Regulation. In upholding the challenged regulation, the Sixth Circuit stated that "[t]his court has applied the *Chevron* analysis to interpretive Treasury Regulations." *Id.* at 140.

Equally significant, the Seventh Circuit has long recognized that *Chevron* applies to all Treasury Regulations, whether "legislative" or "interpretive." In upholding a challenged interpretive Treasury regulation on the basis of *Chevron*, the Seventh Circuit stated "our decision signals an effort toward a resolution of the current circuit split on the issue. Currently the Sixth Circuit accords *Chevron* deference to all tax regulations. . . . Meanwhile, the Third and Fifth Circuits have rejected *Chevron* for general authority regulations." *Bankers Life and Cas. Co. v. United States*, 142 F.3d 973, 982 (7th Cir. 1998). As we have seen, the Third Circuit has since adopted *Chevron* for all tax regulations as well, and the Fifth Circuit, in *Kornman*, has also

---

[10] *Skidmore* deference is a lesser level of deference which the courts owe to agency action which does not carry the force of law. *Sala* mistakenly concludes that *Skidmore*, rather than *Chevron*, sets forth the standard for interpretive regulations. 2008 WL 1836693 at 25.

signaled its concurrence. *Cf. Snap-Drape, Inc. v. Commissioner*, 98 F.3d 194, 198 (5th Cir. 1996)

In sum, contrary to the reasoning in *Sala*, given that the Regulation, whether viewed as legislative or interpretative, is not arbitrary, capricious, or manifestly contrary to its underlying statute, it is controlling here. *See Chevron*, 467 U.S. at 844 ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency") (footnote omitted).

**H. Even if the Regulation were "interpretive" and even if the courts owed "interpretive" regulations less deference, the Regulation is still valid.**

Even if the Regulation were "interpretive," which it is certainly not, and even if the courts properly determined the validity of "interpretive" regulations with less than *Chevron* deference, the Regulation would still be valid. *Sala* erred in stating:

> The Treasury is only entitled to make retroactive regulations to prevent "abuse of the statute," which this regulation clearly does not do. Moreover, the facts show Sala's participation in the Deerhurst Program was a genuine investment transaction that possessed economic substance and was entered into for the purposes of realizing profits above and beyond the tax losses. Because Sala's investment in the Deerhurst Program was not abusive, it is immaterial whether other transactions of the general type he entered into were abusive.

2008 WL 1836693 at 30.

*Sala* is manifestly wrong in this holding. First, it is significant that, notwithstanding *Kornman* dealt with a purely legal issue, *i.e.*, whether the obligation to close a short sale constitutes a liability for purposes of I.R.C. § 752, the Fifth Circuit commented on what it called "the elephant in the room."

> Before we begin our excursion into Subchapter K, we would be remiss if we did not comment on the *elephant in the room*. The Trust acknowledges that it only suffered a $200,000 economic loss in

> connection with these transactions, yet it claimed a $102.6 Million tax loss on its return. The Trust used this fake loss in 1999 to offset over $2 Million in legitimate income and capital gains. . . . The Appellants' premeditated attempt to transform this wash transaction (for economic purposes) into a windfall (for tax purposes) is reminiscent of an alchemist's attempt to transmute lead into gold.

*Kornman*, 2008 WL 2009848, at *10. (Emphasis added.)

This is exactly the kind of fake loss which plaintiffs claimed in the COBRA transaction at bar and exactly the kind of abuse which the Regulation seeks to prevent. If this fact is important in a purely legal case such as *Kornman*, then *a fortiori* it is important in a case such as this in which the court would have to determine the reasonableness of a regulation if such regulation were "interpretive" and if "interpretive" regulations did not receive *Chevron* deference. Moreover, the investment in *Sala* was not a genuine investment at all. The United States is presently moving for a new trial in *Sala* because the court based its conclusion that "the Deerhurst program was a genuine investment transaction" on the deposition of Andrew Krieger, the trader who handled and executed the offsetting trades in the transaction in *Sala*. Case No. 05-000636, DE #258. In his deposition, Krieger had stated that the investment was for legitimate business purposes. At trial, the court accepted Krieger's deposition testimony in lieu of live testimony.

On May 21, 2008, Krieger signed a non-prosecution agreement with the United States Attorney's Office for the Southern District of New York which is conducting criminal investigations into various tax shelters. The Agreement is conditioned upon Krieger's providing truthful testimony and information when requested to do so by the government. Krieger provided a declaration in connection with the *Sala* case, dated May 22, 2008, which has been submitted by the Tax Division to the court in a motion for a new trial. Krieger's declaration

states that his deposition testimony was "intentionally false, misleading, and incomplete." Declaration of Andrew Krieger, Exhibit A. Krieger went on to swear:

> The transactions that gave rise to the tax losses, including the structure imposed on the participants and the use of an S corporation and general partnership, were not designed to assist in the creation of a profit or for any purpose other than the creation of tax losses. . . . Instead, everything that occurred in 2000 consisted of predetermined steps . . . all for the purpose of generating tax basis and a tax loss for the participants.

*Id.* Krieger is undoubtedly correct in swearing that "I believed that had I testified truthfully at my deposition to these facts, my testimony might have undermined Mr. Sala's tax case." *Id.*

In sum, *Sala* is palpably incorrect. Firstly, *Sala*'s three textual grounds for holding that the Regulation exceeds the grant of authority in § 309(c) of the 2000 Act are meritless. Secondly, the Regulation is "legislative" and not "interpretive, and is entitled to *Chevron* deference. Thirdly, even if the Regulation were "interpretive," the Regulation would still be entitled to full *Chevron* deference. Fourthly, even if the Regulation were interpretive and even if the courts owe such regulations less deference, the Regulation is manifestly reasonable. Finally, for all of these reasons, I.R.C. §§ 7805(6) and (3) plainly validate the retroactivity and thus the reasonableness of the Regulation.

## CONCLUSION

For the reasons described above, Treas. Reg. 1.752-6 is valid. The United States respectfully requests that the Court deny plaintiffs' motion for partial summary judgment.

Respectfully submitted,

/s/ Dennis M. Donohue
DENNIS M. DONOHUE
CHIEF SENIOR LITIGATION COUNSEL
OFFICE OF CIVIL LITIGATION
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6492
Facsimile: (202) 307-2504
E-mail: dennis.donohue@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16th, 2008, I electronically filed the foregoing **UNITED STATES' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE VALIDITY OF TREASURY REGULATION § 1.752-6** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joel N. Crouch
Texas State Bar No. 05144220
Meadows, Collier, Reed
Cousins & Blau, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

s/ David M. Steiner
David M. Steiner
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892