# In the United States Court of Federal Claims

Nos. 06-245T, 06-246T, and 06-247T
(CONSOLIDATED)

(Filed: September 19, 2008)

*****************************************  *
                                           *
**MURFAM FARMS, LLC,**                     *
**By and Through Wendell H. Murphy, Jr.,** *
**A Partner Other than Tax Matters Partner,** *
                                           *
**PSM FARMS, LLC,**                        *
**By and Through Stratton K. Murphy,**     *
**a Partner Other than Tax Matters Partner,** *
                                           *
**MURPHY PORK PARTNERS, LLC,**             *
**By and Through Wendell H. Murphy, Jr.,** *
**A Partner Other than Tax Matters Partner,** *
                                           *
              Plaintiffs,                  *
                                           *
      v.                                   *
                                           *
**THE UNITED STATES**,                     *
                                           *
              Defendant.                   *
                                           *
*****************************************  *

## OPINION

Before the Court are four motions *in limine*, one by Plaintiffs and three by the Government, to exclude all or part of several expert witness reports and testimony.  The motions are:

1. Plaintiffs' Motion to Exclude Government Expert Dr. David LaRue ("Plaintiffs' LaRue Motion")

2. The Government's Motion to Partially Exclude the Expert Report and Testimony of Dr. Donald Chance ("The Government's Chance Motion")

1

3. The Government's Motion to Exclude the Expert Testimony of Mr. Melvin Jager ("The Government's Jager Motion")

4. The Government's Motion to Exclude the Expert Report and Opinions of Mr. Stuart Smith ("The Government's Smith Motion")

For the following reasons, Plaintiffs' LaRue Motion is DENIED, the Government's Chance Motion is DENIED, the Government's Jager Motion is DENIED, and the Government's Smith Motion is GRANTED in part and DENIED in part.

## I.     Law Applicable to Motions to Exclude Expert Witnesses and Testimony

Federal Rule of Evidence 702 ("Rule 702"), which governs the admissibility of expert testimony, states in full:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In general, Rule 702 is viewed as requiring the trial judge to ensure that proffered expert testimony is both reliable and relevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90, 113 S. Ct. 2786, 2795, (1993)); *see also Sparton Corp. v. United States*, 77 Fed. Cl. 1, 7 (2008). Under *Daubert* and *Kumho Tire*, reliable expert testimony is grounded in the methods and procedures of scientific, technical, or specialized knowledge in the expert's discipline, and is not merely subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 589-90, 113 S. Ct. at 2795; *Kuhmo Tire*, 526 U.S. at 157-58, 119 S. Ct. at 1178-79. Relevant expert testimony is that which will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795. To help assess the relevance and reliability of proffered expert testimony, *Daubert* lists five nonexclusive factors as part of a "flexible" test: (1) whether the methodology can and has been tested; (2) whether the methodology is subject to peer review; (3) the potential rate of error; (4) the existence and maintenance of standards governing the methodology; and (5) general acceptance of the methodology. *Id.* at 593-94, 113 S. Ct. at 2796-97; *see also Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006) (*Daubert* factors can be used to measure the reliability of an expert's principles and methods, but the weight to be given conclusions resulting from the principles and methods is a separate consideration). The factors that are helpful toward informing a court's gatekeeping decision will vary case-by-case depending on the type of expert testimony proffered. *Kumho*, 526 U.S. at 141-42, 119 S. Ct. at 1171. Although under *Daubert* a judge is required to act as a gatekeeper to prevent unreliable or irrelevant evidence from being

admitted, the trial judge has great discretion in deciding what expert testimony to allow.  *Kumho*, 526 U.S. at 147, 119 S. Ct. at 1174.

One type of expert testimony courts are consistently reluctant to admit is an expert's opinions of law.  *See*, *e.g.*, *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1574 (Fed. Cir. 1993); *Sparton Corp.*, 77 Fed. Cl. at 8-9; *see also Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied"); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 611-12 (7th Cir. 2006).[1]  As the D.C. Circuit once aptly noted, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge."  *Burkhart*, 112 F.3d at 1213.

Although Federal Rule of Evidence 704 ("Rule 704") was promulgated to clarify that expert testimony on an ultimate issue in a case is permissible, the Rule was not intended to allow an expert to advise the court on legal issues or outcomes determined purely by law.  *Sparton Corp.*, 77 Fed.Cl. at 8 (citing Fed. R. Evid. 704, Advisory Committee Notes, 1972 Proposed Rules, reprinted in Thompson/West, Federal Judicial Procedure and Rules at 436 (2005)).  For example, patent law experts are occasionally called upon in bench trials to inform a judge on the intricacies of patent law.  *See Mendenhall*, 5 F.3d at 1574 n.17.  And, experts have been permitted to testify regarding the proper interpretation of contract terms, an issue of law, when the meaning depends on trade practice.  *See, e.g., Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); *WH Smith Hotel Servs, Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (no error in admitting expert testimony regarding customary and usual meaning of rent provisions in the commercial real estate industry); *accord, Metric Constr. Inc. v. Nat'l Aeronautics and Space Admin*, 169 F.3d 747, 751-52 (Fed. Cir. 1999) (citing, with approval, *Western States Constr. Co. v. United States*, 26 Cl.Ct. 818, 826 (1992), in which evidence of trade practice and usage in industry was relied on in contract interpretation).  However, unlike a general summarization of the law or an explanation of custom or trade practice, an expert's legal analysis or opinion on an ultimate legal issue is not generally considered helpful evidence.  *Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988); *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122

---

[1] The principle that expert testimony on pure issues of law is unhelpful to the finder of fact is universal among the circuits.  *See, e.g.*, *Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995); *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)*; Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (3d Cir. 1991); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986);  *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 365-68 (4th Cir. 1986).

F.3d 1040, 1042 (Fed. Cir. 1997) ("[T]his court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide."); *Sparton Corp*, 77 Fed. Cl. at 9.

Thus, for each of the four expert reports, the Court must determine the extent to which each expert will testify on a purely legal issue or provide purely legal analysis. Expert reports, or portions of reports, which opine on or provide analysis of purely legal issues will be excluded. Where the reports do not merely opine on legal issues, the Court's function is only to ensure that they will help the trier of fact, and that they are both reliable and relevant. *Daubert*, 509 U.S. at 589-91, 113 S. Ct. at 2795. Beyond that, it is the province of the parties themselves to point out inconsistencies, contest erroneous conclusions, and demonstrate any insufficient factual support through cross-examination. *Id.*, 509 U.S. at 596, 113 S. Ct. at 2798.

## II.     Plaintiffs' LaRue Motion

Government expert Dr. David  LaRue offers his opinion primarily on whether the transactions at issue in this case were adequately disclosed on partnership tax returns, and whether the tax returns would appear to a tax practitioner to have been filed in a manner designed to reduce the risk of audit by the IRS. Pls.' LaRue Mot. at 3. Plaintiffs make several pertinent arguments for why Dr. LaRue's testimony should be excluded: (1) Dr. LaRue is unqualified to testify on IRS audit procedures;  (2) Dr. LaRue opines about legal issues; and (3) Dr. LaRue's testimony is irrelevant because it is based only on the tax preparers' statements, not on the taxpayers' subjective intent. *Id.* at 5.

First, the Court finds that Dr. LaRue is qualified to present the opinions in his report. Dr. LaRue has 30 years of experience academically in the tax field, including creating and teaching numerous tax analysis and reporting courses to both students and tax professionals. Def.'s Opp'n to Pls.' LaRue Mot. at 12-19. More importantly, Dr. LaRue's report does not opine on what the actual IRS audit procedures are – some aspects of those procedures are highly guarded inside the IRS. *Id.* at 9; Pls.' Reply to Pls.' LaRue Mot. at 10-11. Rather, Dr. LaRue is actually opining on whether a tax professional would recognize a particular tax filing as having been prepared with an intent to reduce the chance of audit.[2] Def.'s Opp'n to Pls.' LaRue Mot. at 10-11, Ex. 1 ¶ 23.4.

---

[2] Plaintiffs argue that characterizing Dr. LaRue's testimony as an opinion on what a tax professional would perceive is tantamount to a rewrite of Dr. LaRue's report. Plaintiffs state that Dr. LaRue's report includes 36 instances of Dr. LaRue unconditionally opining that the risk of detection and audit of Plaintiffs' tax returns would have increased if other information had been disclosed. Upon reviewing Dr. LaRue's report, the Court disagrees. Generally, Dr. LaRue qualified his opinions in this regard with the phrase "it would be reasonable to conclude that ...," rather than "I conclude that ...," giving the impression that Dr. LaRue was generalizing his conclusions to phrase them as conclusions reasonable tax professionals might reach. *See, e.g.*, Pls.' LaRue Mot. at Ex. 3 p. 130.

Given his experience, Dr. LaRue is qualified to opine on that issue.

The Court also does not find that Dr. LaRue makes an improper legal argument. Although Dr. LaRue examines the extent to which the COBRA transactions were disclosed on Plaintiffs' tax returns, he does not do so in regard to whether it complied with any Treasury Regulation or other legal requirement, but rather based on his own experience in analyzing tax returns and the instructions on tax return forms. *Id.* at 29-30. In fact, the Regulation Plaintiffs accuse Dr. LaRue of analyzing, 26 U.S.C. § 6662(d)(2)(B)(ii), is not cited in Dr. LaRue's report. Def.'s Opp'n to Pls.' LaRue Mot. at 29, Ex. 1 at ¶ 37-38. Dr. LaRue's report appears to simply examine Plaintiffs' tax returns and opine on their design from the perspective of a reasonable tax professional.

Plaintiffs' relevance argument – that Dr. LaRue's opinion is irrelevant because it is not based entirely on evidence of the taxpayers' own intent – is likewise unpersuasive. *See* Pls.' LaRue Mot. at 11. The Government is proffering Dr. LaRue's conclusions to support the negligence penalty asserted against Plaintiffs and to undermine Plaintiffs' good-faith defense. Def.'s Reply to Pls.' LaRue Mot. at 32. Determining whether a negligence penalty or good-faith defense applies in this case requires a fact-intensive inquiry into the reporting of the taxes by the tax preparers, the level of care exhibited by the taxpayers, and whether that level of care was reasonable under the circumstances. *See* Treas. Reg. § 1.6664-4 (setting forth factors for, *inter alia*, assessing the reasonableness of reliance on professional tax advice). It follows that taxpayers' subjective intent is not the only evidence relevant to a defense to negligence penalties. The manner in which the taxes were discussed and reported by Ernst & Young and Proskauer Rose, examined in several portions of Dr. LaRue's expert report, is relevant in this case.

Therefore, Plaintiffs' Motion to Exclude Government Expert David LaRue is DENIED.

## III.    The Government's Chance Motion

The Government moves to exclude the expert testimony of Dr. Donald Chance, a finance professor specializing in derivatives and risk management, on the basis that Dr. Chance's methods are unreliable. Def.'s Chance Mot. at 2. Dr. Chance opines in his report that the transactions at issue in this case had a reasonable probability of profit. *Id.*, Ex. 1 at 3. The Government seeks to exclude this testimony on the basis that Dr. Chance's method used for making that conclusion is unreliable because it compares the probability of profit from the transactions at issue in this case, involving non-publicly traded options, with similar transactions involving publicly traded options. *Id.* at 1-2. The Government also contends that Dr. Chance's testimony fails to meet any of the *Daubert* reliability factors. *Id.* at 10-11.

The Court finds that the Government's arguments do not address the reliability of Dr. Chance's testimony under Rule 702, so much as attack the weight to be given his conclusions. First, Dr. Chance's discussion of profit probabilities for publicly traded and non-publicly traded options appears to be nothing more than a simple comparison, to which the *Daubert* factors

provide little assistance.  The Government's primary complaint about Dr. Chance's testimony is that the COBRA options were not priced properly in comparison to their likely profit yield because they were not traded in the open market, making the correlation to transactions involving publicly traded options less analogous.  *Id.* at 16-17.  This is not an argument about reliability, but an attack on the weight and meaning to be ascribed Dr. Chance's conclusions.  *See Liquid Dynamics*, 449 F.3d at 1221.  The Government can make its point at trial.  The United States' Motion to Partially Exclude the Expert Report and Testimony of Don M. Chance is therefore DENIED.[3]

## IV.    The Government's Jager Motion

The Government essentially presents three arguments for the exclusion of Mr. Melvin Jager's report:  (1) that it is untimely, (2) that it is unhelpful to the Court because it is nothing more than a legal argument, and (3) that it is unhelpful to the Court because it is not based on sufficient facts.  Plaintiffs present the report of Mr. Jager, an attorney for a firm which provides, among other things, IP valuation services, to opine on whether an ordinary person familiar with intellectual property would recognize the COBRA scheme as having the characteristics of intellectual property.  If so, it would imply that the parties considered the fees paid to the promoters as a "royalty," which would impact how the fees are considered in an economic substance analysis.  Pls.' Opp'n to Def.'s Jager Mot. at 1-2, 15.

The Government first argues that Mr. Jager's report was untimely because it was submitted as a rebuttal report but addresses a new issue which the Government's experts had not opined on.  Def.'s Jager Mot. at 10.  Though the Government may be correct that its experts did not discuss trade secrets, its experts did opine on how the promoters' fees should be considered (i.e., as a professional fee that should be included in calculations deriving the expected rate of return on the transactions).  *See* Pls.' Opp'n to Def.'s Jager Mot. at 4 (discussing Kolbe and DeRosa reports).  Because Mr. Jager's report also addresses how the promoter's fees should be considered, the Court finds that Mr. Jager's report is a rebuttal and, therefore, is timely under RCFC 26(a)(2).

The Court also disagrees that Mr. Jager's report presents improper legal analysis.  Mr. Jager does not purport to opine on whether the COBRA scheme is, in fact, a trade secret.  Rather,

---

[3] In their opposition to the Government's Chance Motion, Plaintiffs state that the Declaration of Dr. A. Lawrence Kolbe, which the Government attached to its motion, is nothing more than an untimely, supplemental rebuttal expert report and must therefore be "disallowed." Pls.' Opp'n at 3.  To the extent that Plaintiffs intended this to be a request for an order striking the Declaration, the Court cannot grant it at this time.  Under Rule 7(b) of the Rules of the Court of Federal Claims ("RCFC"), "[a]n application to the court for an order shall be by motion."  A party cannot request independent relief in a response brief.  If Plaintiffs wish to have the Declaration of Dr. Kolbe stricken, they should file a motion requesting that relief and stating the grounds for their request.

Mr. Jager offers his opinion that, because the scheme has characteristics typically exhibited by a trade secret, it would be customary to pay a royalty for participation in the scheme.  *See* Pls.' Opp'n to Def.'s Jager Mot. at 10-11.  As experts can be permitted to testify regarding industry custom for contract interpretation issues, the Court finds that testimony regarding whether it would be customary to pay a royalty for participation in a program which exhibits certain characteristics of intellectual property would also be permissible.  *See Metric Constr.*, 169 F.3d at 751-52.

Finally, the Government argues that Mr. Jager was so uninformed about the Government's initial expert reports that his rebuttal report must be found unreliable.  Def.'s Jager Mot. at 15 (citing Mr. Jager's deposition testimony that he could not provide more than a general description of the COBRA transaction).  Although Mr. Jager may not be familiar with the details of this case, upon review of Mr. Jager's report, the Court finds that Mr. Jager was presented with a sufficient minimum of information to support the conclusions he made.  *See, e.g.*, Def.'s Jager Mot. at Ex. 1 (Jager Report) pp. 11-13.  The Government may explore the extent to which Mr. Jager lacks a full awareness of the transaction on cross-examination.  The Government's Motion to Exclude the Expert Testimony of Melvin F. Jager is therefore DENIED.

## V.    The Government's Smith Motion

Plaintiffs present Mr. Stuart Smith, a tax attorney, to opine on whether the Proskauer Rose opinions were of the type, character, and quality upon which a taxpayer could reasonably rely.  Pls.' Opp'n to Def.'s Smith Mot. at Ex. D p. 2.  The Government makes two primary arguments for the exclusion of Mr. Smith's testimony:  (1) that, because Mr. Smith relies on the wrong law (i.e., certain Treasury Circular 230 and not Treasury Regulation 1.6664-4), the testimony contained in Mr. Smith's report is unreliable, and (2) that Mr. Smith presents nothing more than legal analysis.  Def.'s Smith Mot. at 9, 17.

The Government first asserts that Mr. Smith's analysis is unreliable because the only standard by which to properly gauge a reasonable cause defense to accuracy-related penalties is I.R.C. § 6664(c) and the Treasury Regulations promulgated under that section.  Def.'s Smith Mot. at 17.  In response, Plaintiffs assert that Mr. Smith's report does not state that Treasury Circular 230 is the correct standard by which to consider a reasonable cause defense.  Instead, Plaintiffs assert, "Mr. Smith references the Circular 230 standards only in his evaluation of the *quality* of the tax opinions to demonstrate that such opinions were 'objectively reasonable.'"  Pls.' Opp'n to Def.'s Smith Mot. at 8.

The Court does not find that Mr. Smith's analysis is unreliable under Rule 702.  The Court notes that Mr. Smith's report states, quite unmistakably, that "it is plainly not necessary for an opinion to satisfy the particular requirements of this Circular for a taxpayer to act reasonably in relying on it."  Pls.' Opp'n to Def.'s Smith Mot. at Ex. D p. 7.  Moreover, it seems reasonable to the Court that a tax professional might look to a Treasury Circular for at least general guidance in determining the level of quality necessary for a tax opinion.  As such, the Court agrees with

Plaintiffs that Mr. Smith's discussion of Treasury Circular 230 does not render his report "unreliable" under Rule 702.  *See* Pls.' Opp'n to Def.'s Smith Mot. at 7-9.

The Government also argues that Mr. Smith's report simply presents an argument on an issue of law to be decided by the Court.  As Plaintiffs point out, however, Mr. Smith's report does not opine that the Proskauer Rose opinions were legally correct.  Rather, Mr. Smith's report simply opines that the Proskauer Rose opinions appear to have been prepared based on a certain standard of care, and are of a threshold quality such that taxpayers such as the Plaintiffs could reasonably rely on them.  Pls.' Opp'n to Def.'s Smith Mot. at Ex. D p. 1, 7.

The Court finds that only certain portions of Mr. Smith's report constitute improper testimony on a legal issue.  While discussing the characteristics of the Proskauer Rose opinions in a section titled "(2) Relate Law to Facts", Mr. Smith's report also analyzes the Internal Revenue Service's legal position on the COBRA transactions at issue, finding it to "lack an objective appearance of reasonableness."  *Id.* at 9.  Despite Mr. Smith's attempt to disguise his legal discussion as an objective analysis of the quality of the Proskauer Rose opinions, this section of Mr. Smith's report appears to be little more than a legal argument that Plaintiffs' analysis of the transactions is correct while the Government's analysis is not.  There is a difference between opining that a legal analysis is thorough-enough to be reasonably relied upon and opining that the legal analysis is correct while another is incorrect.  The former opinion can be helpful to the court, while the latter is not.  In addition, the merit of the Internal Revenue Service's *subsequent* legal position on the COBRA transactions at issue would play no part in a determination of whether the Proskauer Rose opinions could reasonably have been relied upon *prior to execution of the transactions*.  Similarly, Mr. Smith provides a discussion of the Eastern District of Texas's decision in *Klamath Strategic Investment Fund v. United States*, which was issued well after the Proskauer Rose opinions were written.  *Id.* at p. 11 ¶ 1 to p. 12 ¶ 1  (citing *Klamath*, 472 F. Supp. 2d 885 (E.D. Tex. 2007)).[4]  Mr. Smith attempts to use the *Klamath* opinion as subsequent corroboration that the analysis contained in the Proskauer Rose opinions was correct.  *Id.*  Neither of these discussions is helpful to the Court.

The following portions of Mr. Smith's expert report (and any related testimony by Mr. Smith) are not helpful to the Court and are excluded:

- The third full paragraph on page 9 (beginning "By contrast, the contrary conclusion of the Service...."); and
- The second full paragraph on page 10 (beginning "The objective reasonableness of the opinions' conclusion....") through the first full paragraph on page 12 (beginning "Finally, the Klamath Court has recently reaffirmed its ruling....").

---

[4]Smith also opines on whether legal authority existed for enactment of the temporary treasury regulation at issue in this case, and the Service's motivations for enacting the temporary regulation.  Pls.' Opp'n to Def.'s Smith Mot. Ex. D at p. 10, ¶ 2.

The balance of Smith's report merely analyzes whether the Proskauer Rose opinions contain enough factual information and legal analysis such that a taxpayer could reasonably rely upon it, and is not excluded.  As such, the Government's Motion to Exclude the Expert Report and Opinions of Stuart A. Smith is GRANTED IN PART and DENIED IN PART.


s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge